

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
333 CONSTITUTION AVENUE, NW
WASHINGTON, DC 20001

MICHAEL L. BUESGENS
PLAINTIFF

**RECEIVED**

AUG 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

V.

CIVIL NO.
1:07CV
00859
RBW

1. MARK EVERSON, COMMISSIONER
   INTERNAL REVENUE SERVICE

2. KEVIN M. BROWN, ACTING
   COMMISSIONER - IRS

3. DONALD RAY TAWNEY, JR
   IRS - SUPERVISOR
   VOLUNTARY - CHAPTER 7
   CASE NO. 06-11164FRM

4. JOHN W. SNOW, SECRETARY
5. HENRY PAULSON, SECRETARY
6. DEPARTMENT OF THE TREASURY
   DEFENDANTS, ET.AL.

PLAINTIFF - ADVERSARY -
CREDITOR - FEDERAL TORT CLAIMS
ACT - EEO COMPLAINANT

**NOTICE** TO THIS COURT OF
**ON POINT EEOC CASE** THAT
**IS DIRECTLY RELATED TO**

1. CIVIL NO. 1:07CV00859 RBW
2. ADVERSARY NO. 07-10008
3. BANKRUPTCY CASE NO. 06-11164 FRM

4. CIVIL NO. 1:05CV02334 RCL - CLOSED
5. CIVIL NO. 1:06CV01558 RCL
6. FTCA - TORT CLAIM - TRANSFERRED
   TO AUSTIN, TEXAS

7. WHERE IT BECAME
8. CIVIL NO. 1:06CV00967 LY-RP
9. ASSISTANT U.S. ATTORNEYS
   A. R. BARRY ROBINSON
   B. KAREN MELNIK
   C. PAT S. GENIS

10. **IRS-GLS** ATTORNEYS - **EEO**
    A. MICHAEL SALYMOS - DALLAS, TX
    B. MARK S. KAIZEN - D.C.

C. THOMAS R. STANTON - IRS-GLS-EEO DALLAS, TEXAS

11. EEOC ATTORNEYS
A. JENNIFER RANDALL - DENVER, CO
B. JUDITH TAYLOR - SAN ANTONIO, TX
C. ROBERT B. HARWIN - RETIRED EEOC ATTORNEY - SAN ANTONIO, TX

12. EEOC JUDGE ROBERT LYNN POWELL
A. EEOC NO. 360-2003-8286X
B. TELEPHONE HEARING - 12/16/2003

13. BUESGENS V. IRS
A. DEPARTMENT OF THE TREASURY:
B. MARK EVERSON
C. CHARLES ROSSOTTI
D. DONALD RAY MAWNEY, JR
E. THOMAS L THEIS
F. MARGARET F. WAITES
G. JOHN W. SNOW
H. MICHAEL SALYARAS
ET. AL.

14 AND
RUSSELL BO KELMMO - NTEU CHIEF STEWARD - CHAPTER 247
REPRESENTING - BUESGENS

3

15. FEDERAL OCCUPATIONAL HEALTH DOCTORS - **FOH**

A. NEAL LEE PRESANT, M.D. BETHESDA, MD

B. JAMES WILLIAM ALLEN, MD WILMINGTON, DELAWARE

C. MARK NORMAN FRANK, M.D.

16. OCCUPATIONAL MEDICINE - DOCTORS
17. REASONABLE REASSIGNMENT -**2003**- ACCOMMODATION **AT IRS** FOR

18. MICHAEL L BUESGENS - FORMER **IRS** EMPLOYEE

A. INVOLUNTARY DISABILITY RETIREMENT ON 3 /07 /2005

B. WRONGFUL TERMINATION OF EMPLOYMENT
C. CONSTRUCTIVE DISCHARGE
D. RETALIATION FOR **EEO** COMPLAINTS AND REASONABLE REASSIGNMENT REQUEST **AT IRS**

4

# ON POINT — ON TARGET
## RELATED
DISCRIMINATION AND RETALIATION
BASED
ON MEDICAL DISABILITY
AT
19. SOCIAL SECURITY ADMINISTRATION
SSA
20. **SAME** ISSUES AS BUESGENS
CASE AT **IRS**

21. REASONABLE REASSIGNMENT REQUEST
BECAUSE OF
UNRELENTING INCOMING PHONE
CALLS FROM

A. **SSA** CUSTOMERS

AND
B. **IRS** CUSTOMERS

22. PSYCHIATRIC MEDICAL DISABILITY

23. **PRIOR EEO** ACTIVITY

24. DISABILITY RETIREMENT

5

25  SEE
    FORMER **SSA** EMPLOYEE
A.  **RUSSELL C. HOLLAND**
B.  TELESERVICE EMPLOYEE **-TSR**
C.  AT SOCIAL SECURITY ADMINISTRATION
                    AT
D.  THE **SSA** AGENCY **IN** RICHMOND,
    CALIFORNIA

26.  RUSSELL C. HOLLAND, COMPLAINANT

                    V.

A.  JO ANNE B. BARNHART, COMMISSIONER,
B.  SOCIAL SECURITY ADMINISTRATION, AGENCY

27.  **EEOC** DOC — 01A01372
A.  AGENCY NO.     SSA-568-93
B.  HEARING NO.    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X
C.  **2003 WL** 22346114 (E.E.O.C.)

D.  OCTOBER 2, 2003
E.  **34**-PAGES

                    6

28.    **EEOC** Doc - 05A40191
A. APPEAL No. 01A01372
B. AGENCY No. SSA-568-93
C. **2004 WL** 1554771 (E.E.O.C.)

D. JUNE 29, 2004
E. **7-PAGES**

29.    **EEOC** Doc    01A51800
APPEAL No.    01A51800
AGENCY No.    93-568-SSA
**2005 WL** 1198570

MAY 10, 2005-DISMISSAL OF APPEAL
**5-**PAGES

ATTORNEY FEES DENIED
SSA
RICHMOND, CALIFORNIA FACILITY

7

30. PLAINTIFF BUESGENS CITES THIS ON POINT CASE IN

A. CIVIL NO. 1:05CV00243 SS
B. U.S. DISTRICT COURT AUSTIN, TEXAS JUDGE SAM SPARKS

C. CASE CLOSED: 12/06/2006

31. THIS EEOC CASE WAS IGNORED - OMITTED AND DELETED BY EVERYONE INVOLVED IN 1:05CV00243 SS - ROBINSON-RANDALL

32. FOR EXAMPLE:
A. JUDGE SAM SPARKS
B. FIFTH CIRCUIT
C. R. BARRY ROBINSON - AUSA
D. JENNIFER RANDALL - EEOC ATTORNEY
E. CHARLES R. NETTLES - BANKRUPTCY ATTORNEY - CASE NO. 06-11164 FRM

33 LIKEWISE THIS EEOC - SSA - RUSSELL C. HOLLINS CASE WAS IGNORED - OMITTED AND DELETED IN THE FOLLOWING

8

CIVIL ACTIONS

34. 1:05 CV 02334 RCL
U.S. DISTRICT COURT DISTRICT
OF COLUMBIA    EEO NO. 05-2791 S
A. JUDGE ROYCE C. LAMBERTH
B. KAREN MELNIK - AUSA
C. MICHAEL SALYARDS - IRS-GLS-EEO

35. 1:06 CV 01558 RCL - FTCA CLAIM
A. JUDGE ROYCE C. LAMBERTH - FTCA
B. COLLEEN M. KELLEY - PRESIDENT
NTEU
C. BARBARA A. ATKIN - GENERAL
COUNSEL
D. KAREN MELNIK - AUSA
E. MICHAEL SALYARDS - IRS-GLS-EEO

36. 1:06 00967 LY-RP
FEDERAL TORT CLAIMS ACT - FTCA
A. JUDGE ROYCE C. LAMBERTH
B. MAGISTRATE JUDGE ROBERT L. PITMAN
C. R. BARRY ROBINSON - AUSA
D. JENNIFER RANDALL - EEOC
E. COLLEEN M. KELLEY - NTEU

9

NOTHING HAS BEEN LITIGATED IN ANY OF MICHAEL BUESGENS CIVIL ACTIONS

37. PENDING CIVIL ACTIONS WERE ROUTINELY DENIED DISCOVERY AND DISCLOSURE

38. BY
   A. ASSISTANT U.S. ATTORNEYS
   B. KAREN MELNIK
   C. R. BARRY ROBINSON
   PAT S. GENIS

39. IRS-GLS-EEO ATTORNEYS
   A. MICHAEL SALYAROS
   B. THOMAS R. STANTON
   C. MARK S. KAIZEN

40. EEOC ATTORNEYS

   A. JENNIFER RANDALL
   B. JUDITH TAYLOR
   C. ROGER B. HIKAIN
   D. ROBERT BARNHART
   E. ROBERT LYNN POWELL - EEOC
      JUDGE - EEOC # 360-2003-8286X

10

41.    NTEU ATTORNEYS
    A. RUSSELL BOKELMAN
    B. BARBARA A. ATKIN
    C. JULIE M. WILSON
    D. DENNIS SCHNEIDER
    E. GREGORY O'DUDEN

42.    PLAINTIFF BUESGENS CIVIL ACTIONS
    WERE PREMATURELY DISMISSED
    OR SUBJECT TO SUMMARY
    JUDGMENT
                    BASED
    ON ATTORNEY HOT AIR AND
    CONCEALING DOCUMENTARY EVIDENCE
    OF WRONGDOING BY DEFENDANTS
    AND GOVERNMENT OFFICIALS AND
    ATTORNEYS

43.    A DOCUMENTARY SEQUENCE OF
    EVENTS IS AVAILABLE FOR
    JUST ADJUDICATION OF BUESGENS
    CLAIMS THAT BEGAN IN 2002.

11

44. PLAINTIFF BUESGENS HAS REQUESTED **THE NAME** OF THE ATTORNEY WHO REPRESENTED

A. RUSSELL C. HOLLAND

B. FORMER **SSA** EMPLOYEE

45. BUESGENS STARTED REQUESTING THIS FROM **EEOC** IN **2005** AT

A. SAN ANTONIO, TEXAS

B. WASHINGTON, DC

46. BUESGENS HAS BEEN CONTINUALLY **DENIED** THIS INFORMATION

47. WHICH CULMINATED IN A **FINAL DENIAL BY**

48.
A. JUDGE SAM SPARKS

B. IN CIVIL NO. 1:05CV00243 SS

C. JENNIFER RANDALL - **EEOC** ATTORNEY

D. R. BARRY ROBINSON - **AUSA**

12

49. **SEE** JENNIFER RANDALL'S
PLEADINGS IN CIVIL NO.
A. 1:05CV00243SS
B. ON BEHALF OF
**EEOC**
C. JUDGE ROBERT LYNN POWELL
AND
D. JUDGE KATYE DUNDERSTADT
AND
E. **EEOC**
F. SAN ANTONIO, TEXAS
G. WASHINGTON, DC

50. WHO EVER THE ATTORNEY WAS
FOR RUSSELL C. HOLLAND - SSA -
**COULD** STEP INTO BUESGENS
CASE AND **NOT** HAVE **TO DO**
MUCH HEAVY LIFTING

51. BECAUSE OF THE **ON TARGET**
SIMILARITY WITH BUESGENS
DISCRIMINATION - RETALIATION
COMPLAINT - CONSTRUCTIVE
DISCHARGE - DISABILITY RETIREMENT
BASED ON PSYCHIATRIC DISABILITY.

13

52. BUESGENS **HAS BEEN DENIED** THE ATTORNEY NAME **BASED ON**

A. JENNIFER RANDALL — **EEOC** ATTORNEY

B. R. BARRY ROBINSON (AND) — **AUSA**

C.

D. LIMITED

E. CONFINING INTERPRETATION

F. **THEIR VERSION** OF THE PRIVACY ACT

53. **MORE** ATTORNEY MISCONDUCT AND MISLEADING MISREPRESENTATIONS

54. **SEE** RELATED CIVIL ACTION

A. 1:06 CV 01964 RBW

B. U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

14

1:07CV00859 RBW

RELIEF REQUESTED

55. PROVIDE THE NAME AND
ADDRESS FOR ATTORNEY
EEOC CASE
RUSSELL C. HOLLAND
SSA SAME ANIMAL AS IRS
ATTORNEY FEES DENIED ON
APPEAL

56. ALLOW SUBMISSION OF THE
FOLLOWING RELEVANT EVIDENCE
AND SELF AUTHENTICATION BY
PLAINTIFF MICHAEL BUESGENS

57. PURSUANT TO FEDERAL RULES OF
EVIDENCE = FRE
A. RULE 401
B. RULE 406 - HABIT - ROUTINE PRACTICE
OF AUSA'S EEOC ATTORNEYS
AND IRS-GLS-EEO ATTORNEYS

15

58. FRE RULE 613
A. PRIOR STATEMENTS OF WITNESSES.
B. THE FOREGOING ATTORNEYS
ARE SERVING AS WITNESSES
TO EVENTS
C. MAKING DECLARATIONS
OF
D. MISLEADING
FACTS
E. TO SUPPORT DISMISSAL WITHOUT
DUE PROCESS

59. SEE THE PLEADINGS BY ATTORNEY
A. JENNIFER RANDALL
AND
B. R. BARRY ROBINSON
AND
C. BANKRUPTCY ATTORNEY
CHARLES R. NETTLES

60. FRE RULE 901
AUTHENTICATION OR IDENTIFICATION
A. 901 (7)
B. 901 (8)
C. 901 (9)
D. 901 (10)

16

61. THE FOREGOING ATTORNEYS COURT FILINGS ARE PUBLIC RECORDS AND EASILY ACCESSED AND IDENTIFIED.

62. THE **EEOC** AND **OPM** AND **IRS** HAVE **DATA BASE** RECORDS THAT HAVE BEEN **CONCEALED** **BY** THE FOREGOING ATTORNEYS

RESPECTFULLY SUBMITTED

Michael L Buesgens

MICHAEL L BUESGENS

AUGUST 19, 2007

17

1:07CV00859RBW
AND
RELATED
1:06CV01764RBW

DECLARATION AND VERIFICATION
OF
MICHAEL L BUESGENS
FORMER
IRS EMPLOYEE

I DECLARE UNDER PENALTY OF
PERJURY THAT THE FOREGOING
IS TRUE

PURSUANT TO 28.U.S.C. SECTION
1746

EXECUTED ON THIS 19TH DAY
OF AUGUST, 2007

Michael L Buesgens
MICHAEL L BUESGENS

18

1:07 CV 00859 RBW
AND
**RELATED**
1:06 CV 01964 RBW

## CERTIFICATE OF SERVICE

I CERTIFY THAT ONE TRUE COPY OF THIS NOTICE OF ON POINT EEOC CASE AND REQUEST FOR RELIEF AND ADMISSION OF EVIDENCE WAS SERVED BY FIRST CLASS MAIL ON THIS 21 ST DAY OF AUGUST, 2007
ADDRESSED TO

1.
2.
3.
4.
5.

**JENNIFER RANDALL** – ATTORNEY
ROBERT B. MIRWIS – ATTORNEY
ELIZABETH P. CALDWELL – EEOC
STEPHANIE GARNER – EEOC **FOIA**
ROBERT LYNN **POWELL** – EEOC JUDGE
303 EAST 17 TH AVENUE
DENVER, CO 80203

19

6.   PAT S. GENIS - AUSA
7.   SUSAN BECKER - AUSA
8.   ELIZABETH F. KARPATI - AUSA
9.   KAREN MELNIK - AUSA
10.  R. BARRY ROBINSON - AUSA
11.  JOHN SCHUMANN - AUSA
12.  U.S. ATTORNEYS OFFICE
     P.O. BOX 227
     WASHINGTON, DC 20044

13.  **CHARLES R. NETTLES**
     BANKRUPTCY ATTORNEY
14.  RANDOLPH OSHEROW - CHAPTER **7**
     TRUSTEE
15.  DONALD RAY TAWNEY JR
16.  **THOMAS L THEIS**
17.  MARGARET F. WHITES
A.   BANKRUPTCY CASE NO. 06-11164
B.   ADVERSARY NO. 06-01248
C.   ADVERSARY NO. 07-10008
D.   **THE APPEALS**
     1524 S. IH-35, SUITE 233
     AUSTIN, TEXAS 78704

20

18  RUSSELL BO KELMAN
19  EEOC NO. 360-2003-82864
    NATIONAL TREASURY EMPLOYEES
    UNION - NTEU
20. COLLEEN M. KELLEY - PRESIDENT
    EEOC NO. 360-2006-00307
21. BARBARA A. ATKIN - GENERAL
    COUNSEL - NTEU - M.S.P.B.
22. GREGORY O. DUDEN - ATTORNEY
23. DENNIS SCHNEIDER - NTEU ATTORNEY

    1750 H. STREET, NW
    WASHINGTON, DC 20006

    Michael Buesgens
    MICHAEL BUESGENS
    3112 WINDSOR RD, A322
    AUSTIN, TEXAS 78703

    512-339-6005 X 7958
    MIKE BUESGENS@HOTMAIL.COX
    AUGUST 19, 2007

                21

1:07 CV00 859 RBW
[AND]
RELATED
1: 06 CV01 764 RBW

# EXHIBITS

1. RUSSELL C. HOLLMAN
FORMER SSA TELESERVICE
CUSTOMER SERVICE EMPLOYEE
**2003** WL 22346114

2. **2004** WL 1554771

3. **2005** WL 1198570

4. JENNIFER RANDALL-EEOC
ATTORNEY
1:05 CV00243 SS
DOCUMENT **90** - FILED: 10/20/06
**12** - PAGES

22

5. **JENNIFER RANDALL — EEOC ATTORNEY**
1:05CV00243 SS
DOCUMENT **91** — FILED: 10/20/2006

AND
EEOC OFFICIALS ✓

A. RONNIE S. COOPER — GENERAL COUNSEL

B. GWENDOLYN YOUNG REAMS ✓
ASSOCIATE GENERAL COUNSEL

C. ROBERT A. CANINO — REGIONAL ✓
ATTORNEY

D. ROBERT B. HARWIN — ASSOCIATE ✓
REGIONAL ATTORNEY
RETIRED

E. JUDITH A. TAYLOR — SUPERVISORY ✓
TRIAL ATTORNEY

F. ROBERT LYNN POWELL — EEOC JUDGE ✓

23

6. R. BARRY ROBINSON - AUSA
(AND)
CHARLES R. NETTLES - BANKRUPTCY
ATTORNEY
1:06 CV 00967 LY-RP
DOCUMENT 74 - FILED: 6/29/07
14-PAGES

7. JUDGE EARL LEROY YEAKEL, III
1:06 CV 00967 LY-RP
DOCUMENT 78 FILED: 7/11/2007
5-PAGES

DOCUMENT 79 FILED: 7/11/2007
4-PAGES

8. R. BARRY ROBINSON - AUSA
BILL OF COSTS
$339.00
FOR MOTION TO DISMISS
PRE-PROGRAMMED ON IRS COMPUTER
1:06 CV 00967 LY-RP
4-PAGES

9. KEVIN M. BROWN - ACTING IRS
COMMISSIONER 24

1:07CV00859 RBW
AND
RELATED
1:06CV01964 RBW

EXHIBIT 1

EEOC
AND
SSA

Westlaw.

EEOC DOC 01A01372

Page 1

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

H

E.E.O.C.

*1 RUSSELL C. HOLLAND, COMPLAINANT,

v.

JO ANNE B. BARNHART, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, AGENCY.
Appeal No. 01A01372
Agency No. SSA-568-93
Hearing No. 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X

October 2, 2003

DECISION

Complainant filed a timely appeal from the agency's final order on the captioned
complaint. In his complaint, complainant claims unlawful employment discrimination
in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended,
42 U.S.C. § 2000e et seq. and Section 501 of the Rehabilitation Act of 1973
(Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq.

The record reveals that complainant, a former Teleservice Representative (TSR) at
the agency's Richmond, California facility, filed a formal EEO complaint on May
10, 1993, claiming discrimination on the bases of disability (Obsessive Compulsive
Disorder and Depression) and in reprisal for prior EEO activity as evidenced by
the following incidents:

(1) On March 10, 1993, the agency denied complainant's request to work "off the
phones" performing non-telephone duties for two hours per day as a reasonable
accommodation for his psychiatric disability; and

(2) On March 26, 1993, the agency denied complainant's request to use three
hours of leave without pay (LWOP) per day as a reasonable accommodation for his
psychiatric disability.

BACKGROUND

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 2

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

Complainant indicated that he first started to work for the agency as a TSR in 1981, and over the years earned a reputation for considerable knowledge, accuracy, and expertise. Complainant further averred that he first received treatment for his psychiatric disorders in the early 1970's, but that these disorders increased in severity, particularly during the illness and death of his mother in 1991. Complainant indicated that his symptoms consisted of intrusive ideas, excessive worries, and an uncontrollable need to check and recheck things. At work, complainant stated that because of his psychiatric disorder, he needed a few minutes of "down time" between telephone calls to go over all the data from the call, and double-check to see that he had entered it correctly into the computer. Complainant further stated that he needed some time away from the telephones when feeling overwhelmed by stress, and that his intense depression during this time period resulted in his absenteeism.

In order to address these problems, complainant's first line supervisor (S1) requested and obtained a statement from a clinical psychologist currently treating complainant (CP). This statement, dated September 4, 1991, confirmed complainant's psychiatric condition as Obsessive Compulsive Disorder and Depression. The statement further indicated that complainant was responding well to therapy and medication, and could function full-time in his position if his amount of time on the telephones could be limited, preferably alternated with periods of non-telephone work. Based on this assessment, in October 1991, S1 provided complainant with an informal accommodation whereby he could use LWOP to "go unavailable" between calls as needed, and go off the telephones for periods up to 4 hours, but return if the caller volume demanded it.

*2 Next, the record reflects that the agency instituted a new "800" telephone answering system in February 1992, which dramatically increased the number of calls handled at complainant's facility. Under the new system, the TSR's, as part of a new national policy, were not to "unplug" their telephones between callers. In May 1992, when a new manager (NM) came to complainant's facility, she informed S1 to cease complainant's informal accommodation. NM instructed S1 to obtain information to ascertain what accommodation could be provided to complainant, or whether he was even capable of performing his job. In order to obtain this information, S1 again requested a medical opinion from CP.

In an opinion dated June 2, 1992, CP advised the agency that a decision as to whether or not complainant could perform the functions of his position should not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 3

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

be based on his performance in the prior year given the exacerbation of his symptoms due to a grief reaction and work-related stress occasioned by the new telephone system. The opinion also indicated that if the agency would accommodate complainant by employing him full-time, but decreasing his amount of phone time, his symptoms should eventually abate, and he would return to his previous high level of functioning. The opinion noted that telephone duty was particularly stressful for complainant because his disorder made it difficult for him to enter data and speak on the telephone at the same time.

In a "memorandum of discussion," S1 memorialized a June 10, 1992 discussion between herself and complainant. Therein, S1 noted that she informed complainant that management recognized that he could not be on the telephone full-time, and that a modification in his schedule, to include a change to a part-time schedule or use of LWOP, could be implemented for a three-month period as an accommodation. However, S1 told complainant that his previous informal accommodation, where 50% of his time was spent performing non-telephone duties, could not be continued because this amounted to job restructuring. S1 further indicated that she impressed upon complainant that the essential function of his job was answering telephone calls, so that the only accommodation the agency could offer was to adjust his work schedule to reduce his telephone time. S1 also noted that complainant inquired as to whether he could have one hour of downtime, such as provided to visually impaired TSR's. However, after consultation with NM, S1 declined to provide this to complainant as a reasonable accommodation.

By memorandum dated July 28, 1992, S1 replied to complainant's June 17, 1992 formal request for a reasonable accommodation, wherein he requested that his job be restructured to reduce his telephone work and that he be able to go "unavailable" between calls. In the memorandum, S1 informed complainant that this could not be done because performing other work was not an accommodation which would allow him to perform the essential function of his job, and it would have a detrimental influence on the agency's level of service in terms of the number of calls answered. Additionally, in the memorandum the agency denied complainant's request to go "unavailable" between calls, noting that this practice was contrary to national policy, and that it would result in a delay of service and reduce the number of callers served each day. However, as a reasonable accommodation, the memorandum indicates that the agency would allow him to have a part-time (6 hour per day) work schedule, and to continue its liberal approval of his leave requests and LWOP. In the memorandum, S1 notes that complainant had previously rejected

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 4

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

these offers, but asked that he reconsider these options. The memorandum then notified complainant that the agency could not continue to provide complainant with non-telephone duties as it had for the past year. However, in recognizing that complainant would require a period of adjustment back to full phone duties, the memorandum informed complainant that the agency would provide him with one hour of downtime ("unplugged") per day. The memorandum also notified complainant that these arrangements would be in place for three months when the situation would be re-evaluated, and suggested that he consider other positions with less telephone duties should his psychiatric condition not improve adequately for him to be able to handle telephone calls on a full-time basis. Finally, S1 indicated that although the agency could not provide complainant with the exact accommodations he requested, she hoped that the options offered would allow complainant to resume his full TSR functions in the future.

*3 By memorandum dated November 4, 1992, S1 notified complainant that the agency could no longer provide him with non-telephone duties as a reasonable accommodation; and, because of the nature of his job, could not restructure his position to allow him to perform the essential functions. Then, on January 7, 1993, the agency placed complainant on "leave restriction."

According to a memorandum also dated January 7, 1993, S1 informed complainant that he had used virtually all of his leave, as well as 400 hours of LWOP, noting that his absences were due to his psychiatric disability. S1 further informed complainant that the agency could no longer give him an hour per day of downtime from the telephones, because there was very little non-telephone work to assign to him, also noting the extra large number of calls expected up until April 1993. S1 further indicated that medical evidence indicated that complainant may not be able to function as a full-time TSR, and suggested that complainant consider applying for disability retirement, attaching a copy of his estimated disability retirement benefit. Alternatively, S1 offered complainant the option of working a 4-hour per day part-time schedule, detailing the type of medical information he would need to submit to support such a request. As another alternative, S1 indicated that if complainant could no longer perform as an TSR, the agency would make every effort to place him in a suitable position in terms of his disability and qualifications. However, S1 informed complainant that should he not be able to continue as a TSR, nor qualify for another position, the agency may issue him a proposal to separate due to his inability to perform the duties of his position.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

Complainant filed an EEO complaint concerning the above referenced matters, which was resolved by a January 21, 1993 settlement agreement. Therein, the agency agreed to withdraw the above referenced "leave restriction," and agreed to permit complainant to work an 8-hour day, with 2-hours of LWOP as needed, pending receipt of certain medical documentation by February 26, 1993. The settlement agreement provided that upon receipt of the medical documentation, the agency would re-evaluate the need for the leave restriction.

Then, in a memorandum dated March 10, 1993, S1 notified complainant that the medical documentation [FN1] he submitted had been reviewed, but that his request for a reasonable accommodation, in the form of an 8-hour work day to include non-telephone duties and use of "unavailable mode" at the end of calls, was denied, citing the same customer service concerns as set forth in previous memoranda. However, S1 offered complainant a 6-hour per day part-time schedule, noting that the medical documentation reflected that complainant's condition would improve with less telephone time, but she specifically declined to approve complainant's request for 2-hours off the phones per day. Also, regarding complainant's request to use "unavailable mode" at the end of calls, S1 indicated that she advised complainant many times that he could place a caller on hold while he checked his work, and again suggested that he follow this procedure. Finally, S1 suggested that if complainant could not perform telephone work, he should consider applying for other positions, or taking a downgrade to a clerical position.

*4 Complainant then submitted another updated medical assessment from CP, dated March 15, 1993, indicating that complainant's symptoms greatly increased as a result of the agency's posture concerning complainant's requests for reasonable accommodations. More specifically, CP indicated that complainant's absenteeism and need for intensive psychiatric treatment were a consequence of occupational stress, and that complainant also developed a new disorder, Adjustment Disorder with mixed emotional features, because of the insensitive way management had addressed his requests for reasonable accommodations.

On March 23, 1993, complainant submitted yet another request for an accommodation to NM, asking for up to 3-hours of LWOP per day as needed. Complainant indicated that because the TSR staff was being moved on March 29, 1993, to a space with increased noise level and lack of space, this would concomitantly increase his stress level. In response, by memorandum dated March 26, 1993, NM indicated that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

complainant failed to present anything "new" in his March 23, 1993 request to alter the agency's previous denial for this type of an accommodation. NM advised complainant that if he could not work an 8-hour day, he would need to assume a part-time schedule, and indicated that she would no longer approve LWOP each day, although complainant could request annual or sick leave as appropriate. NM encouraged complainant to see her if he had questions.

Complainant then submitted another statement from CP, dated April 12, 1993, advising the agency that a permanent part-time schedule would not be an effective reasonable accommodation. CP advocated for complainant to use LWOP as needed, which he felt would reduce his stress and result in a better prognosis. CP further observed that complainant was highly motivated, as evidenced by his greatly improved attendance during the current year.

According to the record, complainant applied for disability retirement in May 1993, which was granted, with an effective retirement date of August 20, 1993.

## PROCEDURAL HISTORY

Complainant filed the captioned complaint on May 10, 1993. On December 30, 1993, the agency issued a final decision dismissing the complaint on the grounds of mootness because of complainant's retirement. However, on appeal, the Commission reversed the dismissal and ordered the agency to undertake an investigation of the complaint. The Commission found that complainant was aggrieved in that he claimed that he filed for disability retirement only because the agency failed to provide a reasonable accommodation. The Commission also found that complainant raised a claim of constructive discharge, which the agency failed to address, finding complainant's application for retirement was filed around the time he filed the captioned complaints, and that the record showed that complainant's supervisor advised him to consider disability retirement as early as January 1993. See Holland v. Social Security Administration, EEOC Appeal No. 01941772 (August 19, 1994).

*5 Complainant filed a "mixed case" appeal with the Merit System Protection Board (MSPB) concerning his constructive discharge claim; and, the MSPB issued an initial decision on January 16, 1996, declining jurisdiction upon its finding that complainant voluntarily retired. On February 2, 1996, complainant requested to reinstate his now "non-mixed" discrimination claim in the EEO process. The agency investigated the complaint, and at the conclusion of the investigation, the agency

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

provided complainant with a copy of the investigative report. Complainant then requested a hearing before an EEOC Administrative Judge (AJ). Following a three-day-hearing, the case was transferred to another AJ, who rendered a decision finding that the agency violated the Rehabilitation Act, and then conducted another hearing on the issue of damages. [FN2] Specifically, the AJ determined that complainant failed to prove that the agency retaliated against him due to his prior EEO activity regarding either claim 1 or 2, or that it discriminated against him on the basis of disability regarding claim 1. [FN3] However, the AJ determined that complainant prevailed in his claim of disability discrimination regarding claim 2, and that he was entitled to an award of "make-whole" remedies, as well as compensatory damages.

Specifically, in addressing claim 2, the AJ found that complainant established a prima facie case of disability discrimination, and that the preponderance of the evidence showed that the agency acted with discriminatory animus by failing to provide complainant with a reasonable accommodation. The AJ further determined that the agency's failure to provide complainant with a reasonable accommodation resulted in complainant's constructive discharge from the agency on August 20, 1993, the effective date of his disability retirement from the agency. The AJ also found that as of July 8, 1993, the agency engaged in bad faith by failing to disclose to complainant that his TSR position was slated for an up-grade and re-structuring of duties, eliminating a good proportion of the telephone duty, finding that this re-structuring would have allowed complainant to remain in his position at the agency. Then, noting that a hearing had been conducted on the issue of damages, the AJ awarded complainant $100,000.00 in non-pecuniary compensatory damages, $23,320.00 for pecuniary compensatory damages (future medical expenses), reinstatement to his TSR position, with backpay (plus interest), and attorney's fees.

In its final decision, the agency rejected the AJ's finding of discrimination regarding claim 2, finding that the AJ erred in several respects. [FN4]

First, the agency determined that complainant was not an "individual with a disability" under the Rehabilitation Act, finding that the use of psycho tropic medications and psychotherapy improved complainant's symptoms. The agency additionally determined that the AJ erred by failing to assess the effects of these "mitigating measures."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 8

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

\*6 Second, the agency determined that the AJ erred in finding that handling telephone calls throughout the work day was not an essential function of the TSR position, and that complainant could therefore perform the essential functions of the TSR position. Specifically, the agency argues that in reaching both conclusions, the AJ improperly substituted her judgment for that of the agency. Furthermore, the agency determined that the AJ improperly credited the testimony of complainant's witnesses over that of the agency witnesses, and improperly made credibility findings regarding hearing testimony she did not personally hear.

Third, the agency determined that the AJ erred in finding that the agency failed to provide complainant with a reasonable accommodation, arguing that it was not obligated to do so because complainant was not entitled to the protections of the Rehabilitation Act. Alternatively, the agency determined that its management both offered and provided certain accommodations to complainant, albeit not the precise accommodations requested by complainant, averring that the accommodation requested by complainant constituted an undue hardship for the agency.

Finally, the agency determined that the AJ erred in finding that complainant's disability retirement was tantamount to a constructive discharge, averring that the AJ failed to properly consider an Initial Decision rendered by the Merit System Protection Board (MSPB), finding that complainant's retirement was voluntary.

On appeal, both parties submit detailed briefs setting forth arguments and evidence in support of their positions, which will be addressed herein.

## ANALYSIS AND FINDINGS

I. Issue of the Agency's Liability for Violations of the Rehabilitation Act

A. Did the AJ err in finding that the agency violated the Rehabilitation Act when it denied complainant's March 26, 1993 request for a reasonable accommodation?

To bring a claim of disability discrimination, complainant must first establish that he is an individual with a disability within the meaning of the Rehabilitation Act. Under 29 C.F.R. § 1630.2(g), an individual with a disability is one who has, has a record of, or is regarded as having, a physical or mental impairment that substantially limits one or more of his major life activities.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

Page 9

(Cite as: 2003 WL 22346114 (E.E.O.C.))

Major life activities include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. See 29 C.F.R. § 1630.2(i). Major life activities also include concentrating and thinking. See Fidurski v. Department of Health and Humand Services, EEOC Request No. 0560027 (February 19, 1997). The term "substantially limits" means: unable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. See 29 C.F.R. § 1630.2(j)(1).

*7 Factors to be considered in determining whether an individual is substantially limited in a major life activity include: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. See 29 C.F.R. §1630.2(j)(2). The Commission also must consider any mitigating measures "both positive and negative ... when judging whether [complainant] is "substantially limited." See Sutton v. United Airlines, 527 U.S. 471, 482 (1999); Albertsons, Inc., v. Kirkinburg, 527 U.S. 555, 565-566 (1999); Murphy v. United Parcel Service, 527 U.S. 516, 521-523 (1999). Moreover, an individualized assessment "is particularly necessary when the impairment is one whose symptoms vary widely from person to person." Toyota Motor Mfg., Ky, Inc., v. Williams, 122 S. Ct. 681, 692 (2002).

On appeal, with reference to the holdings in Sutton and Murphy, and again noting the AJ's failure to consider the effect of mitigating measures, the agency argues that complainant failed to produce sufficient evidence to show that his mental impairment substantially limited any major life activity, to include those specified by the AJ, i.e., the ability to "think, concentrate, and interact with others." To the contrary, the agency noted record testimony regarding complainant's ability to converse with his co-workers, his excellent knowledge and memory, and superior ability to handle callers' inquiries. With reference to 29 C.F.R. §1630.2(j)(3)(i), the agency also argues that complainant failed to produce sufficient evidence that he was substantially limited in the ability to work. Specifically, the agency argues that complainant failed to prove that he was limited in performing "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

ability," as opposed to an inability to perform a single, particular job. The agency notes that five months subsequent to his retirement, complainant began work for a private company as a "computer-assisted telephone interviewer," and further averred that complainant failed to provide evidence of "jobs within his field of work that he is disqualified from."

1. Is complainant an individual with a disability within the meaning of the Rehabilitation Act?

  In the present case, we find that complainant presents conclusive evidence that he suffers from Obsessive Compulsive Disorder and Dysthymia since the 1970's, and Adjustment Disorder since 1993. Moreover, based on CP's psychiatric assessments, as well as a February 18, 1993 report of psychiatric examination, we find that complainant's symptoms increased greatly in 1991. Specifically, the record reflects that after approximately eight months of intensive psychotherapy, CP referred complainant to a psychiatrist on February 5, 1991, to assess whether complainant would benefit from medication. The record shows that this psychiatrist thereafter continued to treat complainant, in conjunction with CP's on-going therapy. Additionally, we note that complainant's treating psychiatrist conducted the January 1993 psychiatric examination which is the subject of the February 18, 1993 report, and that this report also includes a description of complainant's psychiatric history as well as a current assessment of his social and industrial functioning. Accordingly, we find that the February 18, 1993 report is a highly reliable assessment of complainant's psychiatric condition.

*8 The report reflects that at the time of the initial referral, complainant manifested severe compulsions to include repetitive checking to see if the stove in his apartment was turned off; that the lights were turned off; that the dishes were lined up in the kitchen; that the refrigerator door was closed and that his apartment door was locked before leaving his apartment. The report further reflects that complainant was obsessively concerned about cleanliness, requiring him to minutely examine and frequently wipe off his silverware. The report indicates that these behaviors consumed a significant amount of time, and that complainant experienced considerable anxiety if he attempted to curtail his "checking" behaviors. Industrially, the report reflects that complainant frequently checked the accuracy of the information he provided to callers and entered into the computer, to include a ritual and compulsion about turning on and off the computer. In addressing complainant's Dysthymia, the report indicated that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

complainant reported sadness, decreased self-esteem, sleep disturbance, decreased energy and motivation, weight gain and feelings of hopelessness.

The report reflects that while complainant showed a good initial therapeutic response to fluoxetine, his symptoms became worse during the course of his mother's illness, and then her death in January 1992. The report notes that during this time while complainant's symptoms at home were under "fair to good control," he had excessive absenteeism and significantly increased symptoms at work. The report indicates that a change in medication in the autumn of 1992, had a "positive effect" on his compulsive symptoms, and psychotherapy assisted him in his grief adjustment.

However, the report reflects that upon receiving the agency's November 1992 and January 1993 memoranda, denying his requests for reasonable accommodations, coupled with management's on-going negative attitude regarding complainant's plight, complainant's symptoms greatly increased, despite continued medication and intensive psychotherapy. At the time of examination, in January 1993, complainant had poor mood with anxiety and depression, along with transient suicidal ideation. Diagnostically, the report reflects "moderate" Obsessive Compulsive Disorder and Dysthymia, as well as the development of a new additional psychiatric disorder, Adjustment Disorder with mixed emotional features, assessed as "severe." Due to the effect of work environment stressors, prognosis could not be assessed.

The report further indicates that complainant's psychiatric condition adversely affected his health and overall activities, to include restricted activities and risk of self-assaultive behaviors. The report also notes that complainant's general level of psychiatric functioning was substantially higher from September 1991 to October 1992, when workplace accommodations were in place. As a conclusion, the report indicated that complainant's condition was not static, and that all symptoms would remain at an increased level unless effective workplace accommodations were provided, noting that complainant's therapy had not progressed because of his workplace situation.

*9 Additionally, concerning complainant's day-to-day performance in the workplace, we find that complainant's supervisors confirm the description of the nature and severity of complainant's psychiatric disorder which is reflected in these clinical assessments. A few pertinent examples follow.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

In her affidavit, NM testified as follows:

When I first came to [complainant's facility], complainant's mother had died and any call he received that reminded him of his mother would put him in tears for the rest of the day. Or, complainant would get a call that because of his compulsive disorder would have him check the input screen 18 times before he would input the case. He had a hard time with the callers calling in with their problems because it made him think about his own problems or his perceived problems. These are some of the reasons his production was low.....Complainant just could not handle the pressure and the stresses of the job.

We perhaps made a lot mistakes in complainant's case, but we tried not to come down on him hard because everything we did would upset him. We did "soft-shoe" around him because of his mental disability and did not want to upset him. Every time we had a conversation with him he was unable to work for the rest of the day or would not come to work the following day. That's just how the mental disability worked and he had to mull it over a thousand times and had to know all the angles. Sometimes I did call his doctor to alert him of the things I was going to say so that if complainant called him the doctor would be aware of what had transpired. We tried to cover all bases because we didn't want him emotionally upset and tried to be very careful in the way we handled him. On a couple of occasions complainant had threatened suicide and I didn't want to take any action that would serve as a trigger to his emotional state.

S1 provided the following affidavit testimony:

Complainant would talk to me about his obsessive compulsive behavior and not being able to control re-checking things. When this happened he was on the phones I would suggest to him to check once, check twice and when he felt he was going to check it a third time don't just hit the input key. We had discussions like this all the time. If he really got upset about something we'd go and talk in private. I always made a point to handle him specially and talk in private because he was always conscious that other people may be listening. I dealt with it the best that I could and tried to get him to understand that he didn't have to have everything perfect. He tried, I really have to give him credit......I think after he started getting notice after notice from management the pressure began to build and was slowing him down more than the work itself because in the back of his mind he always wondered what was coming next.

Anytime I wrote anything or gave anything to him, I always sat down with him and talked about it. He was upset, I remember that. In fact, when I first wrote him up in regard to his absenteeism the meetings were very emotional on his part.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372                                              Page 13

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

And as time went on every time I had to do something a little bit stiffer he got more emotional. I had learned that it could trigger his emotions, so I learned never to hand him anything without telling him about it first. If he knew in advance this was coming, he would ask me questions because we always had on-going discussion and I would tell him that nothing was finalized at that point. Because of the talking relationship we had he had enough trust in me and I felt that he should have that trust to be able to communicate with me at any time he had a need. That helped me soften things with him because sometimes things are written rather harshly. I know as a supervisor we have to do these things but also know we do not have to be so abrupt.

*10 There were times that complainant would call in and I could tell that he was very, very down. One time he came close to threatening suicide to me and I became very alarmed. That is why it became more and more difficult for me because I had to push him from a supervisor and management point of view. I knew his condition and questioned why we were treating complainant different from everybody else with a handicap.

Furthermore, in his own hearing testimony, complainant provides the following description of the his psychiatric disorder as it afflicts him both inside and outside of the workplace:

Well, you know, a compulsive behavior would be the repetitive--the checking and rechecking of work, the repetitiveness. Obsessions. Doubting myself, self-doubt. Contamination, but not too much on that. I'm very aware of it.

There are calls that I can take and complete the actions while I'm on the phone and go to the next call. It's when a situation becomes complicated for me, meaning it--the matter may be complex, or there may be forms I may have to complete. All I can tell you is the way I start reacting.....For example, if I'm talking to someone and, you know, it's taking a bit of time, and I hear the person kind of sighing, like I wish-in my mind, I interpret it I wish he could hurry up. I would get the basic information I needed, I would release that call, let that person go, because it would start upsetting me. In other words, I was trying to release pressure from me.

[After the sick leave restriction was issued] I was very, very upset. I couldn't understand why, I couldn't understand why I would receive a memorandum such as that, when I had actually shown improvement. One thing I was doing is, I was seeing [CP] Monday mornings at 7:30. And that was for me to be able to come to work. And it was working. I had a problem with Mondays, so I started to see him Monday mornings. So, it was real devastating. I reacted very strongly to this.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 14

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

Emotionally, physically.

After review of the record, we find that complainant's reports of excessive worrying, intrusive thoughts, uncontrollable and repetitive checking behavior affecting numerous daily activities, poor sleep and depressed mood (to include suicidal ideation), as confirmed by both his treating psychiatrist and psychologist, as well as his supervisors, substantially affected his ability to concentrate. In reaching this conclusion, we note in particular management testimony reflecting that complainant needed to check the screen "18 times" on a call, his compulsive need to repeatedly hit the input button (requiring the intervention of his supervisor at times to interrupt this behavior), and inability to move on to the next call without first checking and re-checking his work for fear it was not perfect. Then according to complainant, if the call were "complex," or he perceived that the caller was not satisfied with the speed of his service, he experienced even more stress, and that this slowed him down even further. To compound the impact of these compulsive behaviors, the record also shows that complainant additionally experienced mood difficulties when handling either calls that would evoke his own sad memories, or responding to management criticisms of his work, which also had the effect of disrupting his concentration such that he could not focus on his assignments. In this regard, we note that the record reflects management concerns not only about "upsetting" complainant when discussing performance problems, with the need to consult with his doctors before doing so, but also concern that complainant might harm himself.

*11 Therefore, based on our review of the record, to include the clinical evidence and pertinent affidavit and hearing testimony, we concur with the AJ's ultimate finding that complainant is an individual with a disability under the applicable legal standards referenced above. Specifically, we find that the record demonstrates that complainant was afflicted with two well recognized psychiatric disorders of a chronic nature for many years, and that as of the time he requested the reasonable accommodation in claim 2, his symptoms had increased and his prognosis was uncertain. We further determine that the record shows that even when dealing with a routine call, complainant had difficulty, to varying degrees, shifting his focus to go on to another call, because of his need to re-check his work. If the call was "complex" or emotionally troublesome, the record reflects that complainant would have to completely disengage to cope with the stress, sometimes for an entire day, demonstrating the total inability to maintain his concentration to successfully complete the current call, or to go on the next

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 15

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

call. Additionally, we note that the record shows that complainant frequently required the intervention of his supervisor for the purpose of assurance and encouragement and/or to help him develop techniques to abort his repetitive checking so that he could shift his concentration to the next caller. However, we find that even this intervention appears to have been successful in only the case of the most simple routine calls. Moreover, we note that the record reflects that these compulsive checking behaviors afflicted complainant not only in the workplace, but at home as well, as described in the clinical reports of record.

Therefore, we find that complainant is substantially impaired in the major life activity of concentrating in light of the evidence that complainant has long suffered with two chronic psychiatric disorders, manifesting an array of debilitating symptoms which substantially interfered with his ability to shift his concentration from one task or activity to the next, or to maintain the needed concentration to go on to complete a single task or activity. In this regard, we further note that at the time complainant requested the reasonable accommodation at issue, his psychiatric symptoms were severe despite his use of the mitigating measures of daily psycho tropic medication and intensive psychotherapy, to include sessions every Monday morning, and up to three times per week. For these reasons, we conclude that complainant is "disabled" in the major life activity of concentrating within the meaning of the Rehabilitation Act.

Accordingly, although the AJ's analysis failed to account for the effects of complainant's mitigating measures, the Commission finds that the AJ did not err in making the ultimate finding that complainant was an individual with a disability.

2. Is complainant a qualified individual with a disability under the Rehabilitation Act?

*12 Next, in order to be afforded the protections of the Rehabilitation Act, complainant also must show that he is a "qualified" individual with a disability within the meaning of 29 C.F.R. § 1630.2(m). The term "qualified individual with a disability," with respect to employment, is defined as a disabled person who, with or without a reasonable accommodation, can perform the essential functions of the position held or desired. See 29 C.F.R. § 1630.2(m). The term "position" is not limited to the position held by the employee, but also includes positions that the employee could have held as a result of reassignment. Therefore, in determining whether an employee is "qualified," an agency must look beyond the position which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))


the employee presently encumbers. See Interpretive Guidance on Title I of the Americans With Disabilities Act, Appendix. to 29 C.F.R. Part 1630.2(o).

In its final action, and on appeal, the agency again claims AJ error, and argues that the essential function of the TSR position is "constant phone availability," reflected in both its policy and practice, especially in the advent of the huge volume created by the new 800 system. The agency avers that even assuming that complainant is "disabled," because his psychiatric condition precluded him from continuously performing telephone duty on a full-time basis, he is not a "qualified" individual with a disability.

We have carefully considered the agency's arguments. Our review of pertinent agency position descriptions and performance appraisal standards for the TSR position confirms that handling incoming telephone calls is an essential function of the TSR position; however, we find that neither these documents, nor any other agency records, demonstrate that handling a certain number of calls within a specified time, or constant telephone availability, is reflected as an essential function of the TSR position. In fact, to the contrary, review of the agency's "Plug-In Procedures for Teleservice Centers" states only that TSR's remain "plugged-in" "to the extent possible" and remain on the line with a particular caller "to the extent possible," rather than mandating "continuous" uninterrupted availability for the entire shift.

Furthermore, notwithstanding the agency's arguments to the contrary, we find that even in practice, the agency did not appear to consider constant phone availability to be an essential function of the TSR position. For example, the record shows that as an accommodation, the agency allowed visually impaired TSR's to use typewriters to record data while on-line, but that they are then provided off-phone time at the end of their shift to input this data into the computer. As another example, we note that in its March 10, 1993 memorandum to complainant, as an alternative to providing him with an accommodation, the agency encouraged complainant to place callers on "hold" while inputting data and checking his work, which suggests that this procedure would be acceptable under the new "remain plugged-in" policy. However, we concur with the AJ this suggested procedure would clearly make complainant just as unavailable during this "hold" time as if he went off-line to input/check this same data, which again belies the agency's argument that constant phone availability is an essential function of the TSR position.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

*13 Therefore, based on our review, we find that the agency's policy and practice reflect that while answering incoming calls is an essential function of the TSR position, the manner in which this function is accomplished by a TSR, as well as constant phone availability during the work day, is not itself an essential function of the TSR position. Accordingly, we concur with the AJ's finding that constant "unrelenting" telephone availability was not an essential function of the TSR position, and we find no error in this determination.

In further assessing whether complainant is "qualified" for his TSR position, we also concur with the AJ that the record demonstrates that complainant was qualified to perform as a TSR, given that he had successfully done so for many years, and with "informal" reasonable accommodations, receiving "excellent" ratings on the last three performance appraisals prior to his retirement. We note that on appeal the agency offers various explanations challenging these "excellent" ratings, to include the possible bias of S1. Nonetheless, we find that even if one of these ratings had simply been "rolled over" from a previous rating period, two supervisors concurred in the 1992 rating. Moreover, we find that the record testimony of S1, as well as that of a long-time co-worker of complainant, are each detailed and consistent in attesting to complainant's ability to perform as a TSR, notwithstanding the agency's suggestion of bias. [FN5] In this regard, we note that the last rating issued to complainant, a progress review dated February 3, 1993, indicated that complainant was "fully" meeting the requirements of his TSR position. We also note that S1 provided the following assessment of his work in her affidavit:

I want to describe the quality of complainant's work. As far as his accuracy level and following instructions he was meticulous. ... He had the best accuracy rate in the entire unit. Although management said we were not using numerics anymore the only thing they talked about was production.. .... Whenever I did my Service Observations on complainant I never had any problems with him. I had more problems with other employees. .....the only problem was that he was slow.

Accordingly, for the reasons set forth above, we find that complainant is a qualified individual with a disability, and that the AJ did not err in making this determination.

3. Did the agency fulfill its obligations under the Rehabilitation Act to provide complainant with a reasonable accommodation for his psychiatric disability?

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

Under the Commission's regulations, an agency is required to reasonably accommodate the known limitations of a qualified individual with a disability, unless the agency can show that accommodation would cause an undue hardship. See 29 C.F.R. § 1630.2(p); EEOC's Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (revised October 17, 2002) (Guidance). The Guidance allows an agency to choose among reasonable accommodations as long as the chosen accommodation is effective, and states that, while the preference of the individual with a disability should be given primary consideration... [the agency] has the ultimate discretion to choose between effective accommodation. See Guidance, Question 9, pp. 8-9; also see 29 C.F.R. Part 1630 app. 1630.9 (1997). Moreover, once an employer becomes aware of the need for an accommodation of an employee's disability, the employer has a mandatory obligation under the governing EEOC Regulations to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. See 29 C.F.R. § 1630.2(o)(3).

*14 Reasonable accommodation may include job restructuring or modified work schedules. See 29 C.F.R. § 1630.2(o). Factors to consider in determining whether any of these accommodations would impose an undue hardship include the size and budget of the program, the type of operation and the nature and cost of the accommodation. See 29 C.F.R. § 1630.2(p).

In the instant case, we find that the record demonstrates that once the agency learned of complainant's psychiatric disability, it fulfilled its duty to engage in an interactive process to address his need for a reasonable accommodation, as evidenced by its record of discussions with complainant, review of medical documentation, and written responses to complainant's requests for accommodations. However, we concur with the AJ that the agency's offer of a fixed part-time 6-hour per week schedule, in lieu of the "up to" 3 hours per day of LWOP requested by complainant, did not effectively accommodate complainant's inability to take periodic as-needed breaks from telephone work. We find that the medical evidence of record consistently states not only that complainant would benefit therapeutically from overall less telephone time, but that because of the nature and severity of his symptoms, e.g., his compulsive checking behavior and associated anxiety, he needed to take breaks away from the phones, either doing other work or simply not answering calls. Because a 6- hour part-time schedule would reduce his telephone time, but not allow for these needed intermittent breaks, we find that this is not an effective accommodation that would allow

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

complainant to perform the essential functions of his TSR position, i.e., handling telephone calls.

Furthermore, we concur with the AJ's finding that providing complainant with the accommodation he requested in claim 2 would not result in an undue hardship to the agency, which the agency identifies as the number of unanswered calls. Specifically, we concur with the AJ that the evidence showing that the agency provided LWOP and off-phone time to other disabled employees as reasonable accommodation belies its argument that providing essentially the same accommodation to complainant, even though his off-time could not be as efficiently scheduled in terms of routing 800 calls from the agency's Baltimore facility to complainant's facility, constitutes an undue hardship. Additionally, we find that the evidence of record fails to show that the number of unanswered calls resulting from a 6-hour part-time schedule, the accommodation offered to complainant, would be significantly less than that resulting from complainant's daily use of LWOP. Accordingly, we concur with the AJ that the record fails to demonstrate that the reasonable accommodation requested by complainant would have resulted in an undue hardship for the agency.

In conclusion, for the reasons set forth above, we find that the agency failed to comply with its obligations under the Rehabilitation Act when it denied the reasonable accommodation complainant requested in claim 2, and we find that the AJ did not err in making this determination.

B. Did the AJ err in finding that the agency violated the Rehabilitation Act in her determination that complainant's disability retirement was tantamount to a constructive discharge?

*15 It is undisputed in the record that the MSPB dismissed complainant's appeal alleging that his disability retirement was tantamount to a constructive discharge, finding that he voluntarily left the agency. Notwithstanding the agency's arguments to the contrary, we find that the "voluntary" determination by the MSPB in dismissing complainant's appeal does not preclude the EEOC from adjudicating the merits of a constructive discharge claim, nor is the Commission required to adopt this finding. Instead, under such circumstances, the Commission has held that MSPB findings are not res judicata with regard to a complainant's claim of constructive discharge. See Borghese v. Department of Defense, EEOC Request No. 05920734 (November 27, 1992), (noting also that the MSPB's standard

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

for determining whether a complainant's resignation or retirement is voluntary is different from the Commission's standard regarding constructive discharge).

Accordingly, as an initial matter, we find that the AJ did not err in adjudicating complainant's claim of constructive discharge.

The central question in a constructive discharge case is whether the employer, through its unlawful discriminatory behavior, made the employee's working conditions so difficult that any reasonable person in the employee's position would feel compelled to resign. See Carmon-Coleman v. Department of Defense, EEOC Appeal No. 07A00003 (April 17, 2002). The Commission has established three elements which a complainant must prove to substantiate a claim of constructive discharge:

    (1) a reasonable person in the complainant's position would have found the working conditions intolerable;

    (2) conduct that constituted discrimination against the complainant created the intolerable working conditions; and

    (3) the complainant's involuntary resignation resulted from the intolerable working conditions.

See Walch v. Department of Justice, EEOC Request No. 05940688 (April 13, 1995).

In this case, we find that the record confirms that at least as of January 1993, and specifically in its January 7, 1993 memorandum, the agency informed complainant that it would not provide him with any accommodation that would allow him to have periodic breaks from telephone duty. Moreover, this memorandum communicated to complainant that because management recognized that his psychiatric condition required such breaks, he could be terminated unless he found another position or took a downgrade to a clerical position. [FN6] We further find that it is within the context of this unyielding posture, that the agency "recommends" that complainant consider disability retirement, even going so far as to provide complainant with a copy of his estimated disability retirement benefit.

Continuing on this course, the record further reflects the agency's repeated denials in response to complainants numerous attempts to craft an accommodation that would meet his needs and be acceptable to the agency, insisting that complainant must remain "plugged-in" throughout his shift if he wanted to retain his position as a TSR. However, in stark contrast to the agency's steadfast

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 21

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

refusal to accommodate complainant with periodic breaks, record testimony demonstrates that management displayed a most obliging attitude in encouraging complainant to apply for disability retirement. In fact, we find that it is likely this patronizing posture explains complainant's rather inconsistent statement in his November 27, 1995 letter to the MSPB, that while the agency did not "coerce" him into retiring, he nonetheless felt "pressured" to do so.

*16 Furthermore, we find that the likely source of this "pressure" experienced by complainant was the choice presented by the agency: termination or disability retirement. In finding that complainant's choice was limited to these two options, we note that although the agency made occasional references to the possibility of a reassignment, it does not appear that the agency meaningfully endeavored to even ascertain whether a suitable position for reassignment existed during the time at issue. [FN7] We find that the agency had an obligation under the Rehabilitation Act to explore the possibility of a reassignment as a reasonable accommodation given its posture that no accommodation existed which would allow complainant to perform his TSR duties. See Hampton v. U.S. Postal Service, EEOC Appeal No. 01986308 (August 1, 2002); 29 C.F.R. § 1614.203(g). [FN8]

Moreover, we find that the agency admits that it did not inform complainant at any time prior to his August 1993 disability retirement, that his TSR position was slated for an up-grade and restructuring to include non-telephone duties effective the very same month as his retirement. In order words, the agency did not present the restructured TSR position as a third option to complainant as an alternative to either termination or disability retirement. Furthermore, we concur with the AJ that the agency's failure to disclose this crucial information to complainant must be viewed as bad faith. Specifically, we note that the agency's rationale for failing to disclose this information is that complainant seemed happy and content with his decision to retire, and telling him about the restructuring would only serve to aggravate him. Additionally, the agency also maintains that it chose not to tell complainant about the restructuring because it did not know enough about new duties in the restructured position to accurately access if it would work as an effective reasonable accommodation. We note NM's hearing testimony that she anticipated that complainant would ask a lot of questions about the restructured position if she told him about it, and she might not be able to answer them.

After review, we find that the agency's rationale for not informing complainant about the restructured TSR position tend more to show that the agency simply did

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

not want to bother undertaking an assessment of the restructured position as a possible reasonable accommodation, and also did not care to risk having complainant change his mind about retirement. In support of this finding, we note the statement made by NM, which she confirmed in her testimony at the damages hearing, that she hoped that complainant would take disability retirement so that the agency would not have to terminate him. We also find that while complainant may have finally resigned himself to the fact that he had to retire, we find that the acts of filing an appeal with the MSPB and an EEO complaint regarding this retirement certainly belies any agency claim that complainant was happy with his decision to retire.

*17 On appeal, we note that the agency also argues that its failure to disclose or discuss the option of the restructured TSR position with complainant should not be viewed as bad faith because record evidence reflects that complainant's union representative was aware of the upcoming restructuring, and similarly did not disclose it to complainant. However, there is no evidence of record to indicate how the union representative learned of the restructuring, or to suggest that the responsible management officials ever held discussions with this union representative for the purpose of exploring whether the restructured TSR position might be an option for complainant. We find that whether or not this union representative made the disclosure to complainant has no bearing on the agency's failure to do so. Therefore, for the above stated reasons, we concur with the AJ's determination that the agency engaged in bad faith by failing to present the restructured TSR position as an option to complainant prior to the effective date of his disability retirement.

For the reasons set forth above, we find that complainant chose disability retirement believing that he would otherwise be terminated. As noted by the Commission in the previous decision, complainant filed the instant complaint at about the same time he filed for disability retirement, claiming that he only applied for disability retirement because the agency refused to provide him with a reasonable accommodation which would allow him to remain employed. We find that a reasonable person, presented with such a choice, would find termination "intolerable," leaving no other recourse but to apply for disability retirement.

Accordingly, we find that the agency failed to comply with its obligations under the Rehabilitation Act when it declined to provide complainant with an effective reasonable accommodation, and that his disability retirement was a consequence of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

this discriminatory action, such that we conclude that the AJ did not err in finding that complainant's disability retirement was tantamount to a constructive discharge.

Conclusion on the Issue of Agency's Liability for Violations of the Rehabilitation Act

In conclusion, we find that the AJ's decision properly summarized the relevant facts and referenced the appropriate regulations, policies, and laws. We also conclude, that as a matter of law, the AJ correctly concluded that complainant demonstrated, by a preponderance of the evidence, that the agency discriminated against him on the basis of disability when it failed to provide him with an effective reasonable accommodation for his mental disability, resulting in his constructive discharge on August 20, 1993.

II Issue of the AJ's Assessment of the Amount of Damages and Award of Remedies

A. Did the AJ err in finding that the agency was liable for compensatory damages?

Pursuant to Section 102(a) of the Civil Rights Act of 1991, a complainant who establishes his or her claim of unlawful discrimination may receive, in addition to equitable remedies, compensatory damages for past and future pecuniary losses (i.e., out of pocket expenses) and non-pecuniary losses (e.g., pain and suffering, mental anguish). 42 U.S. C. §1981a(b)(3). However, complainant bears the burden in proving that the harm suffered was caused by the agency's discriminatory actions, as well as the burden of demonstrating the extent, nature, and severity of the harm, to include the duration or expected duration of the harm. See Johnson v. Department of Interior, EEOC Appeal No. 01961812 (June 18, 1998); also see Enforcement Guidance: Compensatory and Punitive Damages Available under Section 102 of the Civil rights Act of 1991, No. N 915-002 (July 14, 1992) (Guidance).

*18 On appeal, while the agency does not specifically address the AJ's award of remedies, it clearly avers that it bears no liability for any of complainant's claimed violations of the Rehabilitation Act, such that it may be inferred that it disputes that complainant is entitled to any remedy whatsoever. However, as reflected above, we find that the agency discriminated against complainant on the basis of disability when it failed to provide him with a reasonable accommodation and that this act of discrimination resulted in his constructive discharge.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 24

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

In her decision, the AJ determined that the agency's liability for compensatory damages was limited to only that harm which occurred subsequent to July 8, 1993, based on her post-hearing finding that the agency engaged in an interactive process in exploring reasonable accommodations for complainant up until July 8, 1993, but thereafter failed to do so, and acted in bad faith, when it did not inform complainant about the restructuring of his TSR position. We find that this determination is supported by the record.

Accordingly, we concur with the AJ that the agency is liable to complainant for compensatory damages for the harm incurred on and after July 8, 1993, which may be attributed to its discriminatory actions.

B. Did the AJ err in her $100,000.00 award of non-pecuniary damages and $26,320.00 in pecuniary damages?

In reviewing these determinations, we again note that the agency submits neither argument nor evidence to challenge the AJ's findings or conclusions of law on the issue of damages. We further find that the agency had adequate "notice" of the remedies to be awarded should the Commission's decision on appeal uphold the AJ's discrimination determination, and had an opportunity to reject or challenge in any part the award of damages in its final order, as well as on appeal. Therefore, we assume that the agency found the AJ's award to be appropriate in the event that liability had been established. Nonetheless, we undertake the following review of this matter.

1. Non-Pecuniary Compensatory Damages

In assessing the amount of non-pecuniary compensatory damages, the AJ found that the medical evidence, consisting of August 1998 statements from both CP and complainant's treating psychiatrist, confirmed that complainant experienced a "severe emotional injury" as a consequence of his constructive discharge, and continued to experience feelings of worthlessness and low self-esteem in the 5 years that followed. Based on the severity of this harm, (exacerbation of his obsessive compulsive disorder symptoms, feelings of rejection, shame, anger, worthlessness, depression, and social isolation), and its duration (on-going for a period of at least 5 years), the AJ found that an amount of $100,000.00 was consistent with the amount awarded in similar cases. In reaching this conclusion, the AJ cited several cases with compensatory damage awards of between $75,000.00

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

and $100,000.00, wherein the complainant had suffered emotional harm commensurate to that suffered by complainant in the present case.

*19 Based on our review of the entire record, and in particular our review of the August 1998 medical opinions submitted by complainant, as well as the statements in his August 28, 1998 petition for damages, we find that the AJ properly determined that complainant is entitled to $100,000.00 in non-pecuniary damages for emotional pain and suffering as a consequence of his discriminatory constructive discharge. We note that the AJ did not specifically indicate that because complainant had a pre-existing psychiatric condition, the extent of the agency's liability was limited to the additional harm caused by its discriminatory conduct. See Guidance at 11-12. Nonetheless, based on our review, we find that the AJ's assessment of non-pecuniary damages was based on an assessment of this additional harm, as reflected in the medical statements submitted by complainant, and that the nature and severity of the additional harm incurred due to the increase in symptoms, in the context of comparable cases, warranted an award of $100,000.00.

Our determination considers the emotional symptoms described by complainant, and both of his treating doctors, and we find that the award here is not motivated by passion or prejudice, is not monstrously excessive, and is not inconsistent with amounts awarded in similar cases. See Cygnar v. City of Chicago, 865 F.2d 827, 848 (7th cir. 1989); Guidance at 13-14. Therefore, we concur in the AJ's determination that complainant is entitled to an award of $100,000.00 in non-pecuniary compensatory damages, and we find no error in this determination.

2. Pecuniary Compensatory Damages

The AJ determined that complainant requested future, but not past medical expenses, and determined that he was entitled to an award of $26,320.00 for future medical expenses. In reaching this conclusion, the AJ determined that the medical evidence submitted by complainant demonstrated that these projected expenses were related to his treatment needs in connection with those symptoms arising from the agency's post-July 8, 1993 conduct.

Based on our review, we concur with the AJ that the August 1998 medical reports reflect the need for continuing treatment of complainant because of his constructive discharge, and that complainant's petition for damages appears to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 26

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

accurately reflect the estimated cost of this treatment. Therefore, we concur in the AJ's determination that complainant is entitled to an award of $26,320.00 in pecuniary damages for future medical expenses, and we find no error in this determination.

B. Did the AJ err in awarding complainant the make-whole remedies of reinstatement, back-pay, and attorney's fees?

Reinstatement and Back-pay

We further find that as part of complainant's "make whole" remedy, the AJ properly determined that complainant should be reinstated to the now restructured TSR position, with all rights and privileges, as well as back-pay. Specifically, the AJ rejected complainant's petition for front pay instead of reinstatement, finding that the medical evidence demonstrated that complainant should be able to function in the restructured TSR position. In addressing back pay, the AJ determined that complainant was entitled to back-pay, with interest, from the date of his disability retirement, August 20, 1993, up until the effective date of his reinstatement, but that this amount must be offset by any wages earned by complainant during this time period. In this regard, the AJ also determined that the agency failed to show that complainant did not exercise reasonable diligence in mitigating his damages. In light of our finding of discrimination herein, we fully concur in this determination.

Attorney's Fees

*20 The AJ found that complainant was entitled to an award of attorney's fees and costs, and based on the finding of discrimination herein, we fully concur in this determination. However, we note that the AJ declined to issue a decision on the exact amount to be awarded, referring this determination to the agency. Although the current regulations specify that the AJ is make an award of attorney's fees when issuing a decision in favor of a complainant, in this situation, given the particular circumstances and posture of this case, we find that it would be more efficient for the agency to make this determination, as more fully set forth in the ORDER below.

Conclusion on the Issue of Damages and Award of Remedies

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

In conclusion, we find that the AJ's award of compensatory damages, reinstatement with back-pay and interest, and attorney's fees, was appropriate, and we fully concur with this determination.

## CONCLUSION

For the reasons set forth above, we discern no basis to disturb the AJ's decision. Therefore, after review of the record, including complainant's contentions on appeal, the agency's response, and arguments and evidence not specifically addressed in this decision, we REVERSE the agency's final order, and REMAND this case to the agency to comply with the remedial actions set forth in the ORDER below.

## ORDER

The agency is ordered to take the following remedial action:
   (1) Within 30 calendar days of the date of this decision, the agency must pay non-pecuniary compensatory damages to complainant in the amount of $100,000.00 (One Hundred Thousand Dollars and no cents).
   (2) Within 30 calendar days of the date of this decision, the agency must pay pecuniary compensatory damages to complainant for future medical expenses, in the amount of $26,320.00 (Twenty-Six Thousand Three Hundred Twenty Dollars and no cents).
   (3) Within 30 calendar days of the date of this decision, the agency must retroactively reinstate complainant into the position of GS-8 Teleservice Representative at its Richmond, California facility, or another facility, if mutually agreed to by both the agency and complainant, retroactive to the effective date of complainant's disability retirement, August 20, 1993, with all rights, benefits, and privileges.
   (4) Within sixty (60) calendar days after the date this decision becomes final, the agency shall determine the appropriate amount of back pay, with interest, and other benefits due complainant, pursuant to 29 C.F.R. § 1614.501. The complainant shall cooperate in the agency's efforts to compute the amount of back pay and benefits due, and shall provide all relevant information requested by the agency. If there is a dispute regarding the exact amount of back pay and/or benefits, the agency shall issue a check to the complainant for the undisputed amount within sixty (60) calendar days of the date the agency determines the amount it believes to be due. The complainant may petition for enforcement or clarification of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

amount in dispute. The petition for clarification or enforcement must be filed
with the Compliance Officer, at the address referenced in the statement entitled
"Implementation of the Commission's Decision."

*21 (5) The agency shall consider taking disciplinary action against the agency
officials found to have discriminated against complainant. The agency shall report
its decision. If the agency decides to take disciplinary action, it shall identify
the action taken. If the agency decides not to take disciplinary action, it shall
set forth the reason(s) for its decision not to impose discipline.

The agency is further directed to submit a report of compliance, as provided in
the statement entitled "Implementation of the Commission's Decision." The report
shall include supporting documentation of the agency's calculation of back-pay and
other benefits due complainant, including evidence that the corrective action has
been implemented.

## INTERIM RELIEF (F0900)

When the agency requests reconsideration and the case involves a finding of
discrimination regarding a removal, separation, or suspension continuing beyond
the date of the request for reconsideration, and when the decision orders
retroactive restoration, the agency shall comply with the decision to the extent
of the temporary or conditional restoration of the complainant to duty status in
the position specified by the Commission, pending the outcome of the agency
request for reconsideration. See 29 C.F.R. § 1614.502(b).

The agency shall notify the Commission and the complainant in writing at the same
time it requests reconsideration that the relief it provides is temporary or
conditional and, if applicable, that it will delay the payment of any amounts owed
but will pay interest from the date of the original appellate decision until
payment is made. Failure of the agency to provide notification will result in the
dismissal of the agency's request. See 29 C.F.R. § 1614.502(b)(3).

## POSTING ORDER (G0900)

The agency is ordered to post at its Richmond, California facility copies of the
attached notice. Copies of the notice, after being signed by the agency's duly
authorized representative, shall be posted by the agency within thirty (30)
calendar days of the date this decision becomes final, and shall remain posted for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 29

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

sixty (60) consecutive days, in conspicuous places, including all places where notices to employees are customarily posted. The agency shall take reasonable steps to ensure that said notices are not altered, defaced, or covered by any other material. The original signed notice is to be submitted to the Compliance Officer at the address cited in the paragraph entitled "Implementation of the Commission's Decision," within ten (10) calendar days of the expiration of the posting period.

### ATTORNEY'S FEES (H0900)

If complainant has been represented by an attorney (as defined by 29 C.F.R. § 1614.501(e)(1)(iii)), he/she is entitled to an award of reasonable attorney's fees incurred in the processing of the complaint. 29 C.F.R. § 1614.501(e). The award of attorney's fees shall be paid by the agency. The attorney shall submit a verified statement of fees to the agency -- not to the Equal Employment Opportunity Commission, Office of Federal Operations -- within thirty (30) calendar days of this decision becoming final. The agency shall then process the claim for attorney's fees in accordance with 29 C.F.R. § 1614.501.

### IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

*22 Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant. If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the complainant files a civil action, the administrative processing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 30

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

of the complaint, including any petition for enforcement, will be terminated. See 29 C.F.R. § 1614.409.

### STATEMENT OF RIGHTS - ON APPEAL RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

*23 Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0900)

This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. In the

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. Filing a civil action will terminate the administrative processing of your complaint.

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

For the Commission:

Frances M. Hart

Executive Officer

Executive Secretariat

FN1. Complainant submitted not only an updated assessment from CP, but also a report of a psychiatric examination dated February 18, 1993.

FN2. According to the record, the AJ who conducted the hearing left the EEOC prior to issuing a decision on the complaint.

FN3. On appeal, neither party disputes these determinations. Accordingly, they

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))


will not be further addressed herein.

FN4. The agency issued its final order on November 8, 1999, the day before the Commission's revised regulations went into effect. Pursuant to the regulations in effect at that time, the agency had the option of accepting, rejecting, or modifying the decision of the AJ. The current regulations, however, provide that the decision of an AJ is binding, subject to the appeal by the parties. See 29 C.F.R. § 1614.109(i).

FN5. According to the record, S1 tended to be protective of complainant, and the long-time co-worker, who was also disabled, had filed EEO complaints and an MSPB appeal against the agency.

FN6. In this regard, we note that the agency offered to assist complainant in finding a suitable position, but the evidence fails to show that the agency actually undertook any meaningful efforts to do so.

FN7. We note that the record contains statements from certain management officials that no suitable reassignment position existed in the Region. However, to the extent that any search was undertaken for a suitable reassignment position, the record fails to reflect that this effort, or the results of this effort were ever communicated to complainant. Therefore, while we find that the record cannot support a finding of bad faith in the agency's failure to adequately explore reassignment as a reasonable accommodation, we nonetheless find, in terms of complainant's constructive discharge claim, that this possibility was not presented to complainant as a viable third option.

FN8. The agency is advised that 29 C.F.R. § 1614.203(g), which governed and limited the obligation of reassignment in the Federal sector, has been superseded and no longer applies. 67 Fed. Reg. 35732 (5/21/01), to be codified as 29 C.F.R. § 203(b). The ADA standards apply to all conduct on or after June 20, 2002, and emphasize, among other things, a broader search for a vacancy. The ADA regulations regarding reassignment can be found at 29 C.F.R. §§ 1630.2(o) and 1630.9. Additional information can be found in the Appendix to the ADA regulations and in the EEOC's Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (revised October 17, 2002) at Questions 25-30. These documents are available on the EEOC's website at www.eeoc.gov.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A01372

Page 33

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

(Cite as: 2003 WL 22346114 (E.E.O.C.))

2003 WL 22346114 (E.E.O.C.), EEOC DOC 01A01372

END OF DOCUMENT

EXHIBIT 2

EEOC AND SSA

Westlaw.

EEOC DOC 05A40191

Page 1

2004 WL 1554771 (E.E.O.C.), EEOC DOC 05A40191

(Cite as: 2004 WL 1554771 (E.E.O.C.))

H

E.E.O.C.

*1 Office of Federal Operations

RUSSELL C. HOLLAND, COMPLAINANT,

v.

JO ANNE B. BARNHART, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, AGENCY.
Request No. 05A40191
Appeal No. 01A01372
Agency No. SSA-568-93

June 29, 2004

DENIAL OF REQUEST FOR RECONSIDERATION

The Social Security Administration (agency) timely initiated a request to the
Equal Employment Opportunity Commission (EEOC or Commission) to reconsider the
decision in Russell C. Holland v. Social Security Administration, EEOC Appeal No.
01A01372 (October 2, 2003). EEOC Regulations provide that the Commission may, in
its discretion, reconsider any previous Commission decision where the requesting
party demonstrates that: (1) the appellate decision involved a clearly erroneous
interpretation of material fact or law; or (2) the appellate decision will have a
substantial impact on the policies, practices, or operations of the agency. See 29
C.F.R. § 1614.405(b).

After a review of the agency's request for reconsideration, the previous
decision, and the entire record, the Commission finds that the request fails to
meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the
Commission to deny the request. The decision in EEOC Appeal No. 01A01372 remains
the Commission's final decision. There is no further right of administrative
appeal on the decision of the Commission on this request for reconsideration.

ORDER

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 05A40191

Page 2

2004 WL 1554771 (E.E.O.C.), EEOC DOC 05A40191

(Cite as: 2004 WL 1554771 (E.E.O.C.))

The agency is ordered to take the following remedial action:

1. Within 30 calendar days of the date of this decision, the agency must pay non-pecuniary compensatory damages to complainant in the amount of $100,000.00 (One Hundred Thousand Dollars and no cents).

2. Within 30 calendar days of the date of this decision, the agency must pay pecuniary compensatory damages to complainant for future medical expenses, in the amount of $26,320.00 (Twenty-Six Thousand Three Hundred Twenty Dollars and no cents).

3. Within 30 calendar days of the date of this decision, the agency must retroactively reinstate complainant into the position of GS-8 Teleservice Representative at its Richmond, California facility, or another facility, if mutually agreed to by both the agency and complainant, retroactive to the effective date of complainant's disability retirement, August 20, 1993, with all rights, benefits, and privileges.

4. Within sixty (60) calendar days after the date this decision becomes final, the agency shall determine the appropriate amount of back pay, with interest, and other benefits due complainant, pursuant to 29 C.F.R. § 1614.501. The complainant shall cooperate in the agency's efforts to compute the amount of back pay and benefits due, and shall provide all relevant information requested by the agency. If there is a dispute regarding the exact amount of back pay and/or benefits, the agency shall issue a check to the complainant for the undisputed amount within sixty (60) calendar days of the date the agency determines the amount it believes to be due. The complainant may petition for enforcement or clarification of the amount in dispute. The petition for clarification or enforcement must be filed with the Compliance Officer, at the address referenced in the statement entitled "Implementation of the Commission's Decision."

*2 5. The agency shall consider taking disciplinary action against the agency officials found to have discriminated against complainant. The agency shall report its decision. If the agency decides to take disciplinary action, it shall identify the action taken. If the agency decides not to take disciplinary action, it shall set forth the reason(s) for its decision not to impose discipline.

The agency is further directed to submit a report of compliance, as provided in the statement entitled "Implementation of the Commission's Decision." The report shall include supporting documentation of the agency's calculation of back-pay and other benefits due complainant, including evidence that the corrective action has been implemented.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 05A40191

Page 3

2004 WL 1554771 (E.E.O.C.), EEOC DOC 05A40191

(Cite as: 2004 WL 1554771 (E.E.O.C.))

### POSTING ORDER (G0900)

The agency is ordered to post at its Richmond, California facility copies of the attached notice. Copies of the notice, after being signed by the agency's duly authorized representative, shall be posted by the agency within thirty (30) calendar days of the date this decision becomes final, and shall remain posted for sixty (60) consecutive days, in conspicuous places, including all places where notices to employees are customarily posted. The agency shall take reasonable steps to ensure that said notices are not altered, defaced, or covered by any other material. The original signed notice is to be submitted to the Compliance Officer at the address cited in the paragraph entitled "Implementation of the Commission's Decision," within ten (10) calendar days of the expiration of the posting period.

### ATTORNEY'S FEES (H0900)

If complainant has been represented by an attorney (as defined by 29 C.F.R. § 1614.501(e)(1)(iii)), he/she is entitled to an award of reasonable attorney's fees incurred in the processing of the complaint. 29 C.F.R. § 1614.501(e). The award of attorney's fees shall be paid by the agency. The attorney shall submit a verified statement of fees to the agency -- not to the Equal Employment Opportunity Commission, Office of Federal Operations -- within thirty (30) calendar days of this decision becoming final. The agency shall then process the claim for attorney's fees in accordance with 29 C.F.R. § 1614.501.

### IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant. If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. §

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 05A40191

Page 4

2004 WL 1554771 (E.E.O.C.), EEOC DOC 05A40191

(Cite as: 2004 WL 1554771 (E.E.O.C.))

1614.503(g). Alternatively, the complainant has the right to file a civil action
on the underlying complaint in accordance with the paragraph below entitled "Right
to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for
enforcement or a civil action on the underlying complaint is subject to the
deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the
complainant files a civil action, the administrative processing of the complaint,
including any petition for enforcement, will be terminated. See 29 C.F.R. §
1614.409.

                    COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0900)

*3 This is a decision requiring the agency to continue its administrative
processing of your complaint. However, if you wish to file a civil action, you
have the right to file such action in an appropriate United States District Court
within ninety (90) calendar days from the date that you receive this decision. In
the alternative, you may file a civil action after one hundred and eighty (180)
calendar days of the date you filed your complaint with the agency, or filed your
appeal with the Commission. If you file a civil action, you must name as the
defendant in the complaint the person who is the official agency head or
department head, identifying that person by his or her full name and official
title. Failure to do so may result in the dismissal of your case in court.
"Agency" or "department" means the national organization, and not the local
office, facility or department in which you work. Filing a civil action will
terminate the administrative processing of your complaint.

                         RIGHT TO REQUEST COUNSEL (Z1199)

 If you decide to file a civil action, and if you do not have or cannot afford the
services of an attorney, you may request that the Court appoint an attorney to
represent you and that the Court permit you to file the action without payment of
fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29
U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole
discretion of the Court. Filing a request for an attorney does not extend your
time in which to file a civil action. Both the request and the civil action must
be filed within the time limits as stated in the paragraph above ("Right to File A
Civil Action").

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 05A40191

Page 5

2004 WL 1554771 (E.E.O.C.), EEOC DOC 05A40191
(Cite as: 2004 WL 1554771 (E.E.O.C.))

For the Commission:

Carlton M. Hadden

Director

Office of Federal Operations

NOTICE TO EMPLOYEES POSTED BY ORDER OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

An Agency of the United States Government

   This Notice is posted pursuant to an Order by the United States Equal Employment
Opportunity Commission dated _____ which found that a violation of the
Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, et seq., has occurred at
this facility. Federal law requires that there be no discrimination against any
employee or applicant for employment because of the person's RACE, COLOR,
RELIGION, SEX, NATIONAL ORIGIN, AGE, or PHYSICAL or MENTAL DISABILITY with respect
to hiring, firing, promotion, compensation, or other terms, conditions or
privileges of employment. This facility supports and will comply with such Federal
law and will not take action against individuals because they have exercised their
rights under law.

   *4 This facility was found to have violated the Rehabilitation Act when an
employee encumbering a Teleservice Representative position was not provided with a
reasonable accommodation forcing him to take disability retirement. The Commission
has ordered payment of compensatory damages, retroactive reassignment, back-pay,
with interest, and attorney's fees. This facility will ensure, via training that
officials responsible for personnel decisions will abide by the requirements of
all Federal equal employment opportunity laws and will not discriminate against
employees on the basis of disability.

   The facility will not in any manner restrain, interfere, coerce, or retaliate
against any individual who exercises his or her right to oppose practices made
unlawful by, or who participates in proceedings pursuant to, Federal equal
employment opportunity law.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 05A40191

Page 6

2004 WL 1554771 (E.E.O.C.), EEOC DOC 05A40191

(Cite as: 2004 WL 1554771 (E.E.O.C.))


29 C.F.R. Part 1614

 2004 WL 1554771 (E.E.O.C.), EEOC DOC 05A40191

END OF DOCUMENT

EXHIBIT 3

EEOC AND SSA

Westlaw.

EEOC DOC 01A51800                                          Page 1

2005 WL 1198570 (E.E.O.C.), EEOC DOC 01A51800

(Cite as: 2005 WL 1198570 (E.E.O.C.))

H

### E.E.O.C.

*1 Office of Federal Operations

RUSSELL C. HOLLAND, COMPLAINANT,

v.

JO ANNE B. BARNHART, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, AGENCY.

Appeal No. 01A51800

Agency No. 93-568-SSA

May 10, 2005

DISMISSAL OF APPEAL

On December 29, 2004, complainant filed an appeal with this Commission from the October 26, 2004 final agency decision (FAD) determining his entitlement to attorney's fees and costs. [FN1]

On the appeal form to the Commission, complainant's attorney states that he received the final agency decision "about" October 28, 2004. A review of the FAD reveals that the agency properly advised complainant that he had thirty (30) calendar days after receipt of its final decision to file his appeal with the Commission. Therefore, in order to be considered timely, complainant had to file his appeal no later than November 27, 2004.

On appeal, complainant's attorney argues that the time limits should be waived because from October 28, 2004 until November 19, 2004, he was responding to matters related to other cases, and from November 19, 2004 until November 26, 2004, he was out-of-state visiting relatives for the holidays. Complainant's attorney further alleges that he attempted to contact the Commission in November 2004 to request an extension for filing the appeal, but received no response from his voicemail messages. We find that these excuses are insufficient to warrant a waiver of the applicable time limits and indicate that complainant's attorney was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A51800                                                              Page 2

2005 WL 1198570 (E.E.O.C.), EEOC DOC 01A51800

(Cite as: 2005 WL 1198570 (E.E.O.C.))

not so incapacitated that he could not file the appeal in a timely manner. In fact, complainant attorney's arguments reflect that he was able to take care of personal and professional business during the relevant time period. Moreover, even if complainant's attorney sought an extension of the time limits with the Commission, his unsuccessful quest for an extension indicates that he was aware of the time limit before it expired. We note that the filing requirement for an appeal is not an onerous one. A complainant need only submit a one-page notice of appeal, by mail or facsimile transmission, to perfect a timely appeal. [FN2]

Consequently, we conclude that complainant has not offered adequate justification for an extension of the applicable time limit for filing his appeal. Accordingly, complainant's December 29, 2004 appeal is hereby dismissed. See 29 C.F.R. § 1614.403(c).

### STATEMENT OF RIGHTS - ON APPEAL RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:
    1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
    2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

*2 Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A51800

Page 3

2005 WL 1198570 (E.E.O.C.), EEOC DOC 01A51800

(Cite as: 2005 WL 1198570 (E.E.O.C.))

prevented the timely filing of the request. Any supporting documentation must be
submitted with your request for reconsideration. The Commission will consider
requests for reconsideration filed after the deadline only in very limited
circumstances. See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States
District Court within ninety (90) calendar days from the date that you receive
this decision. If you file a civil action, you must name as the defendant in the
complaint the person who is the official agency head or department head,
identifying that person by his or her full name and official title. Failure to do
so may result in the dismissal of your case in court. "Agency" or "department"
means the national organization, and not the local office, facility or department
in which you work. If you file a request to reconsider and also file a civil
action, filing a civil action will terminate the administrative processing of your
complaint.

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the
services of an attorney, you may request that the Court appoint an attorney to
represent you and that the Court permit you to file the action without payment of
fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29
U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole
discretion of the Court. Filing a request for an attorney does not extend your
time in which to file a civil action. Both the request and the civil action must
be filed within the time limits as stated in the paragraph above ("Right to File A
Civil Action").

For the Commission:

Carlton M. Hadden

Director

Office of Federal Operations    *EEOC*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A51800

Page 4

2005 WL 1198570 (E.E.O.C.), EEOC DOC 01A51800

(Cite as: 2005 WL 1198570 (E.E.O.C.))


FN1. We note that the agency issued an earlier decision on October 6, 2004
regarding complainant's entitlement o attorney's fees that did not contain appeal
rights. The agency thereafter issued the October 26, 2004 decision with
appropriate appeal rights to the Commission.

FN2. We note that the record indicates that the agency provided complainant with a
one-page appeal form with its final decision dated October 26, 2004.

 2005 WL 1198570 (E.E.O.C.), EEOC DOC 01A51800

END OF DOCUMENT

EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL L. BUESGENS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  05-CV-00243-SS |
| | § | |
| JOHN W. SNOW, | § | |
| | § | |
| *Defendant.* | § | |

### EEOC'S MOTION TO QUASH PLAINTIFF'S SUBPOENA
### OF EEOC ADMINISTRATIVE JUDGE ROBERT L. POWELL

COMES NOW United States Equal Employment Opportunity Commission ("EEOC")

and moves this Court to quash Plaintiff's subpoena of EEOC Administrative Judge Robert L.

Powell.[1]  In support of its motion, Movant would respectfully show the Court the following:

### STATEMENT OF FACTS    *FACTS*

On or about September 18, 2006, Plaintiff served upon the EEOC the subpoena of

Administrative Judge Robert L. Powell.  (Ex. 1.)  Neither the EEOC[2] nor Judge Powell[3] is a

party to this lawsuit.

Federal employees who believe that they have been discriminated against on the basis of

a disability, in violation of the Rehabilitation Act, must first attempt to resolve their complaints

using the administrative remedies within their federal agency.  *See generally* 29 C.F.R.

§1614.103 through § 1614.110.  When a federal employee requests a hearing, the EEOC

*ADMINISTRATIVE REMEDIES FOR EXAMPLE*
*EEOC #360-2003-82864*

[1] The subpoena mistakenly identifies Judge Powell as "Robert E. Powell."

[2] The EEOC has been named as a defendant in at least two other related lawsuits filed by Mr. Buesgens in the United States District Court for the District of Columbia, *Buesgens v. Coates et al,* 05-CV-02334, and *Buesgens v. United States of America et al,* 06-CV-01558.

[3] As an administrative judge, Judge Powell is immune from suit for actions taken while presiding over an administrative proceeding. *Butz v. Economou,* 438 U.S. 478, 513-514 (1978).

*EEOC's Motion to Quash Subpoena of Judge Powell*

appoints an EEOC administrative judge, such as the Honorable Robert L. Powell, to adjudicate

the case. *See* 29 C.F.R. § 1614.108(g). Administrative judges' duties include conducting pre-

hearing conferences and ruling on pre-hearing matters (including motions to compel discovery,

*WHAT DISCOVERY*

motions for protective order, motions for sanction and motions for summary judgment),

conducting settlement conferences, conducting evidentiary hearings akin to bench trials

*WHAT EVIDENCE*

(including rulings on the admissibility of evidence and other trial objections), and rendering final

decisions on the merits of cases, either orally or in writing. (Ex. 2 at ¶ 3.) *See also* 29 C.F.R. §

1614.109. *WHAT FINAL DECISION ?*

   In the present case, Plaintiff Michael L. Buesgens requested a hearing regarding his

employment discrimination claim in or about April 2003. The case was assigned to Judge

Powell. Judge Powell conducted a telephonic hearing in the case on December 15, 2003, and

rendered an oral bench finding of "no discrimination" at the end of the hearing. (Ex. 2 at ¶ 4.)

*LOST AND FOUND AT EEOC*

When rendering a bench decision, it is Judge Powell's practice to advise the parties that, prior to

formal issuance, the bench decision may be edited, amended or supplemented. *See id.* Pursuant

to standard office procedure, Judge Powell then consults with Supervisory Administrative Judge

Katye Duderstadt regarding his findings. *See id.* On or about January 21, 2004, Judge Powell

finalized his decision, entered judgment for the agency/employer (Defendant), and closed the

case. (Ex. 3.) Plaintiff's case was one of 300 that Judge Powell has adjudicated since October

2003. *300 CASES BY TELEPHONE*

   Pursuant to the United States Equal Employment Opportunity Commission Handbook for

Administrative Judges ("Administrative Judge Handbook"), the San Antonio Hearings Unit

("Hearings Unit") "must retain a copy of all documents issued to the parties for a minimum of

two years from the date the Office closes the case, but does not need to retain the hearing

transcript or hearing exhibits. (Ex. 4 at p. 28, section H.)  The agency/employer in which the complaint originated may retrieve the report of investigation and complaint file from the EEOC, but if it does not do so within 60 days, they may be destroyed. *See id.*  In the present case, the Hearings Unit maintained the records of Plaintiff's EEOC hearing, as required by the Administrative Judge Handbook.  However, the Hearings Unit did not, and was not required to, retain copies of the hearing transcript or hearing exhibits.  *EVIDENCE*

A complainant may appeal an agency's final action following a decision by an administrative judge to the EEOC Office of Federal Operations. *See* 29 C.F.R. § 1614.110, § 1614.401.  In the present case, Mr. Buesguens' appeal was denied on December 29, 2004, and his request for reconsideration of that ruling was denied on February 18, 2005.  (Exs. 5, 6.)  The EEOC maintains appeals documentation for four years after a file is closed. *See* EEO MD-110 E(3), attached as Exhibit 7.  The EEOC has provided Plaintiff with a copy of the appellate record, including the hearing transcript and the hearing record.[4]  (Ex. 8.)

Pursuant to federal regulation, an employee of the EEOC may not testify or otherwise disclose any information acquired as a result of the performance of the employee's official duties without the express approval of the EEOC's Office of Legal Counsel ("Legal Counsel"). *See* 29 C.F.R. § 1610.32.  The San Antonio Field Office has contacted Legal Counsel, and has been instructed not to produce Judge Powell or any other EEOC employee to testify in this case.  By letter dated September 20, 2006, the Commission informed Plaintiff that it would not produce Judge Powell to testify absent court order.  (Ex. 9.)

*LISTEN TO JENNIFER RANDALS LIES ABOUT RECORDS. SHE NEVER PRODUCED THE MANY LETTERS BUESGENS SENT TO*

[4] All documents submitted to, and accepted by, an administrative judge at a hearing shall be made a part of the hearing record. 29 C.F.R. § 1614.109(h).

*EEOC's Motion to Quash Subpoena of Judge Powell*

*EEOC AND JUDGE POWELL AND ROBERT IRWIN; REQUESTING RECORDS AND EEOC/GOV(*

*SO RANDALL SHREDDED THE EXHIBITS*

## STANDARD OF REVIEW

Pursuant to Rule 45(c)(3)(a)(iii) and (iv) of the Federal Rules of Civil Procedure, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of privileged or other protected matter and no exception or waiver applies, or . . . subjects a person to undue burden." "Whether a subpoena subjects a witness to undue burden generally raises a question of the subpoena's reasonableness, which 'requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463 (2d ed. 1995)). "[T]his balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source." *Id.*

## ARGUMENT

Plaintiff appears to seek testimony from Judge Powell regarding his evidentiary rulings *NO HE DOES NOT* and bench decision during the EEOC hearing, as well as evidence submitted in relation to the EEOC hearing. *See* Ex. 1. *BUESGENS WANTS TO KNOW WHAT WAS PRODUCED FOR DISCOVERY TO JUDGE POWELL*

### A.    Judge Powell May Not be Asked to Testify about His Rulings

To the extent that Plaintiff seeks to compel Judge Powell's testimony regarding his rulings, it has long been recognized that a judge may not be asked to testify about his mental process in reaching a decision. *I'M NOT INTERESTED IN HIS RULINGS* *See Fayerweather v. Ritch*, 195 U.S. 276, 307 (1904) (observing that a judge's ruling should never limited by the judge's testimony as to "what he had in mind at the time of the decision"). *I'M NOT INTERESTED IN HIS MIND* There are a number of policy reasons for this rule, including concern *WHERE ARE THE DOCUMENTS?*

---

[5] As the United States Supreme Court has recognized in the related context of judicial immunity, a federal hearing examiner or administrative law judge is "functionally comparable" to a judge. *Butz v. Economou*, 438 U.S. 478, 513 (1978).

that a judge will be unlikely be able to reconstruct his thought processes accurately several years

after making a ruling, concern about the integrity of judges' rulings, and concern that allowing a

judge to be interrogated about his decision in a subsequent lawsuit will detract from the integrity

of the judicial process. *See Washington v. Strickland*, 693 F.2d 1243, 1263 (5th Cir. 1982), *rev'd*

on other grounds, 466 U.S. 668 (1984).

In *Robinson v. Comm'r of Internal Revenue*, 70 F.3d 34 (5th Cir. 1995), the Fifth Circuit

Court of Appeals held that the United States Tax Court did not err in quashing a subpoena

seeking testimony from a state court judge regarding "his understanding and knowledge of the

final judgment and what went into its determination." *Id.* at 38. In so ruling, the Fifth Circuit

Court of Appeals observed that "the whole purpose of the subpoena was to delve into the judge's

mental processes." *Id.* Similarly, in the present case, questions about Judge Powell's evidentiary

rulings and final decision on the merits of the case would inappropriately seek information about

Judge Powell's mental processes in making his rulings.

**B.    The Information Sought by Plaintiff is Protected by the Deliberative Thought
Process Privilege**

Any testimony by Judge Powell regarding his decision-making process, and the basis of

his decision, is protected by the deliberative thought process privilege. Naomi Earp, Chair of the

Equal Employment Opportunity Commission, is hereby asserting the deliberative thought

process privilege on behalf of the Commission with respect to the inquiries that will likely be

made of Judge Powell. (Ex. 10.)    The deliberative thought process privilege protects "the

decision making processes of governmental agencies." *NLRB v. Sears, Roebuck & Co.*, 421 U.S.

132, 150 (1975) (internal quotations omitted). In order to be covered by the deliberative thought

process privilege, information must be: (1) pre-decisional, that is, pertaining to the time period

prior to the adoption of an agency decision; and (2) deliberative in nature, containing opinions,

recommendations or advice regarding agency processes or decisions. *See Skelton v. United States Postal Service*, 678 F.2d 35, 38 (5th Cir. 1982); *Klein v. Jefferson Parish Sch. Bd.*, No. 00-3401, 2003 WL 1873909 at *4 (E.D. La. April 10, 2003). Courts have recognized that the decision-making processes of agency officials serving in a judicial or quasi-judicial function are protected by the deliberative thought process privilege. *See United States v. Morgan*, 313 U.S. 409, 422 (1941) (holding that the Secretary of Agriculture's deliberate thought process in a proceeding that had "a quality resembling that of a judicial proceeding" was protected); *Gary W. v. State of Louisiana, Dept. of Health and Human Resources*, 861 F.2d 1366, 1368-1369 (5th Cir. 1988) (holding that the deliberative thought process of a special master in a child abuse and neglect hearing was protected).

Although the deliberative thought process privilege is a qualified privilege, it can only be overcome where the party seeking disclosure demonstrates sufficient need for disclosure. *See FTC v. Warner Comm. Inc.*, 742 F.2d 1156, 116 (9th Cir. 1984). In determining whether a party has demonstrated sufficient need for disclosure, the Court should consider: 1) the relevance of the evidence to the lawsuit; 2) the availability of other evidence on the same matters; 3) the EEOC's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion within the EEOC regarding contemplated policies and decisions. *Id. See also Cipollone v. Liggett Group, Inc.*, 812 F.2d 1400, 1987 WL 36515 at *2 (4th Cir. Feb. 13, 1987) (unpublished opinion). In balancing the various factors in the present case, it is clear that Plaintiff cannot establish sufficient need for the compelled testimony.

1.     *Judge Powell's Testimony is Not Relevant to the Present De Novo Proceeding*

*PRODUCE DOCUMENTS*

Cases brought by federal employees under the Rehabilitation Act are *de novo* proceedings.[6] *Prewitt v. United States Postal Service,* 662 F.2d 292, 303 (5th Cir. 1981). The question before the Court is whether sufficient facts have been presented to demonstrate liability under the Rehabilitation Act, not whether Judge Powell's administrative decision, issued nearly three years before, was reasonable. Judge Powell's testimony regarding his evaluation of the facts underlying Plaintiff's Rehabilitation Act claim may properly be excluded, as the Court's review of the evidence is independent of any evaluation made by the EEOC. *See Dickerson v. Metropolitan Dade County,* 659 F.2d 574, 579 (5th Cir. Unit B 1981) (EEOC's investigator's testimony regarding his evaluation of the facts would not aid in the fact finder's evaluation of the evidence).

2.     *The EEOC Has Provided Plaintiff with All Non-Privileged Information in the EEOC's Records Regarding his Case*

*WHAT IS PRIVELEGED*

Judge Powell no longer recalls the specific facts of Plaintiff's case. (Ex. 2 at ¶¶ 5, 7.) Furthermore, Judge Powell never had personal knowledge of the events underlying Plaintiff's Rehabilitation Act claims, as required by Federal Rule of Evidence 602. Any knowledge that Judge Powell once had regarding the specific facts of the case was based on evidence submitted by the parties to the administrative hearing, and the hearing testimony. Plaintiff has access to the same evidence, as the EEOC has provided Plaintiff with copies of all non-privileged information in the EEOC's records regarding his case – including the hearing record and a transcript of the hearing.  *JENNIFER RADONCL'S ETHICS AND EEOC MARCHING ORDERS*

---

[6] The requirement of trial *de novo* extends not only to the factual findings, but also to issues such as whether the time limit for filing a complaint was equitably tolled. *Teemac v. Henderson,* 298 F.3d 452, 455 (5th Cir. 2002). Thus, the deliberative process privilege applies not only to Judge Powell's decision-making process in ruling on the substance of Plaintiff's case, but also as to Judge Powell's decision-making process in making evidentiary rulings.

3.    *The EEOC is Not a Party to the Present Lawsuit*

The EEOC is not a party in the present lawsuit, and thus stands on even stronger ground

with regard to the present motion.  As in *Walker v. NCNB Nat. Bank of Florida*, 810 F. Supp. 11

(D.D.C. 1993), the EEOC, as a non-party, will be unduly burdened by any compelled testimony.

*Id.* at 14.  *[handwritten: 1:05CV243SS    IT SURE WOULD]*

4.    *Compelling Judge Powell to Testify Would Harm the EEOC and Hinder Frank
and Independent Decision-making by EEOC Administrative Judges*

*[handwritten: ALL THAT STINK]*

Judge Powell's decision in this case was based upon his analysis of the evidence and the

case law.  Judge Powell also consulted with Supervisory Administrative Judge Katye Duderstadt

before finalizing his decision on January 21, 2004.  The deliberative thought process privilege

protects the disclosure of these mental impressions, analyses, opinions and recommendations.

*See Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir. 1981).   If EEOC

administrative judges were compelled to testify regarding the agency's decision-making process,

the deliberative process would be compromised and the goals of the agency hindered because

"officials would hesitate to offer their candid and conscientious opinions to supervisors or co-

workers if they knew that their opinions of the moment might be made a matter of public record

at some future date." *Id.*  *[handwritten: EEOC # 360-2003-8286X]*

C.    **Plaintiff's Request to Compel the Testimony of Judge Powell is Unduly Burdensome
and Harassing**  *[handwritten: I'M THE ONE HARASSED BY]*

The EEOC's San Antonio Field Office has only 4 administrative judges to handle the

approximately 400 cases filed with the office each year.  In light of this fact, a policy requiring

testimony in even a fraction of those cases would hamper the EEOC hearings process - a process

that is fundamental to the EEOC's role as an enforcement agency.  Requiring administrative

judges to provide testimony regarding every case in which a complainant later filed suit in

*[handwritten: THIS STUPID!?  WHO WOULD BELIEVE THIS CRAP THAT RANDALL IS MAKING US CHOKE ON?]*

federal court would prevent the EEOC from fulfilling its obligation to the public. *See Lang v. Kohl's Food Stores, Inc.*, 185 F.R.D. 542, 549 (W.D. Wis. 1998). Such a requirement would create an undue burden and defeat the mission of the EEOC. *See Hamm v. New York City Office of the Comptroller*, No. 95-6367, 1996 WL 376930 at *1 (S.D.N.Y. July 3, 1996); *Leyh v. Modicon, Inc.*, 881 F. Supp. 420, 425 (S.D. Ind. 1995).

Judge Powell does not specifically recall the facts of Plaintiff's case, and never had any personal knowledge regarding the facts underlying Plaintiff's claims. (Ex. 2 at ¶¶ 5, 7.) Plaintiff's overreaching request to compel the testimony of Judge Powell will not result in admissible trial testimony, and is unduly burdensome and harassing.

*[handwritten: SELECTIVE AMNESIA]*
*[handwritten: BUESGENS OVERREACHED BY ASKING FOR EVIDENCE DOCUMENTS EXHIBITS]*

**D.    Plaintiff Already has the Hearing Record and Hearing Transcript**

To the extent that Plaintiff seeks copies of exhibits submitted in relation to the EEOC hearing, the EEOC has already provided Plaintiff with a copy of the hearing record and hearing transcript, along with all non-privileged information in the EEOC's records regarding his case. (Ex. 8.) At Plaintiff's request, the EEOC has also provided him with copies of all of materials in the possession of the San Antonio Hearings Unit that were received from Plaintiff between the date his case was closed by Judge Powell and the date the San Antonio Hearings Unit was served with his subpoena.[7] (Ex. 11.)

*[handwritten: A LIE BY RANDALL JUST ANOTHER DAY AT WORK FOR HER]*

**CONCLUSION**

The EEOC respectfully requests that this Court grant its Motion to Quash Plaintiff's Subpoena of EEOC Administrative Judge Robert Powell because it is improper to question a judge about his mental processes in reaching a decision, because the information that Plaintiff seeks is protected by the deliberative thought process privilege, and because compliance with the subpoena would

*[handwritten: IMPROPER]*
*[handwritten: PROTECTED BY LIES AND COVER UP]*

---

[7] As the EEOC informed Plaintiff, the San Antonio Hearings Unit is not required to maintain a record of materials received from a complainant after a case has been closed, and does not have a regular practice of storing or compiling such information. Thus, these materials are not a part of the EEOC's official record regarding his case.

*EEOC's Motion to Quash Subpoena of Judge Powell*

be unduly burdensome. The EEOC also requests that the Court grant any other relief to which the Court determines the EEOC is entitled.

*[handwritten annotation: EEOC AND JENNIFER RANDALL COLORADO ATTORNEY HAVE ENTITLEMENTS]*

Respectfully submitted,

RONALD S. COOPER
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ROBERT A. CANINO
Regional Attorney
Oklahoma State Bar No. 011782

ROBERT B. HARWIN
Associate Regional Attorney
District of Columbia Bar No. 076083

JUDITH G. TAYLOR
Supervisory Trial Attorney
Texas State Bar No. 19708300

/s/ Jennifer Randall
JENNIFER RANDALL
Trial Attorney
Colorado State Bar No. 033240

EQUAL EMPLOYMENT OPPORTUNITY
  COMMISSION
San Antonio District Office
5410 Fredericksburg Rd., Ste. 200
San Antonio, Texas 78229-3555
Telephone: (210) 281-7636
Facsimile: (210) 281-7669

*[handwritten annotation: ALL THESE ATTORNEYS ARE ENTITLED TO IS DISBARMENT FOR THIS PATHETIC LIE - 12 PAGES]*

## CERTIFICATE OF CONFERENCE

I hereby certify that EEOC Trial Attorney Jennifer Randall and EEOC Supervisory Trial Attorney Judith Taylor conferred with Plaintiff by phone on September 22, 2006. Plaintiff indicated that he is opposed to the EEOC's motion to quash, and Plaintiff EEOC's motion for continuance, and that he is opposed to everything that the EEOC will do in this case. Counsel for Defendant, R. Barry Robinson, is not opposed to the EEOC's motion.

AUSA

_/s/ Jennifer Randall_
JENNIFER RANDALL

*[handwritten annotations:]*

R. BARRY ROBINSON IS NOT OPPOSED TO THESE EEOC LIES
AND
NEITHER IS
JUDGE SAM SPARKS
1:05 CV 00243 SS
CLOSED: 12/06/2006
THEY ARE STILL TRYING TO BURY THE STINK FROM THIS
AND
RANDALL MOVES TO COLORADO

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered, as designated below, on this the 20th day of October 2006.

Michael L. Buesgens
3112 Windsor Rd. #1322
Austin, Texas 78703

☐ Hand Delivery
☒ Federal Express
☐ Certified Mail, Return Receipt Requested

R. Barry Robinson
Assistant U.S. Attorney
816 Congress Avenue Suite 1000
Austin, Texas  78701

☐ Hand Delivery
☐ U.S. First Class Mail, Postage Prepaid
☐ Certified Mail, Return Receipt Requested
☒ Electronic Filing

_/s/ Jennifer Randall_
JENNIFER RANDALL

*JUDGE ROBERT L POWELL*
*MICHAEL LYNN SALYARDS*
*NATIONAL TREASURY*
*EMPLOYEES UNION*
*NTEU*
*BARBARA A ATKIN*
*DENNIS SCHNEIDER*
*RUSSELL BIKELMAN*
*WHERE ARE YOU NOW?*

EXHiBiT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL L. BUESGENS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 05-CV-00243-SS |
| | § | |
| **JOHN W. SNOW,** | § | *JENNIFER RANDALL-EEOC* |
| | § | |
| *Defendant.* | § | *PROTECTION* |

## EEOC'S MOTION TO QUASH AND MOTION FOR PROTECTION
## REGARDING PLAINTIFF'S MOTION FOR DISCOVERY AND DISCLOSURE

COMES NOW United States Equal Employment Opportunity Commission ("EEOC" or "the Commission") and moves this Court to quash Plaintiff's Motion for Discovery and Disclosure (Ex. 1), and for a protective order providing that the EEOC need not respond to any additional requests for information and/or documents by Plaintiff.  In support of its motion, Movant would respectfully show the Court the following:

### STATEMENT OF FACTS    *FACTS*

The EEOC is not a party to this lawsuit.[1]  In pursing an employment discrimination claim against his former employer, a federal agency, Plaintiff Michael Buesgens requested a hearing with an EEOC administrative judge.  EEOC Administrative Judge Robert Powell conducted a telephonic hearing in the case on December 15, 2003, and rendered an oral bench finding of "no discrimination" at the end of the hearing.  On or about January 21, 2004, Judge Powell finalized his decision, entered judgment for the agency/employer (Defendant), and closed the case.

---

[1] In his Motion for Discovery and Disclosure, Plaintiff mistakenly identifies the EEOC as a defendant in the present action. (Ex. 1.)  However, as the Court's order of October 11, 2006 makes clear, the EEOC is not a party to this lawsuit. (Docket No. 87.)  The EEOC has been named as a defendant in at least two other related lawsuits filed by Mr. Buesgens in the United States District Court for the District of Columbia, *Buesgens v. Coates et al*, 05-CV-02334, and *Buesgens v. United States of America et al*, 06-CV-01558.

Plaintiff subsequently filed an appeal with the EEOC Office of Federal Operations. Plaintiff's appeal was denied on December 29, 2004, and his request for reconsideration of that ruling was denied on February 18, 2005.

In response to Plaintiff's subpoena of Judge Powell, the EEOC has provided Plaintiff with more than 3,000 pages of documents, including a complete copy of his case record as well as copies of documents that Plaintiff sent to the San Antonio Hearings Unit after his case was closed. (Exs. 2, 3, 4.) On October 16, 2006, Plaintiff faxed the EEOC a "Motion for Discovery and Disclosure," requesting information from the case file of another individual.[2] (Ex. 1.) The EEOC now moves to quash Plaintiff's additional request for discovery, and for protection from any additional requests for information and/or documents by Plaintiff.

*NOT TRUE*

*RUSSELL HOLLAND*

## STANDARD OF REVIEW

### A)    Motion to Quash

Pursuant to Rule 45(c)(3)(a)(iii) and (iv) of the Federal Rules of Civil Procedure, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of privileged or other protected matter and no exception or waiver applies, or . . . subjects a person to undue burden." "Whether a subpoena subjects a witness to undue burden generally raises a question of the subpoena's reasonableness, which 'requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2463 (2d ed. 1995)). "[T]his balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source." *Id.*

---

[2] Plaintiff's request was sent after the October 2, 2006 discovery deadline in this case. *See* Local Rule 16(d). However, as the EEOC is not a "party," the EEOC has filed the present motion out of an abundance of caution.

**B)    Motion for Protection**

A movant seeking a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure must establish good cause and a specific need for protection. *See Ferko v. Nt'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003) (citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)). "'Good cause' exists when justice requires the protection of a party from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* (citing FED. R. CIV. P. 26(c)). In deciding whether to grant a motion for a protective order, the court has significant discretion. *See id.* (citing *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985)).

**ARGUMENT**

As a non-party, the EEOC need not respond to Plaintiff's "discovery motions." *See* CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2209 (observing that discovery against a non-party must be pursued under Federal Rule of Civil Procedure 45). Even if Plaintiff's "Motion for Discovery and Disclosure" is read as a subpoena, federal law prohibits the EEOC from providing Plaintiff with information from other individuals' case records. As the EEOC has already provided Plaintiff with a complete copy of his case record, and with copies of documents that he sent to the San Antonio Hearings Unit after his case was closed, the EEOC respectfully requests that the Court grant the EEOC's Motion for Protection from any additional requests for information and/or documents by Plaintiff.

*A LIE*

*1.*

*2.*
*3.*
*4.*

*THOMAS J THEIS — IRS HUMAN RELATIONS MANAGER EMAILS —2003 DONALD RAY TWOMEY MARGARET WAITES ET. AL*

A.    **Federal Law Prohibits the EEOC from Providing Plaintiff with Information from Other Individuals' Cases**

*PROHIBITIONS*

Plaintiff seeks information from the case record of another individual, Russell Holland.[3]

However, the Privacy Act prohibits the EEOC from disclosing Mr. Holland's records to Plaintiff. The Privacy Act prohibits the disclosure of "any record which is contained in a system of records by any means of communication to any person" absent written request by, or the prior written consent of, the individual to whom the record pertains, unless the disclosure falls within one of twelve statutory exemptions. 5 U.S.C. § 552a(b).  *See also* 29 C.F.R. § 1611.10 ("The Commission shall not disclose any record which is contained in a system of records it maintains, by any means of communication to any person or to another agency, except pursuant to written request by, or with the prior written consent of the individual to whom the record pertains, unless the disclosure is authorized by one or more provisions of 5 U.S.C. § 552a(b)").  "[T]he term 'record' means any item, collection or grouping of information about an individual that is maintained by an agency. . . ."  5 U.S.C. § 552a(a)(4).  "[T]he term 'system of records' means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol or other identifying particular assigned to the individual. . . ."  5 U.S.C. § 552a(a)(5).  As the Fifth Circuit Court of Appeals recently observed, the Privacy Act's prohibition on unauthorized disclosures has been interpreted broadly, to include oral disclosures, and to include "'*nonconsensual disclosure of any information that has been retrieved from a protected record.*'"  *Jacobs v. Nt'l Drug Intelligence Center*, 423 F.3d 512, 517, 520-521 n.9 (5th Cir. 2005) (emphasis in original) *quoting Orekoya v. Mooney*, 330 F.3d 1, 6 (1st Cir. 2003).  As Mr. Holland has not authorized the disclosure of his

*SSA – IRA SAME ANIMAL*

---

[3]Mr. Holland appears to be an employee of the Social Security Administration who appealed to the EEOC Office of Federal Operations regarding an employment discrimination claim. (Ex. 1 at 8-9.) In contrast, Plaintiff's case involves a discrimination claim against the Internal Revenue Service/Department of the Treasury.  *CONTRAST*

records to Plaintiff as required by the Privacy Act, and because none of the twelve statutory exemptions set forth in Section 552a(b) of the Privacy Act applies in the present case, the Commission respectfully requests that its Motion to Quash Plaintiff's Motion for Discovery and Disclosure be granted.

**B.    Additional Discovery Requests by Plaintiff Are Unduly Burdensome and Harassing, as the EEOC Has Already Provided Plaintiff With a Complete Copy of His Case Record**

The EEOC has already provided Plaintiff with more than 3,000 pages of documents, including a complete copy of his case record, as well as copies of documents that Plaintiff sent to the San Antonio Hearings Unit after his case was closed. (Exs. 2, 3, 4.)  In doing so, the Commission expended considerable resources retrieving Plaintiff's record from the Federal Records Center, reviewing the documents for possible privilege objections, and copying and bates stamping the documents. The EEOC's San Antonio Field Office Legal Unit has also had to divert resources away from its prosecution of private-sector employment discrimination cases in order to respond to Plaintiff's discovery requests.  The EEOC has already provided Plaintiff with a complete copy of his case record, and with copies of documents that he sent to the San Antonio Field Office after his case was closed. As Plaintiff's additional requests for documents and/or information are unduly burdensome, duplicative and harassing, the Commission respectfully requests that its Motion for Protection be granted.

## CONCLUSION

The EEOC respectfully requests that this Court grant its Motion to Quash regarding Plaintiff's Motion for Discovery and Disclosure, since Plaintiff is not entitled to receive information from other individuals' case files.  As the EEOC has already provided Plaintiff with a complete copy of his case record, and with copies of documents that he sent to the San Antonio Hearings Unit

after his case was closed, the EEOC respectfully requests that the Court grant the EEOC's Motion for Protection from any additional requests for information and/or documents by Plaintiff. The EEOC also requests that the Court grant any other relief to which the Court determines the EEOC is entitled.

*[handwritten: EEOC HAS ENTITLEMENTS FOH DOCTORS NEAL PRESANT M.D. BETHESDA, MD JAMES W. ALLEN MD. WILMINGTON, DE MARK N. FRANK MD DENVER, CO HAVE THE SAME]*

Respectfully submitted,

RONALD S. COOPER
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ROBERT A. CANINO
Regional Attorney
Oklahoma State Bar No. 011782

ROBERT B. HARWIN
Associate Regional Attorney
District of Columbia Bar No. 076083

JUDITH G. TAYLOR
Supervisory Trial Attorney
Texas State Bar No. 19708300

/s/ Jennifer Randall
JENNIFER RANDALL
Trial Attorney
Colorado State Bar No. 033240

EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION
San Antonio District Office
5410 Fredericksburg Rd., Ste. 200
San Antonio, Texas 78229-3555
Telephone: (210) 281-7636
Facsimile: (210) 281-7669

## CERTIFICATE OF CONFERENCE

I hereby certify that EEOC Trial Attorney Jennifer Randall and EEOC Supervisory Trial
Attorney Judith Taylor conferred with Plaintiff by phone on September 22, 2006. Plaintiff
indicated that he was opposed to the EEOC's Motion to Quash his subpoena of EEOC
Administrative Judge Robert Powell, and Plaintiff EEOC's motion for continuance, and that he
was opposed to everything that the EEOC will do in this case. Counsel for Defendant, R. Barry
Robinson, is not opposed to the EEOC's motion.

*AUSA*

1:05CV00243SS

/s/ Jennifer Randall
JENNIFER RANDALL

EEOC #3602003
82864

*QUASH BUESGENS
AND
R. BARRY ROBINSON IS NOT OPPOSED
TO THAT
SO BUESGENS FILES
CIVIL NO. 1:06CV01964 RBW
WHERE IS JENNIFER RANDALL?*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered, as designated below, on this the 20th day of October 2006.

Michael L. Buesgens                    ☐ Hand Delivery
3112 Windsor Rd. #1322                 ☑ Federal Express
Austin, Texas 78703                    ☐ Certified Mail, Return Receipt Requested

R. Barry Robinson                      ☐ Hand Delivery
Assistant U.S. Attorney                ☐ U.S. First Class Mail, Postage Prepaid
816 Congress Avenue Suite 1000         ☐ Certified Mail, Return Receipt Requested
Austin, Texas  78701                   ☑ Electronic Filing

  /s/ Jennifer Randall
JENNIFER RANDALL

*1:05CV00243 SS*

EXHIBIT 6

*FEDERAL TORT CLAIMS ACT*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL L. BUESGENS, | § | *R-BARRY ROBINSON* |
| Plaintiff, | § | |
| | § | Civil Action No. A-06-CA-967-LY ✓ |
| v. | § | |
| | § | |
| UNITED STATES OF AMERICA, *et al,* | § | *DOCUMENT 74* |
| *IRS* | § | *FILED: 6/29/2007* |
| Defendants. | § | ✓ |

*DEPARTMENT OF TREASURY*

## DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT[1]

COMES NOW Defendant, United States of America, by and through the U.S. Attorney

for the Western District of Texas, and pursuant to Federal Rules of Civil Procedure 12 and 56(c),

files this Motion to Dismiss Or, In The Alternative, For Summary Judgment. In support thereof,

the United States respectfully offers the following:

## I. INTRODUCTION *MISREPRESENTATIONS*

Plaintiff Michael L. Buesgens was formerly employed as a Contact Representative with

the Internal Revenue Service (IRS), a seasonal position that involved working on the Customer

Service Toll-Free system. Prior to his disability retirement in March 2005, Plaintiff filed three

administrative EEO complaints that were consolidated before the EEOC into a single hearing.

The issues in Plaintiff's EEO complaints concerned events that occurred in the Fall of 2002 and

the Spring of 2003. The primary allegations were reprisal for Plaintiff's prior participation in

EEO activity and the agency's failure to provide reasonable accommodation for his mental

disability (Bipolar & depression). The personnel actions then at issue were the Plaintiff's

---

[1] Following the Federal Defendant's Motion to Dismiss or for Transfer of Venue, this case was transferred from the District of Columbia (1:06-CV-1558RCL) and filed in this Court on December 8, 2006 (A-06-CA-967-LY). The transferring court did not rule on the Federal Defendants' motion to dismiss, which is still pending before this Court.

forfeiture of 71 hours of "use or lose" annual leave in January 2003, and the agencies' denial of his request for job restructuring that would have eliminated an essential duty of Plaintiff's position (telephone work).

Following exhaustion of the administrative process, these issues were brought before District Court Judge Sam Sparks of the United States District Court for the Western District of Texas. On December 6, 2006, Judge Sparks ruled against Buesgens, granting the government's Motion for Summary Judgment on all issues.[2] On September 1, 2006, just prior to Judge Sparks' ruling, Buesgens also filed this FTCA lawsuit in the United States District Court for the District of Columbia. In this suit, Buesgens makes the same allegations (EEOC violations, failure to reasonably accommodate) that comprised his original suit, and he additionally charges that these conditions led to his constructive discharge.[3] On November 13, 2006, District Court Judge Royce C. Lamberth granted the government's motion to transfer this case to the United States District Court for the Western District of Texas.[4]

Additionally, on May 14, 2007, Buesgens filed yet another civil action, this time in the Waco Division of the United States District Court for the Western District of Texas.[5]  On May 21, 2007 District Court Chief Judge Walter S. Smith, Jr. entered an order transferring the case to the Austin Division of the United States District Court for the Western District of Texas.[6]  Upon reviewing the complaint, District Court Judge Sam Sparks—noting that "Despite repeated judgments denying him relief, Buesgens continues to file and pursue legal action related to his housing and employment" (*See* Opinion and Order, *Buesgens v. Travis County, Texas, et al.*, A-

---

[2] *See Buesgens v. Snow*, No. A-05-CA-243-SS, DKT #105.
[3] *See* Opinion and Order in *Buesgens v. Travis County, Texas, et al.*, No. A-07-CA-427-SS, DKT #4, p. 3 where the court enumerates Buesgens' allegations in the case at bar, *Buesgens v. the United States et al.*, No. A-06-CA-0967.
[4] District of Columbia Circuit case, *Buesgens v. United States of America, et al.*, 1:06-CV-1558-RCL, is now *Buesgens v. United States of America, et al.*, A-06-CV-967-LY.
[5] *See Buesgens v. Travis County, et al.*, W-07-CV-150.
[6] *See Buesgens v. Travis County, et al.*, A-07-CV-427-SS.

07-CA-427-SS, at p. 8 (W.D.Tex. June 20, 2007)—dismissed the complaint "as an abuse of the litigation process," and barred Buesgens "from filing any future civil actions in any federal court in the United States without first seeking leave of the Court in which he wishes to file the action." *Id.* at 10.

## II. FACTUAL SUMMARY *MISREPRESENTATIONS*

*See* Factual Appendix in *Buesgens v. Snow*, No. A-05-CA-243-SS, DKT #86.

### III. STANDARD OF REVIEW

**A.   Motion to Dismiss Standard.**

"Under rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief" and "the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Taylor v. Books A Millions, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

**B.   Summary Judgment Standard.**

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). First, the moving party has the initial burden of showing there is

no genuine issue of any material fact and judgment should be entered as a matter of law. FED.R.CIV.P. 56(c); *Celotex*, 477 U.S. at 322-23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256-57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

## IV. ARGUMENT AND AUTHORITIES

**A. All Defendants other than the United States should be Dismissed for Lack of Subject Matter Jurisdiction.** *MISREPRESENTATIONS*

**1. All Defendants, except for the United States, should be Dismissed as Suits Brought Under the FTCA must be Brought Against the United States.**

"All suits brought under the FTCA must be brought against the United States." *Vernell for and on Behalf of Vernell v. U.S. Postal Service* 819 F.2d 108, 109 (5th Cir. 1987). Accordingly, in another FTCA suit, *Atorie Air, Inc. v. F.A.A. of U.S. Dept. of Transp.*, 942 F.2d 954, 957 (5th Cir. 1991), the court held that "All defendants other than the United States were properly dismissed for lack of subject matter jurisdiction." *Id.*

In this case, Plaintiff Buesgens has brought his complaint under the Federal Tort Claims Act.[7] As the subject matter jurisdiction of this court extends only to the United States as a sole defendant, all other defendants should be dismissed.

---

[7] Plaintiff's Complaint filed September 1, 2006, page 14.

4

2. **The United States should be Substituted for all Federal Defendants, who should then be Dismissed for Lack of Subject Matter Jurisdiction.**

When a federal employee is sued as an individual, "the FTCA allows the government to . . . substitute the government as the proper party defendant" if the employees actions are held to be within the scope of employment. *McLaurin v. United States*, 392 F.3d 774, 777 (5th Cir. 2004). "When Congress enacted the FTCA, it waived the government's immunity from liability for certain torts, in particular for the negligent acts of government employees *acting within the scope of their employment*." *Hebert v. United States*, 438 F.3d 483, 486 (5th Cir. 2006) (emphasis added); *see also* 28 U.S.C. §1346 (b)(1).

As Buesgens has already claimed that the federal employees named in the suit were "acting within the scope of their official duties,"[8] the United States should be substituted, and all federal employee defendants should be dismissed for lack of subject matter jurisdiction.

B. **All Alleged Acts Allegedly Committed by Non-Federal Defendants Should be Dismissed for Lack of Subject Matter Jurisdiction.**

"Under the FTCA, 28 U.S.C. § 1346(b), if an act was not committed by an employee of the United States, then the district court must dismiss for lack of subject matter jurisdiction." *Hebert*, 438 F.3d at 485-86. In this case, Buesgens has listed many claims against non-governmental employees and agencies.[9] As Buesgens has brought this suit under the FTCA, all of these claims should be dismissed for lack of subject matter jurisdiction.

C. **Buesgens' FTCA Claim Should Be Dismissed As Title VII is the Exclusive Remedy For Claims of Discrimination in Federal Employment.**

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769 (1941). In determining the

---

[8] Plaintiff's SF 95 claim form, attached to Plaintiff's Complaint at page 57.
[9] Plaintiff's Complaint has 90 numbered claims. The following are not against the Government, any of its agencies, or employees: 15, 16, 33-39, 47-61, and 81.

5

scope of the government's waiver of sovereign immunity, the Supreme Court has held that Title VII is the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Serv. Admin*, 425 U.S. 820, 829 (1976), (adopted by the Fifth Circuit in *Newbold v. U.S. Postal Service*, 614 F.2d 46 (5th Cir. 1980)); *see also Rowe v. Sullivan*, 967 F.2d 186, 189 (5th Cir. 1992) ("The precedent in this Circuit, however, is clearly that *Brown* stands for the proposition that 'Title VII is the exclusive judicial remedy for claims of discrimination in federal employment.'") (citations omitted). *YES IT DOES*

While Buesgens' FTCA claim against the government does not specifically allege discrimination,[10] it does allege that "violations of EEOC regulations," (PC at 16)[11], a lack of "reasonable accommodation and reassignment," (PC at 17), and a "breach of duty in not using vacancy announcements" (*Id.*) led to Buesgens' "constructive discharge." (*Id.* at 15). These allegations date back to EEOC discrimination and retaliation complaints made by Buesgens in 2002 and 2003.[12] Accordingly, as the underlying "causes" for Buesgens' alleged constructive discharge are alleged employment discrimination and retaliation—and as Buesgens was a federal employee at the time—his exclusive judicial remedy would be found under Title VII. *See also Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996) ("Insofar as Jackson's allegations . . . arise out of the same facts as his employment discrimination claims . . . they are preempted by Title VII and cannot afford an independent ground for relief.").

Additionally, "anti-retaliation provisions of Title VII likewise provide the exclusive remedy for retaliation against" federal employees, *Lowrey v. Texas A&M University System*, 117

[10] Plaintiff's Complaint does allege a discrimination claim against the National Treasury Employees Union at page 17.
[11] "PC at 16" refers to Plaintiff's Complaint, Filed September 1, 2006, at page 16.
[12] On December 6, 2006, the United States District Court for the Western District of Texas granted the Government's motion for summary judgment in *Buesgens v. John W. Snow, Secretary of the Treasury*, A-05-CA-243-SS finding no EEOC violations.

F.3d 242, 248 (5th Cir. 1997) (extending the principle to cover employees of federally funded educational institutions). Accordingly, as Buesgens' original EEOC claims were raised under Title VII, any retaliation claims arising from those claims would also find their exclusive judicial remedy under Title VII. Therefore, even if Buesgens were to represent his alleged constructive discharge as a retaliatory action—in reaction to his earlier EEOC complaints—this "new" FTCA claim would still be barred as Title VII precludes alternate remedies for retaliatory actions stemming from claims made under Title VII.

**D. Buesgens' FTCA Claim Should be Dismissed as he Fails to State a Claim For Which Relief Can Be Granted. He Has Not Plead Specific Facts and Has Only Made Conclusory Allegations.** *YES HE HAS*

A district court considering a motion to dismiss for failure to state a claim "must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* See also *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). ("In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . . ."); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (*citing Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("'Conclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss.").

Buesgens' FTCA complaint should be dismissed as he has not plead any specific facts. Buesgens' complaint is merely a long list of conclusory allegations such as: "GOVERNMENT EMPLOYEE HAD A <u>DUTY</u> THAT HE <u>BREACHED</u>;" (PC at 14) (emphasis in original); "GOVERNMENT AND EMPLOYEE <u>FAILED DUE DILIGENCE</u>;" (*Id.*) (emphasis in

7

original); "THE <u>CONSTRUCTIVE DISCHARGE</u> IS A <u>DIRECT RESULT</u> OF GOVERNMENT EMPLOYEES <u>BREACH OF DUTY OF CARE;</u>" (*Id.* at 15) (emphasis in original); and "<u>BREACH OF DUTY IN DISMISSING</u> BUESGENS EEO <u>COMPLAINTS</u> IN 2005." (*Id.* at 17) (emphasis in original). In fact, some of his claims, like claim number four's charge of "<u>NEGLIGENCE</u>, MIS<u>FEASANCE</u> AND NON <u>FEASANCE</u>." (*Id.* at 14) (emphasis in original), do not even amount to conclusory allegations. As Buesgens has not offered anything more than his conclusory allegations, his FTCA claim should be dismissed for failure to state a claim.

Additionally, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting 2A *Moore's Federal Practice* ¶ 12.07 [2.-5] at 12-91). It is established in the Fifth Circuit that "[t]o show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) (including a list of seven relevant factors to be considered when determining reasonableness). In *Barrow*, the plaintiff's constructive discharge claim was dismissed as he had "introduced no evidence on any of the seven factors listed above. That list is not exclusive, but Barrow has introduced no evidence sufficient to raise a genuine dispute on any other basis for constructive discharge." *Id.*

✓ MISREPRESENTATION

Buesgens' constructive discharge claim should be dismissed as Buesgens has failed to claim that 1) his working conditions were intolerable, and 2) that the employer made the conditions intolerable. Accordingly, his complaint lacks two allegations that are necessary elements to obtaining relief. Additionally, as in *Barrow*, Buesgens has introduced no evidence to support his claim of constructive discharge. *See also Williams v. Administrative Review Board,*

8

376 F.3d 471, 480 (5ᵗʰ Cir. 2004) ("Establishing a constructive discharge claim requires proof of a work environment that is more offensive than that required for establishing a hostile work environment claim.") (*citing Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5ᵗʰ Cir. 2001)). Accordingly, his FTCA claim should be dismissed for failure to state a claim.

**E.   Buesgens' Claim Should Be Dismissed Because He Failed to Timely Exhaust His Administrative Remedies.[13]**

Prior to bringing suit, federal employees must timely exhaust their administrative remedies as defined by the statute and the regulations promulgated thereunder. *Brown*, 425 U.S. at 835 (1976); *Fitzgerald v. Secretary, U.S. Dept. of Veterans Affairs*, 121 F.3d 203, 206 (5ᵗʰ Cir. 1997); *Tolbert v. United States*, 916 F.2d 245, 247 (5ᵗʰ Cir. 1990) (failure to exhaust wholly deprives the district court of jurisdiction over the case).

*MISREPRESENTATIONS*

Buesgens failed to timely exhaust his administrative remedies as he never filed an EEOC complaint regarding his alleged constructive discharge. *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979) ("The timely filing of an administrative complaint is a condition precedent to bringing a discrimination suit under Title VII."); *Jenkins v. United Gas Corp.*, 400 F.2d 28, 30 (5ᵗʰ Cir. 1968) (Under Title VII, access to the courts is limited "by conditioning the filing of suit upon a previous administrative charge with the EEOC"). Accordingly, as Buesgens has never made an EEOC complaint regarding his alleged constructive discharge, he is barred from raising that claim in federal court. *Anderson v. Lewis Rail Service Co.*, 868 F.2d 774, 775 (5ᵗʰ Cir. 1989). ("In this circuit a district court may consider only those grounds of a Title VII complaint that were raised in the administrative process."). *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7ᵗʰ Cir. 1985) ("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as

---

[13] This section builds upon the argument—made in section C of this brief—that Title VII is the exclusive remedy for Buesgens' federal employment discrimination claim.

9

deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.").

While the Fifth Circuit in *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir. 1981) held "it is unnecessary for a Plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge," *Id.* at 414, it also limited a district court's ancillary jurisdiction to hear such a claim to situations where the retaliation claim "grows out of an administrative charge that is properly before the court." *Id.* In this case, Buesgens has no other EEOC claims before the court so the "grows out of" extension from *Gupta* would not apply to his situation.

F.    **Buesgens' Claim Based on His Alleged Constructive Discharge Should be Dismissed for Lack of Jurisdiction Because He Failed to Allege Exhaustion of Administrative Remedies.**

Buesgens' claim should be dismissed for lack of jurisdiction, as he failed to allege exhaustion of administrative remedies in his judicial complaint. *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979). ("A judicial complaint that fails to allege exhaustion of administrative remedies or that the plaintiff should for some adequate reason be excused from this requirement is properly subject to dismissal."); *Beale v. Blount*, 461 F.2d 1133, 1140 (5th Cir. 1972) ("[T]he doctrine of exhaustion of available administrative remedies requires a federal court plaintiff to establish that all claims which could have been entertained by the administrative agency involved were in fact presented to that agency for resolution.")

In *Beale*, the plaintiff sought to circumvent this exhaustion requirement by asserting federal question jurisdiction pursuant to 28 U.S.C. §1331. However, in that case the Fifth Circuit held that "may not be construed to constitute [a] waiver[] of the federal government's defense of sovereign immunity." *Id.* at 1138. *See also, Rolland v. United States Dept. of Veterans Affairs,*

146 Fed. Appx. 743, 745 (5th Cir. 2005) (not selected for publication) ("Sovereign immunity protects the federal government and its agencies from being sued without consent . . . Title VII permits suit against the federal government . . . *if all administrative remedies are exhausted first*.") (emphasis added). Accordingly, while Buesgens' attempts to bring his suit under the FTCA, the FTCA cannot be used to cure Buesgens' defect of not making a showing of exhaustion of administrative remedies, and therefore, the claim should be dismissed for lack of jurisdiction.

G.    **Buesgens' FTCA Claim Should be Dismissed as it is Precluded by the Principles of Res Judicata and Collateral Estoppel.**   *MISREPRESENTATION*

"[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenswon*, 397 U.S. 436, 443 (1970). "Collateral estoppel depends on three elements: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995).

While res judicata and collateral estoppel have different meanings—res judicata "bars a suit on the same cause of action not only as to all matters offered at the first proceeding, but also as to all issues that could have been litigated [while] [c]ollateral estoppel, however, precludes relitigation only of those issues actually litigated in the original action," *Johnson v. United States*, 576 F.2d 606, 611 (5th Cir. 1978)—such a distinction is irrelevant in this case.

In order to demonstrate constructive discharge, a federal employee "bears the burden of creating a fact issue with respect to his claim for duress . . . [as] there is a presumption that a seemingly voluntary resignation was, in fact, voluntary." *United States v. Thompson, III*, 749

11

F.2d 189, 194 (5th Cir. 1984). Accordingly, for Buesgens to demonstrate constructive discharge, he would need to "tender objective evidence that the resignation was the product of duress," and "that the government's action left him no other choice but to resign." *Id.*

In his complaint, Buesgens alleges that the government violated EEOC regulations, (P.C. at 16), and refused to offer reasonable accommodation or reassignment to Buesgens. (*Id.* at 17). However, there is no question that these identical issues have already been litigated by the same parties, and that the determination of these issues in the prior action was a necessary part of the judgment in that earlier action.

On December 6, 2006, the district court (W.D.TX) granted the Government's motion for summary judgment in *Buesgens v. John W. Snow, Secretary of the Treasury*, 1:05-CA-243-SS finding no EEOC violations. These alleged violations are what Buesgens is now using to support his constructive discharge claim. Under a collateral estoppel approach, these issues cannot be relitigated, though new claims stemming from those issues—that have not yet been litigated— might not be foreclosed. However, under the doctrine of res judicata, these issues—along with the constructive discharge claim *that could have been brought in the earlier case*—are barred.

Additionally, even if Buesgens were to claim—under a collateral estoppel approach— that his constructive discharge claim is in fact a new and independent cause of action that stems from the earlier issues, constructive discharge is not a cause of action under Federal law or under Texas law.

> Under federal law, the constructive discharge doctrine is an alternative way of proving an adverse employment action in Title VII and other cases, but constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action where the employee quits instead of being fired.

*Wells v. City of Alexandria*, 2004 WL 909735, at *3 (5th Cir. Apr. 29, 2004) (not selected for publication); *Giles v. General Elec. Co.*, 1999 WL 202573, at *7 (N.D. Tex. Apr. 6 1999) (not selected for publication) ("Plaintiff has not cited, and the Court cannot discover, any Texas case law permitting an independent basis for recovery for constructive discharge.") Accordingly, as Buesgens' constructive discharge claim does not constitute a new cause of action, this case would merely be a relitigation of those earlier claims. Therefore, Buesgens' claim is preempted by both res judicata and collateral estoppel approaches.

*1:06CV00967LY-RP*
*FTCA - TORT CLAIM*

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court dismiss Plaintiff's action, in its entirety, against the United States of America, and all other named defendants, with prejudice.

Respectfully Submitted,

JOHNNY SUTTON
UNITED STATES ATTORNEY

By:     /s/ R. Barry Robinson
        R. BARRY ROBINSON
        Assistant United States Attorney
        Arkansas State Bar No. 85206
        816 Congress Avenue, Suite 1000
        Austin, Texas 78701
        (512) 916-5858/Fax (512) 916-5854

ATTORNEYS FOR DEFENDANTS

*HOT AIR FROM R. BARRY ROBINSON AUSA*
*NO PRODUCTION*
*NO DOCUMENTS*
*NO SEQUENCE OF EVENTS*
*NO IDENTIFICATION OF PLAYERS*

*KAREN MEWIK*
*PAT S. GENIS*
*EEOC*
*JENNIFER RANDALL*

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of June 2007, I electronically filed the foregoing with

the Clerk of the court using the CM/ECF system which will send notification of such filing to the

following:

Gregory Scott Cagle
Armbrust & Brown, LLP
100 Congress Ave, Ste. 1300
Austin, Texas 78701

Shelley B. Marmon
Crady, Jewett & McCulley
2727 Allen Parkway, Ste. 1700
Houston, Texas 77019

And I hereby certify that I have served the document to the following non-CM/ECF participants

below by Certified Mail, Return Receipt Requested, First Class U.S. Mail, or via Facsimile:

Michael L. Buesgens
3112 Windsor Ave., A322
Austin, Texas 78703

Karen Melnik
U.S. Attorney's Office
555 4th Street, NW
Washington, DC 20530

Gregory O'Duden, NTEU
1750 H Street, NW
Washington, DC 20006

Julie Wilson, NTEU
1750 H Street, NW
Washington, DC 20006

L. Pat Wynns, NTEU
1750 H Street, NW
Washington, DC 20006

*RUSSELL BOKEUANA*
*NTEU CHIEF*
*STEWARD*
*NOWHERE TO BE FOUND*

/s/ R. Barry Robinson
R. BARRY ROBINSON
Assistant United States Attorney

14

EXHIBIT 7

# FEDERAL TORT CLAIMS ACT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

2007 JUL 11 AM 8: 25

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

MICHAEL BUESGENS, §
                    PLAINTIFF, §
                              §
V.                            §
                              §
                              §  CAUSE NO. A-06-CA-967-LY ✓
UNITED STATES OF AMERICA;     §
MICHAEL SALYARDS, GENERAL     §
LEGAL SERVICES ATTORNEY,      §
INTERNAL REVENUE SERVICE;     §
MARCIA H. COATES, DIRECTOR EEO; §
CHARLES G. HERNDON, FORMER    §
INTERNAL REVENUE SERVICE      §
EMPLOYEE; MELINDA ESTRADA,    §
SUPERVISOR, EEO; COLLEEN M.   §
KELLEY, PRESIDENT, NATIONAL   §
TREASURY EMPLOYEE UNION;      §
FEDERAL LABOR RELATIONS       §
AUTHORITY; CARI M. DOMINGUEZ, §
CHAIR, EQUAL EMPLOYMENT       §
OPPORTUNITY COMMISSION; KAY   §
COLES JAMES, DIRECTOR, OFFICE OF §
PERSONAL MANAGEMENT; DONALD   §
R. TAWNEY, SUPERVISOR, INTERNAL §
REVENUE SERVICE; MARGARET     §
WAITES, EEO, REASONABLE       §
ACCOMMODATION COORDINATOR;    §
JOHN W. SNOW, SECRETARY,      §
DEPARTMENT OF THE TREASURY;   §
THOMAS THEIS, IRS, LABOR      §
RELATIONS; OSCAR LEAL, IRS, LABOR §
RELATIONS DEPARTMENT OF       §
TREASURY; UNITED STATES OFFICE §
OF SPECIAL COUNSEL, O.S.C.,    §
OFFICIAL CAPACITY; ANNA       §
MEDLOCK, SUPERVISOR, INTERNAL §
REVENUE SERVICE; F. RUSSELL    §
GEORGE, INSPECTOR, GENERAL TAX §
ADMINISTRATION; NANCY SESSION, §
SUPERVISOR, INTERNAL REVENUE  §
SERVICE; CHARLES WASHINGTON, JR., §
DIRECTOR, AUSTIN COMPLIANCE   §

DOCUMENT 78
FILED: 7/11/2007

R-BARRY ROBINSON
KAREN MEWLK
PAT S. GEOIS
SUSAN BECKER
ELIZABETH KARPATI
AUSA'S

MICHAEL SALYARDS
THOMAS R. STANTON
CHRIS ATTIG
MARK S. KAIZEN
IRS-GLS-EEO
ATTORNEYS

NTEU
EEOC ET. AL.

CENTER, IRS; ANGELIA GOODEY-            §
DOYLE, COUNSELOR IN HOUSE, EEO,         §
DEPARTMENT OF THE TREASURY;             §
COMMISSIONER OF INTERNAL                §
REVENUE SERVICE, MARY E.                §
CARROLL, SUPERVISOR, INTERNAL           §
REVENUE SERVICE; MARTHA                 §
SCHANHALS, SUPERVISOR, INTERNAL         §
REVENUE SERVICE; JAMES PARKER,          §
REGIONAL DIRECTOR, DEPARTMENT           §
OF THE TREASURY; VICTOR REYES,          §
SUPERVISOR "IN HOUSE" EEO;              §
CHERYL VUILLERMIER, COUNSEL             §
"IN HOUSE" EEO; DENNIS COLLINS,         §
INSPECTOR, TREASURY INSPECTOR           §
GENERAL FOR TAX ADMINISTRATION;         §
ROBERT E. POWELL, EEOC                  §
ADMINISTRATIVE JUDGE;                   §
KATYE DUDERSTADT, EEOC                  §
SUPERVISORY JUDGE; MARY-ELLAN           §
KRCHA, TORT CLAIMS SUPERVISOR;          §
FALCON APARTMENTS OF AUSTIN,            §
INC.; FEDERAL PARTNERS ARNOLD           §
TAUCH, JACK C. MOSS, KYLE D.            §
TAUCH; AMANDA WILSON-TORRES,            §
FALCON RIDGE APARTMENTS;                §
DORIENNE BONILLA, SUPERVISOR            §
I.R.S. AND TENANT FALCON RIDGE          §
APARTMENTS; MANDY ROGERS,               §
MANAGER, GREYSTAR                       §
MANAGEMENT SERVICES AND                 §
FALCON RIDGE APARTMENTS; DEBI           §
WEHMEIER, REGIONAL VICE                 §
PRESIDENT GREYSTAR                      §
MANAGEMENT SERVICES, LP;                §
CHARLES E. BROWN, ATTORNEY,             §
FALCON RIDGE APARTMENTS OF              §
AUSTIN I, INC.; GREP GENERAL            §
PARTNER LLC, ROBERT A. FAITH,           §
GENERAL PARTNER; GREYSTAR               §
MANAGEMENT SERVICES LP;                 §
RICHARD R. AUBY, SUPERVISOR,            §
INTERNAL REVENUE SERVICE,               §

*JENNIFER RANDALL*
*EEOC*
*ATTORNEY*
*DENVER*
*COLORADO*

2

THOMAS LEGER, SUPERVISOR,                    §
INTERNAL REVENUE SERVICE;                    §
DANIEL PALACIOS, SUPERVISOR,                 §
INTERNAL REVENUE SERVICE;                    §
ARMBRUST R. BROWN, LLP; BEN                  §
FLOREY, JR., ATTORNEY; DEREK                 §
HOWARD, ATTORNEY; CRADY,                     §
JEWETT, MCCULLEY LLP;                        §
DEPARTMENT OF HEALTH AND                     §
HUMAN SERVICES, FEDERAL                      §
OCCUPATIONAL HEALTH; ALPHONSO                §
JACKSON, DEPARTMENT OF HOUSING               §
AND URBAN DEVELOPMENT,                       §
SECRETARY; GREG ABBOTT, TEXAS                §
ATTORNEY GENERAL; UNITED                     §
STATES POSTAL SERVICE, POSTAL                §
INSPECTION SERVICE; ROGER                    §
WILLIAMS, TEXAS SECRETARY OF                 §
STATE; CAROLE KEETON                         §
STRAYHORN, TEXAS COMPTROLLER;                §
WILLIAM S. WARREN, WARREN LAW                §
FIRM; AUSTIN APARTMENT                       §
ASSOCIATION; DOUG AND LINDA                  §
JERDET, NATIONAL TENANT                      §
NETWORK, NTND, INC.; STATE FARM              §
INSURANCE, JAY VATH, CLAIMS                  §
INVESTIGATOR AND KEN CRONE,                  §
AGENT;                                       §
                    DEFENDANTS.              §

## ORDER

Before the Court are Defendant's Supplemental Motion to Dismiss or, in the alternative, for

Summary Judgment filed June 29, 2007 (Doc. #74) and Plaintiff's Response filed July 5, 2007 (Doc.

#76). Having considered the motion and response, the Court is of the opinion that the motion should

be granted based upon the reasoning to follow.

3

In its motion, Defendant United States of America argues that the United States should be substituted for all the federal Defendants and that all non-federal Defendants should be dismissed for lack of subject matter jurisdiction as Plaintiff Michael L. Buesgens's claims, as asserted in his Complaint, have been brought under the Federal Tort Claims Act ("FTCA") . "All suits brought under the FTCA must be brought against the United States." *Atorie Air, Inc. V. Federal Aviation Admin.*, 942 F.2d 954, 957 (5th Cir. 1991) (citing *Vernell v. United States Postal Service*, 819 F.2d 108, 109 (5th Cir. 1987)). The United States further argues that Buesgens conclusory allegations fail to state a claim for which relief can be granted. This Court agrees. Buesgens's rambling and often incoherent response appears to request for an additional sixty days to respond to the United States' motion. The Court **DENIES** Buesgens' request for additional time. Reviewing the pleadings in this cause, along with the applicable case law cited by the United States in its motion, the Court finds that the motion should be granted, dismissing all claims against all Defendants in this cause.

In addition, the Court finds that United States District Judge Sam Sparks's Opinion and Order in a related action, *Buesgens v. Travis County, Texas, et al.*, No. A-07-CA-427-SS, filed June 21, 2007 (Doc. #4), clearly and accurately sets forth Plaintiff Michael L. Buesgens's actions before this Court. As noted by Judge Sparks in his Opinion and Order, despite repeated judgments denying him relief, Buesgens continues to file and pursue frivolous lawsuits raising issues related to his housing and his employment that have already been litigated in numerous prior actions. In each successive case, Buesgens attempts to add "new" claims seeking relief against persons and entities he believes were responsible for his failure to achieve relief in his prior cases. The instant action has proven to be a part of the same pattern of conduct by Buesgens. Therefore, this Court therefore adopts the findings and conclusions of Judge Sparks contained in his Opinion and Order.

4

**IT IS THEREFORE ORDERED** that Defendant's Supplemental Motion to Dismiss or, in the alternative, for Summary Judgment filed June 29, 2007 (Doc. #74) is **GRANTED.** All claims and causes of action brought by Plaintiff Michael L. Buesgens against all Defendants in this cause are **DISMISSED WITH PREJUDICE.**

Plaintiff Michael L. Buesgens is further reminded that pursuant to United States District Judge Sam Sparks's Opinion and Order in *Buesgens v. Travis County, Texas, et al.*, No. A-07-CA-427-SS, filed June 21, 2007 (Doc. #4), he remains barred from filing any future civil actions in any federal court in the United States without first seeking leave of the Court in which he wishes to file the action.

1:06CV00967LY-RP

A Final Judgment in this cause shall be filed separately.

SIGNED this 12th day of July, 2007.

*Lee Yeakel*

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

JUDGE EARL LEROY YEAKEL, III
U.S. DISTRICT COURT
AUSTIN, TEXAS
SHOULD HAVE RECUSED HIMSELF
IN ANY OF BUESGENS CASES
IN APRIL 2006

*FEDERAL TORT CLAIMS ACT*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

2007 JUL 11 AM 8: 26

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

MICHAEL BUESGENS, §
 PLAINTIFF, §
 §
V. §
 §
 § CAUSE NO. A-06-CA-967-LY
UNITED STATES OF AMERICA; §
MICHAEL SALYARDS, GENERAL §
LEGAL SERVICES ATTORNEY, §
INTERNAL REVENUE SERVICE; §
MARCIA H. COATES, DIRECTOR EEO; §
CHARLES G. HERNDON, FORMER §
INTERNAL REVENUE SERVICE §
EMPLOYEE; MELINDA ESTRADA, §
SUPERVISOR, EEO; COLLEEN M. §
KELLEY, PRESIDENT, NATIONAL §
TREASURY EMPLOYEE UNION; §
FEDERAL LABOR RELATIONS §
AUTHORITY; CARI M. DOMINGUEZ, §
CHAIR, EQUAL EMPLOYMENT §
OPPORTUNITY COMMISSION; KAY §
COLES JAMES, DIRECTOR, OFFICE OF §
PERSONAL MANAGEMENT; DONALD §
R. TAWNEY, SUPERVISOR, INTERNAL §
REVENUE SERVICE; MARGARET §
WAITES, EEO, REASONABLE §
ACCOMMODATION COORDINATOR; §
JOHN W. SNOW, SECRETARY, §
DEPARTMENT OF THE TREASURY; §
THOMAS THEIS, IRS, LABOR §
RELATIONS; OSCAR LEAL, IRS, LABOR §
RELATIONS DEPARTMENT OF §
TREASURY; UNITED STATES OFFICE §
OF SPECIAL COUNSEL, O.S.C., §
OFFICIAL CAPACITY; ANNA §
MEDLOCK, SUPERVISOR, INTERNAL §
REVENUE SERVICE; F. RUSSELL §
GEORGE, INSPECTOR, GENERAL TAX §
ADMINISTRATION; NANCY SESSION, §
SUPERVISOR, INTERNAL REVENUE §
SERVICE; CHARLES WASHINGTON, JR.,§
DIRECTOR, AUSTIN COMPLIANCE §

DOCUMENT 79
FILED: 7/11/2007
 IRS
DONALD RAY TAWNEY
THOMAS F. THEIS
MARGARET F. WAITES
MELINDA C. ESTRADA
ANNA S. MEDLOCK
NANCY SESSION
CHARLES WASHINGTON
MARTHA SCHULTHES
MARK EVERSON
JOHN W. SNOW
HENRY PAULSON
ET. AL.

CENTER, IRS; ANGELIA GOODEY-
DOYLE, COUNSELOR IN HOUSE, EEO,
DEPARTMENT OF THE TREASURY;
COMMISSIONER OF INTERNAL
REVENUE SERVICE, MARY E.
CARROLL, SUPERVISOR, INTERNAL
REVENUE SERVICE; MARTHA
SCHANHALS, SUPERVISOR, INTERNAL
REVENUE SERVICE; JAMES PARKER,
REGIONAL DIRECTOR, DEPARTMENT
OF THE TREASURY; VICTOR REYES,
SUPERVISOR "IN HOUSE" EEO;
CHERYL VUILLERMIER, COUNSEL
"IN HOUSE" EEO; DENNIS COLLINS,
INSPECTOR, TREASURY INSPECTOR
GENERAL FOR TAX ADMINISTRATION;
ROBERT E. POWELL, EEOC
ADMINISTRATIVE JUDGE;
KATYE DUDERSTADT, EEOC
SUPERVISORY JUDGE; MARY-ELLAN
KRCHA, TORT CLAIMS SUPERVISOR;
FALCON APARTMENTS OF AUSTIN,
INC.; FEDERAL PARTNERS ARNOLD
TAUCH, JACK C. MOSS, KYLE D.
TAUCH; AMANDA WILSON-TORRES,
FALCON RIDGE APARTMENTS;
DORIENNE BONILLA, SUPERVISOR
I.R.S. AND TENANT FALCON RIDGE
APARTMENTS; MANDY ROGERS,
MANAGER, GREYSTAR
MANAGEMENT SERVICES AND
FALCON RIDGE APARTMENTS; DEBI
WEHMEIER, REGIONAL VICE
PRESIDENT GREYSTAR
MANAGEMENT SERVICES, LP;
CHARLES E. BROWN, ATTORNEY,
FALCON RIDGE APARTMENTS OF
AUSTIN I, INC.; GREP GENERAL
PARTNER LLC, ROBERT A. FAITH,
GENERAL PARTNER; GREYSTAR
MANAGEMENT SERVICES LP;
RICHARD R. AUBY, SUPERVISOR,
INTERNAL REVENUE SERVICE,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

1:06CV01558RCL
1:06CV00967LY
TORT CLAIM

FEDERAL TORT
CLAIMS ACT
AND
BANKRUPTCY CASE
NO. 06-11164
ADVERSARY NO
06-01248
07-10008
CIVIL NO.
1:07CV00859
1:06CV01964RBW

2

THOMAS LEGER, SUPERVISOR,                    §
INTERNAL REVENUE SERVICE;                    §
DANIEL PALACIOS, SUPERVISOR,                 §
INTERNAL REVENUE SERVICE;                    §
ARMBRUST R. BROWN, LLP; BEN                  §
FLOREY, JR., ATTORNEY; DEREK                 §
HOWARD, ATTORNEY; CRADY,                     §
JEWETT, MCCULLEY LLP;                        §
DEPARTMENT OF HEALTH AND                     §
HUMAN SERVICES, FEDERAL                      §
OCCUPATIONAL HEALTH; ALPHONSO               §
JACKSON, DEPARTMENT OF HOUSING              §
AND URBAN DEVELOPMENT,                       §
SECRETARY; GREG ABBOTT, TEXAS               §
ATTORNEY GENERAL; UNITED                     §
STATES POSTAL SERVICE, POSTAL               §
INSPECTION SERVICE; ROGER                    §
WILLIAMS, TEXAS SECRETARY OF                 §
STATE; CAROLE KEETON                         §
STRAYHORN, TEXAS COMPTROLLER;               §
WILLIAM S. WARREN, WARREN LAW               §
FIRM; AUSTIN APARTMENT                       §
ASSOCIATION; DOUG AND LINDA                  §
JERDET, NATIONAL TENANT                      §
NETWORK, NTND, INC.; STATE FARM             §
INSURANCE, JAY VATH, CLAIMS                  §
INVESTIGATOR AND KEN CRONE,                  §
AGENT;                                       §
                    DEFENDANTS.              §

1 : 06CV00967LY-RP
1 : 06CV01558RCL

## FINAL JUDGMENT   NOT FINAL

   Before the Court is the above entitled cause of action. On this same date, the Court

signed an order granting Defendant United States of America's motion to dismiss, dismissing

all Plaintiffs' claims against all Defendants in this cause of action. Accordingly, the Court enters

the following Final Judgment pursuant to Federal Rule of Civil Procedure 58.

   **IT IS HEREBY ORDERED** that All claims and causes of action brought by Plaintiff

Michael L. Buesgens against all Defendants in this cause are **DISMISSED WITH PREJUDICE.**

3

**IT IS FURTHER ORDERED** that all further pending motions not expressly granted are hereby **DENIED.**

**IT IS FINALLY ORDERED** that the case hereby **CLOSED.**

SIGNED this _____18th_____ day of July, 2007.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

*EARL LEROY YEAKEL, III*
*AUSTIN, TEXAS*
*1:06 CV00967LY-RP*
*AND*
*C. BARRY ROBINSON - AUSA*

4

EXHIBIT 8

AO 133 (Rev. 9/89) Bill of Costs

# United States District Court

**WESTERN** _____ **DISTRICT OF** TEXAS

*$ 339.00*

MICHAEL L. BUESGENS

**v.**

## BILL OF COSTS

UNITED STATES OF AMERICA, et al.

Case Number: A-06-CA-967-LY

Judgment having been entered in the above entitled action on    7/11/2007    against Plaintiff, Michael L. Buesgens    ,
the Clerk is requested to tax the following as costs:                               Date

| | |
|---|---:|
| Fees of the Clerk - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - $ | |
| Fees for service of summons and subpoena - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | |
| Fees and disbursements for printing - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| Fees for witnesses (itemize on reverse side) - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| Fees for exemplification and copies of papers necessarily obtained for use in the case - - - - - - - - - - - - | 339.00 |
| Docket fees under 28 U.S.C. 1923 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| Costs as shown on Mandate of Court of Appeals - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| Compensation of court-appointed experts - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 - - - - - | |
| Other costs (please itemize) - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| **TOTAL $** | 339.00 |

SPECIAL NOTE: Attach to your bill an itemization and documentation for requested costs in all categories.

## DECLARATION

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the
services for which fees have been charged were actually and necessarily performed. A copy of this bill was mailed today with
postage prepaid to:

Michael L. Buesgens

Signature of Attorney: _R. W. Robinson_

Name of
Attorney:    R. Barry Robinson, AUSA

For: United States of America _____    Date: 18 July 07

Name of Claiming Party

Costs are taxed in the amount of _____    and included in the judgement.

_____    By: _____    _____
Clerk of Court              Deputy Clerk              Date

This form was electronically produced by Elite Federal Forms, Inc.

| WITNESS FEES (computation, cf. 28 U.S.C. 1821 for statutory fees) | | | | | | | |
|---|---|---|---|---|---|---|---|
| NAME AND RESIDENCE | ATTENDANCE | | SUBSISTENCE | | MILEAGE | | Total Cost Each Witness |
| | Days | Total Cost | Days | Total Cost | Days | Total Cost | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | TOTAL | | 0.00 |

## NOTICE

**Section 1924, Title 28, U.S. Code (effective September 1, 1948) provides:**

"Sec. 1924. Verification of bill of costs."

"Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed."

**See also Section 1920 of Title 28, which reads in part as follows:**

"A bill of costs shall be filed in the case and upon allowance, included in the judgment or decree."

**The Federal Rules of Civil Procedure contain the following provisions:**

Rule 54 (d)

"Except where express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless court otherwise directs, but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court."

Rule 6 (e)

"Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, 3 days shall be added to the prescribed period."

Rule 58 (In Part)

"Entry of the judgment shall not be delayed for the taxing of costs."

Entry

Case 1:06-cv-00967-LY     Document 81     Filed 07/18/2007     Page 4 of 4

Copy distributions made as follows:

5 copies =     1 Copy for Plaintiff [not set-up for e-filing]
               4 Copies for Other Non-E-filers

1 copy =       1 Copy for Plaintiff [Plaintiff not set-up for e-filing]

1:06CV00967LY-RP
R. BARRY ROBINSON
AUSA
BILL OF COSTS
ONLY $339.00. TO FILE
MOTION TO DISMISS WITH
A WILLING COURT IN
AUSTIN, TEXAS
DOCKET CLEARED
CASE CLOSED
BURIED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

**BILL OF COSTS**
(Attachment 1)

| | | |
|---|---|---|
| *MICHAEL L. BUESGENS,* | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. A-06-CA-967-LY** |
| | § | **(Civil Action No. 06-1558 (RCL))** |
| *UNITED STATES OF AMERICA, et al.* | § | |
| **Defendants.** | § | |

Itemization for necessary copies:

1.  Defendant's Notice of Appearance
    2 pages x 1 copies x .25/copy                          $      .50

3.  Defendant's Motion to Dismiss Or For Transfer
    Of Venue
    58 pages x 1 copies x .25/copy                         $    14.50

4.  Defendant's Reply in Support of Motion to Dismiss Or
    For Transfer of Venue
    11 pages x 1 copies  x .25/copy                        $     2.75

5.  Defendant's Notice of Substitution of Counsel
    3 pages x 5 copy x .25/copy                            $     3.75

6.  Defendant's Response in Opposition to Plaintiff's
    Motion for Return of Property
    28 pages x 5 copy x .25/copy                           $    35.00

7.  Defendant's Response to Plaintiff's Motion for Sanctions
    5 pages x 5 copy x .25/page                            $     6.25

8.  Defendant's Supplemental Motion to Dismiss Or, In
    The Alternative, For Summary Judgment
    15 pages x 5 copies x .25/page                         $    18.75

9.  Defendant's Response to Plaintiff's Request for
    Production of SF-95 - FTCA Claim dated August 19, 2005
    515 pages x 2 copies x .25/page                        $   257.50

**TOTAL COST OF COPIES**                                   $   339.00

*$339.00 - TORT CLAIM COST*

EXHIBIT 9



## Acting Commissioner of Internal Revenue Kevin M. Brown



Kevin M. Brown is serving
as Acting IRS
Commissioner, presiding
over the nation's tax
administration system, which
collects approximately $2.2
trillion in tax revenue that
funds most government
operations and public
services. With over 100,000

**Acting Commissioner
Kevin M. Brown**

employees and a budget of over $10 billion, the
Commissioner's role encompasses more than simply
collecting individual and corporate taxes.

Mr. Brown has served as the IRS Deputy Commissioner
for Services and Enforcement since 2006. In this role,
he provides the direction and oversight for all major
decisions affecting the four taxpayer-focused divisions:
Wage and Investment, Large and Mid-Size Business,
Small Business/Self-Employed, and Tax Exempt and
Government Entities.  He also provides the executive
direction and leadership for the IRS Criminal
Investigation Division, which investigates income tax
evasion and related financial crimes; the IRS Office of
Professional Responsibility, which administers the laws
and regulations governing the practice of tax
professionals before the IRS; and the new IRS
Whistleblower Office, which will receive information on
tax cheating and provide appropriate rewards to
whistleblowers.

Previously, Mr. Brown was Commissioner, Small
Business/Self-Employed (SB/SE) Division, an
organization that serves 45 million taxpayers who file

*[handwritten notes in right margin:]* WAGE & INVESTMENT DIVISION SAME DIVISION BUESGENS WAS IN HEADQUARTERS FOR W&I IS ATLANTA, GEORGIA

*[handwritten annotation:]* TIGTA

personal, corporate, employment, excise, and estate and gift tax returns.

From 2003 to 2004, Mr. Brown served as the Chief of Staff for IRS Commissioner Everson, assisting with all aspects of the daily operation of the IRS. From 2000 to 2003, he was Division Counsel (SB/SE), Office of Chief Counsel, where he served as the principal legal advisor to the Commissioner for SB/SE and oversaw virtually all of the IRS' Tax Court litigation.

Mr. Brown served as an Assistant to Commissioner Charles O. Rossotti beginning in March 1998, where he helped draft legislation for the IRS Restructuring and Reform Act of 1998. He facilitated a comprehensive review of the IRS Criminal Investigation Division, and provided advice and counsel on a broad range of operational issues and technical legal guidance.

Before joining the IRS, Mr. Brown worked at the Department of Justice as an attorney in the Tax Division's Appellate Section from 1987 through 1996, and served as Counsel to the Assistant Attorney General for Appellate Matters from 1996 through 1998. He received his J.D. from Boston College Law School in 1987 and his B.A. from Hamilton College in 1983. He is a member of the bar in Massachusetts and the District of Columbia.

*MARK EVERSON*
*CHARLES ROSSOTTI*
*DONALD RA/TAWNEY*
*MARY-ELLEN KRCHA*
*MICHAEL SALYARDS*

*KEVIN M. BROWN*
*ACTING COMMISSIONER IRS*
*BEFORE IRS*
*ASSISTANT U.S. ATTORNEY*

*EEOC ATTORNEY*

✓ **Jennifer Ann Randall**

Attorney registration number: 33240 ✓
Original bar admit date: 10/15/2001
Colorado bar admit date: 10/15/2001

**Law school**
   JD, University of Pennsylvania, 2001

(Disclaimer: Please check with the attorney to ensure they
hold an active license in Colorado or other relevant states.)

*EEOC # 360-2003-8286Y*

*EEOC # 360-2006-00307*

*CIVIL NO. 1:05CV0024355*

*AUSTIN, TEXAS*

## Equal Employment Opportunity Commission (EEOC) Denver District Office

303 E. 17th Avenue
Suite 510
Denver CO 80203
Phone: 303-866-1300
TTY: 303-866-1950

**Description:** The EEOC promotes equal opportunity in employment through administrative and judicial enforcement of the federal civil rights laws and through education and technical assistance. The EEOC carries out its work at its headquarters and in 50 field offices throughout the United States. Individuals who believe they have been discriminated against in employment or when applying for employment may file a complaint in person, by mail or by telephone by contacting the nearest EEOC office.. If this field office is not in your immediate area, call toll free 800-669-4000 or 800-669-6820 (TDD) for more information. If an interpreter is needed to file a charge, contact the office prior to filing.



**Colorado Bar Association**

Search
Calendar
Logon

Home                 CLE              Find A Lawyer      Help - FAQ's      Opinions/Rules/:
About the CBA        For the Public   Member             *The Colorado*     Join the CBA
                                      Resources          *Lawyer*

Ethics Committee Home >> Colorado Rules of Professional Conduct >>
Client-Lawyer Relationship

**Rule 1.13 Organization as Client**

*JENNIFER ANN RANDALL*
*EEOC MARCHING ORDERS*

**(a)** A lawyer employed or retained by an organization
represents the organization which acts through its
duly authorized constituents, and the lawyer owes
allegiance to the organization itself, and not its
individual stockholders, directors, officers,
employees, representatives or other persons
connected with the entity.

*EEOC # 360-2003-8286X*
*1:05CV00243SS*
✓ *PROTECTION*

**(b)** If a lawyer for an organization knows that an
officer, employee or other person associated with
the organization is engaged in action, intends to act
or refuses to act in a matter related to the
representation that is a violation of a legal obligation
to the organization, or a violation of law which
reasonably might be imputed to the organization,
and is likely to result in substantial injury to the
organization, the lawyer shall proceed as is
reasonably necessary in the best interest of the
organization. In determining how to proceed, the
lawyer shall give due consideration to the
seriousness of the violation and its consequences,
the scope and nature of the lawyer's representation,
the responsibility in the organization and the
apparent motivation of the person involved, the
policies of the organization concerning such matters
and any other relevant consideration. Any measures
taken shall be designed to minimize disruption of the
organization and the risk of revealing information
relating to the representation to persons outside the
organization. Such measures may include among
others:

✓ *INJURIES*
*ROBERT LYNN POWELL'S*
*BEST INTERESTS*
*OUT OF SCOPE*
*AT*
*EEOC*

**(1)** asking reconsideration of the matter;

**(2)** advising that a separate legal opinion on the
matter be sought for presentation to appropriate

authority in the organization; and

(3) referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act on behalf of the organization as determined by applicable law.

(c) If, despite the lawyer's efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the lawyer may resign in accordance with Rule 1.16.

(d) In dealing with an organization's directors, officers, employees, members, shareholders and other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, but only in those instances in which such representation will not affect the lawyer's allegiance to the entity itself, and also subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

## COMMENT

*The Entity as the Client*   EEOC

An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders and other constituents.

Officers, directors, employees and shareholders are the constituents of the corporate organizational client. The duties defined in this Comment apply equally to unincorporated associations. "Other constituents" as used in this Comment mean the positions equivalent to officers, directors, employees and shareholders held by persons acting for organizational clients that are not corporations.

[Handwritten annotations in right margin:]

ROBERT B IRWIN
JUDITH TAYLOR
REFERRAL
OR
ASK
R. BARRY ROBINSON
AUSA
HE IS NOT
OPPOSED
1:05CV002435S

When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client's employees or other constituents are covered by Rule 1.6. This does not mean, however, that constituents of an organizational client are the clients of the lawyer. The lawyer may not disclose to such constituents information relating to the representation except for disclosures explicitly or impliedly authorized by the organization client in order to carry out the representation or as otherwise permitted by Rule 1.6.

When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's province. However, different considerations arise when the lawyer knows that the organization may be substantially injured by action of a constituent that is in violation of law. In such circumstances, it may be reasonably necessary for the lawyer to ask the constituent to reconsider the matter. If that fails, or if the matter is of sufficient seriousness and importance to the organization, it may be reasonably necessary for the lawyer to take steps to have the matter reviewed by a higher authority in the organization. Clear justification should exist for seeking review over the head of the constituent normally responsible for it. The stated policy of the organization may define circumstances and prescribe channels for such review, and a lawyer should encourage the formulation of such policy. Even in the absence of organization policy, however, the lawyer may have an obligation to refer a matter to higher authority, depending on the seriousness of the matter and whether the constituent in question has apparent motives to act at variance with the organization's interest. Review by the chief executive officer or by the board of directors may be required when the matter is of importance commensurate with their authority. At some point it may be useful or essential to obtain an independent legal opinion.

In an extreme case, it may be reasonably necessary for the lawyer to refer the matter to the organization's highest authority. Ordinarily, that is the board of directors or similar governing body. However, applicable law may prescribe that under certain conditions highest authority reposes elsewhere, for example, in the independent directors of a corporation.

*Relation to Other Rules*

EEOC NO.
360-2003-8286X

ROBERT BARNHART
KNOWS WHAT
TO DO WITH THIS

The authority and responsibility provided in paragraph (b) are concurrent with the authority and responsibility provided in other Rules. In particular, this Rule does not limit or expand the lawyer's responsibility under Rule 1.6, 1.8, 1.16, 3.3, or 4.1. If the lawyer's services are being used by an organization to further a crime or fraud by the organization, Rule 1.2(d) can be applicable.

*Government Agency*

The duty defined in this Rule applies to governmental organizations. However, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful official act is prevented or rectified, for public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. Therefore, defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context. Although in some circumstances the client may be a specific agency, it is generally the government as a whole. For example, if the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the government as a whole may be the client for purposes of this Rule. Moreover, in a matter involving the conduct of government officials, a government lawyer may have authority to question such conduct more extensively than that of a lawyer for a private organization in similar circumstances. This Rule does not limit that authority. See note on Scope.

*Clarifying the Lawyer's Role*

There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization, of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation. Care must be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for the constituent individual, and that discussions between the lawyer for the organization and the individual may not be privileged.

Whether such a warning should be given by the lawyer for the organization to any constituent individual may turn on the facts of each case.

EEOC NO. 360-2006-00307 AND MARILYN BLACKSHEA INVESTIGATOR FOR OFFICIAL TIME AND CAN'T READ EEOC REGULATIONS AND

EEO #05-2291
EEO #05-2291S
MARCIA H. COATES
MARINA HARVEY
MICHAEL SALYAKA'S
AND NTEU



# Colorado Bar Association

**Search**
**Calendar**
**Logon**

**Home**      **CLE**              **Find A Lawyer**    **Help - FAQ's**      **Opinions/Rules/S**
**About the CBA**  **For the Public**   **Member**          ***The Colorado***    **Join the CBA**
                                      **Resources**        ***Lawyer***

Ethics Committee Home >> Colorado Rules of Professional Conduct >> Advocate

**Rule 3.3 Candor Toward the Tribunal** ✓

*[handwritten] TO JUDGE SAM SPARKS 1:05CV00243SS*

(a) A lawyer shall not knowingly:

    (1) make a false statement of material fact or law to a tribunal;

    (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

    (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

    (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and later learns that the evidence is false, the lawyer shall take reasonable remedial measures.

*[handwritten] EEOC LAWYER JENNIFER RANDALL DID ALL OF THIS AND SHE ENJOYED IT*

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

## COMMENT

[1] The advocate's task is to present the client's case

**Colorado Bar Association**

Search
Calendar
Logon

**Home**          **CLE**              **Find A Lawyer**    **Help - FAQ's**      **Opinions/Rules/**
**About the CBA**  **For the Public**   **Member**           ***The Colorado***    **Join the CBA**
                                        **Resources**        ***Lawyer***

Ethics Committee Home >> Colorado Rules of Professional Conduct >>
Maintaining the Integrity of the Profession

**Rule 8.4 Misconduct** ✓

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the act of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a judge, judicial officer, government agency or official;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;

(g) engage in conduct which violates accepted standards of legal ethics; or

(h) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

*[Handwritten annotations:]*
JENNIFER RANDALL
JUDITH TAYLOR
ROBERT B HARVIN
ROBERT CHVINO
ROBERT BREULHART
ROBERT L POWELL
KATYE OUDERSTADT
ALL
EEOC
MACHINES
1:05CV00243SS
RANDALL-POWELL-OUDERSTADT
1:05CV00243SS
EEOC NO: 360-2003-8286X

**COMMENT**

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However,

**C o l o r a d o   B a r   A s s o c i a t i o n**

Ethics Committee Home >> Colorado Rules of Professional Conduct >> Transactions
With Persons Other Than Clients

**Rule 4.1 Truthfulness in Statements to Others**

In the course of representing a client a lawyer shall not knowingly:

(a) make a false or misleading statement of fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary
to avoid assisting a criminal or fraudulent act by a client, unless disclosure is
prohibited by Rule 1.6.

*ALL THE TIME - EVERYTIME*

**COMMENT**

*Misrepresentation*   *RANDALL TAYLOR - HARRIS AT
EEOC SAN ANTONIO, TEXAS*

A lawyer is required to be truthful when dealing with others on a client's behalf, but
generally has no affirmative duty to inform an opposing party of relevant facts. A
misrepresentation can occur if the lawyer incorporates or affirms a statement of another
person that the lawyer knows is false. Misrepresentations can also occur by failure to act.

*Statements of Fact*   *1:05CV0024355
CLOSED : 12/06/2006*

This Rule refers to statements of fact. Whether a particular statement should be regarded
as one of fact can depend on the circumstances. Under generally accepted conventions in
negotiations, certain types of statements ordinarily are not taken as statements of fact.
Estimates of price or value placed on the subject of a transaction and a party's intentions
as to an acceptable settlement of a claim are in this category, and so is the existence of an
undisclosed principal except where nondisclosure of the principal would constitute fraud.

*Fraud by Client*

Paragraph (b) recognizes that substantive law may require a lawyer to disclose certain
information to avoid being deemed to have assisted the client's crime or fraud. The
requirement of disclosure created by this paragraph is, however, subject to the obligations
created by Rule 1.6.

**Committee Comment**

The deletions the Committee made in subparagraph (a) are those adopted by Minnesota
to: not limit the prohibition to material statements, and to eliminate the argument over
whether or not a statement concerned a "material" fact. This provision is substantially the
same as DR 7-102(A)(3) and (5) of the Code.

Home | PACER | Deadlines | Statuses                                    Help

# General Docket
## US Court of Appeals for the Fifth Circuit

Court of Appeals Docket #: 05-60879                    Filed: 9/7/05
Nsuit:     0
Buesgens v. EEOC, et al
Appeal from: Equal Employment Opportunity Commission

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Lower court information:

      District: 0539-1 : 360-2003-8286X
      Date Filed: **/**/**
      Date order/judgment: 1/21/04
      Date NOA filed: **/**/**

*EEOC #360-2003-8286X*

Fee status: Paid

*NO EEOC RECORD AVAILABLE*
*NO HEARING EXHIBITS*

Prior cases:
   None
Current cases:
                                                                *NO DISCOVERY*
                                                                *NO EVIDENCE*
                   Lead        Member      Start      End
      Related:
                   05-50730    05-60879    9/7/05      *FROM*
                                                      *12/16/2003*
Docket as of October 30, 2006 8:57 pm          Page 1   *TELEPHONE*
                                                      *HEARING*
                                                       *WITH*
05-60879 Buesgens v. EEOC, et al               *ROBERT L. POWELL*
                                                *EEOC JUDGE*
MICHAEL L BUESGENS             Michael L Buesgens
      Petitioner              512-339-6005
                             Apartment A322
                             [NTC pse]
                             3112 Windsor Road
                             Austin, TX 78703

   v.

EQUAL EMPLOYMENT OPPORTUNITY    Eric S Dreiband
COMMISSION                     Suite 7042
      Respondent               [NTC fio]
                             Equal Employment Opportunity
                             Commission
                             1801 L Street NW        *R. BARRY*
                             Washington, DC 20507    *ROBINSON*
                                                      *AUSA*
                             R Barry Robinson, Assistant US
                             Attorney                 *IS NOT OPPOSED*
                             FAX 512-916-5854         *TO THAT*
                             512-916-5858
                             Suite 1000
                             [COR LD NTC gvt]
                             US Attorney's Office

Western District of Texas
816 Congress Avenue
Austin, TX 78701

UNITED STATES OF AMERICA
    Respondent

Alberto R Gonzales
FAX 202-307-6777
202-514-2001
Suite 4400
[NTC fio]
US Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Docket as of October 30, 2006 8:57 pm      Page 2

05-60879 Buesgens v. EEOC, et al

MICHAEL L BUESGENS

        Petitioner

  v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; UNITED STATES OF
AMERICA

        Respondents

*EEOC #360-2003-82864*

*HEARING 12/16/03*

Docket as of October 30, 2006 8:57 pm      Page 3

*APPEALS OF HEARING INTO 2005 AND NO RECORD NUTUHSE SAYS RANDALL*

05-60879 Buesgens v. EEOC, et al

9/7/05    Agency case docketed. Petition for review filed by Petitioner Michael L Buesgens. [05-60879] ROA due on 11/8/05. (cmb)

9/7/05    Memorandum filed by Petitioner Michael L Buesgens in support of Petition for Review. [5274694-1] [05-60879] (cmb)

10/31/05    Motion filed by Petitioner Michael L Buesgens to appoint counsel [29495-1]. Sufficient [Y/N]: N needs certificate of service [05-60879] (SUBMIT TO SCREENING JUDGE & PANEL) (mrb)

11/7/05    The motion to appoint counsel [5297036-1] by Petitioner Michael L Buesgens has been made sufficient. [05-60879] (mbc)

11/7/05    Motion filed by Respondent EEOC to dismiss for lack of subject matter jurisdiction [5304550-1] Response/Opposition due on 11/21/05. Date of COS: 11/4/05 Sufficient [Y/N]: y [05-60879] (mbc)

11/22/05    Response/opposition filed by Petitioner Michael L Buesgens to motion to dismiss appeal [5304550-1] by Respondent EEOC Response/Opposition ddl satisfied. Reply to Resp/Opp due on

```
                  12/2/05. [5315504-1] [05-60879] (mbc)

12/19/05     Appearance form filed by R Barry Robinson for Respondent
             EEOC. [05-60879] ( No. of forms filed: 1) (mbc)

1/26/06      COURT Order filed granting respondent's motion to dismiss
             the petition for review for lack of subject matter
             jurisdiction [5304550-01] Judge Initials: PEH FPB JLD
             Mandate pull date is 3/20/06.  Copies to all counsel.
             [05-60879] (kkf)

3/21/06      Mandate issued.  Approved BOC Issued (Y/N)?: n [05-60879]
             Mandate pull date satisfied. (mjk)
```

Docket as of October 30, 2006 8:57 pm          Page 4

?

*ROBINSON SHOWS UP FOR DISMISSAL*

*EEOC # 360-2003-8286X*

### PACER Service Center
### Transaction Receipt
#### 07/26/2007 22:49:59

| PACER Login: | | Client Code: | |
|---|---|---|---|
| Description: | dkt report | Case Number: | 05-60879 |
| Billable Pages: | 4 | Cost: | 0.32 |

**Note: The 'as of' date shown is the date of the last public or private docket entry. The docket does, however, show all entries as of today's date.**

*NO EEOC RECORD*
*NO NTEU RECORD*
*AND*
*ROBINSON IS NOT OPPOSED TO THAT*
*AND NEITHER ARE THE FIFTH CIRCUIT*
*CASE MANAGERS*
*WHERE IS RANDALL AND COMPANY ?*