

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
333 CONSTITUTION AVENUE, NW
WASHINGTON, DC 20001

MICHAEL L. BUESGENS
FORMER IRS EMPLOYEE
PLAINTIFF

RECEIVED
SEP 19 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

V.

CIVIL NO.
1:07CV
00859
RBW

HENCY PAULSON, SECRETARY
DEPARTMENT OF THE TREASURY

MARK EVERSON, COMMISSIONER
INTERNAL REVENUE SERVICE

DONALD RAY TAWNEY, JR
IRS SUPERVISOR
DEBTOR - VOLUNTARY
CHAPTER 7
CASE NO. 06-11164 FRM
ADVERSARY NO. 07-1008
DEFENDANTS, ET AL.



PLAINTIFF MICHAEL L. BUESGENS
MOTION FOR FOCUS ON
REASSIGNMENT AS A REASONABLE
ACCOMMODATION

1. REASONABLE REASSIGNMENT IS
A **CENTRAL ISSUE** FOR
FORMER IRS EMPLOYEE
MICHAEL L. BUESGENS

2. BUESGENS WAS DENIED A
REASONABLE REASSIGNMENT IN
**2002** AND **2003** AND **2004** AT **IRS**.

3. BUESGENS INVOLUNTARILY RETIRES
AT THE IRS ON **MARCH 7, 2005**
WITH OPM DISABILITY RETIREMENT
AT AGE **55**..

4. BUESGENS WAS CONSTRUCTIVELY
REMOVED FROM HIS JOB AT IRS
BECAUSE OF THE DENIAL OF
REASONABLE REASSIGNMENT TO A
VACANT POSITION THAT WAS
AVAILABLE.. THAT HE COULD WORK
WITH OR WITHOUT A REASONABLE ACCOMMODATION

2

5. THERE WERE JOB VACANCIES AVAILABLE AT THE **GRADES 5-6-7** THAT **HAD REDUCED INCOMING TELEPHONE** CALLS FOR WHICH BUESGENS QUALIFIED FOR.

6. BUESGENS WAS A GRADE **8** STEP **5** CUSTOMER SERVICE TELEPHONE REPRESENTATIVE AT **I.R.S.**

7. CONTINUING - UNRELENTING INCOMING TELEPHONE CALLS FROM TAXPAYERS WAS AN **ESSENTIAL** FUNCTION OF THE JOB

8. BUESGENS **COULD NOT** BE ACCOMMODATED AT THIS TELEPHONE JOB. FOR A REDUCTION OF TELEPHONE CALLS.

9. THIS TRIGGERED IRS RESPONSIBILITY TO SEARCH FOR **VACANT** POSITIONS AT A FEDERAL AGENCY WITHIN THE COMMUTING AREA FOR **REASSIGNMENT**

10. THE IRS-DEPARTMENT OF THE TREASURY **SEARCH** FOR **VACANCIES** FOR EMPLOYEE BUESGENS **DID NOT COMPLY** WITH THE LAW. IT WAS A JOKE.

11. THE IRS MANAGERS DID WHAT THEY CALL **POLLING** DEPARTMENTS FOR VACANCIES.

12. THIS INVOLVED SENDING A MEMO TO IRS DEPARTMENT HEADS IN AUSTIN, TEXAS TO INQUIRE ABOUT THE AVAILABILITY OF **VACANT POSITIONS** AT **IRS**

13. ALL THE DEPARTMENT HEADS AT IRS SAID **NO** VACANCIES AVAILABLE.

14. **IRS** MANAGERS AND **IRS** "IN HOUSE" **EEO** THEN **TOLD** BUESGENS THAT THE **ONLY** JOB AVAILABLE WAS GRADE 4-CLERK.

15. THIS OCCURRED IN MARCH **2003**.

4

16. PLAINTIFF BUESGENS **DECLINED** TO ACCEPT THE GRADE 4 POSITION.

17. THE **IRS** MANAGERS AND "IN HOUSE" **EEO** MANAGERS **REFUSED** TO USE **VACANCY ANNOUNCEMENTS — INTERNAL** AND **EXTERNAL FOR REASSIGNMENT.**

18. THIS IS A VIOLATION OF THE LAW.

19. THE IRS AND "IN HOUSE" **EEO REFUSED** TO DO THE INTERACTIVE PROCESS WITH BUESGENS

20. THIS IS A VIOLATION OF THE LAW.

21. IRS MANAGERS AND "IN HOUSE" **EEO DID NOT TELL** BUESGENS THAT HE WAS ELIGIBLE FOR **OPM** DISABILITY RETIREMENT IN **2003** OR **2004.**

22. **SEE OPM** REGULATIONS ON REASSIGNMENT AND DISABILITY RETIREMENT.

5

23. PLAINTIFF BUESGENS WAS **FORCED** TO STAY AT HIS JOB **OR** BE TERMINATED.

24. BUESGENS WAS **FORCED** TO CHANGE HIS MEDICAL RECORD OR BE TERMINATED.

25. BUESGENS WORK PERFORMANCE DETERIORATED. **SUBJECTING HIM TO** DISCIPLINARY ACTIONS IN **2003** AND **2004.**

26. IN AUGUST, **2004** BUESGENS BECAME AWARE THAT HE WAS ELIGIBLE FOR DISABILITY RETIREMENT

27. BUESGENS REQUESTED **ANOTHER** REASONABLE REASSIGNMENT IN **2004** AND THIS WAS **DENIED.**

28. BUESGENS **TOLD IRS** MANAGERS THAT HE **WANTED TO** KEEP WORKING.

29. PLAINTIFF BUESGENS **APPLIED** FOR DISABILITY RETIREMENT IN **AUGUST, 2004**

30. THIS WAS APPROVED IN FEBRUARY, **2005**

31. FORMER **I.R.S.** EMPLOYEE MICHAEL L. BUESGENS **BEGAN** WORKING AT THE **I.R.S.** IN OCTOBER, 1990 AT **PHOENIX, ARIZONA**

32. IN 1996 BUESGENS TRANSFERRED TO AUSTIN, TEXAS

33. BUESGENS WAS **ALWAYS A SEASONAL EMPLOYEE** AT THE I.R.S. AND WAS USUALLY PLACED ON **FURLOUGH** IN SEPTEMBER OF EACH YEAR WITH A JANUARY **RETURN DATE** THE FOLLOWING YEAR.

34. THE CENTRAL ISSUE - DENIAL OF REASONABLE REASSIGNMENT HAS NOT BEEN RULED ON IN ANY FORUM AND THIS BEGAN IN 2003

35. NOT RULED ON AT THE FOLLOWING:

A. EEOC
B. OPM
C. MSPB
D. U.S. DISTRICT COURT
E. U.S. COURT OF APPEALS

36. DENIAL OF REASONABLE REASSIGNMENT IS A CENTRAL ISSUE IN BUESGENS FEDERAL TORT CLAIMS ACT - ADMINISTRATIVE AND CIVIL ACTIONS. FTCA - FORM SF95

37. BUESGENS ADVERSARY CLAIM
A. NO. 07-10008 IS BASED ON
B. HIS FEDERAL TORT CLAIM THAT IS NOW ON APPEAL IN
C. CIVIL NO. 1:07CV00859RBW

8

# FURTHERMORE PLAINTIFF BUESGENS ASSERTS THE FOLLOWING:

38. THAT REASSIGNMENT IS A JOKE AND A FAILURE AT FEDERAL AGENCIES

A. IRS – HUD – SSA, ET. AL.

B. THE SAME ANIMAL

C. THE SAME "IN HOUSE" EEO

D. THE SAME. HUMAN RELATIONS – LABOR RELATIONS PATTERN AND PRACTICE

E. THE SAME VIOLATIONS OF THE REHABILITATION ACT OF 1973, AS AMENDED

F. THE SAME VIOLATIONS OF EEOC REGULATIONS

G. THE SAME VIOLATIONS OF OPM REGULATIONS

9

39    THE **SAME PLAYERS** AT "IN HOUSE" **EEO**

40.   THE **SAME** PLAYERS AT HUMAN RELATIONS – LABOR RELATIONS

41.   WHO **MOVE ABOUT** FROM ONE AGENCY **TO** ANOTHER

42.   FOR EXAMPLE:
A.    SEE CIVIL NO. **1:04CV01056 ESH**
      **HUD EEO** MANAGER JOHNSON –
      MOVES TO **IRS – EEO** IN
      ATLANTA, GEORGIA

B.    PETER PAUTAZES ✔
      FORMER **HUD** EMPLOYEE
              PLAINTIFF

              V.

C.    ALPHONSO JACKSON, SECRETARY
      **HUD**

43.   BUESGENS **MOTION TO INTERVENE**
      **DENIED** IN 1:04CV01056 **ESH**
                    10

# IRS REASSIGNMENT ABUSE AS PATTERN AND PRACTICE

44. MAKE SURE YOU HAVE **FEAR** IF YOU REQUEST REASONABLE REASSIGNMENT ACCOMMODATION.

45. BECAUSE THE ONLY JOB AVAILABLE IS GRADE 4 CLERK.

46. THIS JOB ASSIGNMENT IS **USED** BY **IRS** MANAGERS AND **IRS** "IN HOUSE" **EEO AS PUNISHMENT FOR** REQUESTING REASONABLE REASSIGNMENT ✓

47. A **PATTERN AND PRACTICE** AT IRS AND "IN HOUSE" **EEO AND** **AT**

A. FEDERAL OCCUPATIONAL HEALTH - **FOH**
B. OCCUPATIONAL MEDICINE **FOR** REASONABLE REASSIGNMENT **THAT**

48. THE ONLY JOB AVAILABLE **FOR REASSIGNMENT** IS GRADE 4-CLERK.

11

# OCCUPATIONAL MEDICINE — A SUBSPECIALTY FOR MEDICAL DOCTORS

## FOR EXAMPLE:

49. NEAL LEE PRESANT, M.D. — AT **FOH**
   A. MEDICAL DIRECTOR
   B. **SPECIALTY** — FAMILY MEDICINE
   C. SUB SPECIALTY — OCCUPATIONAL MEDICINE
   D. FEDERAL OCCUPATIONAL HEALTH — **FOH**
   E. PROGRAM SUPPORT CENTER — **PSC**
   F. U.S. DEPARTMENT **AT** OF HEALTH AND HUMAN SERVICES — **HHS**

50. JAMES WILLIAM ALLEN, JR. M.D.
   A. CONTRACT DOCTOR **AT FOH**
   B. **FOR** REASONABLE REASSIGNMENT
   C. **SPECIALTY** — PATHOLOGY
   D. SUB SPECIALTY — OCCUPATIONAL MEDICINE

51. DOCTOR **FOR** MICHAEL L BUESGENS REASONABLE REASSIGNMENT REQUEST.

52. **BASED** ON MEDICAL DISABILITY — BIPOLAR

12



53. MARK NORMAN FRANK, M.D.
A. CONTRACT DOCTOR **FOR FOH** AND
B. MEDICAL DIRECTOR FOR WORKINUS COMPENSATION

AT
C. PINNACOL ASSURANCE - COLORADO
D. **SPECIALTY** - INTERNAL MEDICINE
E. SUBSPECIALTY - OCCUPATIONAL MEDICINE

F. DOCTOR **FOR** MICHAEL L. BUESGENS REASONABLE **REASSIGNMENT** REQUEST AT **IRS**

54. BUESGENS HAS TALKED BY TELEPHONE **TO** NEAL LEE PRESNT, M.D. ✓

TO
55. ~~2005 - 2006 - 2007~~

56. BUESGENS WAS REQUESTING MEDICAL RECORDS - NOTES - DIAGNOSIS - PROGNOSIS - ETC.

57. **DENIED**

58. DOCTORS ALLEN AND FRANK **REFUSE TO** TALK **TO** BUESGENS.

13

59. NONE OF THE FOH DOCTORS TALKED TO BUESGENS ABOUT REASONABLE REASSIGNMENT ACCOMMODATION OR ANYTHING AT ALL IN 2002-2003-2004.

60. NONE OF THE FOH DOCTORS PROVIDED ANY PSYCHIATRIC REFERRAL TO BUESGENS FOR ANY THING.

61. NEAL LEE PRESANT, M.D. WAS
    A. ALSO THE FOH DOCTOR FOR FORMER HUD EMPLOYEE PETER PANITAZES
    B. ALPHONSO JACKSON, SECRETARY
    C. v. HUD
    D. CIVIL NO. 1:04CV01056 ESH

62. SEE BUESGENS MOTION TO INTERVENE IN THAT CASE

63. DENIED — ON APPEAL NOW

14

64. NEAL LEE PRESANT, M.D.
RESIDES IN BETHESDA, MARYLAND

65. JAMES WILLIAM ALLEN, M.D.
MEDICAL **DOCTOR — AVIATOR**
RESIDES IN WILMINGTON, DELAWARE

66. MARK NORMAN FRANK, M.D.
**PINNACOL ASSURANCE** DOCTOR
WORKMANS COMPENSATION **AND**
**FEHA** DOCTOR
RESIDES IN DENVER, COLORADO


VICARIOUS LIABILITY AND
RESPONDEAT SUPERIORS
SYSTEMIC — ENDEMIC — APPROVED ✓
BAD FAITH ACTIONS

THE LEADERSHIP:

67. MARK W. EVERSON — COMMISSIONER
68. KEVIN BROWN — ACTING COMMISSIONER
69. — INTERNAL REVENUE SERVICE
**IRS**

15

70    HENRY PAULSON, SECRETARY
71    JOHN W. SNOW, SECRETARY
72    DEPARTMENT OF THE TREASURY

73    ALPHONSO JACKSON, SECRETARY
74    U.S. DEPARTMENT OF HOUSING AND
      URBAN DEVELOPMENT — **HUD**
A.    CIVIL NO. **1:04CV00056 ESH**
B.    U.S. DISTRICT COURT FOR THE
      DISTRICT OF COLUMBIA
C.    BUESGEUS MOTION TO INTERVENE ✔

D.    **Kim Kendrick**, ASSISTANT SECRETARY
      **HUD** — FAIR HOUSING EQUAL
      OPPORTUNITY — **FHEO** OFFICE


76.   **MARIAM G. HARVEY** — DIRECTOR
A.    **MARCIA H. COATES** — DIRECTOR
B.    IN HOUSE, **EEO** AT **IRS.**
      DEPARTMENT OF THE TREASURY

C.    SEE CIVIL NO. **1:05CV02334 CKC**
D.    BUESGEUS V. COATES
E.    **EEO** NO: 05-2291 **S**
F.    **EEO** NO: 05-2291

16

77. **"DIANE CROTHERS** - DIRECTOR
A. "IN HOUSE" **EEO** AT **IRS**
   WASHINGTON, DC
B. **NOW** WORKS FOR THE CITY
   OF NEW YORK

78. **DEE DEE BYRD-COBB** - DIRECTOR
A. "IN HOUSE" **EEO** AT **IRS**
B. WAGE AND INVESTMENT DIVISION
C. ATLANTA, **GEORGIA**

79. **LILLIAN KOENIG** - DIRECTOR
A. FEDERAL OCCUPATIONAL HEALTH
   **FOH**
B. **BETHESDA, MARYLAND**


**PARTIES OF INTEREST**
**INSURANCE COMPANIES**
EMPLOYEE ASSISTANCE PROGRAM
   **EAP**
HEALTH INSURANCE MANAGED
BY **OPM** AND **FOH**

17

80. MAGELLAN BEHAVIORAL HEALTH
81. MAGELLAN "IN ROADS" HEALTH
82. MAGELLAN HEALTH SERVICES

83. BLUE CROSS BLUE SHIELD

84. HEALTH CARE SERVICES
CORPORATION - **HCSC**

85. MUTUAL LEGAL RESERVE COMPANIES
86. **CONTRACTED** FOR BY FEDERAL
AGENCIES - **IRS**, ET. AL.
AND

87. **CONNECTED TO** FEDERAL OCCUPATIONAL
HEALTH - **FOH AT HHS**

18

# STATUTES AND REGULATIONS FOR FEDERAL AGENCY EMPLOYEES AND REASONABLE REASSIGNMENT ACCOMMODATION AND CONSTRUCTIVE REMOVAL WRONGFUL TERMINATION CONSTRUCTIVE DISCHARGE OPM AND DISABILITY RETIREMENT

88. THE REHABILITATION ACT OF 1973, AS AMENDED
   A. 29 U.S.C. SECTION 701, et seq.
   B. 29 U.S.C. SECTIONS 791(g), 794(d) THAT INCORPORATES STANDARDS OF AMERICANS WITH DISABILITIES ACT INTO THE REHABILITATION ACT
   C. ADA- 42 U.S.C. SECTIONS 12101 et seq.

89. 29 C.F.R. SECTION 1614.203(c) MODEL EMPLOYER -IRS-HUD, ET. AL.

19

# REASSIGNMENT OF DISABLED EMPLOYEE

90. 29 C.F.R. SECTION 1614.203(g) AGENCY - **IRS-HUD**, ET.AC. HAS AN OBLIGATION TO IDENTIFY ✓ VACANT FUNDED POSITIONS

91. **EEOC** ENFORCEMENT GUIDANCE: THE AMERICANS WITH DISABILITIES ACT AND PSYCHIATRIC DISABILITIES, MARCH 25, 1997

92. **EEOC** COMPLIANCE MANUAL FOR FEDERAL AGENCIES SUCH AS **IRS-HUD-SSA**, ET.AC.

93. **EEOC** ENFORCEMENT GUIDANCE ON REASONABLE REASSIGNMENT ACCOMMODATION

94. **OPM** - THE ROLE OF THE AGENCY MEDICAL REVIEW OFFICER (MRO) MARCH 1996 NEAL LEE PRESANT, M.O. - **FOH**

20

95. REASSIGNMENT TO A VACANT POSITION AT THE SAME GRADE OR LEVEL AS THE EMPLOYEES CURRENT POSITION
   A. 28 U.S.C.A. SECTION 8337(a)
   B. 5 CFR SECTION 831. 1203 (a)(4)
   C. STATUTE DEFINES DISABILITY

96. 5 CFR SECTION 831. 1202
   A. BUESGENS WAS QUALIFIED FOR VACANT POSITIONS AT GRADES 5 OR 6 OR 7 THAT WERE AVAILABLE AT IRS

97. THE IRS AND "IN HOUSE" EEO
   A. LIED TO OPM ON BUESGENS DISABILITY APPLICATION. THEY CLAIMED THAT NO VACANCIES WERE AVAILABLE FOR REASSIGNMENT.

98. 5 U.S.C. SECTION 5701(2)
   A. OPM — POSITION CLASSIFICATION REGULATION — VACANT POSITION
   B. VACANCY ANNOUNCEMENTS AT IRS
   C. 2002-2003-2004

21

99. PLAINTIFF BUESGENS HAS CONTACTED AND WRITTEN TO OPM AND EEOC RESPONDENT SUPERIORS IN WASHINGTON, D.C. ABOUT

A. THE BAD FAITH ACTIONS BY IRS - "IN HOUSE" EEOC AND

B. THE DEPARTMENT OF THE TREASURY

100. THESE CONTACTS-LETTERS BEGAN IN 2005 AND CONTINUE INTO 2007

101. OPM AND EEOC OFFICIALS REFUSE TO RESPOND, AS DOES TON AND HHS OFFICIALS.

102. OPM DISABILITY RETIREMENT 5 U.S.C. SECTION 8451 (FERS)

103. PART 831. 1205.

A. AGENCY-FILED DISABILITY RETIREMENT APPLICATIONS

B: SUBPART B SECTION 844.202

22

104. 5 CFR PART 792, FEDERAL EMPLOYEES HEALTH AND COUNSELING PROGRAMS

105. 5 U.S.C., SECTIONS 3312 AND 3318 OPM PREFERENCE AND NON PREFERENCE ELIGIBLES

106. PRIVACY ACT OF 1974, 5 U.S.C. 552(a)

107. 5 CFR PART 293 SUBPART E, EMPLOYEE MEDICAL FILE SYSTEM RECORDS

108. 5 CFR PART 297 PRIVACY PROCEDURES FOR PERSONNEL RECORDS

109. OPM/GOVT-10 EMPLOYEE MEDICAL FILE SYSTEM RECORDS

110. EEOC/GOVT-1 RECORDS DENIED
A. TO BUESGENS SINCE 2005 FOR
B. EEOC NO. 360-2003-8286X

23

111  **JUDICIAL REVIEW** OF FEDERAL
     AGENCY ACTIONS
  A. SECTION **504** OF THE REHABILITATION
     ACT OF 1973
  B. TITLE VII - RETALIATION

112  AND
     THE REVIEW FAILURES AT
     THE **FIFTH CIRCUIT** FOR BUESGENS

  A. 5TH CIRCUIT NO.  **05-60879**
  B. REVIEW OF EEOC NO. 360-2003-8286X
  C. R. BARRY ROBINSON - AUSA - PRESIDING

  D. 5TH CIRCUIT NO.  06-60777
  E. REVIEW OF MUD NO. 06-06-293-8
  F. R. BARRY ROBINSON - AUSA - PRESIDING

113  M.S.P.B. NO. DA 1221060171W1
     MICHAEL LYNN SALYARDS - IRS -
     GLS - EEO ATTORNEY PRESIDING

114  **NO SHOWS** FOR THE FOREGOING WERE:
  A. EEOC AND **NTEU**
  B. OPM AND REGULATIONS
  C. HUD AND CITY OF AUSTIN, TEXAS
  D. FOH AND DOCTORS - **NO SHOWS**

24

# AUTHORITIES
## FOR

115. REASONABLE REASSIGNMENT ACCOMMODATION ✓
   A. VACANT POSITIONS
   B. VACANCY ANNOUNCEMENTS
   C. AGENCY RESPONSIBILITIES
   D. **IRS - SSA - HUD - EEOC - OPM**
   E. CONSTRUCTIVE REMOVAL
   F. INVOLUNTARY DISABILITY RETIREMENT

116. **IRS POLLS DEPARTMENTS** AND
   SEARCHING FOR VACANCIES
   **AS PRETEXT TO** COMPLIANCE ✓
   WITH TITLE LAW AND REGULATIONS

117. **IRS** "IN HOUSE" **EEO** ALWAYS AND
118. SAY **NO** VACANCIES AVAILABLE;
   **YOU** MUST NOW WORK GRADE 4
   JOB OR BE TERMINATED. ✓

119. **THIS IS A PATTERN AND PRACTICE**
   COMPLAINT.

120. BUESGENS **IS NOT THE** LAWBREAKER
   IN THIS UNLAWFUL CONDUCT BY
   **IRS,** ET. AL. 25

121. **SEE** CIVIL NO. 1:07CV00859RBW
   A. DOCUMENT **20** - FILED :: 8/22/2007
   B.        ROSSELL C. HOLLAND
        FORMER **SSA** EMPLOYEE
   CUSTOMER SERVICE **-TELEPHONE**
                    V.
   C. JO ANNE B. BARNHART-COMMISSIONER
   SOCIAL SECURITY ADMINISTRATION
                **SSA**

122. **SEE**
   **85. M.S.P.R. 494** -   3/21/2000
   A.     LILLIAN F. MILLER
        POSTAL EMPLOYEE
                    V.
   B. UNITED STATES POSTAL SERVICE

123. **83 M.S.P.R. 270**
   A.    WAYNE Y. KITURA
        POSTAL EMPLOYEE
                    V.
   B. UNITED STATES POSTAL SERVICE
   C.     AUGUST 13, 1999


26

124.
A. 85 M.S.P.R. 388
   JAMES E. KULE
      V.
B. DEPARTMENT OF VETERAN AFFAIRS
C. MARCH 7, 2000

125.
A. 996 F. 2d 290
   LARRY L. BRUNER
      V.
B. OFFICE OF PERSONNEL
   MANAGEMENT
      OPM
C. JUNE 14, 1993

126.
A. 236 F. 3d 1356
   BRUCE A. BRACEY
      V.
B. OFFICE OF PERSONNEL MANAGEMENT
      OPM
C. JANUARY 17, 2001

27

# REVERSIBLE ERROR

127. **NONE** OF PLAINTIFF MICHAEL L. BUESGENS ADMINISTRATIVE AND CIVIC ACTIONS HAVE BEEN LITIGATED ANYWHERE

128. **STARTING** WITH EEOC NO. **360-2003-8286Y**.
   A: TELEPHONE HEARING
   B: DECEMBER 16, 2003
   C. JUDGE ROBERT LYNN POWELL PRESIDING FROM SAN ANTONIO, TEXAS

   D. **NO** DISCOVERY - **NO** DOCUMENTARY EVIDENCE - **NO** FOH DOCTORS
   E. NOTHING BUT TALK ✓
   F. **BY**
      **IRS** AGENCY OFFICIALS
   G. **NO** IN HOUSE **EEO** AVAILABLE

   H. **IRS** ATTORNEY MICHAEL LYNN STYLROS PRESIDING
   I. **RUSSELL BORECMAN-NTEU** CHIEF STEWARD FOR BUESGENS

28

# CONCLUSION

129  ALL OF BUESGENS CASES HAVE
BEEN CLOSED BASED ON
HOT AIR FROM ATTORNEYS
AND DEFENDANTS

130.  NO SUBSTANTIVE ISSUES
WERE EVER LOOKED AT
FOR THE FOLLOWING:
ADMINISTRATIVE CLAIMS

A.  EEOC - M.S.P.B.

B.  FEDERAL TORT CLAIMS ACT - FTCA
AND

C.  CIVIL ACTIONS AT U.S. DISTRICT
COURTS
AND

D.  U.S. COURTS OF APPEALS
AND

E.  FEDERAL CIRCUIT COURT
CASE NO. 2007-3115

131  THE SCOPE OF BUESGENS
CLAIMS HAS BROADENED
SIGNIFICANTLY BECAUSE OF
THE FOREGOING.

29

132. **TO INCLUDE** MORE CAUSES OF ACTION

133. CONTINUING VIOLATIONS OF MISCONDUCT AND BAD FAITH ACTIONS

134. **MULTIPLE** PARTIES IN A **COLLUSIVE** PATTERN OF **COVER UP** - OPM - EEOC - IRS

135 HAS **PRODUCED** MORE LITIGATION WITH NO. END IN SIGHT

136. WHERE IS **OPM** AND **EEOC** OVERSIGHT RESPONSIBILITY FOR THIS MESS ?

## RELIEF REQUESTED

137. **THAT** THIS COURT ORDER THE U.S. ATTORNEYS - **IRS** ATTORNEYS OPM - EEOC - HHS - HUD **TO FOCUS ON THE** ISSUES OF SUBSTANCE.

30

138. BANKRUPTCY CASES OFFER MORE OPPORTUNITY FOR DISCOVERY - SOMETIMES.

A. BANKRUPTCY CASE NO. 06-11164 FROM

B. ADVERSARY NO. 06-01248 FROM

C. ADVERSARY NO. 070008

139. THESE BANKRUPTCY CASES HAVE BEEN **CLOSED** BY JUDGES THAT DO NOT HAVE THE JURISDICTION TO RULE ON

A. **NON CORE** PROCEEDINGS **INVOLVING**

B. PERSONAL INJURY CLAIMS

C. FEDERAL TORT CLAIMS ACT

D. CONTINGENT - UNLIQUIDATED LIABILITY

140. BUESGENS **REQUESTS** THAT BANKRUPTCY CASE NO. **06-11164** **BE REOPENED** BECAUSE OF VARIOUS **ERRORS** AND OMISSIONS THAT OCCURRED BASED ON POLITICS.

31

1:07 CV 00 859 RBW

THE APPEAL OF ADVERSARY

NO. 07-10008

U.S. DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

RESPECTFULLY SUBMITTED,

*Michael L Burgess*

MICHAEL L BURGESS
9/16/2007

# CERTIFICATE OF SERVICE

I CERTIFY THAT ONE TRUE
COPY OF THIS MOTION FOR
FOCUS ON REASSIGNMENT
ACCOMMODATION AND REQUEST
FOR RELIEF WAS SERVED
BY PRIORITY MAIL-DELIVERY
CONFIRMATION ON THIS 17TH
DAY OF SEPTEMBER, 2007
ADDRESSED TO :

32

1. MICHAEL KATOR
2. IRVING KATOR
3. KATOR PARKS & WEISER
4. OLIVER W. MCDNIEL - INSA
1:04 CV 01056 ESH

1020 19TH STREET, NW    #350
WASHINGTON, DC 20001

5. RUSSELL BOKELMAN - NTEU
CHIEF STEWARD CHAPTER 247
6. BARBARA A ATKIN - GENERAL COUNSEL
7. COLLEEN M. KELLEY, PRESIDENT
8. NATIONAL TREASURY EMPLOYEES UNION
NTEU

1750 H STREET, NW
WASHINGTON, DC 20006

9. NEAL LEE PRESANT, M.D.
10. JAMES W. ALLEN M.D.
11. MARK NORMAN FRANK, M.D.
12. LILLIAN KOENIG DIRECTOR
13. FEDERAL OCCUPATIONAL HEALTH - FOH
4550 MONTGOMERY AVE, #950
BETHESDA, MD 20814

33

14   JENNIFER RANDALL - EEOC
15   ATTORNEY
     JUDGE ROBERT LYNN POWELL
     EEOC NO. 360-2003-82864
     EEOC NO. 360-2006-00307
16        EEOC
     303 E. 17TH AVENUE
     SUITE 510
     DENVER, COLORADO 80203


17   PATRICK E. MCFARLAND
     INSPECTOR GENERAL
18   OPM
     1900 E STREET, NW
     ROOM 6400
     WASHINGTON, DC 20415-1100
     PHONE: 202-606-1200
     FAX: 202-418-0630


                34

19.     PAT S. GENIS - AUSA
A.      07-10008
B.      2:06 CV 00072 PPS
20.     SUSAN R. BECKER - AUSA
21.     1:07 CV 01541
        KAREN MELNIK - AUSA
A.      1:05 CV 02334 RCL
B.      1:06 CV 01558 RCL
22.     R. BINKY ROBINSON - AUSA
A.      1:05 CV 00243 SS
B.      1:06 CV 00967 LY - RP
C.      06-1116Y
D.      06-01248
23.     U.S. ATTORNEYS OFFICE
        P.O. BOX 227
        WASHINGTON, DC 20044


        Michael Buegus
        MICHAEL L BUESGENS
        PLAINTIFF
        3112 WINDSOR RD A322
        AUSTIN, TEXAS 78703
        512-339-6057 7958
        MIKE BUESGENS@HOTMAIL.COM
        9/16/2007
        35

1:07 CV 00 859

REASONABLE REASSIGNMENT
ACCOMMODATION
AND
OPM DISABILITY RETIREMENT

# EXHIBITS

1. 85. M.S.P.R. 484
   LILLIAN F. MILLER
   V.
   UNITED STATES POSTAL SERVICE

2. 83 M.S.P.R. 270
   WAYNE Y. KITURA
   V.
   U.S. POSTAL SERVICE

3. 85 M.S.P.R. 388
   JAMES E. RULE
   V.
   DEPARTMENT OF VETERAN AFFAIRS

36

4.    996. F. 2d. 290
      LARRY L. BROWER
             V.
      OFFICE OF PERSONNEL MANAGEMENT

5.    236 F. 3d. 1356
      BRUCE A. BRACEY
             V.
      OFFICE OF PERSONNEL MANAGEMENT

EXHIBIT 1

## United States
### Office of Personnel Management
# Significant Cases

Select Issue:

December 2000

September 2000

July 2000

May 2000

March 2000

January 2000

November 1999

September 1999

July 1999

June 1999

April 1999

January 1999

November 1998

**Number 138**                    **December 2000**

## COURT DECISIONS | FLRA | MSPB

*85 M.S.P.R. 494*

## MSPB DECISIONS

## REASONABLE ACCOMMODATION

*Lillian F. Miller v. U.S. Postal Service*, CH-0752-99-0342-I-1, March 21, 2000.

### Holding

In cases involving reasonable accommodation, the appellant bears the burden of proving that vacancies exist for possible reassignment and the agency must provide requested information on the status of vacant positions.

### Summary

The appellant requested a reassignment and provided medical documentation stating that her continued employment as a Mail Handler was injurious to her health because the dusty environment of the mail room aggravated her medical conditions of chronic bronchitis and chronic obstructive pulmonary disease. Further, the medical

August 1998

June 1998

March 1998

documentation stated that the employee should work in a largely dust-free environment. The agency placed the employee on an indefinite suspension based on medical inability because it could not provide a dust-free environment. The suspension was to be in effect pending an investigation into whether her continued employment would constitute a health hazard or until such time as the employee provided medical documentation that it would be safe for her to return to work. *85 M.S.P.R. 494*

In her appeal the appellant alleged disability discrimination because of the agency's failure to reassign her and, through discovery, requested a listing of vacant positions available at the time her indefinite suspension began. The agency provided only a partial listing of vacancies and the appellant raised an objection with the administrative judge (AJ). The judge ruled that the agency's incomplete response was not significant and went on to rule in favor of the agency. The AJ found the indefinite suspension was supported by the evidence and held that the agency had not discriminated against the employee.

The full Board vacated the initial decision with regard to the appellant's discrimination allegation and remanded for compliance with the discovery request in order for a determination to be made on the appellant's discrimination argument. In its analysis, the Board noted that in cases involving the obligation to consider reassignment as a reasonable accommodation, the employee bears the burden of establishing the existence of available vacancies. However, it would be unfair for the Board to place such a burden on an employee and then not require an agency to provide the information needed to meet that burden. The remand ordered the judge to reopen the record and to ensure that the agency fully complied with the discovery request for a complete list of available vacancies within the local commuting area at the time of the indefinite suspension. In the remand initial decision issued in July 2000, the judge noted that following the agency's full compliance, the appellant identified four types of positions from the available vacancy list. The judge held that none of the positions would have met the medical restrictions imposed by the appellant's physician. The agency has subsequently reassigned the appellant to another position but that job did not exist at the time of the indefinite suspension and the judge did not consider the current position in

finding that the agency had no viable reassignment placement at the time of the suspension. *85 M.S.P.R 494*

## Comments

There are several issues that agencies should note in reviewing this case. First, it was an unusual set of facts that prevented the agency from even temporarily placing the employee in other duties while a final determination was made on the possibility of reassigning the employee. The employee's serious physical reaction to dust made it virtually impossible for her to perform any duties in most of the locations within the installation. However unusual the facts, the Board did support the underlying premise that it may be necessary in certain circumstances to indefinitely suspend an employee pending an investigation of whether continued work in that environment would be hazardous.

Second, in its disability discrimination analysis, the Board specifically found that the agency had an obligation to consider reassignment to possible vacancies **in the local commuting area**. This is noteworthy because of the existence of EEOC guidance and case law to the contrary. The EEOC has clearly stated its position that once the employee and the agency are engaged in a discussion of reassignment as an accommodation, the search for vacant positions must include any appropriate vacancies in the agency, without regard to geography or local appointing authority. (*See EEOC's Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, March 9, 1999). In fact, seven months prior to the issuance of this decision, the Board accepted an order from the EEOC that remanded a case with similar facts back to the Board for the taking of additional evidence (*Kitaura v. USPS*, 83 MSPR 270 (1999)). In that case, the EEOC's order (*Kitaura v. Henderson, #03980089*, March 11, 1999) specifically stated that the agency must determine whether vacancies existed "at the facility where he worked or other facilities to which he could have been reasonably reassigned." Given the existence of the 1999 guidance, the *Kitaura* decision, and the EEOC's proposed regulations (65 FR 11019-11023, March 1, 2000) to eliminate the restriction on reassignment to local commuting area, the Board's holding here is puzzling. With the likelihood that EEOC's regulations will go final in the next few months, agencies would be

*85 M.S.P.R. 494*

well advised to develop methods of searching for appropriate vacancies throughout the agency. As the EEOC notes in its guidance, this search is part of an interactive discussion with the employee and the search may be limited to those areas where the employee indicates s/he will be willing to relocate.

*Agencies having general questions concerning this publication, including suggestions for improvement, are encouraged to call Hal Fibish on (202) 606-2930.*

*Other questions or comments may be **mailed** to the U.S. Office of Personnel Management, Room 7H28, Theodore Roosevelt Building, 1900 E Street, NW., Washington, DC 20415-2000. You may **call** us at (202) 606-2930; **fax** (202) 606-2613; or **email** lmr@opm.gov.*

To Table of Contents
To Significant Cases Home Page
To New Developments Newsletter
To Labor Management Relations
To Employee Relations
To OPM Web Site Index
To OPM Home Page

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

85 M.S.P.R. 494

LILLIAN F. MILLER,

          Appellant,

v.

UNITED STATES POSTAL SERVICE,

          Agency.

DOCKET NUMBER
CH-0752-99-0342-I-1

DATE: March 21, 2000

Michael Wheeler, St. Louis, Missouri, for the appellant.

Jerry M. Wion, Hazelwood, Missouri, for the agency.

### BEFORE

Ben L. Erdreich, Chairman
Beth S. Slavet, Vice Chair
Susanne T. Marshall, Member

### OPINION AND ORDER

¶1    The appellant has filed a petition for review (PFR) of the initial decision (ID) that sustained the agency's action constructively suspending her from her position and further found that she did not establish her attendant claim of disability discrimination. For the reasons set forth below, the Board GRANTS the appellant's petition, AFFIRMS the ID as to its finding that the agency established the propriety of the constructive suspension, but VACATES the ID as to its finding that the appellant failed to establish her claim of disability discrimination, and REMANDS the case for further adjudication of that claim.

2

## BACKGROUND

¶2      The appellant, an agency employee since 1984, is, and has been, assigned to the St. Louis Bulk Mail Center. In 1996, after suffering an on-the-job injury to her back, she was offered, and accepted, the position of modified Level 4 Mail Handler, the duties of which were consistent with her medical restrictions. Initial Appeal File (IAF), Tab 3, Subtab T. In 1997, however, she underwent a laryngectomy, the removal of part of her larynx due to a carcinoma, and a tracheostomy, a surgical procedure whereby an opening is formed into the trachea through the skin. *Id.* at Subtab S. Because her condition, exacerbated by chronic bronchitis and chronic obstructive pulmonary disease, was further aggravated by the dusty environment of the workroom floor, she asked for a different assignment. After she filed a grievance, the agency agreed to move her work station to another part of the workroom floor. *Id.* at Subtab P. When that arrangement proved unsatisfactory, the appellant sought the assistance of Kevin Neilson, Plant Manager, to "get me off the work room floor," providing letters from her doctor which recommended that she work in a dust-free environment or an office where she would not be exposed to multiple dusts and allergens. *Id.* at Subtab R. Acknowledging that "the Bulk Mail Center environment is certainly not dust free," Neilson asked the appellant to provide suggestions on how her condition might be accommodated, *id.*, and she responded with a list of clerical-type duties she believed she could perform, *id.* at Subtab P.

¶3      On December 18, 1998, the agency placed her in an off-duty status without pay, concluding that "[her] retention on duty may result in injury to [her]self." *Id.* at Subtab N. On December 29, 1998, she was advised that the agency proposed to place her on enforced leave because of her medical condition, and that she would remain in that leave status until such time as she was able to furnish medical documentation, to the satisfaction of management, that she could perform the duties of her position. *Id.* at Subtab L. By letter of February 8,

1999, the agency notified the appellant that its proposed action was warranted, and it was effective on February 20, 1999.[1] *Id.* at Subtab G.

¶4      On appeal, the appellant challenged the agency's action and claimed that it constituted disability discrimination. *Id.* at Tab 1. Following a hearing, the administrative judge (AJ) issued an ID in which he found that the agency's placing the appellant on enforced leave for more than 14 days, pending its inquiry into whether her retention in duty status might be injurious to herself, constituted an appealable constructive suspension; that the agency had established that, at the time it suspended her, it had cause to believe that her continued employment in her position on the workroom floor could cause her injury, ID at 4-5; that the suspension had a condition subsequent that would bring it to an end, that is, the appellant's providing, to management's satisfaction, medical documentation evidencing her ability to perform her duties, *id.* at 8; and that, therefore, the agency had proven its reason for taking the action. With regard to the appellant's allegation of disability discrimination, the AJ found that she was disabled and that the action taken by the agency was based on her disability. *Id.* at 5-6. He further found, however, that neither of her suggested accommodations was reasonable, that is, relocating her work assignment to the second floor of the bulk mail center[2] or constructing a dust-free area for her,[3] and that she had not shown

---

[1] The record reflects that the appellant remained on administrative leave during the bulk of the notice period. IAF, Tab 3, Subtabs 4I and 4M.

[2] Lynnon Smith, the deciding official, testified that relocating the appellant's work assignment to the second floor would have been impractical and, in any event, would not have proved a satisfactory resolution because the mail with which she worked, torn, wet, and soiled mail in need of rewrapping, was itself inherently dusty. Hearing Tape, 2A; *see also* IAF, Tab 3, Subtab 4T.

[3] Here, the AJ relied on a report prepared by an industrial engineer estimating that the cost of constructing such an area would be prohibitive. ID at 6; IAF, Tab 15, Agency Exhibit 3. To the extent that the AJ erred in accepting the report into the record at the hearing, in view of the fact that the agency had not provided it with its prehearing submission, his error did not prejudice the appellant's substantive rights because Mr.

4

that she was entitled to be reassigned to another position. *Id.* at 6-7. He concluded, therefore, that the appellant had not established her claim of disability discrimination. Finally, the AJ then found that there was a nexus between the appellant's suspension from duty and the efficiency of the service, *id.* at 7-8, and that, under the circumstances, the agency's action was reasonable, *id.* at 8. As such, the AJ sustained the action.

¶5    In her PFR, the appellant disputes the AJ's finding that she did not establish her claim that she should have been reassigned to another position as a reasonable accommodation for her disabling condition, and she specifically challenges discovery rulings he made in connection with that claim. Petition for Review File, Tab 1. The agency has responded in opposition to the appellant's PFR. *Id.* at Tab 3.

## ANALYSIS

¶6    With regard to the reassignment of a disabled employee, the agency has an obligation under 29 C.F.R. § 1614.203(g) to identify vacant funded positions in the same commuting area, at or below her current grade or level, the essential functions of which she would be able to perform with reasonable accommodation, unless the reassignment would impose an undue hardship on it. *See Jackson v. U.S. Postal Service*, 73 M.S.P.R. 512, 521 (1997), *modified on other grounds*, 79 M.S.P.R. 46 (1998). It is nonetheless true, however, that the agency's failure to meet its obligation prior to removing, or, as here, suspending, the employee from her position does not relieve the appellant of her burden of ultimately showing before the Board that such positions existed and were available. *See Jackson v. U.S. Postal Service*, 79 M.S.P.R. 46, 54 (1998).

---

Smith testified independently of the report that the agency had evaluated the idea and determined that it would be cost prohibitive. Hearing Tape, 2A; *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

5

¶7    Toward that end, during the processing of this appeal, the appellant filed a motion to compel the agency to respond to interrogatories and a request for production of documents. IAF, Tab 4. In one interrogatory, she asked the agency to provide a list of vacant assignments within the organizational structure of the St. Louis Bulk Mail Center "and its amenities," including job descriptions and functions. *Id.* The AJ granted the motion to compel as to the interrogatories, *id.* at Tab 5, but, while the agency responded to some, it did not respond to the one at issue, claiming it was "not relevant, and not specific," *id.* at Tab 8. The appellant moved that sanctions be imposed, *id.* at Tab 10, and asked that she not be required to file her prehearing submission until the agency fully responded, *id.* at Tab 11. The AJ denied the appellant's motion for sanctions, stating that, to the extent the interrogatories were relevant and specific, the agency had provided appropriate responses. *Id.* at Tab 13. He did, however, order the agency to provide the appellant with a list of all Level 4 positions within the St. Louis metropolitan area that were vacant between the time she was placed on leave and the current date. He also denied the appellant's motion to delay the filing of her prehearing submissions, stating that she had not shown good cause, and that, further, the interrogatories to which the agency did not fully respond were not requests that could likely lead to probative evidence. *Id.*

¶8    In response to the AJ's order, the agency submitted a list of Level 4 Mail Handler positions in the St. Louis commuting area which were posted as vacant from the time the appellant was placed on enforced leave, to date. *Id.* at Tab 15, Agency Exhibit 1. At the hearing, the appellant noted her objection to the agency's incomplete response, but the AJ ruled that its noncompliance was not significant. Hearing Tape (HT), 1A. After the hearing, the appellant again objected to the agency's failure to fully comply with her discovery request. IAF, Tab 17.

¶9    It is well established that AJs have broad discretion in ruling on discovery matters and, absent a showing of abuse of discretion, the Board will not find

6

reversible error in such rulings. *See Schoenrogge v. Department of Justice*, 76 M.S.P.R. 216, 221 (1997). However, particularly where, as here, the appellant bears the burden of ultimately showing the existence and availability of vacant positions at or below her grade level, within her commuting area, to which she could be reassigned as a reasonable accommodation of her disability, *see Jackson*, 79 M.S.P.R. at 54, it is patently unfair for the AJ, having ordered the agency to provide such information, not to require it to do so, and then to find that the appellant failed to carry her burden. *Cf. Gregory v. Federal Communications Commission*, 79 M.S.P.R. 563, 570 (1998) (AJ abused her discretion at jurisdictional hearing of involuntary resignation appeal in not allowing appellant to call as witnesses coworkers who could corroborate her claim of intolerable working conditions). As noted above, the AJ ruled at the hearing that, to the extent the agency had not complied with his order, its noncompliance was "not significant." HT, 1A. On the contrary, he ordered the agency to provide a list of Level 4 positions within the St. Louis commuting area that were vacant at the time in question. IAF, Tab 13. What the agency provided was a list of vacant Level 4 Mail Handler positions. *Id.* at Tab 15, Agency Exhibit 1. This was wholly nonresponsive. The appellant has admitted that she is unable to perform her modified Mail Handler duties because they are carried out on the workroom floor, an inherently dusty area. *Id.* at Tab 13. Moreover, according to the agency, all Mail Handler positions, regardless of facility, are exposed to significant dust. HT, 1A (testimony of Cheryl Doldy, Human Relations Specialist). What the agency did not provide, although ordered to do so, was a list of vacant positions at the appellant's grade level within the St. Louis metropolitan area.[4] Although the AJ properly acknowledged that this information would have allowed the appellant to identify positions for which she was

---

[4] If there were vacant positions below Level 4, these should have been provided as well. 29 C.F.R. § 1614.203(g).

qualified that were located in an environment in which she could work, IAF, Tab 13, he did not require the agency to provide it. In failing to do so, he abused his discretion.

¶10    To the extent that, by the list the agency provided, it suggests that the appellant is only eligible for reassignment to other Mail Handler positions, and not for positions outside her craft, *see also* testimony of Mr. Smith, HT, 2B, it is true that employees of the Postal Service are not considered qualified for any offer of reassignment that would be inconsistent with the terms of any applicable collective bargaining agreement. 29 C.F.R. § 1614.203(g). However, the portion of the Negotiated Agreement that the agency provided does not preclude such a reassignment. On the contrary, it provides at Article 13.4, .5 that ill or injured employees may be permanently reassigned from one craft to another, when necessary. IAF, Tab 3, Subtab 4V; *see also Konieczko v. U.S. Postal Service*, 47 M.S.P.R. 509, 515 (1991). Moreover, as to the agency's argument that the appellant would not be entitled, in any event, to positions in another craft which might otherwise meet her restrictions (positions in the clerk craft, for example) because such positions are at a higher rate of pay than her Mail Handler position, IAF, Tab 18, the record is wholly lacking in objective evidence to support such an argument.

¶11    In sum, because the AJ abused his discretion with regard to the matter of discovery, as set forth above, his findings on the appellant's claim of disability discrimination must be vacated.

## ORDER

¶12    On remand, the AJ shall afford the appellant the opportunity to demonstrate the existence and availability of vacant funded positions that she could perform and which were at or below her current grade or level and in her commuting area. *See Jackson*, 79 M.S.P.R. at 53. In this regard, he shall reopen the record and require the agency to respond fully to the appellant's discovery request as it

8

relates to the availability of such positions. Thereafter, based on a fully developed record, including, in the discretion of the AJ, the taking of additional evidence or testimony, he shall determine anew whether the appellant has met her ultimate burden of proving that there was an appropriate position to which she could have been reassigned as a reasonable accommodation of her disability.


FOR THE BOARD:

_____
Robert E. Taylor
Clerk of the Board

Washington, D.C.



85 M.S.P.R. 494
LILLIAN F. MILLER
   POSTAL EMPLOYEE
   APPELLANT
VS.
UNITED STATES POSTAL SERVICE

EXHIBIT 2

Westlaw.

83 M.S.P.R. 270

83 M.S.P.R. 270
(Cite as: 83 M.S.P.R. 270)

**H**

Kitaura v. U.S. Postal Service
MSPB,1999.

Merit Systems Protection Board.
Wayne Y. KITAURA, Appellant,
v.
UNITED STATES POSTAL SERVICE, Agency.
SE-0752-97-0394-G-1.

Aug. 13, 1999.

Wayne Y. Kitaura, Honolulu, Hawaii, pro se.
Paul H. Mabus, So. San Francisco, California, for the agency.

Before ERDREICH, Chairman, SLAVET, Vice Chair, and MARSHALL, Member.

### ORDER

On March 11, 1999, pursuant to 5 U.S.C. § 7702(b)(4), the Equal Employment Opportunity Commission (EEOC) issued a decision remanding this case to the Board for the taking of additional evidence.

On September 24, 1997, an administrative judge in the Board's Seattle Field Office issued an initial decision finding that the appellant failed to prove his affirmative defense of disability discrimination. He sustained the agency's action placing the appellant on enforced leave due to his inability to perform the essential functions of his position. The appellant petitioned the full Board to review the initial decision. When the Board denied the appellant's petition for review, the initial decision became the final decision of the Board. The appellant then petitioned EEOC to review the final decision.

**\*271** Upon review of the Board's decision, EEOC determined that there was insufficient evidence in the record for it to render a decision in the matter. Accordingly, it remanded the case to the Board for supplementation of the record.

The case, therefore, is REMANDED to the Board's Seattle Field Office for the taking of additional evidence as specified in EEOC's decision. The administrative judge is instructed to conduct further proceedings, including the taking of testimonial evidence, to supplement the record in accordance with EEOC's decision. The additional evidence shall be transmitted, within 45 days, to the Clerk of the Board, who will, in turn, transmit the evidence to EEOC so that it may decide whether to concur with the Board's decision in this matter.

SLAVET, Vice Chair, issues a concurring opinion.
For the Board:
ROBERT E. TAYLOR,
WASHINGTON, D.C.
*CONCURRING OPINION OF VICE CHAIR BETH S. SLAVET.*
I agree with the majority's disposition. I write separately only to express my concern that the decision of the Equal Employment Opportunity Commission (EEOC) referring this case to the Board under 5 U.S.C. § 7702(b)(4) [FN1] for supplementation of the record is somewhat problematic, insofar as it provides no guidance on how the Board should develop the record when an appellant raises a disability discrimination claim before the Board. The EEOC's decision also appears to run counter to federal court and Board precedent that sets out the respective obligations of the parties to present evidence concerning accommodation of a disability by placement in a vacant position. This EEOC decision does not acknowledge such precedent, nor have I found any other EEOC decision that explains the EEOC's approach to discrimination claims involving a federal agency's alleged failure to accommodate an employee's disability.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

83 M.S.P.R. 270

83 M.S.P.R. 270
**(Cite as: 83 M.S.P.R. 270)**

FN1. As authority for its action, the EEOC cited 29 C.F.R. § 1614.305(d), which provides:

In considering any decision of the MSPB, the Commission, pursuant to 5 U.S.C. 7702(b)(4), may refer the case to the MSPB for the taking of additional evidence within such period as permits the Commission to make a decision within the 60-day period prescribed or provide on its own for the taking of additional evidence to the extent the Commission considers it necessary to supplement the record.

The procedure outlined in the regulation is expressly authorized by 5 U.S.C. § 7702(b)(4).

### Background

The agency placed the appellant on enforced leave from his Distribution Clerk position based on its determination that he is unable to *272 perform the essential functions of that position. On appeal, and after a hearing, the administrative judge (AJ) found, based on the parties' stipulations as to the appellant's condition of bilateral carpal tunnel syndrome and the consequent restrictions on lifting and grasping placed on him by his physician, that the agency proved that he is unable to perform the essential functions of his position. Turning to the appellant's disability discrimination claim, the AJ found that the appellant is disabled, and that his suggested accommodations (e.g., altering his duties, providing him with a harness and a cart) would not have allowed him to perform the essential functions of his position; the AJ also found that there were no vacant positions, the duties of which the appellant could have performed, to which he could have been reassigned. In so finding, the AJ credited the testimony of two agency officials, who stated that they had no vacancies and in fact had 10 "excess" employees. See Initial Appeal File, Tab 14 at 10. The full Board denied the appellant's petition for review, and the administrative judge's decision thus became the final decision of the Board. *Kitaura v. U.S. Postal Service,* 79 M.S.P.R. 257 (1998) (Table).

On review of the Board's final decision, the Equal Employment Opportunity Commission (EEOC) determined that there is insufficient evidence in the record for it to render a decision. Specifically, the EEOC agreed with the AJ's finding that the appellant cannot perform his normal Distribution Clerk duties because of a disability; it also agreed with the AJ's finding that the appellant cannot be accommodated in his position, finding that there are no reasonable measures available which would not " unduly burden the agency and expose [the appellant] to safety hazards." EEOC File, Tab 1 at 3-4. The EEOC also found, however, that there was "no objective evidence" to support the agency's determination that there were no vacant positions the duties of which the appellant could perform, and to which he could be reassigned, and no evidence that the agency conducted an adequate search for a vacant position. *Id.* at 4. Accordingly, the EEOC remanded the case to the Board for supplementation of the record. *Id.* at 4-5.

### Discussion

The EEOC's decision in this case is inconsistent with Board precedent. In *Jackson v. U.S. Postal Service,* 73 M.S.P.R. 512 (1997) (*Jackson I* ), the Board reversed the appellant's removal for inability to perform. The Board found that the appellant had made a *prima facie* case of disability discrimination by "articulating" a reasonable accommodation of reassignment to another position. *Id.* at 520-21 (relying on *Savage v. Department of the Navy,* 36 M.S.P.R. 148, 151-52 (1988)). The Board held that this was sufficient to shift the burden to the agency to show that the articulated accommodation was not *273 possible, and concluded that the agency failed to meet its burden. 73 M.S.P.R. at 521-24.

Upon the appellant's petition for enforcement, however, the Board modified its decision, when it became apparent that there was no vacant position to which the appellant could have been reassigned. The Board held that under *U.S. Postal Service Board of Governors' v. Aikens,* 460 U.S. 711, 714-15, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), once a case has been fully tried on the merits (as *Jackson* had been), the question whether the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

83 M.S.P.R. 270
**(Cite as: 83 M.S.P.R. 270)**

employee claiming discrimination has established a *prima facie* case is no longer relevant, and the factfinder should resolve the ultimate issue of whether the employee met his overall burden of proving discrimination. *Jackson v. U.S. Postal Service,* 79 M.S.P.R. 46, 51-54 (1998) (*Jackson II* ) . Applying this principle, the Board held that its decision in *Jackson I* was incorrect, and that it should have held that *Jackson* that her appeal failed to meet her burden of proving that her disability could be accommodated by reassignment. The Board noted that an agency is obligated, under 29 C.F.R. § 1614.203(g), to identify vacant funded positions in the commuting area, at or below a disabled employee's grade or pay level, to which the employee could be reassigned. 79 M.S.P.R. at 53. The Board nonetheless held that "if the agency fails to meet its reassignment obligation before it removes the employee, the agency's failure at that time to look for a position as a reasonable accommodation does not relieve the appellant of her burden of ultimately showing, before the Board, that such positions existed and were available." *Id.* at 54. The Board restated its holding as follows: " [A]lthough the agency may not have fulfilled its obligation to look for a position to which the appellant could be reassigned, the appellant did not meet her ultimate burden of proving that there was a position the agency would have found and could have assigned her to if it had looked." *Id.*[FN2]

FN2. The holding in *Jackson II* that an agency's failure to conduct an adequate search for a vacant position does not automatically lead to a finding of discrimination is consistent with two federal court decisions interpreting the Americans with Disabilities Act (ADA), the standards of which apply to a claim of disability discrimination under the Rehabilitation Act, 29 U.S.C. § 791(g). *See Barnett v. U.S. Air, Inc.,* 157 F.3d 744, 750 (9th Cir.1998) (the ADA does not create "independent liability" for an employer's failure to investigate possible means of accommodation); *Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir.1997) (same); *but see Taylor v.*

*Phoenixville School Dist.,* 174 F.3d 142, 160-61 (3rd Cir.1999) (liability may be found under the ADA for an employer's failure to engage in the "interactive process " by discussing accommodation with a disabled employee).

In this case, by contrast, the EEOC's finding that the agency did not conduct an adequate search for a position to which the appellant could be reassigned does relieve the appellant of his burden of showing that there was such a vacancy, since the EEOC has directed the Board **274 to require the agency to present evidence concerning vacancies. The EEOC has held, in essence, that *the agency,* not the employee, bears the burden of proof on the question of whether there was a vacant position to which a disabled employee could have been reassigned. *Cf. Bassignthwaite v. West,* EEOC No. 03970051 (Oct. 2, 1997) (rejecting a claim of disability discrimination after discussing the agency's " thoroughly documented" attempts to locate a position to which the appellant could have been reassigned; the appellant failed to "contradict the evidence presented by the agency that no such positions were available").

This is not the first time that the EEOC has returned a case to the Board for the presentation of evidence from the agency concerning reassignment efforts, upon finding that the agency did not conduct an adequate search for a vacant position in which a disabled employee could have been placed. *See Schuetter v. Cohen,* EEOC No. 03970140 (Jan. 15, 1999); *Conover v. Runyon,* EEOC No. 03960113 (Sept. 11, 1997). The EEOC appears to have taken a similar approach when an employee appeals to the EEOC from a final agency decision denying a claim of disability discrimination; when the EEOC finds that the agency did not conduct an adequate search for a vacant position, it remands the matter to the agency for a "supplemental investigation." *See Cotter v. West,* EEOC No. 01963628 (Dec. 23, 1998); *Schwartz v. Runyon,* EEOC No. 01956312 (Jan. 5, 1998).

Indeed, in *Schuetter,* a case appealed to the EEOC from a final Board decision, the EEOC returned the case to the Board for "further *investigation* "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

83 M.S.P.R. 270

83 M.S.P.R. 270
**(Cite as: 83 M.S.P.R. 270)**

(emphasis supplied). The EEOC's use of the word "investigation" may highlight what appears to be a fundamental difference between the way the EEOC and the Board view their respective roles and how they operate. In *Jackson I*, the Board found that the agency had committed disability discrimination based on a lack of evidence, *i.e.*, the agency's failure to show that it could not have reassigned her. In *Jackson II* the Board modified *Jackson I* because the order in *Jackson I* could not be enforced. The Board also held, in light of *Aikens*, that in future cases decided after a hearing the ultimate question would be whether the appellant showed that there was a vacant position to which she could have been reassigned. Thus, *Jackson I* and *Jackson II*, although differing with regard to which party must produce evidence, are similar in that they rely on an adversarial model of adjudication, under which uncertainty is resolved against the party that bears the burden of proof on a particular question. *See* 5 U.S.C. § 7701(c) (in general, an agency bears the burden of proof on the merits, and the appellant bears the burden of proof on affirmative defenses); 5 C.F.R. § 1201.56 (further explaining allocation and standard of proof in Board appeals).

**\*275** It may be that the EEOC's decision in this case, and its decisions in *Schuetter* and *Conover*, rest on an investigatory approach rather than on the adversarial model that the Board normally employs. In all three cases, the EEOC declined to make a decision when it saw uncertainty as to the possibility of reassignment, and asked a party to present additional evidence so that the EEOC could resolve the reassignment issue with a positive finding, that is, one based on evidence actually presented rather than on a party's failure to present evidence.[FN3] It may also be that the EEOC subjects a federal agency's decision to remove a disabled employee to heightened scrutiny in light of the Rehabilitation Act's mandate that federal agencies develop "affirmative action program plan[s] for the hiring, placement, and advancement of individuals with disabilities," 29 U.S.C. § 791(b), and the EEOC's related rule stating that the federal government "shall become a model employer" of the disabled, 29 C.F.R. § 1614.203(b).

FN3. On occasion the Board has taken a similar approach. *See, e.g., Wutke v. Office of Personnel Management*, 67 M.S.P.R. 523, 527-28 (1995) (the Board declined to decide a retirement case against the appellant based on "strict application of the adversarial model of adjudication," but instead allowed supplementation of the evidentiary record; there was reason to believe the wrong result might be reached if the case were decided on the record developed before the administrative judge).

In any case, the Board makes the evidentiary record for the EEOC's review in mixed cases under 5 U.S.C. § 7702. If the EEOC disagrees with the Board's rule that an appellant who claims that his disability could have been accommodated by reassignment bears the burden of proving that there was a specific vacant position the duties of which he could perform, it would be beneficial to parties who appear before the Board, Board administrative judges, and the Board itself for the EEOC to make that express pronouncement. In that event, the Board could then consider requiring the agency to show, in every case in which the agency has taken an action based on a charge of inability to perform and the appellant claims disability discrimination, that there was no vacant position to which the appellant could have been reassigned.[FN4] In this connection, it should be noted that under 5 U.S.C. § 7701(c)(2)(B), the appellant bears the burden of proving, by a preponderance of the evidence, an affirmative defense of disability discrimination. Arguably, there is a tension between section 7701(c)(2)(B) and the EEOC's view that the agency bears the burden **\*276** of proving that there was no vacant position to which a disabled employee could have been reassigned. It would be helpful for the EEOC to give its view on whether there is such a tension, and if so, how it should be resolved.

FN4. As noted in *Jackson II*, the EEOC has expressly adopted the *Aikens* approach, and thus, the adversarial principle implicit in *Aikens*, in Title VII cases. *See, e.g., Pierce v. Apfel*, EEOC

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

83 M.S.P.R. 270
(Cite as: 83 M.S.P.R. 270)

No. 01961642 (Feb. 20, 1998). It has even adopted *Aikens* in adjudicating disability discrimination claims brought under a disparate treatment theory. *See McKinney v. Runyon,* EEOC No. 01940021 (Mar. 16, 1995). However, I have not located an EEOC decision applying the *Aikens* approach to a disability discrimination claim alleging failure to accommodate.

Finally, the EEOC noted in its decision returning this case to the Board that under the Rehabilitation Act Amendments of 1992, 29 U.S.C. § 791(g), "for nondiscrimination purposes, federal agencies must follow the ADA [Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.] standards." The EEOC did not acknowledge that requiring the agency to produce evidence concerning the nonexistence of a vacant position to which the appellant could have been reassigned is contrary to these federal court decisions interpreting the ADA and the Rehabilitation Act, which hold that the employee bears the burden of proving that there was a vacancy to which he could have been reassigned. FN5 Nevertheless, the EEOC's decision in this case "rests upon an interpretation of discrimination law," and "is not so unreasonable that it amounts to a violation of civil service law," so the Board "lacks authority to disagree" with the EEOC's decision. *Sloan v. U.S. Postal Service,* 77 M.S.P.R. 58, 68 (1997). Accordingly, I agree with the majority that this case should be returned to the AJ for supplementation of the record.

FN5. *See Barnett v. U.S. Air, Inc.,* 157 F.3d 744, 749 (9th Cir.1998) (under the ADA, the employee bears the burden of showing "the existence of a position that he or she could perform"); *McCreary v. Libbey-Owens-Ford Co.,* 132 F.3d 1159, 1165 (7th Cir.1997) (under the ADA, the employee "bears the burden of showing that a vacant position exists and that [he] is qualified for that position"); *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 810 (5th Cir.1997) (under the ADA, the employee must show that a position to

which he could have been reassigned was "vacant" and that he was qualified for it), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1050, 140 L.Ed.2d 113 (1998); *Willis v. Conopco, Inc.,* 108 F.3d 282, 286 (11th Cir.1997) (an employee's ADA claim was rejected because she failed to present evidence that "an alternative position" to which she could have been reassigned existed); *Shiring v. Runyon,* 90 F.3d 827, 832 (3rd Cir.1996) (under the Rehabilitation Act, the employee must "demonstrate that there w[as a] funded, vacant position[ ] whose essential duties he was capable of performing"); *but see Woodman v. Runyon,* 132 F.3d 1330, 1344 (under the Rehabilitation Act, the employee "bears the ultimate burden of proving" that "there are jobs available that her disability will nevertheless allow her to do"; however, "[i]n accordance with ... the Rehabilitation Act's mandate that federal employers act affirmatively to provide reasonable accommodation for disabled workers," this burden "is not a heavy one"; once a "facial showing" is made that "accommodation is possible," the burden shifts to the employer to prove that accommodation would be an undue hardship).

MSPB,1999.
Kitaura v. U.S. Postal Service
83 M.S.P.R. 270

**END OF DOCUMENT**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw Attached Printing Summary Report for PATRON ACCESS, 4809550**

| | |
|---|---|
| Date/Time of Request: | Thursday, September 06, 2007 15:24:00 Central |
| Client Identifier: | PATRON ACCESS |
| Database: | KEYCITE-COMBINED |
| Citation Text: | `83 M.S.P.R. 270 |
| Service: | KeyCite |
| Lines: | 36 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

Date of Printing: SEP 06,2007

**KEYCITE**

**H**Kitaura v. U.S. Postal Service, 83 M.S.P.R. 270 (M.S.P.B., Aug 13, 1999) (NO. SE-0752-97-0394-G-1)

### History
### Direct History

**P**    1  Kitaura v. U.S. Postal Service, 79 M.S.P.R. 257 (M.S.P.B. Apr 24, 1998) (TABLE, NO.
            SE-0752-97-0394-I-1)
                            *Remanded by*
**H**    2  WAYNE Y. KITAURA, PETITIONER, v. WILLIAM J. HENDERSON, POSTMASTER
            GENERAL, UNITED STATES POSTAL SERVICE, AGENCY., 1999 WL 173923, EEOC DOC
            03980089 (E.E.O.C. Mar 11, 1999) (NO. PET 03980089, SE-0752-97-0374-I-1)
                            *Opinion After Remand*
=>       3  **Kitaura v. U.S. Postal Service, 83 M.S.P.R. 270 (M.S.P.B. Aug 13, 1999) (NO.
            SE-0752-97-0394-G-1)**
                            *Petition Denied by*
**H**    4  WAYNE KITAURA, PETITIONER, v. WILLIAM J. HENDERSON, POSTMASTER GENERAL,
            UNITED STATES POSTAL SERVICE, AGENCY., 2000 WL 780800, EEOC DOC 03990148
            (E.E.O.C. Jun 08, 2000) (NO. PET 03990148, SE-0759-97-0394-G-1)

### Citing References
### Administrative Decisions (U.S.A.)

### MSPB Decisions

**H**    5  Conaway v. U.S. Postal Service, 93 M.S.P.R. 6, 18 (M.S.P.B. Sep 30, 2002) (NO.
            PH-0752-97-0015-C-3, PH-0752-0015-B-2)★ ★

### Court Documents
### Appellate Court Documents (U.S.A.)

**Appellate Briefs**

         6  Agnes B. BULLOCK, Petitioner, v. IMMIGRATION AND NATURALIZATION SERVICE,,
            Respondent., 2004 WL 3257893, *3257893 (Appellate Brief) (Fed.Cir. Mar 02, 2004)
            **Respondent's Informal Brief and Appendix (NO. 03-3205)★ ★**

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64
058 914 668, or their Licensors. All rights reserved.

EXHIBIT 3



**United States**
**Office of Personnel Management**
Significant Cases

Select Issue

December 2000

September 2000

July 2000

May 2000

March 2000

January 2000

November 1999

September 1999

July 1999

June 1999

April 1999

January 1999

November 1998

August 1998

June 1998



**Number 136      July 2000**

**COURT DECISIONS | FLRA | MSPB**

*85 M.S.P.R. 388*

**MSPB DECISIONS**

**JURISDICTION ... INVOLUNTARY RETIREMENT**

*James Rule v. Department of Veterans Affairs,* 85 MSPR 388 (March 7, 2000)

### Holding



To establish that a disability retirement application was involuntary, and therefore to establish Board jurisdiction, an appellant must prove that the agency failed to reasonably accommodate his or her disabling condition. With regard to reassignment as an accommodation, there must be evidence that vacant positions existed and that the appellant indicated to the agency that he or she wanted to continue working, rather than retire.

### Summary

The agency proposed the appellant's removal based on medical inability to perform the duties of his position. Prior to a decision on that action, the appellant filed for, and was granted, a disability retirement annuity through OPM. The agency notified the appellant that no decision would be issued on the proposed removal because his retirement application had been accepted. However, the appellant requested that the agency issue a final decision so that he could challenge it. Once the decision was issued, the appellant filed a formal discrimination complaint. Following a final agency decision of no discrimination, the appellant filed an appeal with the Merit Systems Protection Board (MSPB). The administrative judge hearing the case found no jurisdiction because of the voluntary nature of the retirement. The appellant challenged that decision to the full Board, arguing that the Board had jurisdiction over his



disability retirement because it was an involuntary retirement based on the agency's failure to reasonably accommodate him. In the appeal, he argued that the administrative judge had used the wrong legal standard when considering evidence of potential positions to which the appellant could have been assigned.

The Board took this opportunity to distinguish between the way "reasonable accommodation" is applied in the context of eligibility for disability retirement under the Civil Service Retirement System (CSRS) and the Federal Employees Retirement System (FERS) and the way it is applied under the Rehabilitation Act of 1973, as amended. Under the Office of Personnel Management's disability retirement eligibility rules, an employee who cannot perform current duties due to a medical condition but who can be accommodated in his or her position (or in a position at the same grade and pay) is NOT eligible for disability retirement. However, any offer of a position at a lower grade would not constitute reasonable accommodation and the employee would be eligible to apply for disability retirement.

In contrast, under the Rehabilitation Act, an employee may be reasonably accommodated with an offer of a position at a lower grade, once it has been determined that no position is available at the employee's current grade. Having noted the distinction between the two systems, the Board made clear that an agency is required to investigate the possible placement of an employee at a lower graded position in order to comply with the anti-discrimination laws. If a position at a lower grade is available, the agency must inform the employee of the position.

The issue in this case was whether or not the appellant's application for disability retirement had been made involuntarily. The Board held that if an agency does not provide an employee with information regarding possible placement in a position at a lower grade, as an alternative to disability retirement, then the agency has "deprived him of free choice with respect to disability retirement." Such a failure on the agency's part could render a disability retirement involuntary.

The Board went on to say that in order for an appellant to prove that a disability retirement was involuntary, two conditions must be proven. The appellant must demonstrate not only that a vacant position existed at an equivalent or lower grade, but also that the appellant told the agency he or she was willing to continue working in any position, including a lower graded position. In this case, the Board found that the appellant had never indicated any willingness to continue working, despite his medical restrictions. Therefore, the Board found that his disability retirement was voluntary, since the appellant did not meet the second condition necessary to establish jurisdiction.

## Comments

Although it takes some patience to read through this decision, it is a useful reminder to an agency of its obligations when an employee is no longer medically able to carry out the



requirements of a job and the employee is eligible to apply for disability retirement. When no accommodation, including reassignment at the employee's current grade, is available, an otherwise eligible employee may file for disability retirement. However, the Board has made clear in recent years that filing for disability retirement does not take away an employee's right to challenge the agency's failure to accommodate under the Rehabilitation Act. An agency's search for vacant positions as a possible accommodation must include lower graded positions. However, in order to make these searches as efficient as possible, an agency is well advised to ask the employee what grade level he or she would accept as an accommodation. The employee's willingness to accept positions as lower grade levels will define the extent of the agency's obligation to search.

*Agencies having general questions concerning this publication, including suggestions for improvement, are encouraged to call Hal Fibish on (202) 606-2930.*

*Other questions or comments may be **mailed** to the U.S. Office of Personnel Management, Room 7H28, Theodore Roosevelt Building, 1900 E Street, NW., Washington, DC 20415-2000. You may **call** us at (202) 606-2930; **fax** (202) 606-2613; or **email** lmr@opm.gov.*

Return to Table of Contents  |  Significant Cases Home Page
New Developments Newsletter  |  Labor Management Relations
SEARCH  |  Site Index  |  Publications  |  Home  |  Contact Us
Privacy Policy  |  Accessibility Statement

Westlaw.

85 M.S.P.R. 388

85 M.S.P.R. 388
(Cite as: 85 M.S.P.R. 388)

H

Rule v. Department of Veterans Affairs
MSPB,2000.

Merit Systems Protection Board.
James E. RULE, Appellant,
v.
DEPARTMENT OF VETERANS AFFAIRS,
Agency.
DA-0752-98-0216-B-1.

March 7, 2000.

Retiree petitioned for review of initial decision that dismissed his appeal for lack of jurisdiction. The Merit Systems Protection Board held that: (1) employee can establish that agency deprived him of free choice with respect to disability retirement if he can prove that there was an accommodation available on the date of his separation, either at or below his grade or level, that would have allowed him to continue his employment, and (2) employee failed to establish that his disability retirement was involuntary, based on doctor's testimony that agency could have reasonably accommodated the employee's medical condition in one of its police monitoring positions, absent evidence that employee indicated that he wished to continue working despite his medical limitations.

Petition denied; appeal reopened; affirmed as modified

West Headnotes

[1] Merit Systems Protection 450 ⚭82

450 Merit Systems Protection
    450II Jurisdiction
        450II(C) Actions Taken
            450II(C)2 Resignation, Retirement, Demotion, or Suspension
                450k82 k. Voluntary or Involuntary Action. Most Cited Cases
Absent evidence to the contrary, retirement is presumed to be a voluntary act that is beyond the Board's jurisdiction.

[2] Merit Systems Protection 450 ⚭82

450 Merit Systems Protection
    450II Jurisdiction
        450II(C) Actions Taken
            450II(C)2 Resignation, Retirement, Demotion, or Suspension
                450k82 k. Voluntary or Involuntary Action. Most Cited Cases
Although the Board does not have jurisdiction over the voluntary acts of an employee, an involuntary retirement is tantamount to a removal, an adverse action over which the Board has jurisdiction pursuant to pursuant to statute. 5 U.S.C.A. § 7512.

[3] Merit Systems Protection 450 ⚭82

450 Merit Systems Protection
    450II Jurisdiction
        450II(C) Actions Taken
            450II(C)2 Resignation, Retirement, Demotion, or Suspension
                450k82 k. Voluntary or Involuntary Action. Most Cited Cases
When the Board determines whether it has jurisdiction over a presumptively voluntary act such as a retirement or a resignation, the decisive factor is whether the appellant was effectively deprived of free choice in the matter.

[4] Merit Systems Protection 450 ⚭82

450 Merit Systems Protection
    450II Jurisdiction
        450II(C) Actions Taken
            450II(C)2 Resignation, Retirement, Demotion, or Suspension
                450k82 k. Voluntary or Involuntary Action. Most Cited Cases
An employee can establish that the agency deprived him of free choice with respect to disability retirement if he can prove that there was an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 M.S.P.R. 388

85 M.S.P.R. 388
**(Cite as: 85 M.S.P.R. 388)**

accommodation available on the date of his separation, either at or below his grade or level, that would have allowed him to continue his employment.

**[5] Merit Systems Protection 450 ☞82**

450 Merit Systems Protection
    450II Jurisdiction
        450II(C) Actions Taken
            450II(C)2 Resignation, Retirement, Demotion, or Suspension
            450k82 k. Voluntary or Involuntary Action. Most Cited Cases
The existence of a position in which the agency may reasonably accommodate an employee, standing alone, does not render an employee's decision to retire involuntary; rather, the employee must also establish that he indicated to the agency that he wished to continue working despite his medical limitations.

**[6] Merit Systems Protection 450 ☞82**

450 Merit Systems Protection
    450II Jurisdiction
        450II(C) Actions Taken
            450II(C)2 Resignation, Retirement, Demotion, or Suspension
            450k82 k. Voluntary or Involuntary Action. Most Cited Cases
Employee failed to establish that his disability retirement was involuntary, based on doctor's testimony that agency could have reasonably accommodated the employee's medical condition in one of its police monitoring positions, absent evidence that employee indicated that he wished to continue working despite his medical limitations.

**\*389** Kevin J. Calvey, Del City, Oklahoma, for the appellant.
Stephanie R. Darr, Muskogee, Oklahoma, for the agency.

Before ERDREICH, Chairman, SLAVET, Vice Chair, and MARSHALL, Member.

### *OPINION AND ORDER*

¶ 1 The appellant petitions for review of the June 15, 1999 initial decision that dismissed his appeal for lack of jurisdiction. We DENY the appellant's petition for failure to meet the review criteria set forth at 5 C.F.R. § 1201.115. However, for the reasons set forth below, we REOPEN the appeal on our own motion and AFFIRM the initial decision AS MODIFIED by this Opinion and Order.

### *BACKGROUND*

¶ 2 Prior to his retirement, the appellant was employed as a Medical Supply Technician, GS-0662-05, at the agency's Medical Center in Oklahoma City, Oklahoma. Initial Appeal File (IAF), Tab 5, Subtab 4d. The appellant, who had previously suffered from active tuberculosis, testified that he approached Dr. Opal Zchiesche, an agency physician, and informed her that he was losing weight and having trouble sleeping and feared that he might be suffering a relapse of his tuberculosis. Hearing Tape (HT) 2, Side A. According to the appellant, Dr. Zchiesche suggested that the appellant should have a physical and that he should consult the personnel office about the possibility of retiring. *Id.* On May 2, 1996, the appellant was examined by Dr. Elizabeth White. IAF, Tab 5, Subtab 4*l*. In her report, Dr. White stated that the appellant suffered from severe cardiac and circulatory problems and that, as a result of these problems, "[b]oth the physical exertion and stress of his job are contraindicated." IAF, Tab 5, Subtab 4*l*.

**\*390** ¶ 3 On June 7, 1996, the appellant, who was a veteran receiving compensation from the agency for a service-connected injury, filed an application for increased compensation based on unemployability to which he attached a copy of Dr. White's report. IAF, Tab 5, Subtab 4o, Exhibit C7. Although the agency apparently denied this application, the agency proposed the appellant's removal based on the results of Dr. White's examination. IAF, Tab 5, Subtab 4k. The notice of proposed removal informed the appellant that the agency was placing him in a "paid non-duty status (authorized absence) effective immediately upon receipt" of the notice. *Id.* The appellant

85 M.S.P.R. 388
(Cite as: 85 M.S.P.R. 388)

subsequently filed an application for disability retirement under the Civil Service Retirement System (CSRS). IAF, Tab 5, Subtab 4j. For the purposes of the appellant's application, the agency certified that it could neither accommodate nor reassign the appellant. IAF, Tab 5, Subtab 4j, Standard Form 2824 D. The Office of Personnel Management (OPM) approved the appellant's application on October 1, 1996, and his retirement was effective on November 3, 1996. IAF, Tab. 5, Subtabs 4d, 4h. Because the appellant retired, the agency notified the appellant that no decision would be made regarding the proposed removal. IAF, Tab 5, Subtab 4f. However, on December 18, 1996, the appellant asked the associate director of the Medical Center to issue a final decision letter for the purpose of "allowing me to proceed with my administrative claims." IAF, Tab 5, Subtab 4a.

¶ 4 On January 13, 1997, the appellant filed a formal discrimination complaint with the agency concerning his retirement. IAF, Tab 5, Subtab 4o, Exhibit A2a. The agency issued its final agency decision (FAD) on January 13, 1998, concluding that the appellant failed to prove discrimination by a preponderance of the evidence. IAF, Tab 5, Subtab 3. The agency advised the appellant that he could appeal the FAD to the Board within 30 calendar days of receipt of the decision. *Id.* The Board's Dallas Field Office received the appellant's complaint on February 13, 1998. IAF, Tab 1. On June 12, 1998, the administrative judge dismissed the appellant's appeal for lack of jurisdiction without a hearing, finding that the appellant failed to raise a nonfrivolous allegation that his retirement was involuntary. IAF, Tab 15, Initial Decision (ID) at 5-7.

¶ 5 The Board subsequently vacated the initial decision and remanded the appeal to the field office upon finding that the appellant did not receive explicit notice concerning the Board's jurisdiction over appeals in which an appellant claims that his disability retirement was involuntary. *Rule v. Department of Veterans Affairs*, 81 M.S.P.R. 282, 286, ¶ 8 (1999). On remand, the administrative judge conducted a hearing but determined that the appellant failed to establish Board jurisdiction over his appeal. Remand Appeal File (RAF), Tab 11, Remand Initial Decision (RID).

*391 ¶ 6 The appellant has now filed a petition for review in which he claims that the administrative judge applied the wrong legal standard when considering the evidence presented regarding the positions to which the agency could have assigned the appellant as an accommodation for his medical condition. Petition for Review (PFR) File, Tab 1, Attachment at 2. We are reopening this appeal to explain the legal standard that applies in cases such as this. However, for the reasons set forth below, we find that the appellant failed to establish Board jurisdiction under this standard.

### ANALYSIS

[1][2] ¶ 7 Absent evidence to the contrary, retirement is presumed to be a voluntary act that is beyond the Board's jurisdiction. *See Covington v. Department of Health & Human Services*, 750 F.2d 937, 941 (Fed.Cir.1984). Although the Board does not have jurisdiction over the voluntary acts of an employee, an involuntary retirement is tantamount to a removal, an adverse action over which the Board has jurisdiction pursuant to 5 U.S.C. § 7512. *See, e.g., Staats v. U.S. Postal Service*, 99 F.3d 1120, 1123 (Fed.Cir.1996). In *Nordhoff v. Department of the Navy*, 78 M.S.P.R. 88 (1998), *aff'd*, 185 F.3d 886 (Fed.Cir.1999) (Table), we discussed the special circumstances that are implicated when an appellant claims that a disability retirement was involuntary. We noted that disability retirement cases are somewhat different from typical retirement cases because an appellant who meets the statutory requirements for disability retirement has "no true choice between working (with or without accommodation) and not working, and disability retirement cannot be considered as a removal within the meaning of 5 U.S.C. § 7512(1)." *Id.* at 91. Therefore, the standard we set forth in *Nordhoff* for determining whether a disability retirement was involuntary, and therefore tantamount to a removal, focused on the availability of an accommodation:

To establish Board jurisdiction, an appellant who claims to have been constructively removed through an involuntary disability retirement must show that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 M.S.P.R. 388

85 M.S.P.R. 388
(Cite as: 85 M.S.P.R. 388)

there was an accommodation available on the date of his separation that would have allowed him to continue his employment, and that the agency did not provide him that accommodation.

*Id.*

¶ 8 In his petition for review, the appellant argues that the administrative judge disregarded testimony that established that the appellant was capable of performing the essential functions of a GS-04 position located in the Medical Center's police monitoring room. PFR File, Tab 1, Attachment at 1. At the hearing, Paul Abt, the former director of the Medical Center, testified that the duties of this position *392 required the incumbent to sit in a chair and watch a police monitor. Hearing Tape (HT) 1, Side A. Dr. Zchiesche testified that these positions required sedentary work and were less stressful than the appellant's position. HT 5, Side A. Dr. Zchiesche also implied that if she had known one of these positions was available, she would have looked at the position very carefully and probably would have recommended that the appellant should have been given a try at one of these sedentary jobs in a protected environment. *Id.*

¶ 9 Carol Smith, an employee relations assistant for the agency, testified concerning the agency's determination that it could not reassign the appellant. HT 6, Side A. She stated that the medical examination provided that the appellant could have no stress or physical exertion, and that he could not work closely with others. *Id.* Smith testified that there were no vacancies at the appellant's same grade and level, and that she did not look into lower-graded positions. *Id.* When the appellant's attorney asked her specifically about the police monitoring positions, she stated that she did not consider these positions for the appellant because they were GS-04 positions. *Id.* During redirect testimony, Smith testified that she did not know if any of these positions was available at the time of the appellant's retirement. *Id.* The appellant testified, however, that the agency offered one of these positions to another employee 4 days after he received the notice of proposed removal. HT 2, Side A.

¶ 10 In the initial decision, the administrative judge stated, "[a]lthough the appellant pointed to several positions that the agency could have accommodated him in at the time of his retirement, he did not show that, number one, these positions were indeed vacant at the time he retired, or that they were at the same grade and level." RID at 16. The administrative judge also stated that "the testimony indicates that the only positions that he suggested he could have been able to perform ... were not at the same grade or level." *Id.* Thus, it appears that the administrative judge applied the *Nordhoff* standard by requiring the appellant to prove that the agency could have accommodated him in a position at his same grade or level at the time he retired.

¶ 11 The term "accommodation," however, can have different meanings depending on the context in which it is used. For example, to be eligible for a disability retirement annuity under the CSRS, an employee must have completed 5 years of civilian service and must be unable, because of disease or injury, to render useful and efficient service in his or her position and must not be qualified for reassignment to a vacant position in the agency at the same grade or level in which he or she could render useful and efficient service. 5 U.S.C. § 8337(a); *see also* 5 C.F.R. § 831.1203(a). OPM's implementing *393 regulations further require that the disabling medical condition be expected to continue for at least 1 year from the date the application is filed and that the employing agency be unable to accommodate the disabling medical condition in the appellant's former position or in an existing vacant position. 5 C.F.R. § 831.1203(a). Thus, for the purposes of determining an employee's eligibility for a disability retirement annuity, the term "accommodation" only refers to vacant positions at the employee's same grade or level. *See* CSRS and FERS Handbook for Personnel and Payroll Offices, § 60A2.1-5 (Aug. 15, 1995).

¶ 12 However, the term is not so limited in the context of an agency's obligations under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* The Equal Employment Opportunity Commission (EEOC) regulations that implement the Rehabilitation Act require federal agencies to make

85 M.S.P.R. 388                                                                                      Page 5

85 M.S.P.R. 388
(Cite as: 85 M.S.P.R. 388)

reasonable accommodation to the known physical or mental limitations of an employee who is a qualified individual with handicaps unless the agency can demonstrate that the accommodation would impose an undue hardship on the operations of its programs. 29 C.F.R. § 1614.203(c)(1). If the employee cannot be reasonably accommodated in his position, the EEOC regulations require federal agencies to offer to reassign the employee to a funded vacant position located in the same commuting area and serviced by the same appointing authority, and at the same grade or level, the essential functions of which the employee would be able to perform with reasonable accommodation if necessary. 29 C.F.R. § 1614.203(g). If a position is not available at the employee's same grade or level, an agency must offer to reassign the employee to a vacant position at the highest available grade or level below the employee's current grade or level. *Id.* The regulations provide, however, that the availability of such a vacancy below the employee's current grade or level does not affect the employee's entitlement to disability retirement. *Id.* Thus, for the purposes of determining an agency's obligations regarding reassignment under the Rehabilitation Act, the term "accommodation" refers to positions that are at the employee's same grade and level, and, if no such positions are available, it includes positions below the employee's current grade or level.

[3][4] ¶ 13 We have reopened this appeal also to clarify the meaning of the term "accommodation" that should be used when applying the *Nordhoff* standard in cases in which an appellant alleges that a disability retirement was involuntary. When the Board determines whether it has jurisdiction over a presumptively voluntary act such as a retirement or a resignation, the decisive factor is whether the appellant was effectively deprived of free choice in the matter. *See, e.g., Koury v. Department of Defense,* 84 M.S.P.R. 219, 226, ¶ 10 (1999) ("The voluntariness of a resignation is determined based on whether *394 the totality of the circumstances supports the conclusion that the employee was effectively deprived of free choice in the matter."); *Henriksen v. Department of Energy,* 79 M.S.P.R. 213, 216, ¶ 7 (1998). In the disability retirement context, an employee may choose to continue to

work despite the fact that he is eligible for a disability retirement annuity. This situation occurs where the agency cannot accommodate the employee in a position at the same grade or level, but it can accommodate him by reassigning him to a lower-graded position. Because the availability of an accommodation at a lower-graded position does not affect the employee's entitlement to a disability retirement, the employee can choose to accept the reassignment or to retire with a disability retirement annuity. *See* 5 U.S.C. § 8337(a); 5 C.F.R. § 831.1203(a); 29 C.F.R. § 1614.203(g). Thus, an appellant can establish that the agency deprived him of free choice with respect to disability retirement if he can prove that there was an accommodation available on the date of his separation, either at *or below* his grade or level, that would have allowed him to continue his employment. *Nordhoff,* 78 M.S.P.R. at 91. To the extent that the administrative judge in this case suggested that the accommodation inquiry should be limited to vacant positions at the appellant's same grade or level, he erred.

[5] ¶ 14 Nevertheless, any error the administrative judge may have committed with respect to the accommodation issue was harmless. *Panter v. Department of the Air Force,* 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). The existence of a position in which the agency may reasonably accommodate an employee, standing alone, does not render an employee's decision to retire involuntary. *See Atkins v. Department of Commerce,* 81 M.S.P.R. 246, 251, ¶ 10 (1999). Rather, the employee must also establish that he indicated to the agency that he wished to continue working despite his medical limitations. *See Lorenz v. U.S. Postal Service,* 84 M.S.P.R. 670, 674, ¶ 8 (2000). If the appellant indicated that he wished to continue working, the relevant time period for the accommodation inquiry would run from that date through the date of the appellant's separation. *Id.,* at 675, ¶ 11.

[6] ¶ 15 While Dr. Zchiesche's testimony suggested that the agency could have reasonably accommodated the appellant's medical condition in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 M.S.P.R. 388

85 M.S.P.R. 388
**(Cite as: 85 M.S.P.R. 388)**

one of the police monitoring positions, there is no
evidence to establish that the appellant indicated
that he wished to continue working despite his
medical limitations. The application for increased
compensation based on unemployability that the
appellant filed with the agency indicated that the
appellant expected to receive disability retirement
benefits. IAF, Tab 5, Subtab 4o, Exhibit C7. The
appellant*395 applied for a disability retirement
annuity shortly after he received the notice· of
proposed removal. IAF, Tab 5, Subtabs 4j, 4k.
Although the agency provided the appellant the
opportunity to reply to his proposed removal both
orally and in writing, the appellant never indicated
that he wished to continue working. It appears that
the appellant did not file a written reply, and a
summary of the appellant's oral reply indicated that
the appellant did not want to address the proposed
removal; instead, he merely requested that the
agency extend his authorized absence until his
retirement application was approved. IAF, Tab 5,
Subtab 4i. Because the appellant did not establish
that he indicated to the agency that he wished to
continue working despite his medical limitations,
the appellant failed to establish that his disability
retirement was involuntary. Therefore, the
appellant failed to establish Board jurisdiction over
his appeal, and the administrative judge properly
dismissed the appellant's appeal for lack of
jurisdiction. Accordingly, we AFFIRM the initial
decision AS MODIFIED by this Opinion and Order.

### ORDER

¶ 16 This is the final decision of the Merit Systems
Protection Board in this appeal. Title 5 of the Code
of Federal Regulations, section 1201.113(c) (5
C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States
Court of Appeals for the Federal Circuit to review
this final decision. You must submit your request
to the court at the following address:

United States Court of Appealsfor the Federal
Circuit717 Madison Place, N.W.Washington, DC
20439

The court must receive your request for review no
later than 60 calendar days after your receipt of this
order. If you have a representative in this case, and
your representative receives this order before you
do, then you must file with the court no later than
60  ·calendar  days  after  receipt  by  your
representative. If you choose to file, be very
careful to file on time. The court has held that
normally it does not have the authority to waive this
statutory deadline and. that filings that do not
comply with the deadline must be dismissed. *See
Pinat v. Office of Personnel Management*, 931 F.2d
1544 (Fed.Cir.1991).

If you need further information about your right to
appeal this decision to court, you should refer to the
federal law that gives you this right. It is found in
*396Title 5 of the United States Code, section 7703
(5 U.S.C. § 7703). You may read this law as well
as review other related material at our web site,
http://www.mspb.gov.

For the Board:
ROBERT E. TAYLOR,
WASHINGTON, D.C.

MSPB,2000.
Rule v. Department of Veterans Affairs
85 M.S.P.R. 388

**END OF DOCUMENT**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Date of Printing: SEP 06,2007

**KEYCITE**

**Rule v. Department of Veterans Affairs, 85 M.S.P.R. 388 (M.S.P.B., Mar 07, 2000) (NO. DA-0752-98-0216-B-1)**

**History**
**Direct History**

1 Rule v. Department of Veterans Affairs, 81 M.S.P.R. 282 (M.S.P.B. Apr 05, 1999) (NO. DA-0752-98-0216-I-1)
*Appeal After Remand*
=> 2 **Rule v. Department of Veterans Affairs, 85** M.S.P.R. 388 (M.S.P.B. Mar 07, 2000) (NO. DA-0752-98-0216-B-1)

EXHIBIT 4

Westlaw.

996 F.2d 290

996 F.2d 290
(Cite as: 996 F.2d 290)

**Bruner** v. Office of Personnel Management
C.A.Fed.,1993.

United States Court of Appeals,Federal Circuit.
Larry L. **BRUNER**, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT,
Respondent.
No. 92-3477.

June 14, 1993.

Former government employee appealed decision of
Merit Systems Protection Board denying his
application for disability annuity under Civil
Service Retirement Act. The Court of Appeals,
Pauline Newman, Circuit Judge, held that: (1)
agency's action in separating employee on grounds
of disability did not as matter of law establish
employee's entitlement to annuity, but (2) employee
who was already separated by agency on grounds of
disability at time he sought benefits thereby
established prima facie case of disability, and
burden of production shifted to government.

Vacated and remanded.
West Headnotes
**[1] United States 393 ⊂⇒39(15)**

393 United States
    393I Government in General
        393k39 Compensation of Officers, Agents,
and Employees
            393k39(15) k. Pensions and Retirement
Allowances. Most Cited Cases
Court of Appeals is without authority to review
substantive merits of disability determinations of
Merit Systems Protection Board under Civil Service
Retirement Act, or factual underpinnings of such
determinations; however, Court must assure that
correct legal and procedural standards were applied.
5 U.S.C.A. § 8331 et seq.

**[2] United States 393 ⊂⇒39(15)**

393 United States
    393I Government in General
        393k39 Compensation of Officers, Agents,
and Employees
            393k39(15) k. Pensions and Retirement
Allowances. Most Cited Cases
Federal agency's action in separating employee on
grounds of disability did not establish as a matter of
law his entitlement to disability annuity. 5 U.S.C.A.
§ 8331 et seq.

**[3] United States 393 ⊂⇒39(15)**

393 United States
    393I Government in General
        393k39 Compensation of Officers, Agents,
and Employees
            393k39(15) k. Pensions and Retirement
Allowances. Most Cited Cases
In context of claim for disability benefits under
Civil Service Retirement Act, in situation in which
claimant has already been separated by agency on
ground that he is physically unable to perform his
duties, claimant is deemed to have met his burden
of proof prima facie, and burden of production
shifts to government to come forward with evidence
sufficient to support finding that claimant is not
disabled; agency determination is presumptively
correct. 5 U.S.C.A. § 8331 et seq.

**[4] United States 393 ⊂⇒39(15)**

393 United States
    393I Government in General
        393k39 Compensation of Officers, Agents,
and Employees
            393k39(15) k. Pensions and Retirement
Allowances. Most Cited Cases
As applied to disability retirement, general rule is
that burden of proving entitlement is upon person
who asserts that he or she is disabled. 5 U.S.C.A. §
8331 et seq.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

996 F.2d 290

996 F.2d 290
(Cite as: 996 F.2d 290)

**[5] Evidence 157 ☞90**

157 Evidence
  157III Burden of Proof
    157k90 k. Nature and Scope in General. Most
Cited Cases
"Burden of production," also called "burden of
going forward," is initially upon person with burden
of proof, and generally requires production of
sufficient evidence to support finding in favor of
that person; burden of production then shifts to
other party, who must produce enough evidence to
raise question of material fact.

**[6] United States 393 ☞39(15)**

393 United States
  393I Government in General
    393k39 Compensation of Officers, Agents,
and Employees
      393k39(15) k. Pensions and Retirement
Allowances. Most Cited Cases
In context of claim for disability benefits under
Civil Service Retirement Act, in situation in which
claimant has already been separated by agency on
ground that he is physically unable to perform his
duties, ultimate burden of proof is not shifted from
employee, although agency finding has initial effect
of shifting burden of production to government to
come forward with evidence sufficient to support
finding that employee is not disabled. 5 U.S.C.A. §
8331 et seq.

**[7] United States 393 ☞39(15)**

393 United States
  393I Government in General
    393k39 Compensation of Officers, Agents,
and Employees
      393k39(15) k. Pensions and Retirement
Allowances. Most Cited Cases
Merit Systems Protection Board committed
procedural error when it concluded that claimant
had not introduced sufficient evidence to prove that
he was disabled and thus entitled to annuity under
Civil Service Retirement Act; at time claimant
sought benefits, he had already been separated by
agency on ground that he was physically unable to
perform his duties, meaning that claimant had

established prima facie case of disability and that
burden of production shifted to government. 5
U.S.C.A. § 8331 et seq.

**\*291** James E. Bukac,Bukac & Toomey, Franlin,
PA, submitted for petitioner.
Jeri Kaylene Somers, Dept. of Justice, of
Washington, DC, submitted for respondent. Stuart
M. Gerson, Asst. Atty. Gen., David M. Cohen,
Director, Martha H. DeGraff, Asst. Director and
Agnes M. Brown, Atty., Commercial Litigation
Branch, Dept. of Justice, were on the brief for
respondent. Also on the Brief were Arthur Troilo,
III, Gen. Counsel and Jill Gerstenfield, Atty., Office
of Gen. Counsel, Office of Personnel Management,
of counsel.

Before RICH, Circuit Judge, BENNETT, Senior
Circuit Judge, and NEWMAN, Circuit Judge.
PAULINE NEWMAN, Circuit Judge.
Larry L. Bruner appeals the decision of the Merit
Systems Protection Board, Docket No.
PH831E920167I-1, denying his application for a
disability annuity under the Civil Service
Retirement Act. We vacate the decision of the
Board and remand for redetermination of the claim
in accordance with correct procedural burdens.

*Discussion*

Mr. **Bruner** was employed as a nursing assistant at
the Veterans Administration Medical Center in
Butler, Pennsylvania, starting in March, 1983.
During his employment Mr. **Bruner** suffered at
least one injury to his back resulting in chronic back
pain and an inability to perform his job. He
accepted a voluntary downgrade to a position of
nursing assistant-escort, which required less
physical effort than his previous position. His back
pain persisted, and he eventually entered leave
without pay status and applied for a disability
retirement annuity under the Civil Service
Retirement Act.

During this period, Mr. **Bruner** was terminated from
employment on the ground that he was physically
unable to perform his job and that it was not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

996 F.2d 290                                                     Page 3

996 F.2d 290
(Cite as: 996 F.2d 290)

possible to place him in any other position. Subsequently, his application for disability retirement was rejected by the Office of Personnel Management. Mr. **Bruner** appealed the denial of disability retirement to the Merit Systems Protection Board. The Board sustained OPM's action, and this appeal followed.

### A

[1] This court is without authority to review the substantive merits of disability determinations, or the factual underpinnings of such determinations. *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 791, 105 S.Ct. 1620, 1633, 84 L.Ed.2d 674, *on remand,* 776 F.2d 276, 277 (Fed.Cir.1985). However, it is our obligation to assure that the correct legal and procedural standards are applied. *Id.*

[2] Mr. Bruner argues that as a matter of law the agency's determination that he is physically unable to perform the duties of his job qualifies him for disability benefits. In *Lindahl* this court recognized, but did not reach, the question of the relationship between an employee's termination for physical inability to do the job, and entitlement to a disability annuity:

[W]e are disturbed by the evident tension between (1) a removal for physical inability to do the job and (2) a subsequent denial to the same employee of disability retirement. *292 We expressly leave open, for a case in which the issue is properly before us, the resolution of problems inherent in the relationship between the two actions.

*Lindahl,* 776 F.2d at 280. The question was not answered in that case because the employee had appealed only the disability determination and not the termination of employment, and the court believed that it was unable to review both of these actions for possible conflict between them. We deem it unlikely that such a case of conflicting appeals will ever arise for judicial resolution, because of the fatally inconsistent positions and proofs that would be required of the petitioner. However, the "disturbing" question continues to arise, as in the case at bar.

Despite the facial inconsistency between the decision of the Veterans Administration that Mr. Bruner is too disabled to work, and the decision of the Office of Personnel Management that he is not entitled to a disability annuity, it may be that these rulings are not inconsistent in his case, when the correct standards are applied to each determination. *See Piccone v. United States,* 407 F.2d 866, 872, 186 Ct.Cl. 752 (1969) ("There is therefore the possibility that a person can be too disabled to continue work, but not disabled enough to qualify for disability retirement.") Thus we decline to hold, as a matter of law, that the agency's action in separating Mr. **Bruner** on grounds of disability establishes his entitlement to a disability annuity. To this extent, Mr. **Bruner's** argument must be rejected.

However, the agency's action in separating Mr. **Bruner** from employment, based on its decision that Mr. **Bruner** is too disabled to work, is not irrelevant to the ensuing proceedings.

### B

[3] The Board placed upon Mr. **Bruner** the burden of proving that he is disabled. Mr. **Bruner** asserts that the burden of proof should have been upon the government, because a government agency had terminated his employment because of disability.

This court's review of disability-based actions is limited to determining whether "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination' ". *Lindahl,* 470 U.S. at 791, 105 S.Ct. at 1633, (quoting *Scroggins v. United States,* 397 F.2d 295, 297, 184 Ct.Cl. 530, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968)). Because the proper allocation of the burden of proof is an important procedural right that may have substantive consequences, we have considered the Board's assignment of the procedural burdens, in implementation of our review responsibility.

[4] The burden in most disability compensation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

996 F.2d 290                                                                    Page 4

996 F.2d 290
**(Cite as: 996 F.2d 290)**

programs follows the general rules of evidence. As applied to disability retirement, the general rule is that the burden of proving entitlement is upon the person who asserts that he/she is disabled. *Greenwich Collieries v. Director, Office of Workers' Compensation Programs, United States Dep't of Labor,* 990 F.2d 730 (3d Cir.1993). *See Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984) ( "Once the [Social Security] claimant makes a prima facie showing of disability ... the burden of going forward shifts to the Secretary, who must show that claimant retains the capacity to perform an alternative work activity"). The placement of the burden of proof reflects social policy more than law, and tends to remain fixed despite procedural adjustments along the way. *See generally Old Ben Coal Corp. v. Interior Board of Mine Operations Appeals, United States Department of Interior,* 523 F.2d 25, 36 (7th Cir.1975) ( "the incidence of the burden of proof is primarily a matter of policy based on experience"); 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5122 (1977).

We are not aware of, and OPM has not pointed to, any statutory or regulatory allocation of the burdens of proof or of production with respect to disability determinations made pursuant to the Civil Service Retirement Act. 5 C.F.R. § 831.502(b) states seven criteria that must be met for disability retirement, as follows:
**\*293** No claim for disability retirement shall be allowed unless OPM determines that the claim should be granted based upon documentation provided by the applicant or the agency which demonstrates the following:
(1) A deficiency in service with respect to performance, conduct or attendance, or in the absence of any actual service deficiency, a showing that the medical condition is incompatible with either useful service or retention in the position;
(2) A medical condition which is defined as a disease or injury;
(3) A relationship between the service deficiency and the medical condition such that the medical condition has caused the service deficiency;
(4) The duration of the medical condition, past and expected, and a showing that the condition, in all

probability, will continue for at least a year;
(5) The applicant became disabled while serving under the Civil Service Retirement System;
(6) The agency's inability to make reasonable accommodation to the employee's medical condition; and
(7) The absence of another available position within the employing agency and commuting area, at the same grade or pay level and tenure, for which the employee is qualified for reassignment. For this part, placement in the agency is limited to those facilities in the commuting area that are serviced by the same appointing authority.

Viewing these criteria, it is apparent that some involve evidence within the knowledge and control of the agency, and some within the purview of the employee. All are fact-dependent and subject to dispute.

**[5]** In *Lindahl* this court held that the burden of proof,[FN1] for purposes of eligibility for disability retirement, lies with the applicant, applying the general principle that an applicant for a benefit bears the burden of establishing eligibility for the benefit. The court in *Lindahl* did not discuss the allocation of the burden of production as to the seven criteria set forth in 5 C.F.R. § 831.502(b), as distinguished from the burden of proof. The burden of production, also called the burden of going forward, is initially upon the person with the burden of proof, and generally requires the production of sufficient evidence to support a finding in favor of that person. *E.g., Greenwich Collieries,* 990 F.2d at 735. The burden of production then shifts to the other party, who must, in turn, produce enough evidence to raise a question of material fact. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255 & n. 8, 101 S.Ct. 1089, 1094 & n. 8, 67 L.Ed.2d 207 (1981). The Board in *Chavez v. Office of Personnel Management,* 6 M.S.P.B. 343, 6 M.S.P.R. 404 (1981), *cited with approval in Lindahl,* 776 F.2d at 278-79, setting the guidelines for disability appeals, assumed that the party with the relevant evidence will come forward to produce it:

FN1. "By "burden of proof" we mean, as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

996 F.2d 290

996 F.2d 290
**(Cite as: 996 F.2d 290)**

in *Lindahl,* the ultimate burden of persuasion, in order to convince a fact finder, by the appropriate standard, based on all of the evidence.

Since it is OPM's decision that we review in such cases, OPM of course remains obliged to come forward with evidence and an explanation demonstrating the basis on which it reached its determination. Indeed, as to some material issues OPM or the employing agency may be in a better position than the applicant to adduce at least some of the relevant evidence, e.g., total creditable service or availability of other positions of the same grade or class in which the applicant might perform useful and efficient service. We hold only that the ultimate burden of persuasion is on the applicant "in the sense of answering the question of who wins if all the evidence is inadequate or unconvincing." *Chavez,* 6 M.S.P.B. at 352-53, 6 M.S.P.R. at 416 (quoting 3 Kenneth Culp Davis, *Administrative Law Treatise* § 16.9 at 258 (2d ed. 1980)) (footnotes omitted).

However, this allocation of the burdens of production and persuasion does not take account of the agency's decision and action taken in cases such as this one, wherein the agency has already separated the claimant from service because of disability, the agency having found that the claimant was physically unable to do the assigned job and that there was no other position that the claimant was *294 able to do. Such agency action is presumptively correct, and is not here subject to collateral attack. Thus the Veterans Administration's finding and action based thereon, that Mr. Bruner was physically unable to work and that there was no job within the agency that he was qualified for and physically able to do, produces an evidentiary presumption which serves to shift the burden of coming forward to the government. That is, the applicant is deemed to have met his burden of proof *prima facie.* The burden of production then shifts to the government, to come forward with evidence sufficient to support a finding that the applicant is not disabled in terms of 5 C.F.R. § 831.502(b). *See* Fed.R.Evid. 301. *Cf. Meneses v. Secretary of Health, Education & Welfare,* 442 F.2d 803, 806 (D.C.Cir.1971) (when the Social Security claimant shows physical impairment disabling him from his former employment, the government has the burden of coming forward with evidence that there are jobs the claimant can do).

[6] Although the applicant is not absolved of coming forward with evidence and argument in rebuttal of any evidence of absence of entitlement adduced by the agency, the agency must first meet its burden of producing sufficient evidence to support a finding that the requirements of 5 C.F.R. § 831.502(b) have not been met. *Cf. Kerner v. Flemming,* 283 F.2d 916, 922 (2d Cir.1960) ("[A]n applicant for a [Social Security] disability pension has the ultimate burden of persuasion.... However, it does not follow that the court is bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer."). We do not hold that the ultimate burden of proof is shifted when the agency has separated the employee based on the agency's determination of disability, for we do not think that the presumption of disability based on agency action warrants this force. *See* Fed.R.Evid. 301 advisory committee's note.

In sum, the government's action in separating an employee for disablement produces a presumption of disability that serves to shift to the government the burden of production. The government must come forward with enough evidence that a reasonable fact finder could conclude that the applicant did not qualify under 5 C.F.R. § 831.502(b). Thus the initial presumption in favor of the claimant will control the result only in cases where the government does not introduce evidence sufficient to support a finding in its favor; in such cases, an applicant who has been dismissed for physical disqualification and absence of an alternative position will generally prevail. However, if the government's evidence is sufficient to support a finding that the applicant is not entitled to disability retirement in terms of 5 C.F.R. § 831.502(b), the totality of the evidence produced by both sides is weighed by the trier of fact, who may (but need not) infer disability from the facts giving rise to the presumption. Notes of Conference Committee, H.R.Rep. 1597, 93d. Cong., 2d Sess.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

996 F.2d 290

996 F.2d 290
**(Cite as: 996 F.2d 290)**


(1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7099. The applicant, who retains the burden of persuasion, will then prevail only if he/she establishes entitlement by a preponderance of the evidence.


### C

[7] The Board held that Mr. Bruner had not introduced sufficient evidence to prove that he was disabled, thus basing its findings on the weakness of his case. Consequently, the Board did not consider the *prima facie* case of disability that is presumed from the agency's removal action, and did not discuss whether the government's evidence was adequate to support a finding in its favor. This was a procedural error that, as we have discussed, went " to the heart of the administrative determination", *Lindahl,* 470 U.S. at 791, 105 S.Ct. at 1633, for it is possible that this error affected the result. *See Speiser v. Randall,* 357 U.S. 513, 525, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958) ("In all kinds of litigation it is plain that where the burden of proof lies may be decisive of the outcome." (citing cases)).

The Board's decision is vacated, and the case is remanded for redetermination upon application of the correct procedural burdens.


### *295 *COSTS*

Costs in favor of Bruner.

*VACATED AND REMANDED.*

C.A.Fed.,1993.
Bruner v. Office of Personnel Management
996 F.2d 290

**END OF DOCUMENT**

© 2007 Thomson West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 5

Westlaw.

236 F.3d 1356

236 F.3d 1356
(Cite as: 236 F.3d 1356)

**Bracey** v. Office of Personnel Management
C.A.Fed.,2001.

United States Court of Appeals,Federal Circuit.
Bruce A. **BRACEY**, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT,
Respondent.
No. 00-3034.

Jan. 17, 2001.

Office of Personnel Management (**OPM**) petitioned for review of initial decision that reversed its determination that federal employee was not entitled to a disability retirement annuity. The Merit Systems Protection Board, 83 M.S.P.R. 400, reversed, and applicant sought judicial review. The Court of Appeals, Bryson, Circuit Judge, held that: (1) employee's light-duty position did not constitute a "vacant position" within meaning of statute precluding eligibility for disability retirement if employee can be reassigned to a vacant position in the agency at the same grade or level as the employee's current position; (2) employee who could not perform duties of his official Electronics Worker position, and who was assigned to light duties which were those of a lower-graded job, was not rendering "useful and efficient service" in his Electronics Worker position within meaning of statute precluding eligibility for disability retirement if employee is able to render such service in his position; and (3) light-duty assignment which did not enable employee to perform duties of his official Electronics Worker position could not be considered an "accommodation" within meaning of statute precluding eligibility for disability retirement if agency is able "to accommodate the disabling medical condition in the position held or in an existing vacant position."

Reversed and remanded.
West Headnotes

**[1] United States 393 ⊜39(15)**

393 United States
   393I Government in General
      393k39 Compensation of Officers, Agents, and Employees
         393k39(15) k. Pensions and Retirement Allowances. Most Cited Cases
Statute and regulation provide that a federal employee is ineligible for disability retirement in two specific circumstances: (1) if the employee, with appropriate adjustments to the job or work environment, can perform the critical or essential elements of his own position; or (2) if the employee is qualified for reassignment to a vacant position in the agency at the same grade or level as the employee's current position. 5 U.S.C.A. § 8337(a); 5 C.F.R. § 831.1203(a).

**[2] United States 393 ⊜39(15)**

393 United States
   393I Government in General
      393k39 Compensation of Officers, Agents, and Employees
         393k39(15) k. Pensions and Retirement Allowances. Most Cited Cases
Term "vacant position" in statute providing that federal employee is not eligible for disability retirement if the employee is qualified for reassignment to a vacant position in the agency at the same grade or level as the employee's current position, refers to an officially established position that is graded and classified, not to an informal assignment of work that an agency gives to an employee who cannot perform the duties of his official position. 5 U.S.C.A. § 8337(a).

**[3] United States 393 ⊜39(15)**

393 United States
   393I Government in General
      393k39 Compensation of Officers, Agents, and Employees

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

236 F.3d 1356
**(Cite as: 236 F.3d 1356)**

393k39(15) k. Pensions and Retirement Allowances. Most Cited Cases
Federal employee's light-duty position did not constitute a "vacant position" within meaning of statute precluding eligibility for disability retirement if employee can be reassigned to a vacant position in the agency at the same grade or level as the employee's current position, where position was not formally described, classified, or graded. 5 U.S.C.A. § 8337(a).

**[4] United States 393 ⟜39(15)**

393 United States
    393I Government in General
        393k39 Compensation of Officers, Agents, and Employees
        393k39(15) k. Pensions and Retirement Allowances. Most Cited Cases
Federal employee who could not perform duties of his official Electronics Worker position, and who was assigned to light duties which were those of a lower-graded job, was not rendering "useful and efficient service" in his Electronics Worker position within meaning of statute precluding eligibility for disability retirement if employee is able to render such service in his position. 5 U.S.C.A. § 8337(a).

**[5] United States 393 ⟜39(15)**

393 United States
    393I Government in General
        393k39 Compensation of Officers, Agents, and Employees
        393k39(15) k. Pensions and Retirement Allowances. Most Cited Cases
Light-duty assignment which did not enable federal employee to perform duties of his official Electronics Worker position could not be considered an "accommodation" within meaning of regulation precluding eligibility for disability retirement if agency is able "to accommodate the disabling medical condition in the position held or in an existing vacant position." 5 C.F.R. § 831.1203(a)(4).

**\*1357** Neil C. Bonney, Neil C. Bonney & Associates, P.C., of Virginia Beach, VA, argued for

petitioner.
Virginia M. Lum, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With her on the brief was David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Harold D. Lester, Jr. , Assistant Director. Of counsel on the brief was Paul St. Hillaire. Staff Attorney, U.S. Office of Personnel Management, of Washington, DC.

Before MAYER, Chief Judge, RADER, and BRYSON, Circuit Judges.
BRYSON, Circuit Judge.
This case raises an important question regarding the eligibility of federal civilian employees for disability retirement. The Office of Personnel Management (OPM) and the Merit Systems Protection Board ruled that an employee is ineligible for disability retirement as long as the employee is retained at the same grade and pay, even if the employee is unable to perform the duties of his official position, and even if he is not transferred to a vacant position within the agency. Because that ruling is contrary to the language of the governing statute and regulations, we reverse.

I

Petitioner Bruce A. Bracey was a civilian employee of the Navy at the Naval Aviation Depot in Norfolk, Virginia, where he held the position of Electronics Worker, WG-2604-8. In 1991, he suffered several work-related injuries. As a result of his injuries, the Navy assigned Mr. Bracey to the light-duty shop at the facility where he worked. He worked there between 1991 and 1993, and again between April 1995 and September 28, 1996, when the Navy separated him as a result of a reduction in force that accompanied the closure of the Naval Aviation Depot. While he was assigned to the light-duty shop, Mr. Bracey retained the grade and pay of his Electronics Worker position, but the tasks he performed were not those of an Electronics Worker.

On September 13, 1996, before the facility was closed, Mr. Bracey filed an application for disability retirement. OPM, however, denied the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

236 F.3d 1356

236 F.3d 1356
(Cite as: 236 F.3d 1356)

application. It found that although his injuries prevented him from performing the duties of his Electronics Worker position, he was not entitled to disability retirement because his employing agency had accommodated his medical condition by providing him with light-duty work that was within his medical restrictions and was not temporary in nature.

**\*1358** Mr. **Bracey** appealed **OPM's** decision to the Merit Systems Protection Board. After a hearing, an administrative judge ruled that Mr. **Bracey's** application should have been granted. The administrative judge found that Mr. **Bracey's** assignment to the light-duty shop was not an " accommodation" that would preclude disability benefits, because the duties of his light-duty assignment were not those of an Electronics Worker, but instead were those associated with the lower-graded position of Material Examiner and Identifier, WG-6912-5. The administrative judge accordingly concluded that Mr. Bracey was eligible for disability retirement benefits.

On OPM's petition for review, the full Board reversed the administrative judge's decision by a 2-1 vote. The Board majority acknowledged that the duties Mr. Bracey performed in his light-duty assignment were not the duties of his official position, but nonetheless concluded that because he had retained the grade and pay of his Electronics Worker position, he was not eligible for disability retirement. The Board held that it was sufficient that the agency "could gainfully employ" Mr. Bracey, even if it "could not do so in his official position of record or within the confines of another officially established position description."

Vice Chair Slavet dissented. She explained that under the governing statute, 5 U.S.C. § 8337(a), a disabled employee is eligible for disability retirement unless the employee is able to render " useful and efficient service in the employee's position" or is qualified for reassignment to an existing vacant position in the agency at the same grade or level. In her view, Mr. Bracey was not rendered ineligible for disability retirement because (1) he was not qualified for reassignment to a vacant position within the agency and (2) he was

not rendering "useful and efficient service" in his Electronics Worker position, as the work he was assigned was not within the duties of that position.

## II

[1] The statute governing entitlement to disability retirement under the Civil Service Retirement System provides that an employee is eligible for disability retirement if he becomes disabled after completing five years of civilian service. 5 U.S.C. § 8337(a). The statute defines disability as follows:

Any employee shall be considered to be disabled only if the employee is found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment, under procedures prescribed by the Office, to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service.

*Id.* The pertinent OPM regulation elaborates on the statutory definition by providing that an employee is eligible for disability retirement only if (1) the disabling medical condition is expected to continue for at least one year; (2) the condition results in a deficiency in performance, conduct, or attendance, or is incompatible with useful and efficient service or retention in the employee's position; and (3) the agency is unable to accommodate the disabling condition in the employee's position or in an existing vacant position. 5 C.F.R. § 831.1203(a). The regulation defines "accommodation" to mean " an adjustment made to an employee's job or work environment that enables the employee to perform the duties of the position," and it defines "useful and efficient service" to mean "acceptable performance of the critical or essential elements" of the employee's position. 5 C.F.R. § 831.1202. Read together, the statute and regulation provide that an employee is ineligible for disability retirement in two specific circumstances: (1) if the employee, with appropriate adjustments to the job or work environment, can perform the critical or essential elements of his own position; or **\*1359** (2) if the employee is qualified for reassignment to a vacant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

236 F.3d 1356

Page 4

236 F.3d 1356
(Cite as: 236 F.3d 1356)

position in the agency at the same grade or level as the employee's current position.

Before the Board, OPM argued that a light-duty assignment constitutes a "position" for purposes of the disability retirement regulations, even if it is not a formally established position, and even if the employee cannot perform the duties of his or her position of record or any established position within the agency. Accordingly, OPM argued that even though Mr. Bracey was not able to perform the duties of his Electronics Worker position and even though he was not reassigned (or qualified for reassignment) to a vacant established position within the agency at the same grade and pay, he was not eligible for disability retirement because the agency was able to find work for him and was willing to retain him at his former grade and pay level.

In this court, OPM has refined its legal argument. It does not contend, as it did before the Board, that Mr. Bracey has been assigned to a new, albeit unclassified, "position" in the agency. Instead, OPM argues that Mr. Bracey has been " accommodated" in his original Electronics Worker position by being given a light-duty assignment, and that he occupies the "accommodated position" of Electronics Worker, even though he is not performing the official duties of the Electronics Worker position. For the reasons set forth below, we conclude that Mr. Bracey cannot be denied the relief he seeks either on the theory that his light-duty assignment constitutes an assignment to a "vacant position" at the same grade and pay, or on the theory that his light-duty assignment constitutes an "accommodation" of his disability in his Electronics Worker position.

A

[2] In response to OPM's argument before the Board that his light-duty position could properly be viewed as a "vacant position" within the meaning of 5 U.S.C. § 8337(a), Mr. Bracey argues that his light-duty assignment was not a "position"-and therefore not a "vacant position"-because it was not formally described, classified, or graded. We agree

with Mr. Bracey that OPM's argument fails, because the term "vacant position" in section 8337 refers to an officially established position that is graded and classified, not to an informal assignment of work that an agency gives to an employee who cannot perform the duties of his official position.

[3] A "position" in the federal employment system is required to be classified and graded in accordance with the duties, responsibilities, and qualification requirements associated with it. The " resulting position-classification system" is "used in all phases of personnel administration." 5 U.S.C. § 5101(2). We are aware of no setting in the federal employment system in which an employee is considered to hold a "position" consisting of a set of ungraded, unclassified duties that have been assigned to that employee on an ad hoc basis, and the government has not called our attention to any instance in which the term "position" is used in that manner. As Vice Chair Slavet pointed out, to define the term "vacant position" in that manner would be fundamentally inconsistent with the highly formalized federal personnel system in which hiring, compensation, evaluation, and retention decisions are all made based on the classifications, grades, and performance elements of formally established "positions."

Moreover, the statutory scheme established by section 8337(a) would be unworkable if "vacant position" were defined to mean simply a set of duties selected on an ad hoc basis to fit the needs of a particular disabled employee. It would be impossible to determine whether the employee could provide "useful and efficient service" in the vacant position, as required by section 8337(a), without a formal description of the duties of the position, including the critical or essential elements of the position, against which to measure the employee's performance. See 5 C.F.R. § 831.1202 *1360 (defining "useful and efficient service" in terms of performance of the critical or essential duties of the employee's position). Similarly, a " vacant position" must be graded in order to determine whether it is "at the same grade or level," as required by section 8337(a) and 5 C.F.R. § 831.1202 (defining "vacant position" as "an unoccupied position of the same grade or pay level

236 F.3d 1356

236 F.3d 1356
(Cite as: 236 F.3d 1356)

Page 5

and tenure"), and to determine whether the employee is "qualified for reassignment" to that position, *see* 5 C.F.R. § 831.1202 (defining "qualified for reassignment" as "able to meet the minimum requirements for the grade and series of the vacant position in question"). Indeed, it would be difficult to determine whether a "vacant position" exists and whether an employee can be reassigned to it except with reference to established positions. The use of the term "vacant" modifying "position" thus supports construing the term "vacant position" to mean something that is definite and already in existence rather than an unclassified set of duties devised to meet the needs of a particular employee who cannot perform the duties of his official position. For those reasons, we conclude that Mr. Bracey was not "qualified for reassignment ... to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service." 5 U.S.C. § 8337(a).

**B**

In this court, OPM does not argue that Mr. Bracey's light-duty assignment constituted assignment to a "vacant position." Instead, OPM argues that Mr. Bracey's light-duty assignment constituted an "accommodation" of his disability within his Electronics Worker position and that he was ineligible for disability retirement on that ground. That argument, however, is contrary to the plain terms of the statutory and regulatory scheme.

The Board found, and OPM does not dispute, that because of his medical condition Mr. Bracey was unable to perform the duties of his official Electronics Worker position and that the light duties to which he was assigned were not those of his official position but "were those of a lower-graded job." OPM's argument thus turns on its contention that it was not necessary for Mr. Bracey to be able to perform the duties of his official position in order for him to "render useful and efficient service" in that position, within the meaning of 5 U.S.C. § 8337(a). Put another way, OPM contends that the assignment of duties different from those of his official position was the "accommodation" that the

OPM regulations required the agency to provide in order to enable Mr. Bracey to render useful and efficient service.

[4] The problem with that argument is that it runs headlong into the regulatory definitions of "useful and efficient service" and "accommodation." OPM's regulations define "useful and efficient service" to mean "acceptable performance of the critical or essential elements of the position." 5 C.F.R. § 831.1202. The Board's finding that Mr. Bracey did not perform the duties of his official Electronics Worker position, but performed the duties of a lower-graded position, means that he did not perform the "critical or essential elements" of the Electronics Worker position in his light-duty post. He thus was not able to render "useful and efficient service in [his] position," 5 U.S.C. § 8337(a), as that phrase is defined in OPM's regulations.

[5] Relying on the regulatory definition of "accommodation," the government contends that Mr. Bracey's light-duty assignment "accommodated" his disability because the agency "restructur[ed] the job" by assigning him to light duty. *See* 5 C.F.R. § 831.1202 (defining "accommodation" to mean "an adjustment made to an employee's job" that includes "restructuring the job"). For that reason, the government argues, Mr. Bracey was ineligible for disability retirement because the Navy was able "to accommodate the disabling medical condition in the position held or in an existing vacant position." *See* 5 C.F.R. § 831.1203(a)(4).

*1361 The flaw in the government's argument is that the regulatory definition of an "accommodation" requires that the adjustment made to the employee's job or work environment "enable[ ] the employee to perform the duties of the position," *i.e.*, the employee's official position, in this case the position of Electronics Worker, WG-2604-8. As the Board made clear, however, the purported accommodation did not enable Mr. Bracey to continue to perform the duties of his official Electronics Worker position. The light-duty assignment therefore cannot be considered an "accommodation" as that term is used in the regulations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

236 F.3d 1356                                                                                          Page 6

236 F.3d 1356
**(Cite as: 236 F.3d 1356)**

The government seeks to avoid the effect of the regulatory definitions by arguing that although Mr. Bracey was not performing the duties of his official Electronics Worker position, he was performing the duties of an "accommodated position," i.e., his light-duty assignment, even though he was never formally reassigned to a new position, and even though he was never given a new set of critical elements by which to measure his performance in the "accommodated position." The government's argument simply cannot be squared with the language of OPM's regulation, which requires that an accommodation enable the employee to perform the duties of "the position." The term "the position" plainly refers to the employee's official position.

If the term "the position" referred to an "accommodated position" as the government's argument suggests, the accommodation regulation would be circular: "accommodation" could be achieved by selecting any duties whatsoever, no matter how unrelated to the duties of the employee's official position, and by declaring those duties to be the duties of the "accommodated position." That is not a reasonable interpretation of the regulatory requirement that an "accommodation" be "an adjustment made to an employee's job or work environment that enables the employee to perform the duties of the position."

In short, the statutory and regulatory scheme provides two ways for an agency to retain a disabled employee-by assigning the employee to an established vacant position at the same grade and pay, or by accommodating the employee's disability in a way that enables the employee to perform the duties of his official position. The Navy did neither in this case.

## C

In support of its argument that Mr. Bracey is ineligible for disability retirement, OPM points to provisions of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* and the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101 *et seq*. The Rehabilitation Act and FECA, OPM suggests, may impose a duty on the employing agency to offer an individual a light-duty assignment in lieu of

separation and therefore would conflict with the requirements of section 8337 if that statute is read to authorize disability retirement for an employee who can perform useful work but not within his official position or any other established vacant position in the agency.

Contrary to OPM's contention, nothing in the Rehabilitation Act or its implementing regulations conflicts with our interpretation of the disability retirement scheme. The Rehabilitation Act regulations require that if an employee cannot perform the essential functions of his position even with reasonable accommodation, the agency must reassign the employee to a "vacant position ... at the same grade or level, the essential functions of which the individual would be able to perform with reasonable accommodation if necessary," unless such a reassignment would result in undue hardship to the agency. 29 C.F.R. § 1614.203(g). When an employee cannot perform the essential functions of his position even with reasonable accommodation, " the employee has a duty to identify a vacant, funded position whose essential functions he is capable of performing." *Mengine v. Runyon,* 114 F.3d 415, 420 (3d Cir.1997). An agency is not required to create a light-duty position for the employee.*1362 See Shiring v. Runyon,* 90 F.3d 827, 831 (3d Cir.1996). Therefore, consistent with the disability retirement statute, the Rehabilitation Act requires an agency to provide an employee with work in an existing position only if such work is available and the employee is able to perform the essential duties of that position.

Indeed, OPM's interpretation of "position" in section 8337 would appear to be contrary to the use of that term in the Rehabilitation Act. If "position" were an informal assignment defined simply by the duties an employee is capable of performing, an employee could construct a suitable "position" and require an agency to implement it in order to avoid violating the Act. The *Shiring* court rejected such an argument, explaining:

The [light-duty] position to which [Shiring] was temporarily assigned was not an official position, but had been created by the Postal Service to give Shiring something to do on a temporary basis. Therefore, Shiring's suggestion that he would have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

236 F.3d 1356
**(Cite as: 236 F.3d 1356)**

been qualified to perform the requirements of such a position does not help his case because under the Act employers are not required to create positions specifically for the handicapped employee.

90 F.3d at 831. OPM offers no reason why the word "position" should be read differently in these two related contexts.

OPM's argument based on FECA is also unconvincing. FECA provides that if a government employee is injured on the job, the employee is entitled to certain benefits, including compensation for the injury. One of the conditions of continuing to receive those benefits is that a partially disabled employee must be willing to accept "suitable work" when the agency offers such work. *See* 5 U.S.C. § 8106(c)(2); 20 C.F.R. § 10.515(b). The employee's refusal to accept such work results in termination of his FECA benefits. If the employee's disability renders the employee eligible for disability retirement, however, the employee is free to refuse the offer of such work and to take disability retirement instead of the FECA benefits. The two schemes offer different benefits under different circumstances, and there is nothing anomalous about the fact that an employee may be eligible for one set of benefits while being ineligible for the other.

### D

OPM relies in part on the legislative history of the 1980 amendment to the Civil Service Retirement Act. That amendment overturned a judicial decision, *Cerrano v. Fleishman*, 339 F.2d 929 (2d Cir.1964), in which the court had held that a disabled employee had to take disability retirement because the employee could not perform useful and efficient service in his official position. Congress amended the statute to provide that before the employee is considered to be disabled, the agency must determine that the employee is not qualified for reassignment to a vacant position at the same grade level. *See* H.R.Rep. No. 96-1167, at 206 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5526, 5651. As we have discussed, that provision was not satisfied here because Mr. Bracey was not

shown to be qualified for reassignment to a "vacant position" within the agency at the same grade and pay level. Nothing in the legislative history of the 1980 amendment suggests that the agency may avoid disability retirement simply by assigning an injured employee to an ad hoc set of light duties as long as it continues to pay the employee at the same level as before.

We are likewise not persuaded by OPM's argument of congressional acquiescence. OPM contends that it has interpreted the statute consistently for years and that if Congress had disagreed with that construction, it would have altered it. As we have indicated, the plain language of OPM's regulations suggests an interpretation of the statute that is quite the opposite of the interpretation OPM has offered here. We are unwilling to assume that Congress, if it adverted to this issue at all, read past OPM's regulations, discovered OPM's actual practice under those regulations,*1363 and gave its tacit approval to that practice by failing to amend the disability retirement statutes.

As we have noted, the problem with OPM's legal theory lies principally in OPM's own regulations. If OPM is persuaded that the statute should be read to permit the kind of informal light-duty assignment that occurred in this case as a means of avoiding disability retirement, it should revise its regulations accordingly. The Board-and this court-would then be required to determine whether OPM's interpretation of the statute was reasonable, a determination that would then not be skewed by regulatory language squarely at odds with OPM's litigating position.

### E

OPM's final argument is that this case involves a factual inquiry that is outside this court's jurisdiction under *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). *Lindahl* holds that 5 U.S.C. § 8347(c) bars this court from reviewing "the factual underpinnings of ... disability determinations," 470 U.S. at 791, 105 S.Ct. 1620, but does not bar review of legal questions, such as whether OPM

236 F.3d 1356

236 F.3d 1356
**(Cite as: 236 F.3d 1356)**

and the Board have misapplied a statute or committed some error "going to the heart of the administrative scheme," *id.* In this case, there is no dispute about the pertinent facts, and certainly no dispute about the "factual underpinnings" of the determination that Mr. **Bracey** was disabled. **OPM** and the Board both found that Mr. **Bracey's** medical condition rendered him incapable of performing the duties of his Electronics Worker position and that his duties in his light-duty assignment were not those of his official position. We accept those findings, which the government does not challenge. Accordingly, we have not reviewed the "factual underpinnings" of a disability determination, but have addressed only the issue of the proper construction of the pertinent statute and regulations to a case in which the facts are undisputed. Our review of the legal issue in this case is thus entirely consistent with *Lindahl.*

Based on our analysis of the CSRS disability retirement scheme, we are satisfied that Mr. Bracey is not disqualified for disability benefits by virtue of his assignment to the light-duty shop. We therefore reverse the order of the Merit Systems Protection Board and remand the case for further proceedings relating to Mr. Bracey's disability retirement application.

*REVERSED and REMANDED.*

C.A.Fed.,2001.
Bracey v. Office of Personnel Management
236 F.3d 1356

**END OF DOCUMENT**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw Attached Printing Summary Report for PATRON ACCESS, 4809550**

| | |
|---|---|
| Date/Time of Request: | Thursday, September 06, 2007 16:33:00 Central |
| Client Identifier: | PATRON ACCESS |
| Database: | KEYCITE-HIST |
| Citation Text: | 236 F.3d 1356 |
| Service: | KeyCite |
| Lines: | 34 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

**Westlaw.**

Date of Printing: SEP 06,2007

## KEYCITE

▷Bracey v. Office of Personnel Management, 236 F.3d 1356 (Fed.Cir., Jan 17, 2001) (NO. 00-3034)

**History**
**Direct History**

► 1 Bracey v. Office of Personnel Management, 83 M.S.P.R. 400 (M.S.P.B. Aug 30, 1999) (NO.
  DC-831E-97-0643-I-1, AT-844E-97-0645-I-1)
      *Reversed and Remanded by*
=> 2 **Bracey v. Office of Personnel Management,** 236 F.3d 1356 (Fed.Cir. Jan 17, 2001) (NO.
  00-3034)
      *On Remand to*
Ħ 3 Bracey v. Office of Personnel Management, 89 M.S.P.R. 311 (M.S.P.B. Aug 28, 2001) (NO.
  DC-831E-97-0643-M-1)

**Negative Citing References (U.S.A.)**

*Distinguished by*
C 4 Office Of The Architect Of The Capitol v. Office Of Compliance, 361 F.3d 633, 15 A.D. Cases
  513, 27 NDLR P 238 (Fed.Cir. Mar 11, 2004) (NO. 03-6001) ★★★ **HN: 5 (F.3d)**

**Court Documents**
**Appellate Court Documents (U.S.A.)**

**C.A.Fed. Appellate Briefs**
  5 Bruce A. BRACEY, Petitioner, v. DEPARTMENT OF THE NAVY, Respondent., 2000 WL
    34003423 (Appellate Brief) (C.A.Fed. Jan. 01, 2000) **Brief for Respondent** (NO. 00-3034)
  6 Bruce A. BRACEY, Petitioner, v. DEPARTMENT OF THE NAVY, Respondent., 2000 WL
    34003422 (Appellate Brief) (C.A.Fed. Jan. 31, 2000) **Brief and Appendix of Petitioner Bruce A.
    Bracey** (NO. 00-3034)

**Dockets (U.S.A.)**

**C.A.Fed.**
  7 BRACEY v. OPM, NO. 00-3034 (Docket) (C.A.Fed. Nov. 01, 1999)

© Copyright 2007 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64
058 914 668, or their Licensors. All rights reserved.