UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
333 CONSTITUTION AVENUE, NW
WASHINGTON, DC 2001

MICHAEL L. BUESGENS, §
Creditor-Adversary, §
Plaintiff §
§
v. § CIVIL NO.
§
HENRY PAULSON, Secretary, § 1:07 CV
of the Treasury § 00859
§ RBW
LINDA STIFF, §
Acting Commissioner IRS §
Internal Revenue Service §
§
DONALD RAY TAWNEY, JR. §
IRS Official, et. al., §
Defendants §

**RECEIVED**

FEB 7 - 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PLAINTIFF'S MOTION FOR EXTENSION OF TIME
TO CONFORM WITH THIS COURT'S ORDERS FOR
COMPLIANCE WITH D.C. DISTRICT COURT
LOCAL RULE 5.1.
THE SUBMISSION OF PAPERS TO THE COURT
AND
FEDERAL RULES OF CIVIL PROCEDURE 8(e) SIMPLE, CONCISE AND
DIRECT AVERMENT OF A PLEADING

THIS Extension of Time Request is made pursuant to Fed. R. Civ. P. 6(b)(1)(A).

PLAINTIFF BUESGENS requests a thirty (30) day extension of time from the
date set by this Court for a response.

Document 25 – Filed: 1/07/2008; Response due February 7, 2008.

This bankruptcy-adversary appeal (Civil No. 1:07CV00859RBW) arises from the
following:

Plaintiff-Creditor Busmen's personal injury tort claim under the Federal Tort
Claims Act (FTCA) – Form SF95 Administrative Claim, that produced Civil Action 1:06

CVO1558RCL, U.S. District Court, District of Columbia.  IRS-GLS Attorney Michael SAL YAROS perjured declaration supported the unlawful transfer of this case to Texas.

## BANKRUPTCY CASES

Bankruptcy Case 06-11164FRM, filed:  7/31/2006; discharged 2/7/2007.

Adversary Case 07-10008, filed:  02/23/2007

## EMPLOYMENT DISCRIMINATION CASES

### ADMINISTRATIVE CLAIMS

EEO No. 03-2339

EEOC No. 360-2003-8286X

### CIVIL ACTIONS

1:05CV00243SS, filed:  04/29/2005

1:05CVO2334RCL, filed:  12/05/2005; transferred to Texas on 05/09/2006.

## HOUSING DISCRIMINATION CASES

### ADMINISTRATIVE CLAIMS

HUD Case No. 06-06-293-8; filed: 12/28/2005 – Texas

HUD Case No. 07-07-0814-8; filed: 8/20/2007 – Kansas

### CIVIL ACTIONS

1:06CV00260L6 – Eviction; filed: 4/10/2006

1:06CV00226L6-RP – HUD; filed: 3/29/2006

1:06CV00964RBW – Attorneys; filed: 11/15/2006

Creditor-Adversary Buesgens requests this extension of time for the following reasons:

1. To refile his previous pleadings and motions. Court filings considered impossible to determine or discern the legal and factual basis for the claims and complaints.

2. This Court has provided IRS EEO and EEOC Claimant Buesgens with an opportunity to revisit the following civil actions:

1:05CV00243SS – U. S. District Court for the Western District of Texas, Austin Division, Case File.

Appeal No. 07-5011 – U. S. Court of Appeals for the District of Columbia.

3. EEOC Claimant Buesgens has been blaming Judge Sam Sparks for the disposition of Civil Action 1:05CV00243SS and Appeal No. 07-5011.

4. Plaintiff-Creditor-Adversary Buesgens inundated Judge Sam Sparks with a slew of lengthy, hand-written court filings and incomplete exhibits to support his employment discrimination claims.

5. The laws and regulations that apply to a federal government employee are extensive and convoluted.

For example:

6. The Code of Federal Regulations:  EEOC Regulations, OPM Regulations, Merit System Principles;

7. Administrative Procedures Act.

8. Freedom of Information Act (FOIA) Records Requests that begin in 2005.

All of the foregoing apply in Creditor-Adversary Buesgens' bankruptcy and civil actions, and administrative claims. However, none of the foregoing were applied to Civil Action No. 1:05CV00243SS. In fact, EEOC and OPM Regulations were not applied anywhere in Civil Action 1:05CV00243SS.

Judge Sam Sparks was never able to make an informed decision on Buesgens' EEOC Case No. 360-2003-8286X, because EEOC Case No. 360-2003-8286X has a defective record on appeal. EEOC No. 360-2003-8286X contains many errors of law and regulations.

For example:  Three EEOC cases were combined into one case, EEOC No. 360-2003-8286X, by EEOC Judge Robert Lynn Powell, San Antonio, Texas, and IRS General

Legal Services Attorney Michael Lynn Sacyards, and National Treasury Employees Union (NTEU) Chapter 247 Chief Steward Russell Bokelman, Austin, Texas.

The main EEO Case No. 03-2339 – Denial of Reasonable Reassignment – was not presented at the EEOC telephone hearing on December 16, 2003. EEOC Judge Robert Lynn Powell did not allow discovery for the main case, EEO No. 03-2339.

Evidence of wrongdoing was concealed, such as the emails, faxes, letters amongst and between the IRS and Department of the Treasury officials and Federal Occupational Health Services (FOHS) doctors at the Department of Health and Human Services (HHS).

Central players were not present at the EEOC telephone hearing on December 16, 2003; for example:  MARGARET F. WAITES, Reasonable Reassignment Coordinator at IRS; MELINDA LUNA ESTRADA, IRS Treasury, EEO Territory Manager, Austin, Texas; THOMAS JUSTIN THEIS, IRS Treasury, Human Resources, Labor Relations Specialist, Austin, Texas; NEAL LEE PRESENT, M.D., Medical Director, Occupational Medicine, IRS Treasury, FOHS-HHS Doctor, Bethesda, Maryland; MARK NORMAN FRANK, M.D., IRS Treasury, FOHS-HHS Occupational Medicine Doctor, Denver-Boulder, Colorado; JAMES WILLIAM ALLEN, JR. M.D., IRS Treasury, FOHS-HHS Occupational Medicine Doctor, Wilmington, Delaware.

The telephone hearing was scheduled by the following:  EEOC JUDGE ROBERT LYNN POWELL, San Antonio, Texas; IRS-GLS-EEO ATTORNEY MICHAEL LYNN SALYARDS, Dallas, Texas; NTEU CHIEF STEWARD – CHAPTER 247 – RUSSELL BOKELMAN, Austin, Texas; NTEU ATTORNEYS GRETCHEN PAULIG and DENNIS SCHNEIDER; NTEU PRESIDENT COLLEEN M. KELLEY.

All decided to have a telephone hearing for EEO No. 03-2339 and two other cases combined into EEOC No. 360-2003-8286X on December 16, 2003. Judge Sam Sparks and Plaintiff Buesgens were hung with a defective EEOC hearing and no record. The main case, EEO No. 03-2339, was intentionally not allowed to be presented at the EEOC hearing on December 16, 2003, which affected Buesgens' appeals to the EEOC Office of Federal Operations (OFO) and the appeals to the Merit System Protection Board, DA-1221-06-0171-W1.

Evidence and parties are still being concealed in 2008. U. S. Attorneys are participating in this with IRS attorneys. Judge Sam Sparks (in Civil Action No. 1:05CV00243SS) notified Buesgens that he did not have the time to go through the documentary sequence of events that Plaintiff Buesgens was presenting.

AUSA, R. BARRY ROBINSON, and EEOC Attorney JENNIFER RANDALL, were not interested in clarity, and contributed to the confusion by refusing to concentrate on the central issues of denial of reasonable reassignment discrimination based on the disability Bipolar, and retaliation and reprisal, that produced Buesgens' involuntary disability retirement on March 7, 2005.

4

## NEW EVIDENCE OF WRONGDOING
## IN CIVIL NO. 1:05CV00243SS

(See the perjured Affidavits filed on October 10, 2006, by AUSA – R. BARRY ROBINSON, document.)

(See the perjured Affidavits filed on October by EEOC Attorney JENNIFER RANDALL, Document 97.)

Some from the same parties at the EEOC hearing on December 16, 2003, EEOC No. 360-2003-8286X, for example:

DONALD RAY TAWNEY, JR., IRS Official, perjured declaration signed on October 6, 2006, Civil No. 1:05CV00243SS.

IRS Official DONALD RAY TAWNEY, JR., is the same Debtor in Civil No. 1:07CV00859RBW, the Appeal of the Adversary Case No. 07-10008.

IRS Official TAWNEY filed a perjured bankruptcy petition with the help of bankruptcy attorney CHARLES R. NETRES.

The Declaration that IRS Official DONALD RAY TAWNEY submitted in Civil Action No. 1:05CV00243SS was not presented in Bankruptcy Case 06-11164FRM or Adversary Case No. 07-10008.

Judge Sam Sparks tells Plaintiff Buesgens that he wants a simple, concise statement of the issues and facts. (See Judge Sam Sparks' Orders in Civil Action 1:05CV00243SS: EEOC No. 360-2003-8286X, EEO No. 03-233.

Civil No. 1:05CV00243SS was filed on April 29, 2005, at U.S. District Court for the Western District of Texas, Austin Division. Judge Sam Sparks orders exhibits attached to this Motion for Extension of Time: 1:05CV00243SS, Order – Document 44; filed: 6/6/2006. Judge Sam Sparks states the following: substantial docket to work, and cases must be tried within one year.

Also, 1:05CV00243SS, Order – Document 46; filed: 6/16/2006. Judge Sam Sparks states the following: Buesgens' hand-written pleadings; and no short, plain statement of the claim, as well as a multitude of cases that have no bearing on the issues; Buesgens' pleadings do not comply with the federal rules.

Again, in 1:05CV00243SS, Order – Document 49; filed: 6/30, 2006. Judge Sam Sparks states the following: Buesgens does not provide a short and plain statement of each claim; Buesgens makes slanderous statements, and Buesgens is unable to disassociate the issues in other legal cases and problems.

Plaintiff Buesgens' Response to Order No. 49 is the following.

On July 6, 2006, Buesgens was unlawfully evicted from his apartment. All of his medical records and federal court evidence for pending cases were stolen. Order No, 49, filed: 6/30/2006; Civil No. 1:05CV00243SS, states, in the last paragraph of the first page: "Buesgens was not subject to removal in November 2002 from the IRS." On page 2, "the record did not establish" Judge Sam Sparks; "the record for EEO No. 03-2339/EEOC No. 360-2003-8286X is defective" – Buesgens.

In 1:05CV02243SS, Order – Document 51, filed: 7/11/2006, Buesgens was in the hospital from July 6, 2006, to July 12, 2006. (See related Civil Action 1:06CV01964RBW); housing discrimination related to employment discrimination.

In 1:05CV00243SS, Order – Document 74, filed: 9/8/2006, Judge Sam Sparks takes judicial notice of all court filings for 1:05CV00243SS, but not for Civil No. 1:05CV02334RCL, U.S. District Court, District of Columbia; must have certified copies.

No. 1:05CV02334RCL, filed: 12/05/2005, was transferred to Texas, where it became Civil No. 5:07CV00634XR, Civil No. 1:07CV00682SS, MICHAEL L. BUESGENS v. EEOC, NTEU, et. al.

No. 1:05CV00243SS, Order – Document 87, filed: 10/12/2006, Buesgens' Cross Claim/Counter Claim, Third Party Practice, against EEOC JUDGE ROBERT LYNN POWELL, San Antonio, Texas, denied.

No. 1:05CV00243SS, Order – Document 95, filed: 10/25/2006. Buesgens tries to bring in Federal Occupational Health Services (FOHS) doctors at U.S. Department of Health and Human Services (HHS); see page 2: NEAL LEE PRESANT, M.D., Medical Director, Occupational Medicine, Bethesda, Maryland; JAMES W. ALLEN, JR., M.D., Occupational Medicine, Reasonable Reassignment; MARK N. FRANK, M.D., Occupational Medicine, Boulder-Denver, Colorado. Motion denied.

Order 95 continued: IRS OFFICIAL DONALD RAY TAWNEY, JR., Voluntary Chapter 7, Case No. 06-11164FRM, filed: 7/31/2006; discharged: 2/7/2007 – Judge Sam Sparks states, "has no effect whatsoever on the progress of this case," orders Judge Sam Sparks in Civil No. 1:05CV00243SS.

Buesgens' Response to Order No. 95 is the following (see Bankruptcy Attorney Charles R. Nettles' analysis of Civil No. 1:05CV00243SS, to defeat Buesgens' proof of claim in Bankruptcy Case No. 06-11164FRM):

Civil No. 1:05CV00243SS is the wrong case. Buesgens' Federal Tort Claim is Case No. 1:06CV10558RCL, filed: 9/1/2006, U. S. District Court, District of Columbia.

(See the perjured Declaration by DONALD RAY TAWNEY, JR., in Civil No. 1:05CV0234SS, filed on October 10, 2006.)

6

(See the perjured Declarations by IRS-GLS ATTORNEY MICHAEL LYNN SALYARDS in the following cases: 1:05CV02334RCL, 1:06CV01558RCL, 1:05CV00243SS.

1:05CV00243SS – AUSA – R. BARRY ROBINSON, Witness List, Document 52 – filed: 7/18/06, includes IRS official Tawney, and Buesgens' medical records director, and reasonable reassignment decision maker.

DONALD RAY TAWNEY, JR., a Defendant in Civil Actions: 1:06CV01558RCL, Federal Tort Claims Act (FTCA), Administrative Claim; and 1:07CV00859RBW, The Appeal of Adversary No. 07-10008.

## RELIEF

PLAINTIFF BUESGENS requests a thirty (30) day extension of time for Civil Actions 1:07CV00859RBW, and the related Case 1:06CV01964RBW, because of this complex litigation which has ongoing multiple causes of action and players; all contain the elements for just adjudication of claims under the Bankruptcy Code and Federal Tort Claims Act, and Rehabilitation Act of 1973, as amended.

Respectfully Submitted,

*Michael f Buesgens*

MICHAEL BUESGENS
Creditor-Adversary,
Plaintiff-Appellant
Former IRS Employee
*pro se*
Private Attorney General

February 2, 2008

## CERTIFICATE OF SERVICE

I certify that one true copy of this Motion for Extension of Time was served by priority mail, delivery confirmation, on this 5th day of February, 2008, addressed to:

ROBERT LYNN POWELL
EEOC Judge
EEOC No. 350-2003-8286X
EEO No. 03-2339
Civil No. 1:05CVOO243SS
5223 Casbury
San Antonio, Texas 78249-1785

JENNIFER RANDALL
EEOC Attorney
EEOC No. 360-2003-8286X
EEO No. 03-2339
Civil No. 1:05CV00243SS
303 East 17th Avenue #510
Denver, Colorado

ROBERT B. HARWIN
Retired EEOC Attorney
EEOC Litigation Records Manager
EEOC No. 360-2003-8286X
734 Lari Dawn
San Antonio, Texas 78258-4007

ELIZABETH P. CALDWELL
Retired EEOC Records Manager for Pending Litigation at
The Office of Federal Operations (OFO)
EEOC No. 360-2003-8286X
EEO No. 03-2339
Civil No. 1:05CV00243SS
Appeal No. 07-5011
12344 Quiet Owl Lane
Bowie, Maryland 20720

CHARLES R. NETTLES
Bankruptcy Attorney
Bankruptcy Case 06-11164FRM
Adversary Case 07-10008
Civil Action 1:06CV01558RCL
Civil Action 1:05CV00243SS
EEOC No. 360-2003-8286X
EEO No. 03-2339
1524 South IH-35 #233
Austin, Texas 78704

FRANK R. MONROE
Bankruptcy Judge
Bankruptcy Case 06-11164FRM
Adversary Case 06-01248FRM
Personal Injury
Federal Tort claims Act
Civil Action 1:06CV01558RCL
101 Pitchstone Cove
Georgetown, Texas 78628

RANDOLPH N. OSHEROW
Chapter 7 Trustee
Bankruptcy Case 06-11164FRM
Adversary Case 07-10008
Civil No. 1:07CV00859RBW
422 East Rosewood
San Antonio, Texas 78212

CHARLES EADS BROWN
Eviction Attorney
HUD Case No. 06-06-293-8
Theft of Buesgens' Medical Records and Federal Court Evidence for
Pending Litigation on July 6, 2006,
at Falcon Ridge Apartments
Civil No. 1:06CV01964RBW
3624 North Hills Drive #B100
Austin, Texas 78731
Telephone: 512-346-6000
Fax: 512-346-6005

COLLEEN M. KELLEY
President, NTEU
National Treasury Employees Union
RUSSELL BOKELMAN
NTEU Chief Steward, Chapter 247
DENNIS SCHNEIDER
NTEU Attorney
EEOC No. 360-2003-82864
EEO No. 03-2339
Civil No. 1:06CV01964RBW
Civil No. 1:07CV00859RBW
1750 H Street NW
Washington, DC 20006

PAT S. GENIS, AUSA, FOIA, TIGTA
Adversary No. 07-10008
Civil No. 1:07CV00859RBW
KAREN MELNIK, AUSA
Civil No. 1:05CV02334RCL
Civil No. 1:06CV01558RCL
R. BARRY ROBINSON, AUSA
MICHAEL LYNN SALYARDS, IRS, GLS-EEO Attorney
EEO No. 03-2339
EEOC No. 360-2003-8286X
HUD No. 06-06-293-8
Fifth Circuit Petitions for Review
EEOC Petition 05-06879
HUD Petition 06-60777
Civil No. 1:05CV00243SS
Civil No. 1:05CV02334RCL
Civil No. 1:06CV01558RCL
Bankruptcy Case 06-11164FRM
Adversary Case 06-01248FRM
Adversary Case 07-10008
Civil No. 1:07CV00859RBW
Civil No. 1:06CV01964RBW
555 4th Street NW
Washington, DC 20530

IRVING KATOR
Attorney-Guardian
Kator, Parks, Weiser
Federal Employee Attorneys
Austin, Texas – Washington, DC
Civil No. 1:05CV00243SS
Appeal No. 07-5011
Civil No. 1:04CV01056ESH
Appeal No. 07-5295
1020 19th Street NW #350
Washington, DC 20036-3804

SUSAN R. BECKER, AUSA
Philadelphia, Pennsylvania
WILLIAM C. MILLER
Chapter 13 Trustee
Civil No. 2:07CV01541BWK
Bankruptcy Case 07-132Y62KF
Appeals at Third Circuit: 07-3859, 07-4733
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

MELISSA K. GATES
Chief IRS – Department of Treasury
Human Resources
(See her Declaration, filed on 10/10/2006.)
1:05CV00243SS
404 Tamara Drive
Georgetown, Texas 78628

DELORES JEAN BLUE
Former HUD Employee
Civil No. 2:05CV00755AEG
7032 West Acacia Street
Milwaukee, Wisconsin 53223

DESIREE C. NANETTE
Former IRS Employee
Civil No. 8:03CV00925
9810 Barlow Road
Fairfax, Virginia 22031-3518

DANA M. PORTER
Former IRS Employee
Civil No. 2:07CV01541BWK
Bankruptcy Case 07-13246JKF
865 Scattergood Street
Philadelphia, Pennsylvania

PETER W. PANTAZES
Former HUD Employee
Civil No. 1:04CV01056ESH
Appeal No. 07-5295
6820 Hillmeade Road
Glen Dale, Maryland 20769

1:07CV00859RBW
1:06CV01964RBW

MICHAEL L. BUESGENS
Former IRS Employee
Employment Discrimination
Housing Discrimination
Extended Stay America
Mailing Address:
3112 Windsor Road #A322
Austin, Texas 78703
Telephone: 512-339-6005, x7958
mikebuesgens@hotmail.com

*Michael L Buesgens*

*2/4/2008*

## EXHIBITS

### IN SUPPORT OF THE MOTION FOR EXTENSION OF TIME

ADVERSARY CASE 07-10008; FEDERAL TORT CLAIMS ACT, FRA, BANKRUPTCY CASE 06-11164FRM – No Asset Case:

1. Has Assets – See exhibits at:

>    1821 Directors Blvd
>    Austin, Texas 78744

>    The IRS Customer Service Building and Real Property:

>    1821 Directors Blvd
>    Austin, Texas 78744

>    is the home of IRS officials DONALD RAY TAWNEY, IRS OFFICIAL; ANNA S. MEDLOCK, OPERATIONS; CHARLES WASHINGTON, JR., DIRECTOR, ET. SEQ.

>    MICHAEL L. BUESGENS, former IRS employee, Employment Discrimination, Personal Injury Tort Claims:  Claimant has located an asset that meets the definition in the Bankruptcy Code and Tort Claims.  Real Property and Building valued at $16,824,552.00.

2. IRS-FAP-Austin-LP, a foreign limited partnership; and IRS-FAP-Austin, LLC, a foreign limited liability company, to tax forfeiture at Texas Secretary of State.  Mailing address:

>    Attn:   MIKE RENNER
>             1717 Pennsylvania Avenue NW
>             Washington, DC 20006-4614

3. The Property Manager for this Bankruptcy Case asset is:

>    SPAULDING CONS
>    General Partner

>    MARSHALL H. DURSTON
>    Authorized Manager
>    Spaulding and Slye Federal Services, LLC
>    255 State Street
>    Boston, Massachusetts 02109

>    There are other players for this Bankruptcy Case asset.

Creditor-Adversary-Plaintiff MICHAEL L. BUESGENS' Involuntary Disability Retirement on March 7, 2005, occurred at IRS-FAP-Austin, LP:

> 1821 Directors Blvd
> Austin, Texas 78744

4.   LINDA M. SPRINGER
     Director, SPEAKS
     U.S. Office of Personnel Management
     OPM Involuntary Retirement Services Managing the Federal Government's Assets

5. FEDERAL REAL PROPERTY COUNCIL

6. 1:05CV00243SS, Judge SAM SPARKS, Orders; Documents 44, 46, 49, 51, 87, 95.

7.   AUSA – R. BARRY ROBINSON, Witnesses for 1:05CV00243SS; EEOC No.
     360-2003-8286X, EEO No. 03-2339

> DONALD RAY TAWNEY, JR.
> IRS Official
> Adversary Case 07-10008
> Bankruptcy Case 06-11164FRM

> ANNA S. MEDLOCK
> IRS Operations Manager

> CHARLES WASHINGTON, JR.
> IRS Director, et. al.

> All at:

> IRS-FAP-Austin, LP
> IRS-FAP-Austin, LLC
> Spaulding and Slye
> 1821 Directors Blvd
> Austin, Texas 78744

# NEW EVIDENCE OF WRONGDOING

8. Perjured Declarations by the following:

MICHAEL LYNN SALYARDS
IRS-GCS-EEO Attorney
Dallas, Texas
1:05CV02334RCL
1:06CV01558RCL
1:05CV00243SS
EEOC No. 360-2003-8286X

ROBERT LYNN POWELL
EEOC Judge
San Antonio, Texas
EEOC No. 03-2339
EEOC No. 360-2003-8286X
Civil No. 1:05CV00243SS

JENNIFER RANDALL
EEOC Attorney
Denver, Colorado
EEO No. 03-2339
EEOC No. 360-2003-8286X
1:05CV00243SS

KATYE DUDERSTADT
EEOC Supervisory Administrative Judge
San Antonio, Texas
EEO No. 03-2339
EEOC No. 360-2003-8286X
1:05CV00243SS

ROBERT BARDHART
EEOC Director
Office of Federal Operations
Washington, DC, Supervisor for:

ELIZABETH P. CALDWELL
EEOC Retired Records Manager
EEO No. 03-2339
EEOC No. 360-2003-8286X
1:05CV00243SS

9.    DONALD RAY TAWNEY, JR.
      IRS Official
      1821 Directors Blvd
      Austin, Texas 78744
      Declaration in 1:05CV00243SS, dated: September 25, 2006;
      Bankruptcy Case 06-11164FRM, filed: 7/31/06;
      First Creditors Meeting: 9/1/06

      Creditor-Adversary Buesgens was not notified of meeting.

10.   ANNA S. MEDLOCK
      IRS Operations Manager
      1821 Directors Blvd
      Austin, Texas 78744

      Declaration in 1:05CV00243SS, dated 10/6/06; filed in 1:05CV00243SS on
      10/10/2006.

11.   MELISSA K. GATES, Chief
      IRS – Department of the Treasury
      Human Resources
      AWSS
      Agency Wide Shared Services
      Declaration in 1:05CV00243SS, dated: 10/5/2006.

12.   U.S. ATTORNEYS MANUAL
      Bankruptcy Fraud
      Bankruptcy Case 06-11164FRM
      Adversary Case 07-10008
      Civil No. 1:07CV00859RBW

13.   U.S. ATTORNEYS MANUAL
      (All federal agencies are participants in Bankruptcy proceedings.)

14.   U.S. ATTORNEYS MANUAL
      Who, What, When, Where, Why, and How of
      Appeals In Bankruptcy Proceedings, Generally

15.   U.S. ATTORNEYS MANUAL
      Federal Tort Claims Act
      FTCA – Form SF95
      Administrative Claims
      Responsibilities
      Client Agencies
      4-1.410; 4-1.430; 4-1.440; 4-1.450

      Liaison of U.S. Attorneys with Client Agencies – 4-1.5250.

      Bankruptcy Case 06-11164FRM
      Adversary Case 07-10008
      Civil No. 1:07CV00859RBW

16.   R. BARRY ROBINSON, AUSA
      Motion for Summary Judgment in Civil No. 1:05CV00243SS; Document 86, filed
      10/10/2006; perjured Declarations attached to support this thing.

17

# EXHIBIT 1

*IRS*

**TaxNetUSA: Travis County**

Property ID Number: 291767 Ref ID2 Number: 03130103030000

**Owner's Name** FAP-AUSTIN L P

| | |
|---|---|
| **Mailing Address** | ATTN MIKE RENNER<br>1717 PENNSYLVANIA AVE NW<br>WASHINGTON, DC 20006-4614 |
| **Location** | 1821 DIRECTORS BLVD 78744 |
| **Legal** | LOT 1 CROW INDUSTRIAL PARK SOUTH SEC 8 AMENDED PLAT OF LTS B,C&D |

**Property Details**

| | |
|---|---|
| **Deed Date** | 12292004 |
| **Deed Volume** | |
| **Deed Page** | |
| **Exemptions** | |
| **Freeze Exempt** | F |
| **ARB Protest** | F |
| **Agent Code** | 2464 |
| **Land Acres** | 8.4370 |
| **Block** | |
| **Tract or Lot** | 1 |
| **Docket No.** | |
| **Abstract Code** | S03596 |
| **Neighborhood Code** | 51SEA |

| Value Information | 2007 Certified |
|---|---|
| Land Value | 1,470,064.00 |
| Improvement Value | 15,354,488.00 |
| AG Value | 0.00 |
| AG Productivity Value | 0.00 |
| Timber Value | 0.00 |
| Timber Productivity Value | 0.00 |
| Assessed Value | 16,824,552.00 |
| 10% Cap Value | 0.00 |
| Total Value | 16,824,552.00 |

Data up to date as of 2007-12-31

*1821 DIRECTORS BLVD AUSTIN, TX 78744*

**Value By Jurisdiction**

| Entity Code | Entity Name | 2006 Tax Rate | Assessed Value | Taxable Value | Market Value | Appraised Value |
|---|---|---|---|---|---|---|
| 0A | TRAVIS CENTRAL APP DIST | 0.000000 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 |
| 01 | AUSTIN ISD | 1.493000 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 |
| 02 | CITY OF AUSTIN | 0.412600 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 |
| 03 | TRAVIS COUNTY | 0.449900 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 |
| 2J | TRAVIS CO HEALTHCARE DIST | 0.073400 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 |
| 68 | AUSTIN COMM COLL DIST | 0.096500 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 | 16,824,552.00 |

**Improvement Information**

| Improvement ID | State Category | Description |
|---|---|---|



*HENLY PAULSON, SECRETARY*

General Services Administration (GSA) Inventory of Owned and Leased Properties

**National Map** > **Region 7: Greater Southwest** > **Texas** >
**District 25** > **TX1962**

**HELP**

*IRS* ✓

*DOUNA RAY TAWNEY, JR*
*MARK EVERSON*
*LINDA STIFF*

**GSA Building Stats**

1821 DIRECTORS BLVD.
1821 DIRECTORS BLVD.
AUSTIN , TX 78744-1839

**Representative:** Lloyd Doggett  (D)
**Representative**
**URL:** http://www.house.gov/doggett/

For information on properties in
Region 7, contact:
Patti Tilson 817-978-2703
817-978-2703
patti.tilson@gsa.gov

**Senator:** Cornyn, John (R)
**Senator**
**URL:** http://cornyn.senate.gov

**Senator:** Hutchison, Kay Bailey (R)
**Senator**
**URL:** http://hutchison.senate.gov

*06-11164 FRM*
*07-10008*

**Lease Details**

| Lease Code | Initial Effective Date | Expiration Date | Rentable Sq Feet | Status |
|---|---|---|---|---|
| LTX14615 | 5/1/1998 | 4/30/2008 | 225054 | Active |

**Square Footage**

Building Rentable SF: 225054

Leased Rentable SF:  225054

Available Space:              0

*IRS*

## Find a Business - Search Results

1. **Business Name(s):FAP-AUSTIN LP**
   **Address:**            **1717 PENNSYLVANIA AVE STE 1000, WASHINGTON DC**
2. **Business Name(s):FAP-AUSTIN, LP**
   **Address:**            **WASHINGTON DC**
3. **Business Name(s):FAP-AUSTIN LLC**
   **Address:**            **1209 ORANGE ST, WILMINGTON DE**
4. **Business Name(s):FAP-AUSTIN, LP**
                       **IRS FAP-AUSTIN, LP**
   **Address:**
5. **Business Name(s):FAP-AUSTIN, LP**
   **Address:**            **350 SAINT PAUL ST, DALLAS TX**
6. **Business Name(s):FAP-AUSTIN, LP C/O SPAULDING AND SLYE LLC**
   **Address:**            **1717 PENNSYLVANIA AVE STE 1000, WASHINGTON DC**

1821 DIRECTORS BLVD
AUSTIN, TEXAS 78744

# EXHIBIT 2



### UCC | Business Organizations | Trademarks | Account | Help/Fees | Briefcase | Logout

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800431411 | **Entity Type:** | Foreign Limited Liability Company (LLC) |
| **Original Date of Filing:** | December 27, 2004 | **Entity Status:** | Forfeited existence *IRS* |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32016432331 | **FEIN:** | |
| **Name:** | FAP-Austin, LLC | | |
| **Address:** | 350 NORTH ST. PAUL ST. Dallas, TX 75201 USA | | |
| **Fictitious Name:** | IRS FAP-Austin GP, LLC | | |
| **Jurisdiction:** | DE, USA | | |
| **Foreign Formation Date:** | November 18, 2004 | | |

*MARSHALL H. DURSTON*

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Last Update | Name | Title | Address |
|---|---|---|---|
| December 27, 2004 | Marshall Durston | Manager | 350 North St. Paul St. Dallas, TX 75201 USA |

Order | Return to Search

**1 of 2**

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Roger Williams
Secretary of State

## Forfeiture pursuant to Section 171.309 of the Texas Tax Code
### of
### FAP-Austin, LLC ✓ ~~IRS~~

File Number :  800431411                    Certificate / Charter forfeited :   December 01, 2006

The Secretary of State hereby determines and finds the following:

1.  The Secretary of State has received certification from the Comptroller of Public Accounts under Section 171.302 of the Texas Tax Code that there are grounds for forfeiture of the charter or certificate of authority of the referenced entity.

2.  The entity has not revived its forfeited corporate privileges within 120 days after the date that the corporation privileges were forfeited.

3.  The Comptroller of Public Accounts has determined that the entity does not have assets from which a judgment for any tax, penalty, or court costs imposed under Chapter 171 of the Code may be satisfied.

It is therefore ordered that the entity's charter or certificate of authority be forfeited without judicial ascertainment and that the proper entry be made upon the permanent files and records of such entity to show such forfeiture as of the date hereof.



Roger Williams
Secretary of State

Come visit us on the Internet @http://www.sos.state.tx.us/

(512) 463-5555                    FAX (512) 463-5709                    TTY 7-1-1

BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY



**Texas Secretary of State**
**Phil Wilson**

**UCC** | **Business Organizations** | **Trademarks** | **Account** | **Help/Fees** | **Briefcase** | **Logout**

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800431419 | **Entity Type:** | Foreign Limited Partnership *IRS* |
| **Original Date of Filing:** | December 27, 2004 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | |
| **Name:** | FAP-Austin, LP | | |
| **Address:** | [ADDRESS NOT PROVIDED] | | |
| **Fictitious Name:** | IRS FAP-Austin, LP | | |
| **Jurisdiction:** | DE, USA | | |
| **Foreign Formation Date:** | November 18, 2004 | | |

*IRS*

| **REGISTERED AGENT** | **FILING HISTORY** | **NAMES** | **MANAGEMENT** | **ASSUMED NAMES** | **ASSOCIATED ENTITIES** |
|---|---|---|---|---|---|

| **Last Update** | **Name** | **Title** | **Address** |
|---|---|---|---|
| December 27, 2004 | FAP-Austin, LLC | General Partner | 1717 Pennsylvania Ave. NW, Ste. 100 Washington, DC 20006 USA |

1 of 2



**Texas Secretary of State**
**Phil Wilson**

**UCC | Business Organizations | Trademarks | Account | Help/Fees | Briefcase | Logout**

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800431411 | **Entity Type:** | Foreign Limited Liability Company (LLC) |
| **Original Date of Filing:** | December 27, 2004 | **Entity Status:** | Forfeited existence *IRS* |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32016432331 | **FEIN:** | |
| **Name:** | FAP-Austin, LLC | | |
| **Address:** | 350 NORTH ST. PAUL ST. Dallas, TX 75201 USA | | |
| **Fictitious Name:** | IRS FAP-Austin GP, LLC | | |
| **Jurisdiction:** | DE, USA | | |
| **Foreign Formation Date:** | November 18, 2004 | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Assumed Name | Date of Filing | Expiration Date | Inactive Date | Name Status | Counties |
|---|---|---|---|---|---|
| IRS FAP-Austin GP, LLC | December 27, 2004 | December 27, 2014 | December 1, 2006 | Entity Inactive | , |

| Order | | Return to Search |
|---|---|---|

**1 of 2**

**Texas Secretary of State**
**Phil Wilson**

**UCC | Business Organizations | Trademarks | Account | Help/Fees | Briefcase | Logout**

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 800431411 | **Entity Type:** | Foreign Limited Liability Company (LLC) |
| **Original Date of Filing:** | December 27, 2004 | **Entity Status:** | Forfeited ✓ *IRS* existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32016432331 | **FEIN:** | |
| **Name:** | ✓ FAP-Austin, LLC | | |
| **Address:** | 350 NORTH ST. PAUL ST. Dallas, TX 75201 USA | | |
| **Fictitious Name:** | (IRS FAP-Austin GP, LLC) | | |
| **Jurisdiction:** | DE, USA | | |
| **Foreign Formation Date:** | November 18, 2004 | | |

| REGISTERED AGENT | FILING HISTORY | ✓ NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

*IRS*

| Name | Name Status | Name Type | Name Inactive Date | Consent Filing # |
|---|---|---|---|---|
| IRS FAP-Austin GP, LLC | Inactive | Fictitious | December 1, 2006 | 0 |
| FAP-Austin, LLC | Inactive | Legal | December 1, 2006 | 0 |

1 of 2



Office of the Secretary of State
Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697

**FILED**
In the Office of the
Secretary of State of Texas

DEC 27 2004

Corporations Section

---

# ASSUMED NAME CERTIFICATE
# FOR FILING WITH THE SECRETARY OF STATE

1. **The name of the corporation, limited liability company, limited partnership, or registered limited liability partnership as stated in its articles of incorporation, articles of organization, certificate of limited partnership, application for certificate of authority or comparable document is**

   FAP-Austin, LLC

2. **The assumed name under which the business or professional service is or is to be conducted or rendered is**

   IRS FAP-Austin GP, LLC

3. **The state, country, or other jurisdiction under the laws of which it was incorporated, organized or associated is** Delaware, USA **and the address of its registered or similar office in that jurisdiction is**

   1209 Orange Street, Wilmington, DE, USA 19801

4. **The period, not to exceed 10 years, during which the assumed name will be used is**

   10 Years.

5. **The entity is a (check one):**
   **A.**
   ☐ Business Corporation          ☐ Non-Profit Corporation
   ☐ Professional Corporation      ☐ Professional Association
   ☒ Limited Liability Company     ☐ Limited Partnership
   ☐ Registered Limited Liability Partnership

   **B. If the entity is some other type business, professional or other association that is incorporated, please specify below (e.g., bank, savings and loan association, etc.)**

6. **If the entity is required to maintain a registered office in Texas, the address of the registered office is** c/o CT Corporation System, 350 N. St. Paul Street, Dallas, TX, USA 75201 **and the name of its registered agent at such address is** CT Corporation System

   **The address of the principal office (if not the same as the registered office) is**

7.   If the entity is not required to or does not maintain a registered office in Texas, the office address in Texas is_____

_____

and if the entity is not incorporated, organized or associated under the laws of Texas, the address of its place of business in Texas is c/o CT Corporation System, 350 N. St. Paul Street, Dallas, TX USA 75201

and the office address elsewhere is 1717 Pennsylvania Ave. NW, Suite 100, Washington, DC 20006

8.   The county or counties where business or professional services are being or are to be conducted or rendered under such assumed name are (if applicable, use the designation "ALL" or "ALL EXCEPT")    *TRAVIS COUNTY*

Travis County, TX _____

9.   The undersigned, if acting in the capacity of an attorney-in-fact of the entity, certifies that the entity has duly authorized the attorney-in-fact in writing to execute this document.

By _____
     Signature of officer, general partner, manager,
     representative or attorney-in-fact of the entity

## NOTE

This form is designed to meet statutory requirements for filing with the secretary of state and is not designed to meet filing requirements on the county level. Filing requirements for assumed name documents to be filed with the county clerk differ. Assumed name documents filed with the county clerk are to be executed and acknowledged by the filing party, which requires that the document be notarized.

Form No. 503
Revised 9/99

TX503 - 4/4/00 CT Syosem Online

12/23/2004  13:40    2025729606                    CTCORP                              PAGE  03/

| Form 304 (revised 9/03) |  Application for Certificate of Authority Pursuant to Article 7.05 Texas Limited Liability Company Act | This space reserved for office use.  FILED In the Office of the Secretary of State of Texas  DEC 27 2004  Corporations Section |
|---|---|---|
| Return in Duplicate to: Secretary of State P.O. Box 13697 Austin, TX 78711-3697 FAX: 512/463-5709  Filing Fee: $500 | | |

1. The name of the limited liability company is as set forth below:

FAP-Austin, LLC

The name must not be the same as, deceptively similar to or similar to that of an existing corporate, limited liability company, or limited partnership name on file with the secretary of state. A preliminary check for "name availability" is recommended.

2A. The legal name of the limited liability company does not contain the words "Limited Liability Company," or "Limited Company," or the abbreviations "L.L.C." "LLC," "L.C.," or "LC." The name of the company with the word or abbreviation that it elects to add for use in Texas is:

2B. The limited liability company name is not available in Texas. The assumed name under which the limited liability company will qualify and transact business in Texas is:

IRS FAP-Austin GP, LLC

3. ☐ The entity electing to obtain this certificate of authority is not required to use an organizational ending indicating it is a limited liability company since it is not characterized or formed as a limited liability company under the laws of the jurisdiction governing its formation.

4. Its federal employer identification number is:

☒ Federal employer identification number information is not available at this time.

5. It is organized under the laws of: (set forth state or foreign country)    Delaware, USA

6. The date of its organization is    November 18, 2004            and its period of duration is:

☒ perpetual  or  ☐ limited duration of a term of years set at: _____

7. The principal office address in the state or country of the company's jurisdiction of formation is:

(If the company does not maintain an office address in its jurisdiction of formation, then provide the registered office address of its registered agent in the jurisdiction of formation in the space provided below.)

1209 Orange Street, Wilmington, DE, USA 19801

| Address | City | State/Country | Zip/Postal Code |

8. Its proposed registered agent in Texas is: (See instructions. Cannot be company named above.)

C T Corporation System

and the street address of its proposed registered office, which is the business office address of its proposed registered agent in Texas, is: (A post office box address is not sufficient, please provide street address.)

c/o C T Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201

9. The purpose or purposes of the limited liability company that it proposes to pursue in the transaction of business in Texas are set forth below. The company also certifies that it is authorized to pursue such stated purpose or purposes in the state or country under which it is organized.

Own real estate.                                    OWN REAL ESTATE

**(Complete either item 10A or 10B below.)**

10A. The name and address of each of its managers is:

| NAME | ADDRESS (include city and state/country) |
|------|------------------------------------------|
| Marshall Durston, Manager | c/o CT Corporation System, 350 N. St. Paul Street, Dallas TX, USA 75201 |
|  |  |
|  |  |

10B. The company is member-managed. The name and address of each of its managing members is::

| NAME | ADDRESS (include city and state/country) |
|------|------------------------------------------|
|  |  |
|  |  |
|  |  |

11. As of the date of filing, the undersigned certifies that the foreign limited liability company currently exists as a valid entity under the laws of the jurisdiction of its formation.

### Effective Date of Filing

☒ The document is to be effective when the document is filed by the secretary of state.

**OR**

☐ This document will become effective at a later date, which is not more than ninety (90) days from the date of its filing by the secretary of state. The delayed effective date is:

### Execution

The undersigned authorized manager or member of the limited liability company signs this document subject to the penalties imposed by law for the submission of a false or fraudulent document.

_____                    December 21, 2004
Marshall Durston                                    Date
Signature of Authorized Manager/Member

TJF083 - 03/1996 C T System Online

12/23/2004   13:40    2025729606                    CTCORP

# IRS-FAP-AUSTIN

~~STATE OF TEXAS~~            ✓

COUNTY OF *Districts of Columbia*

Before me on this __22nd__ day of __December__ __2004__, personally appeared
__Marshall Duriton__ and acknowledged to me that __he__ he/she
executed the foregoing certificate for the purposes therein expressed.

My Commission Expires:                       *Priscilla J. McClain*
~~Priscilla J. McClain~~                      Notary Public, State of Texas
~~Notary Public, District of Columbia~~
~~My Commission Expires 10-14-2008~~

DONALD RAY TAWNEY, JR
1821 DIRECTORS BLVD
AUSTIN, TEXAS 78744
BANKRUPTCY CASE 06-11164
ADVERSARY CASE 07-10008
1:07CV00859 RBW

# EXHIBIT 3

**DISTRICT OF COLUMBIA**



**The Commonwealth of Massachusetts**
**William Francis Galvin**

**Secretary of the Commonwealth, Corporations Division**
**One Ashburton Place, 17th floor**
**Boston, MA 02108-1512**
**Telephone: (617) 727-9640**

---

*SPAULDING AND SLYE FEDERAL SERVICES LLC* Summary Screen         ⬆ **Help with this form**

*IRS – FAP – AUSTIN), LP AND LLC*

The exact name of the Foreign Limited Liability Company (LLC): <u>SPAULDING AND SLYE FEDERAL SERVICES LLC</u>

Entity Type:  <u>Foreign Limited Liability Company (LLC)</u>

Identification Number: <u>000836515</u> .

Old Federal Employer Identification Number (Old FEIN):

Date of Registration in Massachusetts:  <u>02/26/2003</u>

The is organized under the laws of:  State: <u>DE</u>   Country: <u>USA</u>   on:  <u>Sep 12 2002</u>

The location of its principal office:
No. and Street:    <u>255 STATE ST.</u>
City or Town:    <u>BOSTON</u>         State: <u>MA</u>     Zip: <u>02109</u>     Country: <u>USA</u>

The location of its Massachusetts office, if any:
No. and Street:
City or Town:            State:         Zip:       Country:

The name and address of the Resident Agent:
Name:    <u>CORPORATION SERVICE COMPANY</u>
No. and Street: <u>84 STATE ST.</u>
City or Town:  <u>BOSTON</u>                State: <u>MA</u>  Zip: <u>02109</u>Country: <u>USA</u>

**DISTRICT OF COLUMBIA**

*IRS-FAP-AUSTIN*

**The name and business address of each manager:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip<br>Code |
|---|---|---|
| MANAGER | SPAULDING AND SLYE LLC | 255 STATE ST.<br>BOSTON, MA 02109 USA |

**The name and business address of the person in addition to the manager, who is authorized to execute documents to be filed with the Corporations Division.**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip<br>Code |
|---|---|---|
| SOC SIGNATORY | SPAULDING AND SLYE LLC | 255 STATE ST.<br>BOSTON, MA 02109 USA |
| SOC SIGNATORY | JAMES JASIONOWSKI | 200 E. RANDOLPH DR<br>CHICAGO, IL 60601 USA |

**The name and business address of the person(s) authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip<br>Code |
|---|---|---|
| REAL PROPERTY | SPAULDING AND SLYE LLC | 255 STATE ST.<br>BOSTON, MA 02109 USA |

___ Consent    ___ Manufacturer    ___ Confidential Data    ___ Does Not Require Annual Report

## SPAULDING AND SLYE FEDERAL SERVICES LLC
## 2007 MASSACHUSETTS ANNUAL REPORT

FILED

1) The federal identification number of the LLC is 55-0803337.

2) The name of the LLC is Spaulding and Slye Federal Services LLC.

3) The street address of the office in the Commonwealth at which its records will be maintained is c/o Spaulding and Slye, 255 State Street, Boston MA 02109.

4) Spaulding and Slye Federal Services LLC was incorporated in Delaware on December 9, 2002.

5) The general character of the business proposed to be conducted by the Foreign Limited Liability Company in Massachusetts is to (i) engage generally in real estate activities, including providing real estate-related services (including, without limitation, real estate sales and leasing brokerage services, representation and consulting services for sellers, purchasers and tenants or real property, and consulting services for other parties) real estate development, site selection, appraisal, asset and property management, construction of tenant improvements, investment sales, mortgage brokering and financing services, and owning real property and interests therein (directly or indirectly through ownership of interests in partnerships, limited liability companies, corporations or other entities); and (ii) engage in any and all activities which may be directly or indirectly related or incidental thereto and in which a Delaware limited liability company may lawfully engage.

6) The LLC has no fixed date for dissolution.

7) The name and address of the resident agent for service of process in Massachusetts for the Foreign Limited Liability Company is Spaulding and Slye Construction Company, Inc. 255 State Street, Boston, MA 02109.

8) The managing member of the LLC is Spaulding and Slye LLC, 255 State Street, Boston, MA 02109.

9) Spaulding and Slye LLC, the manager is authorized to execute documents to be filed with the office of the Secretary of the Commonwealth of Massachusetts.

10) Spaulding and Slye LLC, the manager of the LLC is authorized, to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property.

*IRS-FAP-LLC-Austin*

IN WITNESS WHEREOF, the undersigned hereby affirms under the penalties of perjury that the facts stated herein are true, as of the 3rd day of April 2006.

By: Spaulding and Slye LLC, Manager

Its manager

**FILED**

FEB 2 6 2003

SECRETARY OF THE COMMONWEALTH
CORPORATIONS DIVISION

REGISTRATION OF FOREIGN
LIMITED LIABILITY COMPANY

SPAULDING AND SLYE FEDERAL SERVICES LLC

The undersigned, Spaulding and Slye Federal Services LLC, a Delaware limited liability company, (the"LLC") for the purpose of registering pursuant to the provisions of Section 48 of Chapter 156C of the Massachusetts General Laws, to do business as a foreign limited liability company in the Commonwealth of Massachusetts hereby certifies as follows:

1. Federal Employer Identification Number: The federal identification number is 55-080337.

2. Name of the Limited Liability Company: The name of the Foreign Limited Liability Company is Spaulding and Slye Federal Services LLC. The LLC purposes to conduct business in the Commonwealth under such name.

3. Jurisdiction of Organization: The Foreign Limited Liability Company was organized under the laws of the State of Delaware on September 12, 2002.

4. Character of Business: The general character of the business proposed to be conducted by the Foreign Limited Liability Company in Massachusetts is to (i) engage generally in real estate activities, including providing real estate-related services (including, with out limitation, real estate sales and leasing brokerage services, representation and consulting services for sellers, purchasers and tenants of real property, and consulting services for other parties) real estate development, site selection, appraisal, asset and property management, construction of tenant improvements, investment sales, mortgage brokering and financing services, and owning real property and interests therein (directly or indirectly through ownership of interests in partnerships, limited liability companies, corporations or other entities); and (ii) engage in any and all activities which may be directly or indirectly related or incidental thereto and in which a Delaware limited liability company may lawfully engage.

5. Principal Office of the Limited Liability Company and Business Address in Massachusetts. The address of the principal office of the Foreign Limited Liability Company and its business address in the Commonwealth of Massachusetts is c/o Spaulding and Slye LLC, 255 State Street, Boston, MA 02109

BANKRUPTCY 06-11164FRn
Donald Ray Tawney, JR
AND
PETER A. Bailey

6. <u>The Name and Address of Manager</u>: The name and business address of the manager of the Foreign Limited Liability Company is Spaulding and Slye LLC, 255 State Street, Boston, MA 02109.

7. <u>Agent for Services of Process:</u> The name and address of the resident agent for service of process in Massachusetts for the Foreign Limited Liability Company is Spaulding and Slye Construction Company, Inc., 255 State Street, Boston, MA 02109.

8. <u>Date of Dissolution:</u> The Foreign Limited Liability Company shall have no fixed date upon which it shall dissolve.

9. <u>Authorized Persons</u>: The Manger of the Foreign Limited Liability Company is authorized to execute on behalf of the Foreign Limited Liability Company any documents to be filed with the Secretary of State of The Commonwealth of Massachusetts.

10. <u>Authorized Persons:</u> The Manager of the Foreign Limited Liability Company is authorized to execute, acknowledge, deliver and record on behalf of the Limited Liability Company, any recordable instrument purporting to affect an interest in real property.

IN WITNESS WHEREOF, the undersigned hereby affirms under the penalties of perjury that the facts stated herein are true, as of the 14th day of February 2003.

By: Spaulding and Slye LLC,
Manager

By: Peter A. Bailey
Authorized Person

SPAULDiNG CONS
GENERAL PARTNER

*Delaware*

PAGE 1

The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "SPAULDING AND SLYE FEDERAL SERVICES
LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND
IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE
RECORDS OF THIS OFFICE SHOW, AS OF THE EIGHTEENTH DAY OF
JANUARY, A.D. 2003.

Ck.# 164626

**The Commonwealth of Massachusetts
Limited Liability Company
(General Laws, Chapter 156C)**                    **829550**

Filed this ___26 th ___ day of February ,2003.

WILLIAM FRANCIS GALVIN
SECRETARY OF THE COMMONWEALTH

Mary-Ellen Cunha

Phone: 1-781-778-2500

# EXHIBIT 4

# Office of Federal Financial Management

## From the Controller's Desk

---

*Strengthening the management of the Federal Government's assets has been an important objective of the Administration. For example, on February 4, 2004, the President signed into law Executive Order 13327, "Federal Real Property Asset Management." This executive order – the first order fully devoted to real property management in nearly 20 years – has served as a much-needed boost toward improving the management of Federal assets on a government-wide level.*

*Pursuant to the executive order, all major Federal agencies are now working to complete the following steps:*

- *Establish the position of a Senior Real Property Officer, who will be held accountable for the effective management of agency real properties;*
- *Develop and implement asset management plans; and*
- *Determine what it owns, what it needs, and how and what it costs to manage its real properties.*

*Established by the executive order, an Interagency Federal Real Property Council is developing government-wide guidance and serving as a clearinghouse for best practices. Comprised in part by the agency Senior Real Property Officers, the Council has held regular meetings since March, and it is specifically working through its committee structure to develop a standard asset management plan template, government-wide performance measures, and a standard method of reporting its property inventory.*

*In conjunction with the executive order, a new Federal Real Property Asset Management initiative has been added to the President's Management Agenda (PMA). This initiative will now hold the largest Federal landholding agencies accountable and track their status and progress of real property management improvement efforts on the quarterly PMA scorecard.*

*Through the hard work of the Senior Real Property Officers and the Federal Real Property the Council, as well as the ongoing PMA scorecard process, the government is addressing real property asset management on a*

*government-wide level. Over the next several years, it is the goal of this Administration for all major agencies to develop and implement effective asset management plans and apply appropriate performance measures to its properties. Additionally, the work of the agencies and the Council should ultimately lead to the development of a comprehensive and descriptive database of all Federal real properties. Once complete, this database, along with appropriately identified performance measures, will assist agency management in making informed decisions about what properties are needed, being utilized effectively, or qualify for disposal.*

*Section one of Executive Order 13327 states: "[i]t is the policy of the United States to promote the efficient and economical use of America's real property assets and to assure management accountability for implementing Federal real property management reforms." Thus, at a minimum, the American taxpayers deserve to know that the Federal Government is managing its assets in an efficient and cost-effective manner. Through the work of the agencies and the Federal Real Property Council, and the implementation of the new Real Property PMA initiative, the Administration will continue its efforts to improve real property asset management.*

**Linda M. Springer**

# EXHIBIT 5

# Federal Real Property Council
## Guidance for Improved Asset Management

---

### Section 1.    Introduction

---

This is the *(Agency name)'s* Asset Management Plan as required by Executive Order ("EO") 13327, "Federal Real Property Asset Management." This plan is guided by the principles of the Federal Real Property Council ("the Council") established by EO 13327. The Council's ten guiding principles, applicable to Federal real property asset management, include:

1. Support agency missions and strategic goals *(Reference Page #'s)*
2. Use public and commercial benchmarks and best practices *(pp.  )*
3. Employ life-cycle cost-benefit analysis *(pp.  )*
4. Promote full and appropriate utilization *(pp.  )*
5. Dispose of unneeded assets *(pp.  )*
6. Provide appropriate levels of investment *(pp.  )*
7. Accurately inventory and describe all assets *(pp.  )*
8. Employ balanced performance measures *(pp.  )*
9. Advance customer satisfaction *(pp.  )*
10. Provide for safe, secure, and healthy workplaces *(pp.  )*

This plan addresses the Council's template for agency asset management plans, which includes:

1. Integrated Guiding Principles *(pp.  )*
2. Agency-Specific Owner's Objectives *(pp.  )*
3. Periodic Evaluation of All Assets *(pp.  )*
4. Prioritized Operations and Maintenance & Capital Plans *(pp.  )*
5. Identified Resource Requirements to Support Plans *(pp.  )*
6. "Building Block" Asset Business Plans in Agency Portfolio Context *(pp.  )*
7. Continuous Monitoring and Feedback Mechanism *(pp.  )*
8. Consideration of Socio-Economic-Environmental Responsibilities *(pp.  )*
9. Adequate Human Capital Support of Asset Management Organization *(pp.  )*
10. Common Government-wide Terminology *(pp.  )*

The page numbers following each of the Council's principles and template items above provides a cross reference with *(Agency name)'s* Asset Management Plan. *(Reading the identified pages will provide OMB and other agencies a sense of how each of the Council's principles and template items are addressed by the agency.)*

Section 1 provides an introduction and describes the approach and content of this plan.

Section 2 addresses *(Agency name)'s* mission and its real property support in implementing its missions and strategic goals, its human capital and organizational structure, decision-making framework, and owner's objectives.

# Federal Real Property Council
## Guidance for Improved Asset Management

of its acquisition results, and identifies key initiatives to improve financial management and acquisition performance.

Section 4 describes how *(Agency name)'s* operates its real property assets, addressing its inventory system, its Operations and Maintenance Plans, its Asset Business Plans or "Building Block" Plans and its periodic evaluation of assets. Additionally, operational measures are described as well as key initiatives that are underway to improve operational performance.

Section 5 describes how *(Agency name)* disposes of unneeded real property assets, measures the effectiveness of its redeployment actions and identified key initiatives to improve the pace of disposition as well as its ability to dispose of difficult, environmentally challenged properties. Lists of *(Agency name)'s* recent disposals are provided as a frame of reference. Plans for disposals of assets in current and future years are attached/will be completed during *(timeframe)*.

---

| Section 2. | Support of Agency Missions and Strategic Goals |
|---|---|

Investment, operational, and disposal decisions need to be integrated with and supportive of core mission activities to effectively manage and optimize real property assets. To facilitate integrating real property asset management decisions with agency missions, two elements are needed – a clear understanding of the agency's mission that drives the allocation and use of all available resources (human capital, physical capital, financial capital and technology/information capital) and an effective decision-making framework.

This section discusses *(Agency name)'s* mission, human capital, and decision-making framework.

## 2.1    Agency Mission
*(Agency name)*'s mission is...*(insert Agency Mission Statement)*.

*(Agency name)* ensures that its real property asset management is integrated with and enables its mission work by ...*(insert discussion of integration effort)*.

*(Agency name)'s* goals in its Strategic Plan address prudent asset management *(if applicable)*. *(Agency name)'s* strategic goals include...*(insert Agency goals)*.

## 2.1.1   Real Property Organization Mission
The *(Real Property organization or Unit name)* of *(Agency name)* provides real property assets in support of the agency's overall mission for... *(Briefly describe the number of programs, the number of employees associated with programs, and the locations of the programs...for example, the number of cities and states throughout the United States and countries throughout the world...insert mission statement)*.

# Federal Real Property Council
## Guidance for Improved Asset Management

### 2.2    Human Capital and Organization Infrastructure

*(Agency name)* accomplishes its mission through a network of ...*(Briefly describe agency structure, i.e. central office, number of regional offices, number of field offices or program areas).*

*Describe the overall Agency reporting structure.* The *(Title of Agency Head)* leads the agency. *(Title of Leaders)* for the *(number of)* regional offices report directly to the *(Title of Agency Leader).* See <u>Attachment 1</u> for *(Agency name)'s* organizational chart.

*Briefly describe the reporting structure of the Real Property Asset Management portion of the organization.* *(Agency name)* has *(number of)* associates located in the Central Office and the regional and field offices that contribute to real property asset management that supports the overall agency mission. *(Agency name)* understands the importance of having a competent workforce with the appropriate Real Property skills and training to support *(Agency name)'s* core competencies, goals, and mission. <u>Attachment 2</u> provides a description of the *(Agency name)* Real Property core competencies. *(Agency name)* supports continuous learning to strengthen these Real Property core competencies and to keep aware of and import applicable industry trends, benchmarks, and best practices. See <u>Attachment 3</u> for *(Agency name)'s* Real Property Organization chart.

### 2.3    Real Property Asset Management Decision-Making

At *(Agency name)*, real property asset management decisions are made at both the central and regional offices. *Describe whether decision-making is centralized or decentralized within the organization.* Funding levels of projects and program areas determine the level within the organization at which real property decisions are made. Decisions to recommend projects above *(dollar threshold, if appropriate)* are made at the highest levels within *(Agency name)*.

*Briefly describe the decision making process at the national/centralized level. (List Agency Leadership that makes us an Investment Committee)* act as an investment committee that decides which major/prospectus capital investments should be recommended for funding consideration.

*Briefly describe the decision-making process at the sub-level, such as the regional level/program area.* In the regions, *(list appropriate Regional Leadership)* are responsible for managing the day-to-day operations and for shaping reinvestment decisions for the real property assets in their portfolios. *Briefly describe the decision-making process at the field office or facility level, including the manner in which the agency routinely uses performance measurement and inventory data in its decision-making. For example, Asset Business Teams (ABT) are generally responsible for a geographic territory. These teams are comprised of realty specialists, property managers, asset managers, account managers, and project managers, among others, who manage the individual assets. The property managers located in the field offices are responsible for most of the routine property management work. Realty Specialists are responsible for assignment of customers in Federal space and in existing leased space or acquiring additional leased space. Asset managers are responsible for leading the Asset Business Team to review performance data and inventory data, such as vacancy and operating cost data to formulate reinvestment plans for below-prospectus projects as well as helping to develop prospectus-level projects for major modernizations or reinvestments to submit to the Central Office.*

# Federal Real Property Council
## Guidance for Improved Asset Management

### 2.4    Owner's Objectives

*(Agency name)* has established a set of qualitative owner's objectives specific to its portfolio. Quantitative owner's objectives are expressed in *(Agency name)'s* long-term outcome goals and performance targets discussed in Section 4. *(Agency Name)'s* qualitative owner's objectives include: *(Insert Agency's owner's objectives)*
*For example:*

- *Assets must support a current Federal mission need*
- *Assets must be economically sustainable*
- *Assets must meet serviceability standards and customer needs*
- *Physical condition will be maintained to reflect market standards*
- *Target reinvestment to performing assets*
- *Asset level business plans and strategies must be updated annually*

These Owner's Objectives are the foundation for developing a portfolio or asset level strategy. *(Agency Name)'s* asset management framework involves understanding and balancing customer needs/risks with market dynamics *(as applicable)* and the condition/performance of its assets.

### Section 3.    Planning and Acquisition of Real Property

During the acquisition phase, *(Agency name)* translates mission needs into discrete requirements, marshals the necessary resources and sees that the necessary real property assets are delivered.

*(Agency name)'s* acquisitions are driven by mission-driven requirements. When a requirement is received or developed, *(Agency name)* looks to use existing Government-owned assets first before seeking to add square footage to the federal inventory. If there are no suitable solutions, *(Agency name)* has three main alternatives - building a new Federal asset, buy an existing asset, or leasing a new asset from the private sector *(as applicable)*.

To determine the acquisition method, *(Agency name)* considers: How many assets are needed, how quickly the asset is needed, how long the asset is needed, and how specialized the asset is, or how complicated the build out is to determine the acquisition approach that is most appropriate. Each of these factors has a significant impact on the cost of alternatives and thus the feasibility of the project acquired either by construction, purchase, or leasing *(as appropriate)*.

### 3.1    Capital Plan for Major Projects

*(Briefly describe the funding process for the Agency's capital construction and leasing program)*. *(Agency name)* requires Congressional approval or direct appropriations for capital projects or leases over *(describe size or dollar threshold)*.

*(Agency name)'s (Agency's Real Property Asset Management Organization)* plays a key role in securing the necessary resources to maintain current real property assets, acquire new or replacement assets that meet the evolving needs of the agency, and preserving the historical and cultural assets placed in *(Agency name)'s* trust, *as applicable*. A copy of *(Agency name)'s prioritized capital plan for FY2005* can be found in <u>Attachment 4</u>. Components of *(Agency*

# Federal Real Property Council
## Guidance for Improved Asset Management

---

**Section 4.    Operations of Real Property**

---

The operations phase of *(Agency name)*'s real property assets involves making decisions regarding maintenance and reinvestment as well as monitoring administration of leases *(as applicable)* and servicing agency needs. Critical information is needed on all assets to support operational decision-making.

## 4.1    Inventory and Describe Assets

*(Describe the agency's inventory system and the key data fields that are housed within the inventory system. Also describe how the data fields in the inventory system relate to the guidance from the Federal Real Property Council's Inventory Working Group.) For example, (name of system) includes key fields on the number, size, location, use, type, occupants, and age of the assets and tracks all space and assignments in (Agency name)'s assets. It is an automated database that is tied into core systems (including the accounting system) that tracks payments to private sector landlords for leased locations and is the billing system for generating rent bills to tenant agencies at the building or lease level. (Name of system) contains all of the key data fields outlined by the Federal Real Property Council's Inventory Working Group (with the exception of ....) (Agency name) is working with the Council to ensure its data fields and naming conventions are in alignment with the common government-wide terminology under development.*

*(Briefly describe the agency's inventory.) For example, (Agency name)'s inventory consisted of (number of) assets with (number of) square feet or applicable unit of measurement. (Further characterize the agency's inventory.) For example, the inventory is split between government-owned properties and properties leased from the private sector. The owned inventory constitutes (percentage) of the total rentable square footage, but less than (percentage) of the locations in the portfolio.*

### 4.1.1    Historic Preservation Requirements

*(Briefly describe the agency's processes for addressing historic preservation requirements.) For example, To comply with the National Historic Preservation Act of 1966, as amended, and Executive Orders 11593, 13006, and 13287, (Agency name) has developed an agency order and electronic handbook laying out the historic preservation requirements and processes. (Further describe or refer to an agency document that describes compliance responsibilities in support of applicable laws and Executive Orders, defines professional standards required by employees responsible for agency's preservation actions, and outlines processes, standards and approaches for effectively integrating Federal stewardship goals into the agency's real property asset management activities.*

## 4.2    Asset Documentation

*(Briefly discuss how the agency documents the assets in its inventory) For example, (Agency Name) maintains key documentation for all real property assets in a file including a map, a copy of the title, a metes and bounds survey, a legal description of the property, documented environmental liabilities, historic significance, an Americans with Disabilities Act (ADA) survey,*

# Federal Real Property Council
## Guidance for Improved Asset Management

21. <u>All Other</u>: Sidewalks, parking areas, fences, and walking trails that cannot be readily classified under the above categories. Includes improvements to public domain lands, such as drainage, grading, and landscaping.

## 3.  Legal Interest

Definition:

1. Owned: The Federal Government has fee simple interest for the real property.
2. Leased: The rights to use the real property have been assigned to the Federal Government by a private entity or a non-federal government entity for a defined period of time in return for rental payments.
3. Otherwise Managed:
   A. State Government-Owned – A U.S. state government holds title to the real property but rights for use have been granted to a Federal Government entity in other than a leasehold arrangement.
   B. Foreign Government-Owned – A foreign government holds title to the real property but rights for use have been granted to a Federal Government entity in other than a leasehold arrangement.

## 4.  Status

Definition: Buildings, structures and land parcels will have one of the following attributes:

- Active:  Currently assigned a mission by the reporting agency.
- Inactive:  Not currently being used but may have a future need.  Includes real property in a caretaker status (closed pending disposal, for example facilities that are pending a BRAC action) and closed installations with no assigned current federal mission or function.
- Excess:  Formally identified as having no further program use of the property by the landholding agency.
- Outgranted/Outleased:  Use has been granted to another entity.

## 5.  Historical Status

Definition: Buildings and structures that have one of the following attributes:

1. National Historic Landmark (NHL);
2. National Register Listed (NRL);
3. National Register Eligible (NRE);
4. Non-contributing element of NHL/NRL district; or
5. Non Applicable (N/A).

## 6.  Reporting Agency

Definition:  Agency reporting the property to the Government Services Administration (GSA). (Use the Agency Bureau Code list maintained by GSA).

# Federal Real Property Council
## Guidance for Improved Asset Management

    4.   Roads/grounds expenses (includes grounds maintenance, landscaping and snow and ice removal from roads, piers and airfields).

## 14.    Main Location

Either of the following will be reported for the constructed asset or parcel of land:
    1.   Street address; or
    2.   Latitude and longitude (if no security concerns).

## 15.    Real Property Unique Identifier

Definition:  A code that is unique to an item of real property that will allow for linkages to other information systems.

The Real Property Unique Identifier is assigned by the Reporting Agency.

## 16.    City

## 17.    State

## 18.    Country

## 19.    County

## 20.    Congressional District

## 21.    ZIP Code

## 22.    Installation and Sub-Installation Identifier

Use existing structure identified in the *GSA Customer Guide to Reporting Real Property Inventory Information.*

Definitions:

    ***Headquarters Installations*** – Land, buildings, other structures, and facilities, or any combination of these.  Examples of installations are a national forest, national park, hydroelectric project, office building, warehouse building, border station, base, post, camp, or an unimproved site.

    ***Sub-Installation*** – Part of an installation identified by a different geographic location code than that of the headquarters installation.  An installation must be separated into

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

**FILED**

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

2006 JUN -6 PM 12: 31

CLERK U* *ISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

MICHAEL L. BUESGENS,

          **Plaintiff,**

-vs-

                                               **Case No. A-05-CA-243-SS**

JOHN W. SNOW, Secretary of the Treasury,

          **Defendant.**

---

## ORDER _DOCUMENT 44_
                                          _6/6/2006_

BE IT REMEMBERED on the **6**th day of June 2006 there was presented to the Court the

plaintiff's "Request for Stay of Scheduling Order" filed May 16, 2006, and thereafter, the Court

enters the following:

        IT IS ORDERED that the Request for Stay of Scheduling Order is DENIED. This

lawsuit was filed on April 5, 2005. The undersigned has a civil docket that averages

approximately three hundred civil cases pending at any given time. In addition, the

undersigned, like all judges in the Western District of Texas, has a substantial criminal

docket which is given priority over the civil docket. Fifteen to twenty civil cases are set for

trial approximately one year from the date that issue is joined by the parties, and it is rare that

that trial setting is continued for any reason. The only cases that are not tried within a year

of issue being joined are patents cases and generally they are tried between fourteen and

sixteen months from the date of the defendant's answer. Controlling the docket in this

manner is the only way to keep the Austin docket current. This lawsuit has been set for trial

for the week of December 2006, and time has been reserved for this and the other cases set

in December 2006. The case will be disposed of by trial in December 2006 unless otherwise

disposed of prior to that date.

     IT IS ORDERED that the Amended Scheduling Order executed on May 12, 2006,

remains in full force and effect.

SIGNED this the __6th__ day of June 2006.

UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

2006 JUN 16  AM 9: 45

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

MICHAEL L. BUESGENS,
                    **Plaintiff,**

-vs-                                                    **Case No.  A-05-CA-243-SS**

JOHN W. SNOW, Secretary of the Treasury,
                    **Defendant.**

_____

**ORDER**  *DOCUMENT 46*
*6/16/2006*

BE IT REMEMBERED on the _15th_ day of June 2006 the Court reviewed the file in the

above-styled cause, and specifically the "Request for Court Order" [#45] filed June 8, 2006, and

thereafter, enters the following:

IT IS ORDERED that the Request for Court Order is DENIED.  Mr. Buesgens filed

a twenty-five page, hand-written pleading full of items and editorials that make no sense and

the undersigned cannot understand what relief he is requesting.  Rule 8 of the Federal Rules

of Civil Procedure specify that any pleading for relief must be a "short and plain statement

of the claim showing that the pleader is entitled to relief."  The "Request for Court Order"

is not short, is not simple, is not plain, although the "conclusion" is that the plaintiff

"requests an administrative review of the foregoing court actions" and in the pleading

specifies a multitude of cases that have no bearing on the issues to be tried in this lawsuit.

The plaintiff also requests "a fair and impartial trial based on merit, statute and rules of

procedure."  The plaintiff's pleadings must also be appropriately within the Rules of Federal

Procedure.

SIGNED this the ___*15*___ day of June 2006.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

2006 JUN 30 AM 8: 38

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

MICHAEL L. BUESGENS,

**Plaintiff,**

-vs-

Case No. A-05-CA-243-SS

JOHN W. SNOW, Secretary of the Treasury,

**Defendant.**

<u>**ORDER**</u>

DOCUMENT 49
6/30/2006

BE IT REMEMBERED on June 15, 2006, the Court entered its order requiring the plaintiff

Michael L. Buesgens to comply with Rule 8 of the Federal Rules of Civil Procedure in that his

pleadings must be a short and plain statement of each claim to be litigated in this case and the relief

for which he seeks. Again, Mr. Buesgens' response complained about the legal system, about

lawyers, and his own health and problems with sarcastic and slandering statements. He again

requests appointment of counsel, and this request has already been denied and the denial affirmed

by the United States Court of Appeals for the Fifth Circuit. He then requests the attorneys

representing the defendant in this case review certain legal authorities and then requests

compensation in various ways. The Court now determines that it will not be possible for Mr.

Buesgens to file a pleading in this case disassociating the issues in his other legal cases and problems

and succinctly plead the specific claims he addresses against John W. Snow, Secretary of the

Treasury. Therefore, the Court has undertaken to review the voluminous pleadings of Mr. Buesgens

and enters the following:

On November of 2002, it was proposed by the Department of Treasury to remove Mr.

Buesgens from the service based on specific reasons and specifications. The proposal was in writing

and submitted to Mr. Buesgens. Mr. Buesgens then appealed that decision. On May 14, 2003, an official with the Department of Treasury issued a written declaration that the removal from service was sustained for the reasons made in the proposal. Subsequently, Mr. Buesgens appealed that determination. On January 28, 2004, an administrative judge issued its opinions in TD No. 03-2024, 03-2339 and 03-2446, and EOC No. 360-2003-08286X, rendering a final order on the appeal and complaints made by Mr. Buesgens against the Department of the Treasury. On March 1, 2004, a final order was issued by the Department of Treasury finding against Mr. Buesgens on all his complaints and appeals and sustained the termination of employment. Mr. Buesgens appealed that order. Thereafter, the United States Equal Employment Opportunity Commission issued its decision on December 29, 2004, after its investigation, holding the record did not establish any discrimination by the Department of the Treasury against Mr. Buesgens. He then appealed that determination. The United State Equal Employment Opportunity Commission on February 18, 2005, issued its final ruling and denial against Mr. Buesgens. On April 5, 2005, Mr. Buesgens timely filed this lawsuit against the Department of Treasury regarding the Equal Employment Opportunity Commission's determinations. This lawsuit, his appeal, and the trial in this case will be limited to those issues and those issues only.

The amended scheduling order entered in this case on May 12, 2006, will be followed by Mr. Buesgens and counsel for the defendants.

SIGNED this the _30_ day of June 2006.

_Bennyparker_

UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2006 JUL 11 PM 4: 13

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

MICHAEL L. BUESGENS,
                    **Plaintiff,**

-vs-                                                    Case No.  A-05-CA-243-SS

JOHN W. SNOW, Secretary of the Treasury,
                    **Defendant.**

_____

**ORDER**   DOCUMENT 51
7/11/2006

BE IT REMEMBERED on the *11* day of July 2006 the Court reviewed the Motion for

Continuance [#50] filed by the plaintiff Michael Buesgens in the above-captioned matter, and

thereafter, enters the following:

IT IS ORDERED that the Motion for Continuance is DENIED.  The Motion for

Continuance contains no relevant basis to postpone the trial in this case.  On June 30, 2006,

the Court entered its order setting forth issues that are pending in this particular lawsuit and

the issues that will be tried in this lawsuit.  The Motion for Continuance is based on

allegations that occurred subsequent in time to the discharge of employment of Michael L.

Buesgens by the Department of Treasury.

SIGNED this the *11* day of July 2006.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE WESTERN DISTRICT OF TEXAS 2006 SEP -8 AM 9: 54
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

MICHAEL L. BUESGENS,
        **Plaintiff,**

-vs-
        Case No.  A-05-CA-243-SS

JOHN W. SNOW, Secretary of the Treasury,
        **Defendant.**

_____

**O R D E R**    *DOCUMENT 74*
*9/8/2006*

BE IT REMEMBERED on the 7 day of September 2006 the Court reviewed the file in

the above-styled cause, and specifically the "Plaintiff's Motion for Judicial Notice of Adjudicative

and Verifiable Facts Number 2" [#63 filed August 17, 2006], and thereafter, enters the following:

        IT IS ORDERED that the motion is GRANTED in part and DENIED in part.  The

Court will certainly take judicial notice of all filings in cause number A-05-CV-243.

However without certified copies of the court filings in A-05-CV-02334-RCC in the District

of Columbia, the Court declines to take judicial notice of the same.  All other elements are

not matters of which judicial notice may be taken, and these factual findings must be proved

as any other issue by evidence in the trial.

SIGNED this the 7 day of September 2006.

_____
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED

2006 OCT 12 AM 7: 56

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

MICHAEL L. BUESGENS,

        **Plaintiff,**

-vs-

        Case No. A-05-CA-243-SS

JOHN W. SNOW, Secretary, Department of
Treasury,

        **Defendant.**

---

**O R D E R**

DOCUMENT 87
10/12/2006

BE IT REMEMBERED on the ___11th___ day of October 2006 the Court reviewed the file in the

above-styled cause, and specifically the plaintiff Michael L. Buesgens' "Motion for Cross-Claim"

and to join as a parties to this lawsuit Administrative Judge Robert L. Powell of the Equal

Employment Opportunity Commission; Supervisor Administrative Judge Katye Duderstadt; counsel

Michael Salyards of the Department of Treasury; the Chair of the Equal Employment Opportunity

Commission in Washington, D.C., Naomi Earp; the Equal Employment Opportunity Commission

in Washington, D.C., and after due consideration of the same, the Court enters the following:

    The motion for cross-claim and to add these party defendants is DENIED.

    SIGNED this the ___11th___ day of October 2006.

                _Sam Sparks_
                UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2006 OCT 25 AM 11: 21

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

MICHAEL L. BUESGENS,

Plaintiff,

-vs-                                                    Case No.  A-05-CA-243-SS

JOHN W. SNOW, Secretary of the Treasury,
Defendant.

_____

**ORDER**  DOCUMENT 95
10/25/2006

BE IT REMEMBERED on the 23rd day of October 2006, the Court held a hearing in the

above-styled cause, and all parties appeared either in person or through counsel. Before the Court

were the following pending motions, Plaintiff's Motion for Leave to Supplement Amended

Complaint [#20], Plaintiff's Motion to Supplement the Record with Cause of Action and Jurisdiction

Clarifications [#30], Plaintiff's Motion to Supplement the Record with Additional Complaint [#31],

Plaintiff's Motion for Discovery and to Compel [#32], Plaintiff's Motion that the Court not Limit

Plaintiff to 10 Pages [#69], Plaintiff's Motion for Relief on U.S. Attorney R. Barry Robinson and

Objections to Witness/Exhibit List [#73], the EEOC's Motion to Quash Subpoena of Judge Powell

[#90], the EEOC's Motion to Quash and Motion for Protection Regarding Plaintiff's Motion for

Discovery and Disclosure [#91], and Plaintiff's Motion to Stay [#93].  Having considered the

motions and the responses where present, the arguments at the hearing, the relevant law, and the case

file as a whole, the Court now enters the following orders.

IT IS ORDERED that Plaintiff's Motion for Leave to Supplement Amended

Complaint [#20] and Plaintiff's Motion to Supplement the Record with Additional

Complaint [#31] are DENIED. Under Federal Rule of Civil Procedure 15(a) "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Before filing these two motions, Plaintiff had amended his complaint as a matter of course on May 31, 2005 [#17]. The Court denies both of these motions to amend because the Court finds that justice does not require amendment here; the claims Plaintiff seeks to add through these amendments are either duplicative of claims already asserted in this lawsuit or are patently frivolous.

IT IS FURTHER ORDERED that Plaintiff's Motion to Supplement the Record with Cause of Action and Jurisdiction Clarifications [#30] is GRANTED. The causes of action presently pending before the Court and set for trial in December 2006 consist of Plaintiff's Title VII retaliation claim, Rehabilitation Act Claim, and claims regarding reasonable accommodation, hostile work environment, and retaliation stemming from his EEOC complaints filed on October 18, 2002, April 28, 2003, and July 1, 2003.

IT IS FURTHER ORDERED that Plaintiff's Motion for Discovery and to Compel [#32] is DENIED. This Court cannot compel production of records from outside of this district and Plaintiff seeks records from Federal Occupational Health Services in Bethesda, Maryland as well as two doctors located in Bethesda, Maryland. Plaintiff's motion is also defective under Local Rule CV-7(h) in that it

states "Buesgens made no attempt to contact opposing counsel" before filing the motion.

IT IS FURTHER ORDERED that Plaintiff's Motion that the Court not Limit Plaintiff to 10 Pages [#69] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Relief on U.S. Attorney R. Barry Robinson and Objections to Witness/Exhibit List [#73] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Stay [#93] is DENIED. Whether or not Donald R. Tawney, Plaintiff's supervisor and manager at the I.R.S. and a potential witness in this case, has filed for bankruptcy has no effect whatsoever on the progress of this case.

IT IS FURTHER ORDERED that Movant EEOC's Motion to Quash Subpoena of Judge Powell [#90] is GRANTED. Judge Powell may not be asked to testify about his rulings. *See Robinson v. Comm'r. of Internal Revenue*, 70 F.3d 34 (5th Cir. 1995) (affirming trial court's quashing of a subpoena seeking testimony from a state court judge regarding "his understanding and knowledge of the final judgment and what went into its determination" where "the whole purpose of the subpoena was to delve into the judge's mental processes." *Id.* at 38. The motion to quash is granted on a number of independent bases: (1) because Plaintiff may not question a judge about his mental processes in reaching a decision; (2) because the information Plaintiff seeks is covered by the deliberative thought process privilege; and (3) because compliance with the subpoena would be unduly burdensome.

IT IS FURTHER ORDERED that Movant EEOC's Motion to Quash and Motion for Protection Regarding Plaintiff's Motion for Discovery and Disclosure [#91] is GRANTED. Plaintiff is not entitled to receive information from other individuals' case files. The EEOC's motion for a protective order from further requests for information and/or documents is also granted.

IT IS FURTHER ORDERED that the EEOC shall file by November 3, 2006, an affidavit from an EEOC Administrator in San Antonio, Texas, certifying that a complete copy of the case record, including all exhibits and transcripts has been provided to Plaintiff, as well as any correspondence between Plaintiff and the EEOC subject to a subpoena.

SIGNED this the 24ᵗʰ day of October 2006.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

2006 JUL 18 PM 2: 43

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | |
|---|---|
| **MICHAEL L. BUESGENS,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **Civil Action No. A-05-CA-243-SS** |
| § | |
| **JOHN W. SNOW, Secretary of the Treasury,** § | |
| § | DOCUMENT 52 |
| **Defendant.** § | 7/18/2006 |

**DEFENDANT'S DESIGNATION OF POTENTIAL WITNESSES
AND PROPOSED EXHIBITS**

TO THE HONORABLE SAM SPARKS, UNITED STATES DISTRICT JUDGE:

NOW COMES Defendant John W. Snow, Secretary, U.S. Department of the Treasury, by

and through the U.S. Attorney for the Western District of Texas, and files this Designation of

Potential Witnesses and Trial Exhibits pursuant to the Court's Scheduling Order of September 1,

2005. In support thereof, Defendant respectfully offers the following:

## I. POTENTIAL FACT WITNESSES

A.    Plaintiff, Michael BUESGENS

B.    Naomi CRAIG, Human Resources Specialist, Austin Payroll Center, IRS Agency
Wide Shared Services

C.    Melinda ESTRADA, Lead Equal Employment Specialist, EEO & Diversity Field
Services, IRS Agency Wide Shared Services

D.    Anna MEDLOCK, Program Manager with the Accounts Management, IRS Wage &
Investment Division

E.    Ernest OJEDA, Human Resources Specialist, Austin Employment Branch, IRS
Employment Operations

F.    Martha SCHANHALS, Supervisory Contact Representative of Accounts
Management, IRS Wage & Investment Division

*1:05CV00243SS*

G.   Nancy SESSION (formerly Spotser), Supervisory Program Analyst of Accounts
     Management, IRS Wage & Investment Division

H.   Donald TAWNEY, Supervisory Contact Representative of Accounts Management,
     IRS Wage & Investment Division   *06-11164 - 07-10008*

I.   Margaret WAITES, Reasonable Accommodation Coordinator, EEO & Diversity
     Field Services, IRS Agency Wide Shared Services
     *REASONABLE REASSIGNMENT*

J.   Charles WASHINGTON, Jr., Field Director of Accounts Management, IRS Wage
     & Investment Division

Defendant reserves the right to supplement the identity of other witnesses who have relevant

knowledge as their identities become available through discovery.

## II. POTENTIAL TRIAL EXHIBITS

Documents contained in the administrative case files including, but not limited to the

following:   *EEOC NO. 360-2003-8286X*

A.   Investigative File #1; Case Number 03-2024

B.   Investigative File #2; Case Number 03-2339

C.   Investigative File #3; Case Number 03-2446

D.   EEOC Hearing Transcript

E.   Bench Decision

F.   Final Agency Decision

*REASSIGNMENT
DENIAL
WHERE AND WHAT
IS
THE
INVESTIGATIVE FILE?
03-2339*

*TELEPHONE HEARING
EEOC JUDGE
ROBERT LYNN POWELL
SAN ANTONIO, TEXAS
12/16/2003*

Respectfully submitted,

JOHNNY SUTTON
UNITED STATES ATTORNEY

By: _R. B. Robinson_ _____

R. BARRY ROBINSON
Assistant United States Attorney
Arkansas Bar No. 85206
816 Congress Avenue, Suite 1000
Austin, Texas 78701
(512) 916-5858 / 916-5854 (fax)

ATTORNEYS FOR DEFENDANT,
JOHN W. SNOW

## CERTIFICATE OF SERVICE

I, R. BARRY ROBINSON, do hereby certify that a true and correct copy of the above and

foregoing **Defendant's Designations of Potential Witnesses and Proposed Exhibits**  has been

served to Plaintiff in accordance with the FEDERAL RULES OF CIVIL PROCEDURE, on this the _18th_

day of July 2006, addressed to:     *JULY 18, 2006*

| | |
|---|---|
| Michael L. Buesgens | _____ Via Fax |
| 500 E. Stassney, Apt. 1023 | _____ Hand Delivery |
| Austin, TX 78745 | _✓_ CM / RRR |
| *[Pro se Plaintiff]* | _____ First Class U.S. Mail |

_R. B. Robinson_ _____

R. BARRY ROBINSON
Assistant United States Attorney

# EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL L. BUESGENS,**<br>**Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | Civil Action No. A-05-CA-243-SS |
| | § | |
| **HENRY PAULSON,** | § | |
| **Secretary, Department of the Treasury,** | § | |
| **Defendant.** | § | |

*(handwritten:) 1:05CV00243 SS DOCUMENT 86-2 FILED: 10/10/2006*

## DECLARATION OF MICHAEL SALYARDS

*(handwritten:) R. BARRY ROBINSON – AUSA*

I, Michael Salyards, declare from personal knowledge, in lieu of an affidavit, under 28 U.S.C. § 1746 as follows:

1. I am an Attorney with the General Legal Services, U.S. Department of Treasury, Internal Revenue Service assigned to work this case. I have personal knowledge of this case because I handled it during the administrative phase before the Equal Employment Opportunity Commission.

2. I declare under the penalty of perjury that the documents listed on Defendant's exhibit list, other than the non-EEO Declarations of Donald Tawney, Melissa Gates, Mary Carroll, and Anna Medlock, (Exhibits 15, 26 - 28) that were filed in support of Defendant's Motion for Summary Judgment are true and correct copies of documents contained within the original administrative record, as well as documents contained within Mr. Buesgens' personnel files maintained by the IRS to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED ON** this 10th day of October 2006.

Michael Salyards, Senior Counsel
General Legal Services
U.S. Department of Treasury
Internal Revenue Service
4050 Alpha Rd., 14th Floor
Dallas, TX 75244

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

MICHAEL L. BUESGENS,                    §
                                        §
                    *Plaintiff*         §
                                        §
v.                                      §        Civil Action No. 05-CV-00243-SS
                                        §
JOHN W. SNOW,                           §
                                        §
                    *Defendant*         §

<u>Declaration of Jennifer Randall</u>



I, Jennifer Randall, state the following:

1. My name is Jennifer Randall. I am over eighteen years of age and fully competent and able to testify in this proceeding. I have personal knowledge of the facts set forth below.

2. I am a Trial Attorney in the San Antonio Field Office of the United States Equal Employment Opportunity Commission ("EEOC").

3. I received documents from Robert Barnhart, Director of the Compliance and Control Division of the EEOC's Office of Federal Operations, on October 6, 2006 and October 16, 2006. These documents included copies of the hearing record and the hearing transcript. I produced legible and complete copies of these documents, Bates Stamped EEOC 1 through EEOC 686 and EEOC 1269 through EEOC 3094, to Plaintiff on October 13, 2006 and October 20, 2006, respectively. *See* Attachment A.

4. I also received documents from Katye Duderstadt, Lead Administrative Judge for the EEOC's San Antonio Field Office. I produced legible and complete copies of these documents,

Case 1:05-cv-00243-SS     Document 97-4     Filed 10/27/2006     Page 3 of 8

Bates Stamped EEOC 687 through EEOC 1268, to Plaintiff on October 13, 2006.  *See*

Attachment B.

I swear under penalty of perjury that the foregoing testimony is true and correct.

Dated October 27, 2006

*Jennif Randall*
JENNIFER RANDALL

# Attachment A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Antonio Field Office**

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
(210) 281-7600
TTY (210) 281-7610
FAX (210) 281-7669

October 10, 2006

**Via Certified Mail – 7004 2510 0001 5778 3116**

Michael L. Buesgens
3112 Windsor Road, #A322
Austin, Texas 78703

RE:  *Buesgens v. Snow*
     Civil Action No. A-05-00243-SS       *EEO # 03-2339*
                                          *EEOC # 360-2003-8286X*

Dear Mr. Buesgens:

Enclosed, please find the documents Bates Stamped EEOC 1 through EEOC 686.

Sincerely,

Jennifer Randall
Jennifer Randall
Trial Attorney

CC:      R. Barry Robinson
         Assistant U.S. Attorney
         816 Congress Avenue, Suite 1000
         Austin, Texas 78701

         **Via Certified Mail – 7004 2510 0001 5778 3123**



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## San Antonio Field Office

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
(210) 281-7600
TTY (210) 281-7610
FAX (210) 281-7669

October 20, 2006

**Via Certified Mail – *7004-2510-0001-5778-2799***

Michael L. Buesgens
3112 Windsor Road, #A322
Austin, Texas 78703

RE:   *Buesgens v. Snow*
Civil Action No. A-05-00243-SS

Dear Mr. Buesgens:

Enclosed, please find the documents Bates Stamped EEOC 1269 through EEOC 3094.

Sincerely,

Jennifer Randall
Trial Attorney


CC:     R. Barry Robinson
Assistant U.S. Attorney
816 Congress Avenue, Suite 1000
Austin, Texas 78701

**Via Certified Mail – *7004-2510-0001-5778-2805***

# Attachment B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Antonio Field Office**

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
(210) 281-7600
TTY (210) 281-7610
FAX (210) 281-7669

October 13, 2006

**Via Certified Mail – 7003 0500 0004 8093 2342**

Michael L. Buesgens
3112 Windsor Road, #A322
Austin, Texas 78703

RE:     *Buesgens v. Snow*
        Civil Action No. A-05-00243-SS

Dear Mr. Buesgens:

        During our phone conversation on October 12, 2006, you informed me that you wanted copies of materials that you sent to the San Antonio Hearings Unit during 2005 and 2006, after Judge Powell issued an order closing your case. As I informed you, the San Antonio Hearings Unit is not required to maintain a record of materials received from a complainant after a case has been closed. The San Antonio Hearings Unit also does not have a regular practice of storing or compiling such information. However, in a good faith effort to comply with your request, I am sending you all such materials that are presently in the San Antonio Hearings Unit's possession, and that were received prior to your subpoena of Judge Powell on September 18, 2006. These materials are not part of the EEOC's official record for your case. These documents, which are enclosed, have been Bates Stamped EEOC 687 through EEOC 1268.

                        Sincerely,

                        *Jennifer Randall*
                        Jennifer Randall
                        Trial Attorney

CC:     R. Barry Robinson
        Assistant U.S. Attorney
        816 Congress Avenue, Suite 1000
        Austin, Texas 78701

        **Via Certified Mail – 7003 0500 0004 8093 2359**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MICHAEL L. BUESGENS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 05-CV-00243-SS** |
| | § | |
| **JOHN W. SNOW,** | § | DOCUMENT 97 |
| | § | 10/27/2006 |
| *Defendant.* | § | |

### ADVISORY TO THE COURT - AFFIDAVITS

COMES NOW United States Equal Employment Opportunity Commission ("EEOC")
and files this Advisory to the Court- Affidavits. The EEOC would show the Court the following:

1.  On October 23, 2006, the Court held a hearing regarding all pending matters in
    the above-referenced case. One of the issues discussed during the hearing was the
    EEOC's Motion to Quash Plaintiff's Subpoena of EEOC Administrative Judge
    Robert Powell.

2.  During the hearing, Plaintiff represented that the EEOC had not provided him
    with a copy of his EEOC case record. The Court ordered the EEOC to provide an
    affidavit from its custodian of records, representing that Plaintiff had been
    provided with a complete copy of his case record, and with copies of any
    correspondence between Plaintiff and the EEOC subject to a subpoena. The
    requested affidavits are attached as Exhibits 1, 2 and 3. The EEOC has provided
    Plaintiff with a complete copy of the case record, including all exhibits and
    transcripts, as well as any correspondence between Plaintiff and the EEOC subject
    to a subpoena.

3.      The EEOC notes that, in spite of Plaintiff's assertion that the EEOC has not

provided him with a copy of his case record, Plaintiff has been attaching

documents produced to him by the EEOC, and containing the EEOC Bates Stamp,

as exhibits to his filings.  *See e.g.* Plaintiff's Cross Motion for Summary

Judgment, Docket at 89, First Set of Exhibits, Pages 22-25, 28-35, 37-43.

Respectfully submitted,

JUDITH G. TAYLOR
Supervisory Trial Attorney
Texas State Bar No. 19708300


_/s/_____
JENNIFER RANDALL
Trial Attorney
Colorado State Bar No. 033240

EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION
San Antonio Field Office
5410 Fredericksburg Rd., Ste. 200
San Antonio, Texas 78229-3555
Telephone: (210) 281-7636
Facsimile: (210) 281-7669

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered, as designated below, on this the 27th day of October 2006.

| | |
|---|---|
| Michael L. Buesgens | ☐ Hand Delivery |
| 3112 Windsor Rd. #1322 | ☑ Federal Express |
| Austin, Texas 78703 | ☐ Certified Mail, Return Receipt Requested |
| | |
| R. Barry Robinson | ☐ Hand Delivery |
| Assistant U.S. Attorney | ☐ U.S. First Class Mail, Postage Prepaid |
| 816 Congress Avenue Suite 1000 | ☐ Certified Mail, Return Receipt Requested |
| Austin, Texas 78701 | ☑ Electronic Filing |

_/s/_
JENNIFER RANDALL

*[handwritten:]* DENVER, COLORADO EEOC ATTORNEY COMES TO TEXAS FOR 1:05CV00243SS RANDALL IS NOT AUTHORIZED TO PRACTICE LAW IN TEXAS

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

MICHAEL L. BUESGENS,      §
                              §
             *Plaintiff*     §
                              §
v.                           §      Civil Action No. 05-CV-00243-SS
                              §
JOHN W. SNOW,         §
                              §
           *Defendant*    §

DOCUMENT 97-2
10/27/2006

## Declaration of Katye Duderstadt

I, KATYE DUDERSTADT, state the following:

1. My name is Katye Duderstadt. I am over eighteen years of age and fully competent and able to testify in this proceeding. I have personal knowledge of the facts set forth below.

2. I am the Lead Administrative Judge for the San Antonio Field Office of the United States Equal Employment Opportunity Commission ("EEOC"). Prior to January 1, 2006, our office was the San Antonio District Office of the EEOC ("SADO") and I was the Supervisory Administrative Judge.

3. I am the official custodian of records for the San Antonio Hearings Unit. Pursuant to the United States Equal Employment Opportunity Commission Handbook for Administrative Judges ("Administrative Judge Handbook"), the San Antonio Hearings Unit ("Hearings Unit") "must retain a copy of all documents issued to the parties for a minimum of two years from the date the Office closes the case, but does not need to retain the hearing transcript or hearing exhibits." *See attached.* The Hearings Unit is not required to retain a copy of the hearing exhibits or the hearing transcript. Instead, these materials are sent to the agency/employer and complainant or complainant's representative when the decision is issued and the case is closed.

4.  In the present case, the Hearings Unit retained copies of all documents issued to the parties in the proceeding *Michael L. Buesgens v. Internal Revenue Service*, EEOC Case No. 360-2003-0826X, as required by the Administrative Judge Handbook.  In compliance with the Administrative Judge Handbook, these records were destroyed two years after Mr. Buesgens' hearing.  The Hearings Unit did not, and was not required to, retain copies of the hearing transcript or hearing exhibits.

5.  After Mr. Buesgens' case was closed, Mr. Buesgens sent various documents to the Hearings Unit.

6.  The Hearings Unit is not required to maintain a record of materials received from a complainant after a case has been closed.  The San Antonio Hearings Unit also does not have a regular practice of storing or compiling such information.   However, I personally maintained copies of the documents received from Mr. Buesgens, as well as copies of my replies to his correspondence.   I turned all of these materials over to EEOC Trial Attorney Jennifer Randall after Plaintiff subpoenaed EEOC Administrative Judge Robert Powell in September 2006.

I swear under penalty of perjury that the foregoing testimony is true and correct.

Dated October 23, 2006

Katye D. Duderstadt
KATYE DUDERSTADT

SEE ROBERT B. HARWIN RECORDS AT
EEOC SAN ANTONIO, TX
EEOC ATTORNEY HARWIN IS RETIRED NOW.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

MICHAEL L. BUESGENS,                          §
                                              §
        *Plaintiff,*                          §
                                              §
v.                                            §        Civil Action No. 05-CV-00243-SS
                                              §
JOHN W. SNOW,                                 §
                                              §
        *Defendant.*                          §

## DECLARATION OF ROBERT BARNHART

I, Robert Barnhart, do hereby declare the following in lieu of an affidavit as permitted under 28 U.S.C. § 1746.

1.  I am employed by the Equal Employment Opportunity Commission (EEOC) Office of Federal Operations (OFO) as Director of the Compliance and Control Division, in Washington, D.C. I have served in this position since September 1999. I have been an employee of the EEOC since August 1987.

2.  As Director, I am one of the custodians of records of the OFO EEOC appellate records and files.

3.  These files are maintained by the EEOC in the regular course of business. They are composed of documents originated or secured in the course of business by or from individuals with knowledge or from individuals transmitted by persons with knowledge at or near the time of the events recorded. It is the regular practice of the EEOC to create such files, and these files were created as part of that practice and have been and continue to be maintained in the normal course of business.

4. As part of my duties, I responded to a request from Jennifer Randall, Trial Attorney in the EEOC's San Antonio Field Office, to provide a copy of the documents contained in the appeal file developed for Michael Buesgens v. Department of the Treasury, EEOC Appeal No. 01A44842 and EEOC Request No. 05A50440.

5. By email dated October 6, 2006, I forwarded digital copies of part of the appellate record developed for EEOC Appeal No. 01A44842. I informed Ms. Randall that the additional contents of the appellate file needed to be retrieved from the Federal Records Center. By email dated October 16, 2006, I forwarded copies of the additional record developed for EEOC Appeal No. 01A44842 that were retrieved from the Federal Records Center. By separate email dated October 6, 2006, I forwarded a complete digital copy of the record developed in connection with the request for reconsideration filed in EEOC Request No. 05A50440. I declare that the digital records forwarded to Ms. Randall were true and correct copies of the documents contained in the appellate files for EEOC Appeal No. 01A44842 and EEOC Request No. 05A50440. All documents pertaining to EEOC Hearing No. 360-2003-08286 which were forwarded to OFO were contained in EEOC Appeal No. 01A44842 and EEOC Request No. 05A50440.

I declare under penalty of perjury that the foregoing is true and correct and based on my personal knowledge. Executed on the 26th day of October 2006.

Robert Barnhart
Director, Compliance and Control Division
Equal Employment Opportunity
Commission

SEE ELIZABETH P. CALDWELL RECORDS
AT EEOC - OFFICE OF FEDERAL OPERATIONS
COMPLIANCE AND CONTROL
CALDWELL IS RETIRED NOW

# EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| *MICHAEL L. BUESGENS,* | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. A-05-CA-243-SS |
| | § | |
| *JOHN W. SNOW,* | § | |
| *Secretary, Department of the Treasury,* | § | |
| **Defendant.** | § | |

## DECLARATION OF DONALD TAWNEY

    I, Donald Tawney, declare from personal knowledge, in lieu of an Affidavit, under 28 U.S.C. § 1746 as follows.

1.    I have read the Complaint filed by Michael Buesgens and respond as follows. I have been employed by the Internal Revenue Service since 1984 and have been a manager since 1992. Since 2001 I have been a GS-0962-11, Supervisory Contact Representative with the Internal Revenue Service, Austin, Texas. My duties and responsibilities include overseeing the distribution and processing of adjustments work and toll-free activities.

2.    I have no personal knowledge of Michael Buesgens allegations of discrimination or retaliation regarding his loss of 71 hours of annual leave because I was not his supervisor in 2002.

3.    I became Michael Buesgens' direct (first-line) supervisor in approximately January 15, 2003, when he returned to work following his furlough in October 2002. At that time, Anna Medlock, Chief of Department Four (4) was my direct supervisor.

**Reasonable Request for Accommodation**

4.    I first became aware of Michael Buesgens medical condition and request for reasonable accommodation when I became his supervisor in January 2003. At that time, Mr. Buesgens asked me about the status of his reasonable accommodation request. He stated his request was not to be on the Toll Free line answering calls from taxpayers. I met with Mr. Buesgens' previous supervisor, Martha Schanhals, who told me that Mr. Buesgens' doctor, David G. Jones, M.D., had provided her with information that he was treating Mr. Buesgens for depression, anxiety, and bipolar condition and requested that he be relieved of telephone duty until further notice. Ms. Schanhals provided me with three letters from Dr. Jones that are discussed below, and her August 28, 2002, memorandum to Mr. Buesgens requesting additional information.

5.   On May 14, 2002, Dr. Jones requested that Mr. Buesgens be taken off of telephone duty for a period of 30 days. A true and accurate copy of Dr. Jones' May 14, 2002 request is at attachment 1. On June 21, 2002, Dr. Jones requested that Mr. Buesgens be relieved of telephone duty for an additional sixty (60) days. A true and accurate copy of Dr. Jones' June 21, 2002, letter is at attachment 2. On August 28, 2002, Dr. Jones recommended that Mr. Buesgens continue with his clerical duties, but not talk on the telephone until further notice. A true and accurate copy of Dr. Jones' August 28, 2002 request is at attachment 3.

6.   Because it appeared that Mr. Buesgens' condition may be permanent, in August 2002, he was asked to provide a physician's statement and additional medical documentation. A true and accurate copy of the August 28, 2002 request is at attachment 4.

7.   In January 2003, when I spoke with Ms. Schanhals regarding Mr. Buesgens' request for reasonable accommodation, she informed me that Mr. Buesgens had not yet provided the information she requested on August 28, 2002. I spoke with Mr. Buesgens and told him that the information from his doctor had not been received. On that same day Ms. Donna Lynn from Dr. Jones' office contacted me requesting my fax number which I gave her. Ms. Lynn told me that she had faxed the medical information on September 1, 2002, to another fax number.

8.   I told Mr. Buesgens that he would not be required to work on the telephones until I received an assessment from the Federal Occupational Health Service (FOHS) physician. On January 24, 2003, Mr. Buesgens provided me with an executed medical information release that I forwarded to our Reasonable Accommodation coordinator, Margaret Waites. I told Ms. Waites that Mr. Buesgens would not be required to answer Toll-Free calls pending the assessment from the FOHS physician. A true and accurate copy of the medical release is at attachment 5. Additionally, a true and accurate copy of my email to Ms. Waites is at attachment 6.

9.   On February 26, 2003, I notified Mr. Buesgens in writing that we would attempt to find a position that would accommodate him. A true and accurate copy of my February 26, 2003 memorandum is at attachment 7. In this memorandum, I explained to Mr. Buesgens that he would be allowed to continue to work under the Contact Representative job series without Toll-Free telephone duties until such time as a determination could be made regarding a reassignment or until March 21, 2003, whichever was earlier.

10.  I also explained to Mr. Buesgens that Management was currently soliciting assistance from the heads of office in the Austin commuting area to locate a vacant position that does not require telephone duties and is commensurate with his knowledge, skills and current grade or lower. I specifically explained to him of the possibility that there may be no vacant positions available that comply with his work restrictions at his current grade level.

11. Lastly, I explained to Mr. Buesgens that restructuring his Contact Representative position to eliminate Toll-Free telephone duty cannot be accomplished because it is an essential component of the position. The applicable Standard Position Description (SPD) number 92408 states: "This position covers work performed on the Customer Service Toll-Free system used by the public to resolve issues and obtain information about tax administration." Under 'Major Duties' SPD 92408 states: "Completes contacts, i.e., conducts personal or telephone interviews with a wide range of individuals . . . ." A true and accurate copy of the SPD 92408 is at attachment 8.

12. When I presented this February 26, 2003 memorandum to Mr. Buesgens he non-concurred with the accommodations provided.

13. Management sent a request to all heads of office on February 28, 2003 and sent a follow-up request on March 25, 2003 to those offices that had not responded. A true and accurate copy of the request is at attachment 9. No positions were found. On April 9, 2003, Mr. Buesgens was offered the only position available at that time, GS-303, Grade 4, Step 10 Clerk in the Adjustments Control unit. Mr. Buesgens did not accept this position and he voluntarily wrote in the comments section "I will contact my doctor and request an appointment to see if I can get a medical release for phone duties." A true and accurate copy is at attachment 10.

14. By letter dated May 7, 2003, from Federal Occupational Health Services doctor James W. Allen, M.D., Mr. Buesgens was released to partial telephone duty. Dr. Allen, after talking with Dr. Jones, viewed Mr. Buesgens ability to return to full-time telephone duty as limited. Dr. Allen concurred with a three-month part-time, four hours per day return to telephone duty. He also suggested that Mr. Buesgens be referred to stress management classes offered through the Employee Assistance Program. A true and accurate copy of this letter is at attachment 11.

15. On June 25, 2003, following receipt of the letter from Dr. Allen, I notified Mr. Buesgens that the Reasonable Accommodation process was not applicable to him because his condition did not involve a permanent disability and notified him that Management would temporarily accommodate his concerns by limiting his time on the Toll-Free lines to four (4) hours per day until September 25, 2003. After September 25, 2003, all limitations regarding his time on Toll-Free lines would be removed. A true and accurate copy of my memorandum is at attachment 12.

16. On June 27, 2003, after consulting with Ms. Waites, I rescinded my June 25, 2003 memorandum and notified Mr. Buesgens that in order to resolve his reasonable accommodation request, the agency offered him the GS-4, Step 10 Adjustments Control Unit clerk position. I also reiterated that I would temporarily accommodate his concerns by limiting his time on the Toll-Free lines to four (4) hours per day until September 25, 2003. After September 25, 2003, all limitations regarding his time on Toll-Free lines would be removed. A true and accurate copy of my memorandum is at attachment 13.

17.    Mr. Buesgens was furloughed in October 2003 and returned to work in January 2004. I
       was not his supervisor in 2004.

**Written Counseling/Hostile Work Environment Claims**

18.    On May 15, 2003, three employees who work with Mr. Buesgens told me that they had
       overheard conversations between Mr. Buesgens and customers, and they felt he was not
       acting professionally toward the customers. I then discussed the issue with Mr. Buesgens.
       He provided me with the telephone numbers of the customers he contacted that day, and I
       told him that I would be contacting the customers to confirm the quality of his service.
       Based on a conversation with a customer whom I was able to contact, I felt counseling
       was indicated. I drafted a "performance feedback" and discussed it with Mr. Buesgens.
       He read and initialed the document. A true and accurate copy of this counseling form,
       Form AUSC 825, dated May 19, 2003, is at attachment 14. I did not single out Mr.
       Buesgens as I have provided performance feedback and/or written counseling to other
       employees in my department.

19.    On May 28, 2003, Mr. Buesgens gave me a memorandum notifying me that he felt
       threatened by a co-worker who had scissors in the workplace. I told Mr. Buesgens that I
       would be contacting the Treasury Inspector General for Tax Administration (TIGTA) and
       advised him that he also should do so. I did speak with the employee who had the
       scissors and she told me that she sews at her desk during her breaks.

20.    Ms. Anna Medlock and I denied Mr. Buesgens' request to be moved to another
       department because we felt we had met all of Mr. Buesgens' concerns regarding his co-
       workers. However, to accommodate his concern with his safety, I moved Mr. Buesgens
       to another location in the unit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 25th day of September 2006.

Donald Tawney

# EXHIBIT 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| **MICHAEL L. BUESGENS,** §<br>**Plaintiff,** §<br> §<br>**v.** §<br> §<br>**JOHN W. SNOW,** §<br>**Secretary, Department of the Treasury,** §<br>**Defendant.** § | **Civil Action No. A-05-CA-243-SS**<br><br>*86-5*<br>*10/10/2006* |

## DECLARATION OF ANNA MEDLOCK

I, Anna Medlock, declare from personal knowledge, in lieu of an Affidavit, under 28 U.S.C. § 1746 as follows.

1.  I have read the Complaint filed by Michael Buesgens and respond as follows. I have been an employee of the Internal Revenue Service for approximately 32 years. Since August 12, 2001, I have held the positions of Department Manager and Operation 2 Manager in Accounts Management. My current position is Operation 2 Manager. My duties and responsibilities include managing approximately 380 employees consisting of first and second level managers, management assistants, leads, clerks, and customer service representatives (CSR). The Operation responds to taxpayer inquiries received in writing and via the toll free telephone line. In 2003, I was Mr. Buesgens' second-line manager.

2.  In 2002, Mr. Buesgens requested to be exempt from telephone duty. His manager at the time, Alicia Hagen, told Mr. Buesgens he needed a doctor's statement with the specifics about his medical condition and the length of time he needed. He brought in three different statements requesting different time periods. Each one was granted. Each letter stated he was being treated for depression, anxiety and bipolar condition. The first statement, dated May 14, 2002, requested 30 days. The second, dated June 21, 2002, requested 60 days, and the third, dated August 28, 2002, stated until further notice.

3.  When the third notice was received, his manager, Martha Schanhals, discussed with me on how to proceed. We agreed it would be appropriate to ask Mr. Buesgens if his condition was permanent, and when he would be able to go back to telephone duty. If his condition was permanent, Mr. Buesgens needed to go through the reasonable accommodation process. I advised Ms. Schanhals to call Margaret Waites, our Reasonable Accommodation Coordinator, in the Equal Employment Opportunity (EEO) office to seek further guidance. Ms. Schanhals told me Mr. Buesgens said he would never be able to go back to telephone duty. He agreed to enter into the reasonable

accommodation (RA) process, and worked with Ms. Schanhals to get information and the forms he needed. I was advised by his manager that while he was working through the RA process, Mr. Buesgens would continue to work only paper correspondence.

During the RA process, Mr. Buesgens asked Mr. Tawney to permanently place him in a GS-7 position in Accounts Management (AM) working only paper correspondence. When Mr. Buesgens entered into EEO counseling, I told the EEO counselor who interviewed me, Tony Contreras, there were no GS-592-7 positions in Accounts Management to place Mr. Buesgens. There are some employees in the Operation in GS-592-7 tax examiner positions. However, in 1998, the GS-592-7 tax examiner positions in AM were reclassified to GS-962-8 CSR positions. Employees in GS-592-7 tax examiner career leader positions were given the opportunity to volunteer to be reassigned to a GS-962-8 CSR position. The reclassification to a GS-962-8 occurred because answering toll free calls was to be the primary duty for Accounts Management. In addition, it furthered the goals of the agency to increase the level of service to the taxpaying public. Rather than reassigning employees that did not volunteer, they were allowed to remain in tax examiner positions until they left Accounts Management or the service, thereby phasing out the GS-592-7 tax examiner position. Since the position was being phased out, there were no vacant funded positions in AM.

Management sent a request to all heads of office on February 28, 2003 and sent a follow-up request on March 25, 2003 to those offices that had not responded. A true and accurate copy of the request is at attachment 1. I was the point of contact for questions and recommended positions for Mr. Buesgens. When no positions were found, Mr. Buesgens was offered the only position available at that time, GS-303, Grade 4, Step 10 Clerk in the Adjustments Control unit. Mr. Buesgens did not accept this position.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the ___6 th___ day of October 2006.

*Anna Medlock*

Anna Medlock

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| *MICHAEL L. BUESGENS,* | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. A-05-CA-243-SS |
| | § | |
| *JOHN W. SNOW,* | § | |
| *Secretary, Department of the Treasury,* | § | |
| Defendant. | § | |

86-7
FILED : 10/10/2006

## DECLARATION OF MELISSA K. GATES

I, Melissa K. Gates, declare from personal knowledge, in lieu of an Affidavit, under 28 U.S.C. § 1746 as follows.

1. I have been employed by the Internal Revenue Service since June 6, 1988 and have been a Supervisory Human Resources Specialist (Chief, Austin Employment Section) since July 25, 2004. My duties and responsibilities include planning, organizing, coordinating, directing, and evaluating all activities relating to the Recruitment and Placement Programs for the Austin Internal Staffing Section. I serve as a principal advisor to managers and executives to ensure that all program requirements are fully met. I have comprehensive knowledge of Recruitment and Placement program policies, principles, practices, regulations, and strategies in order to provide oversight, direction, compliance, and assessment of the organization's employment program activities. In addition, I have extensive knowledge of management principles, techniques, methods, theories, and concepts in order to direct and manage an organization through subordinate employees.

2. I have read the Reasonable Accommodation Request for Michael Buesgens, wherein it states his duties have been modified to exclude telephone contact with taxpayers. A true and accurate copy of the request is at attachment 1. I have also reviewed the reasonable accommodation offer dated April 9, 2003, where Mr. Buesgens was offered a position as a GS-303, Grade 4, Step 10 clerk in the Adjustments Control Unit. A true and accurate copy of this document is at attachment 2. I have also reviewed the Standard Position Description for this position. A true and accurate copy of IRS SPD No. 92108 is at attachment 3.

3. The GS-303, Grade 4 position that was offered to Mr. Buesgens does not require telephone contact with taxpayers.

4. The reasonable accommodation request indicates Mr. Buesgens has worked in both the GS-592 and GS-962 positions, and has experience in processing amended returns and written inquiries, and has a working understanding of tax law and internal procedures. His skills also include typing, filing, and use of the Integrated Data Retrieval System (IDRS) for research and adjustments, and general clerical duties.

5. The GS-592 job series are Tax Examiner positions. The entry level position is at the Grade 4 level, with career progression to Grade 7. The GS-592 series also has Grade 8 Lead positions and supervisory positions Grade 8 and above. All of the GS-592 job series that had vacant positions available during 2003 and 2004 at the Austin Campus required contact with taxpayers, both by correspondence and telephone. For example, the communication requirement description for the GS-0592, Grade 5 position provides that the employee:

> Receives and/or initiates contacts with taxpayers and/or their representatives and with third parties in moderately unstructured settings. The purpose of contacts is to gather or provide information, to resolve issues, and to gain compliance with laws and regulations while dealing with taxpayers that may be evasive or irate under extremely sensitive situations.

A true and accurate copy of Internal Revenue Service Standard Position Description, SPD No. 92100 is at attachment 4.

6. The GS-962 job series are Contact Representatives. These jobs also require contact with taxpayers, both by correspondence and telephone.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 5th day of October 2006.

Melissa K. Gates

# EXHIBIT 12

**US Attorneys > USAM > Title 9**
**prev | next | Criminal Resource Manual**

*06-11164 FRM*
*07-10008*

# 9-41.000
# BANKRUPTCY FRAUD

**9-41.001 Resource Materials**
**9-41.010 Report of Violations of Bankruptcy Fraud**

**9-41.001 Resource Materials**

**See the Criminal Resource Manual for a discussion of bankruptcy fraud law, and sample indictments:**

| | |
|---|---|
| **Bankruptcy Fraud** | **Criminal Resource Manual at 838** |
| **Report of Violations** | **Criminal Resource Manual at 839** |
| **Overview of 18 U.S.C. § 152 Violations** | **Criminal Resource Manual at 840** |
| **Concealment of Property – 18 U.S.C. § 152(1)** | **Criminal Resource Manual at 841** |
| **Sample Indictment – Concealing Assets, 18 U.S.C. § 152(1) – Chapter 7** | **Criminal Resource Manual at 842** |
| **Sample Indictment – Concealing Assets, 18 U.S.C. § 152(1) – Chapter 11** | **Criminal Resource Manual at 843** |
| **Sample Indictment – Money Laundering, 18 U.S.C. § 1956(a)(1)(B)(i)** | **Criminal Resource Manual at 844** |
| **False Oath or Account – 18 U.S.C. § 152(2)** | **Criminal Resource Manual at 845** |

| | |
|---|---|
| **Sample Indictment – False Statement Under Oath, 18 U.S.C. § 152(2)** | **Criminal Resource Manual at 846** |
| **Sample Indictment – False Social Security Number, 42 U.S.C. § 408(a)(7)(B)** | **Criminal Resource Manual at 847** |
| **False Declarations – 18 U.S.C. § 152(3)** | **Criminal Resource Manual at 848** |
| **Sample Indictment – False Statement Under Penalty of Perjury, 18 U.S.C. § 152(3) – Omission of Assets on Bankruptcy Petition and Schedules** | **Criminal Resource Manual at 849** |
| **Sample Indictment – Omission of an Answer as a False Statement Under Penalty of Perjury, 18 U.S.C. §152(3)** | **Criminal Resource Manual at 850** |
| **False Claims – 18 U.S.C. § 152(4)** | **Criminal Resource Manual at 851** |
| **Sample Indictment – False Claim, 18 U.S.C. § 152(4)** | **Criminal Resource Manual at 852** |
| **Fraudulent Receipt of Property – 18 U.S.C. § 152(5)** | **Criminal Resource Manual at 853** |
| **Sample Indictment – Knowingly Receiving Property of Debtor, 18 U.S.C. § 152(5)** | **Criminal Resource Manual at 854** |
| **Extortion and Bribery – 18 U.S.C. § 152(6)** | **Criminal Resource Manual at 855** |
| **Sample Indictment – Forbearance, 18 U.S.C. § 152(6)** | **Criminal Resource Manual at 856** |
| **Sample Indictment – Attorney's Fee, Bankruptcy Fraud, 18 U.S.C. § 152(6)** | **Criminal Resource Manual at 857** |
| **Fraudulent Transfer or Concealment – 18 U.S.C. § 152 (7)** | **Criminal Resource Manual at 858** |
| **Sample Indictment – Bust Out, 18 U.S.C. § 152(7)** | **Criminal Resource Manual at 859** |

| | |
|---|---|
| **Sample Indictment – Fraudulent Transfer in Contemplation of Bankruptcy, 18 U.S.C. § 152(7)** | **Criminal Resource Manual at 860** |
| **Sample Indictment – Fraudulent Transfer of Property, 18 U.S.C. § 152(7)** | **Criminal Resource Manual at 861** |
| **Sample Indictment – Fraudulent Transfer of Property in Contemplation of Bankruptcy, 18 U.S.C. § 152(7)** | **Criminal Resource Manual at 862** |
| **Destruction or Alteration of Recorded Information – 18 U.S.C. § 152(8)** | **Criminal Resource Manual at 863** |
| **Sample Indictment – Destroying or Mutilating Records of Debtor, 18 U.S.C. § 152(8)** | **Criminal Resource Manual at 864** |
| **Sample Indictment – Concealing Records of Debtor, 18 U.S.C. § 152(8)** | **Criminal Resource Manual at 865** |
| **Sample Indictment – Falsifying Records of the Debtor, 18 U.S.C. § 152(8)** | **Criminal Resource Manual at 866** |
| **Withholding of Recorded Information – 18 U.S.C. § 152(9)** | **Criminal Resource Manual at 867** |
| **Sample Indictment – Withholding Records of the Debtor, 18 U.S.C. § 152(9)** | **Criminal Resource Manual at 868** |
| **Statute of Limitations – 18 U.S.C. § 3284** | **Criminal Resource Manual at 869** |
| **Embezzlement against Estate – 18 U.S.C. § 153** | **Criminal Resource Manual at 870** |
| **Sample Indictment – Embezzlement by Trustee or Employee, 18 U.S.C. §§ 153 and 645** | **Criminal Resource Manual at 871** |
| **Sample Indictment – Embezzlement by Trustee or Employee, 18 U.S.C. §§ 153 and 645** | **Criminal Resource Manual at 872** |
| **Adverse Interest and Conduct – 18 U.S.C. § 154** | **Criminal Resource Manual at 872** |
| **Sample Indictment – Adverse Interest, 18 U.S.C. § 155** | **Criminal Resource Manual at 876** |

| | |
|---|---|
| **Knowing Disregard of Bankruptcy Laws – 18 U.S.C. § 156** | **Criminal Resource Manual at 877** |
| **Sample Indictment – Knowing Violation of Bankruptcy Law or Rule, 18 U.S.C. § 156** | **Criminal Resource Manual at 878** |
| **Bankruptcy Fraud – 18 U.S.C. § 157** | **Criminal Resource Manual at 879** |
| **Sample Indictment – Bankruptcy Fraud, 18 U.S.C. § 157, False Claim to be in Bankruptcy, 18 U.S.C. § 157** | **Criminal Resource Manual at 880** |
| **Sample Indictment – Concealing a Scheme or Artifice to Defraud, 18 U.S.C. § 157** | **Criminal Resource Manual at 881** |
| **Sample Indictment – Equity Skimming, 18 U.S.C. § 157** | **Criminal Resource Manual at 882** |

### 9-41.010 Report of Violations of Bankruptcy Fraud

Section 3057(a) of Title 18, United States Code, requires a judge, receiver or trustee having reasonable grounds for believing that any violation of laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, to report all the facts and circumstances to the appropriate United States Attorney (USA). Upon receipt of this report, the USA determines whether an investigation should be commenced; and upon completion of this investigation, the USA decides whether criminal action is warranted. A report by a judge, receiver or trustee of possible violations is not a condition precedent to the initiation of an investigation.

When a matter referred to the USA pursuant to 18 U.S.C. § 3057(a) by a judge, receiver or trustee is declined, 18 U.S.C. § 3057(b) requires that the USA "report the facts of the case to the Attorney General for his direction." This statutory directive is satisfied by providing the Fraud Section, Criminal Division, with a concise summary of the facts of the case and the reasons for declining it. Concurrence with the decision to decline may be presumed if no disagreement is expressed by the Fraud Section.

The personal opinion of the judge or trustee as to whether a criminal offense has occurred or as to whether criminal proceedings should or should not be commenced is in no way binding on the USA or determinative of the issues involved. Similarly, the decision of an officer of the Bankruptcy Court not to refer a matter to the USA should not be determinative in any prosecutive analysis.

# EXHIBIT 13

# USAR BANKRUPTCY PLAYERS

**K.** *Individual Creditors*

**1. One purpose of bankruptcy is – at least in theory – creditor protection. The idea: once the petition is filed, creditors shouldn't be able to improve their positions but – on the other hand – their positions shouldn't be diminished. The Code protects creditors as well as the debtors by proscribing a creditor's gaining an advantage by making a quick grab for assets.**

**2. The Code, at least in theory, intends that a creditor's property interests be maintained. Thus, for example, a creditor may demand adequate protection if the trustee wants to use its property, 11 U.S.C. § 363, set off mutual debts with court permission, 11 U.S.C. § 553, or ask the court to compel the assumption or rejection of an executory contract, 11 U.S.C. § 365.**

**3. In addition, creditors having similar claims generally are treated similarly. A class of creditors having superior claims are provided priority treatment – thus, *e.g.*, unsecured creditors should be paid in full before equity holders are paid.**

**L.** *Federal Creditor Agencies*   DEBTOR AGENCIES

**✓ All federal agencies are participants in bankruptcy proceedings. Agencies can have claims against, and debts to, corporations and persons in bankruptcy based on "garden variety" contractual relationships (i.e., a DOD contract with an airline for transport of military personnel or a contract with a shipbuilder for the construction of a Navy vessel), federal programs which result in contracts (i.e., Medicare contract between HHS and hospital or small business contract between SBA and contractor) or on a purely statutory relationship (i.e., tax obligation owed to IRS or tax overpayment owed to taxpayer). Contractual relationships also entangle federal agencies in bankruptcy proceedings to the extent that federal programs or needs are affected by protections given to bankrupt entities (i.e, automatic stay against termination of government contracts).**

# EXHIBIT 14

# 96 The "Who, What, When, Where, Why, and How" of Appeals in Bankruptcy Proceedings -- Generally

**Samuel R. Maizel**
**Commercial Litigation Branch**
**March 15, 1996 (updated November 2006)**

## I. *WHO MAY APPEAL: STANDING*

"Standing represents a jurisdictional requirement which is open to review at all stages of the litigation." *National Organization For Women, Inc. v. Scheidler*, 114 S. Ct. 798, 802 (1994). "Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising of another person's legal rights ...." *In re Price*, 173 B.R. 434, 439 (Bankr. N.D. Ga. 1994) (quoting *Allen v. Wright*, 468 U.S. 737, 750-51 (1984)). "A party seeking to invoke ... standing must demonstrate, among other things, that the party has suffered, or is threatened with, 'injury in fact, by which we mean an invasion of a legally protected interest ....'" *Price*, 173 B.R. at 441 (quoting *Northeastern Fla. Chapter of the Assoc. Gen. Contractors of America v. City of Jacksonville, Fla.*, 113 S. Ct. 2297, 2302 (1993)).

To have standing to appeal a bankruptcy court order, a party must be a "party aggrieved" by that order. *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737 (3d Cir. 1995) (comprehensive discussion of standing requirement for bankruptcy appeals); *In re American Ready Mix, Inc.*, 14 F.3d 1497, 1500 (10th Cir.), *cert. denied*, 115 S. Ct. 77 (1994); *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991). "'This person aggrieved requirement is more exacting than the requirements for general Article III standing,'" *In re American Dev. Int'l Corp.*, 188 B.R. 925, 932 (N.D. Tex. 1995) (quoting *In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir. 1992)); *accord Travelers Ins.*, 45 F.3d at 741, and "is meant to be a limitation on appellate standing to avoid 'endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order.'" *American Ready Mix*, 14 F.3d at 1500 (quoting *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989)). "Generally, only persons who are 'directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order.'" *American Dev. Int'l Corp.*, 188 B.R. at 932 (quoting *Andreuccetti*, 975 F.2d at 416). Courts are guided by two factors: (1) is the appellant a "party-in-interest" as defined in 11 U.S.C. § 1109(b), and (2) does the appellant possess a pecuniary interest. *In re Salant Corp.*, 176 B.R. 131, 133 (S.D.N.Y. 1994); *see also Travelers Ins. Co.*, 45 F.3d at 742 ("one is a 'person aggrieved' if the contested order 'diminishes their property, increases their burdens, or impairs their rights.'"); *American Ready Mix*, 14 F.3d at 1500 (same). *Compare Unsecured*

*Creditors Comm. v. Leavitt Structural Tubing Co.*, 55 B.R. 710 (N.D. Ill. 1985), *aff'd*, 796 F.2d 477 (7th Cir. 1986) (official unsecured creditors committee did not have standing to contest confirmation of debtor's reorganization plan) *and Salant Corp.*, 176 B.R. at 135 (equity committee appellant lacks standing) *with Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299 (4th Cir. 1987), *cert. denied*, 485 U.S. 962 (1988) (equity committee appellant has standing).

The term "party in interest" is not defined and the "determination calls for a case by case analysis, ... that takes into consideration ... 'the particular purposes of the provision in question.'" *In re Peachtree Lane Assocs., Ltd.*, 188 B.R. 815, 824 (N.D. Ill. 1995) (comprehensive examination of the precedent on what satisfies the standard for being a party in interest); *accord In re Johns-Manville Corp.*, 36 B.R. 743 (Bankr. S.D.N.Y. 1984) (party in interest "must be determined on an *ad hoc* basis"). It certainly includes creditors and shareholders but may not include a party with an indirect or remote interest. It is "'generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" *Thirteen Chapter 7 Cases Of Former Trustee Germain*, 182 B.R. 375, 377-78 (Bankr. D. Conn. 1995) (quoting *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993)). It also includes entities which are not creditors but which have a "practical" or "sufficient" stake in the outcome of the proceedings so that "fundamental fairness requires ... [they] be afforded an opportunity to be heard on the issues that affect them." *Peachtree Lane Assocs.*, 188 B.R. at 827 (non-creditor which is the defendant in an adversary proceeding may challenge the venue of a bankruptcy case because the creditor "has a legally protectible interest in the venue of the adversary proceeding .... [which] in turn, gives them a direct interest in the proper venue of the underlying ... case ....").

Because the US Trustee has broad statutory responsibilities in chapter 11, including the right to raise any issue and to be heard on any issue raised by others, 11 U.S.C. § 307, courts have permitted appellate standing despite its lack of pecuniary interest. *In re Columbia Gas Systems Inc.*, 33 F.3d 294, 296-99 (3d Cir. 1994); *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir. 1990). On the other hand, the debtor (as opposed to the debtor-in-possession)'s appeal rights are limited. *In re Williams*, 181 B.R. 532, 535 (D. Kan. 1995). However, where the debtor is a party in an adversary proceeding, the debtor has standing to appeal an adverse determination even if there is no pecuniary loss. *Comjean v. Cruickshank*, 191 B.R. 504, 506-07 (D. Mass. 1995).

## D. Discretionary Determinations    USAA TITLE 4    97

Various court orders by a bankruptcy court, including equitable determinations, e.g., dismissal of a case for being filed in bad faith or whether to grant leave to amend a proof of claim, are reviewed for abuse of discretion. *In re Sunnymead Shopping Ctr. Co.*, 178 B.R. 809, 814 (Bankr. 9th Cir. 1995); *In re William Schneider, Inc.*, 175 B.R. 769, 771 (S.D. Fla. 1994). "Discretion" means different things in different contexts. Where the decision of the judge is merely procedural, i.e., whether to grant a continuance, the reviewing court is likely to give great deference to the trial judge's decision. However, where the decision of the judge is determinative of a substantive right of a party, i.e., whether to dismiss a bankruptcy case as being filed in bad faith, the reviewing court is likely to give little or no deference to the trial judge's decision.

Abuse of discretion has best been described as "[w]hat we mean when we say that a court has abused its discretion, is merely that we think that [the court] made a mistake." *Pearson v. Dennison*, 353 F.2d 24, 28 n.6 (9th Cir. 1965); *accord In re Lowenschuss*, 67 F.3d 1394, 1399 (9th Cir. 1995) (Abuse of discretion occurs when reviewing court has "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."); *Shore v. Federal Exp. Corp.*, 42 F.3d 373, 380 (6th Cir. 1994) ("An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made."). "Abuse of discretion can occur if (1) the court fails to 'actually ... exercise discretion, deciding instead as if by general rule or even arbitrarily;' (2) the court fails to take relevant facts 'constraining its exercise' of discretion into account; or (3) its decision is based on erroneous conclusions of law or fact." *United States v. Roberson*, 188 B.R. 364, 365 (D. Md. 1995) (citing *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993)), or the misapplication of the law to the facts, see, e.g., *In re Gioioso*, 979 F.2d 956, 959 (3d Cir. 1992); *Charles v. Carey*, 627 F.2d 772, 776 (7th Cir. 1980); *Clemons v. Board of Educ.*, 228 F.2d 853, 857 (6th Cir. 1956); *see generally Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (trial court abuses its discretion where its ruling is based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence."); *Jeffrey v. Desmond*, 70 F.3d 183 (1st Cir. 1995). ("The cask which encases a judge's discretion, though commodious, can be shattered when a reviewing tribunal is persuaded that the trial court misconceived or misapprehended the law, or misconstrued its own rules."); *Wheeler v. Sims*, 951 F.2d 796, 802 (7th Cir.), *cert. denied*, 113 S. Ct. 320 (1994) ("[T]he abuse of discretion standard is met only when the trial judge's decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision, or where the supposed facts found are clearly erroneous."); *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 257 (3d Cir. 1995) (Abuse of discretion occurs when a "judge fails to apply the proper legal standard or to follow proper procedures in making the

determination, or bases an award upon findings of fact that are clearly erroneous."); *NLRB v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992) ("An abuse of discretion arises when `the `lower [court's ] decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."); *In re Hammer*, 112 B.R. 341, 345 (Bankr. 9th Cir. 1990) ("A trial court abuses its discretion when it rests its conclusions on clearly erroneous factual findings or an incorrect legal standard."), *aff'd*, 940 F.2d 524 (9th Cir. 1991); *In re Red Carpet Corp.*, 902 F.2d 883, 890 (11th Cir. 1990) ("Abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination."); *In re Smith*, 180 B.R. 648, 651 n.12 (D. Utah 1995) (trial court abuses its discretion when "(1) its decision is based on erroneous conclusions of law, (2) its factual findings are clearly erroneous, or (3) when the record contains no evidence to support the judge's conclusions").

However, other courts have been more deferential as to what constitutes "abuse of discretion," remarking that it occurs only "where no reasonable man would take the view adopted by the trial court." *Deino v. Market Street Ry.*, 124 F.2d 965, 967 (9th Cir. 1942); *accord Matter of Sheridan*, 57 F.3d 627, 635 (7th Cir. 1995) (discussing standard of review of court's refusal to admit expert testimony); *In re Volpert*, 186 B.R. 240, 245 (N.D. Ill. 1995); *In re Blackwell*, 162 B.R. 117, 119 (E.D. Pa. 1993); *see also In re Barber*, 191 B.R. 879, 883 (D. Kan. 1996) ("In the Tenth Circuit, '[a]n abuse of discretion occurs when the district court's decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment.'") (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1994)). This standard has been widely and properly criticized by noted jurists as reducing appellate review to a "largely meaningless ritual." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 59 (2d Cir. 1979) (Friendly, J.); *see also Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 388-90 (7th Cir. 1984) (Posner, J.); *United States v. Criden*, 648 F.2d 814, 817-19 (3d Cir. 1981) (Sloviter, J.).

When reviewing discretionary determinations affecting substantive rights of a party, we should argue that the former standard is correct; the latter view of the court's role in reviewing "discretionary" decisions is appropriate only in merely procedural decisions. Review of substantive decisions requires that appellate courts apply "not a rule of perfunctory appellate review but one of careful scrutiny." *Direx Isreal, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 815 (4th Cir. 1991); *cf. United States v. Boyd*, 1995 WL 274461 (7th Cir. May 10, 1995) (Posner, C.J.) (appellate review of discretionary determination is "deferential" but "not abject"). Application of standards set forth in the Code or the Rules, even if quite open ended such as "good faith" or "excusable neglect," does not make the ruling discretionary. *See Pioneer Investment Servs. Co. v. Brunswick Assocs. L.P.*, 113 S. Ct. 1489 (1993) (discussing standards for "excusable neglect").

## 4-4.414 Appellate Procedures in Bankruptcy

Appeals from all final judgments, orders and decrees of a bankruptcy court, as well as discretionary interlocutory appeals, are heard in the district court, 28 U.S.C. § 158(a) or before a bankruptcy appellate panel, 28 U.S.C. § 158(b), except for direct certified appeals, 28 U.S.C. Section 158(d)(2). Appeals from decisions of a bankruptcy court are controlled by Part VIII, Federal Rules of Bankruptcy Procedure. Interim Bankruptcy Rules for direct certified appeals have been approved. See 8001(f) and 8003(d). See also the "Who, What, When, Where, Why, and How" of Appeals in Bankruptcy Proceedings, Civil Resource Manual at 96-97.

Generally, in an appeal from the bankruptcy court, the district court sits as an appellate court. 28 U.S.C. § 1334(b). The district court may affirm, reverse, or modify the bankruptcy court's ruling or remand the case for further proceedings. Fed. R. Bankr. P. 8013.

For further information about appellate procedures in bankruptcy, see Civil Resource Manual at 69.

# EXHIBIT 15

## 4-5.620 FTCA Staff – Research and Guidance Materials

The Torts Branch has prepared Monographs and a Handbook covering many recurring substantive issues pertaining to Federal Tort Claims Act (FTCA) litigation. The current FTCA Monographs are:

1. Actionable Duty

2. Administrative Claim Sum Certain Requirement and the Ad Damnum Limitation

3. Administrative Claims

4. Checklist of FTCA Defenses

5. Claims Under Wrongful Death and Survival Statutes and Claims for Loss of Consortium

6. Discretionary Function Exception, Part A and Part B

7. FTCA Exception: Claims Arising in a Foreign Country

8. FTCA Statute of Limitations

9. Indemnity and Contribution

10. Law Enforcement Torts under the FTCA

11. The Doctrines of Loss of Chance and Increased Risk

12. Prejudgment and Postjudgment Interest in Federal Tort Claims Act Litigation

13. The Assault and Battery Exception

14. The FTCA'S Contractor Exclusion and Related Issues

15. The Misrepresentation Exception and the Interference with Contract Rights Exception

16. The Feres Doctrine

Each United States Attorney has received copies of the foregoing Monographs. If an Assistant United States Attorney needs an additional copy of a particular Monograph, it can be obtained by calling (202) 616-4233 or by writing to the Torts

Branch, Post Office Box 888, Ben Franklin Station, Washington, D.C. 20044. In addition, a looseleaf handbook entitled "Damages Under the Federal Tort Claims Act" has been sent to each USAO and updated periodically. Contributions to the Damages Handbook are solicited from Assistant United States Attorneys.

## 4-5.630 FTCA Staff – Substitution of the United States for Federal Employees

United States Attorneys are authorized to make the certification provided for in 10 U.S.C. § 1089(c), 22 U.S.C. § 817(c), 28 U.S.C. § 2679(d), 38 U.S.C. § 4116(c), and 42 U.S.C. §§ 233(c) and 2458a(c), in order to substitute the United States as defendant in place of federal employees acting within the scope of their federal employment who have been sued under state tort law. *See* 28 C.F.R. § 15.3.

### 4-1.410 Responsibilities of Client Agencies – Compromise and Dismissal or Closing

Authority over the disposition of a civil matter, once it is referred to the Department of Justice, resides in the Attorney General or his/her delegate, and the client agency may not control its handling or disposition. *See United States v. Sandstrom,* 22 F. Supp. 190, 191 (N.D. Okla. 1938); *FTC v. Guignon, supra;* E.O. 6166 § 5, June 10, 1933. In rare cases a statute may provide continuing settlement or other authority in the referring agency. Cf. 28 U.S.C. § 2348. An agency's recommendation (which may be couched in terms such as "we have accepted the offer of settlement," for example) should not be construed as an acceptance but rather only as a recommendation. Such powers as other officials of the government had theretofore with respect to litigation were withdrawn by E.O. 6166, June 10, 1933, leaving the Attorney General with complete authority. *See Duncan v. United States,* 39 F. Supp. 962, 964 (W.D. Ky 1941); *Aviation Corp. v. United States ,* 46 F. Supp. 491, 494 (Ct. Cl. 1942), *cert. denied,* 318 U.S. 771 (1943); 38 Op. Att'y Gen. 124, 125. Where the authority of the Attorney General has been redelegated to United States Attorney's, and the client agency involved objects to the compromise, dismissal, or closing, the case may not be compromised, dismissed, or closed without the consent of the Assistant Attorney General of the Civil Division. "Consult" within the meaning of Civil Division Directive 14-95, means to discuss with the agency in good faith, in order to decide or plan an appropriate course of action. In Tort cases, although all agencies should be consulted, the agency "involved" for purposes of requiring referral to the Assistant Attorney General, Civil Division does not construe "agency or agencies involved" to ordinarily encompass the agency whose acts or omissions gave rise to the tort since the agency is not a proper party to an FTCA suit.

## 4-1.430 Responsibilities of Client Agencies – Litigation Reports

Agency personnel are generally in the best position to know the facts involved in a case arising in connection with the activities of their agency. Agency counsel should have a great familiarity with agency practices and the statutes and regulations of the agency which may be relevant to a particular case. Obviously, records of the agency relevant to the case can best be assembled and certifications obtained by agency counsel. Thus, it has been the policy of the Division that the involved agencies be asked to provide litigation reports and recommendations as to any affirmative relief which should be requested or defenses which should be asserted.

In cases being directly handled by Assistant United States Attorney's, agency counsel should be instructed to furnish copies of litigation reports directly to the USAOs. Copies of litigation reports should also be furnished to Civil Division components that request them. In suits brought against the government, United States Attorney's are encouraged to make early contact with appropriate agency counsel. Excessive delays by government agencies in furnishing litigation reports should be brought to the attention of the Assistant Attorney General for the Civil Division.

## 4-1.440 Responsibilities of Client Agencies – Pleadings and Interrogatories

Agency counsel may offer to prepare suggested pleadings and papers for civil cases. It is appropriate to receive such suggestions, or even to request agency preparation of suggested pleadings and papers, if this will facilitate the disposition of litigation rather than delay it. However, agency counsel are not required to provide this service. Pleadings and papers prepared by agency counsel should be critically examined, and rewritten as necessary, to assert the proper litigating position for the government and conform with proper practice and local rules.

Agency representatives generally should prepare the answers to interrogatories and sign such answers. See Fed. R. Civ. P. 33. Agency answers to interrogatories, if any, should not be submitted to the court pro forma, but should be critically examined, and recast if necessary, to reflect accurately the facts and the appropriate litigating position which should be taken under the circumstances.

## 4-1.450 Responsibilities of Client Agencies – Referrals

Agency referrals for litigation should be accompanied by sufficient information, whether in the form of a litigation report or otherwise, to permit an intelligent evaluation of the factual and legal merits of the case. Agency counsel should be alert to apprise the Department of anticipated defenses, their strengths, and the best rebuttal to them. Non-fraud referrals for the recovery of money should comply with the Federal Claims Collection Standards (*see* 4 C.F.R. §§ 101.1 to 105.5) implementing the Debt Collection Act, 31 U.S.C. §§ 3701 to 3720A. Where they involve amounts coming within the United States Attorneys' authority, the referrals should be made by the agencies directly to the National Central Intake Facility. Referrals of cases in excess of the United States Attorneys' authority should be made through the Civil Division.

## 4-1.520 Liaison of United States Attorneys with Client Agencies

Whenever a case involves an agency of the United States as a client of the USAO it shall be the responsibility of the Division or United States Attorney to ensure that the client agencies are kept fully informed of case progress, developments and decisions.

The following steps are recommended as a means toward that end:

A. Promptly upon receipt of a complaint against an agency, the Division or USAO, as appropriate, should mail a notification letter to the General Counsel of the agency or to his/her designee. (Where time does not permit, e.g., where a motion for a TRO has been filed, it may be necessary to notify the agency by telephone.) At the same time, or as soon thereafter as possible, the agency should be provided with the name(s) and telephone number(s) of the Department or USAO attorney(s) to whom the case has been assigned. The agency should be requested, in turn, to provide the assigned attorney(s) with the name, direct mailing address, and telephone number of the agency attorney to whom communications with respect to the case should be directed.

B. With respect to affirmative cases, receipt of a referral from a client agency should be acknowledged promptly and names of attorneys exchanged as in Paragraph A.

C. Unless reasons of economy indicate otherwise, copies of all significant documents filed in court in both defensive and affirmative cases should be sent, immediately upon receipt or service, to the client agency. If a client agency specifically requests, copies of all documents filed should be sent. (Service of a summons and complaint on the client agency may normally be assumed, and copies of exhibits forwarded by the client agency need not be reproduced and returned.)

D. In nondelegated cases, the United States Attorney should also send copies of all documents filed in court to the Division responsible for the case.

E. An agency should be notified in advance of any significant hearings, oral arguments, depositions, or other proceedings.

F. Appropriate steps should be taken to consult adequately with agencies in advance regarding positions we intend to urge in court. Under no circumstances should a case be compromised or settled without advance consultation with a client agency, unless the agency has clearly indicated that some other procedure would be acceptable.

# EXHIBIT 16

*86*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| *MICHAEL L. BUESGENS,*<br>**Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. A-05-CA-243-SS** |
| | § | |
| *JOHN W. SNOW,* | § | |
| *Secretary, Department of the Treasury,* | § | |
| **Defendant.** | § | |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

NOW COMES Defendant John W. Snow, in his official capacity as the Secretary, Department of the Treasury, by and through the U.S. Attorney for the Western District of Texas, and files this Motion for Summary Judgment. In support thereof, the Defendant respectfully offers the following:

## I. INTRODUCTION

Plaintiff Michael L. Buesgens was formerly employed as a Contact Representative with the Internal Revenue Service (IRS), a seasonal position that involved working on the Customer Service Toll-Free system. Prior to his disability retirement in March 2005, Plaintiff filed three administrative EEO complaints that were consolidated before the EEOC into a single hearing. The issues in Plaintiff's EEO complaints concern events that occurred in the Fall of 2002 and the Spring of 2003. The primary allegations are reprisal for Plaintiff's prior participation in EEO activity and the agency's failure to provide reasonable accommodation for his mental disability (Bipolar & depression). The personnel actions at issue are the Plaintiff's forfeiture of 71 hours of "use or lose" annual leave in January 2003, and the agencies' denial of his request for job restructuring that would have eliminated an essential duty of Plaintiff's position (telephone work).

Defendant contends Plaintiff's case should be dismissed because he fails to state a claim upon which relief can be granted, fails to establish a *prima facie* case of discrimination, retaliation, or hostile work environment.

## II. FACTUAL SUMMARY

See Appendix A.

## III. STANDARD OF REVIEW

### The Review of Employment Discrimination Claims.

Where only circumstantial evidence of discrimination is offered, plaintiffs must rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* approach, the plaintiff has the initial burden of proving a *prima facie* case by a preponderance of the evidence. *Id*. Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant proffers such a legitimate reason, the burden shifts back to the plaintiff to show that the defendant's reason was merely a pretext for discrimination. *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 138-42, 120 S. Ct. 2097 (2000)). Throughout, the ultimate burden of persuasion remains with the plaintiff. *Reeves*, 530 U.S. at 143.

## IV. LEGAL ARGUMENT

### Plaintiff's First EEO Complaint,

#### Plaintiff fails to establish a *prima facie* case of retaliation.

In Plaintiff's first EEO Complaint, he alleges he was the victim of reprisal for his involvement in prior EEO activity (request for reasonable accommodation), when in October 2002, his request to forfeit and restore 71 hours of use or lose annual leave was denied. (Append., ¶ 18).

To establish a *prima facie* case of retaliation a plaintiff must show that (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) a causal link existed between the protected activity and the adverse employment action. *Fierros v. Tex. Dep't of Health*, 274

2

F.3d 187, 191 (5th Cir. 2001). In June 2006, the Supreme Court broadened the standard of the second

prong of the *prima facie* case of retaliation, *i.e.*, what constitutes an "adverse employment action." The

*Burlington Northern* Court reasoned that, while the "ultimate employment decision" standard continues

to apply to Title VII *discrimination* cases, the standard is not appropriate for Title VII *retaliation* cases.[1]

In the Fifth Circuit, "adverse employment actions" include only "ultimate employment

decisions...'such as hiring, granting leave, discharging, promoting, and compensating.'" *Mota v.*

*University of Texas Houston Health Science Center*, 261 F.3d 512, 519 (5th Cir. 2001). For the purpose

of this summary judgment motion only, Defendant will concede that Plaintiff meets element one, but

Defendant contends that Plaintiff was not subjected to an adverse employment action, and that he is

unable to establish a causal link between his participation in prior EEO activity and the forfeiture of his

71 hours of annual leave.

Courts, when dealing with loss of leave issues, have distinguished between a refusal to grant

accrued vacation time and merely delaying or restricting when the vacation time may be used. *See*

*Paniagua v. Texas Dep't of Criminal Justice*, 2001 WL 540908 *6 (N.D. Tex.); *Washington v. Veneman*,

2004 WL 170315 *5 (E.D. La.). The courts have noted that employers routinely restrict the timing of

employees' vacations based on the needs of the business. They have concluded that such scheduling

decisions are closer to depriving an employee of "opportunities" rather than changing the "conditions

or privileges of employment." *Id.*

In the present case, the IRS did not deny Plaintiff the opportunity to utilize his vacation leave,

rather Plaintiff simply refused to use his leave at a time that was not in violation of the IRS's leave

---

[1]    *Burlington N. & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S.Ct. 2405, 2414 (2006)(holding that "we conclude that Title VII's substantive provision and its anti-retaliation provision are not coterminous. . . . We therefore reject the standards applied in the Court of Appeals that have treated the anti-retaliation provisions as forbidding the same conduct prohibited by the anti-discrimination provision. . . .").

policies. Moreover, Plaintiff fails to establish a causal connection between his protected activity and the loss of his 71 hours of use or lose leave. (Append., ¶¶ 27-31).

Based on the foregoing, Plaintiff fails to establish a *prima facie* case of retaliation. In the alternative, Plaintiff cannot overcome the Agency's legitimate business reasons for not permitting Plaintiff to restore his forfeited leave. (Append., ¶¶ 32-34).

## Plaintiff's Second EEO Complaint.

### Buesgens fails to state a claim under the Rehabilitation Act.

The Rehabilitation Act prohibits discrimination against otherwise qualified employees with a disability. 29 U.S.C. § 794(a). Courts reviewing disability discrimination claims use the "straightforward" three-part burden-shifting analysis used in other discrimination cases. *Burciaga v. West*, 996 F. Supp. 628, 634 (W.D. Tx. 1998). The plaintiff-employee must establish a *prima facie* discrimination case. *McDonnell-Douglas v. Green*, 93 S. Ct. 1817 (1973); *Dep't of Cmty. Affairs v. Burdine*, 101 S. Ct. 1089 (1981). To do so, he must show that (1) he was an individual with a disability within the meaning of the statute[2]; (2) he was otherwise qualified; and (3) he was adversely treated solely because of his disability. *Burciaga,* 996 F. Supp. at 640; 29 U.S.C. § 794(a). *See also Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993)(requiring plaintiff to show that "he was adversely treated solely because of his handicap") and *Soledad v. United States Dep't of Treasury*, 304 F.3d 500, 504 (5th Cir. 2002) (citing *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997)). The burden of proof for each of these elements lies with the plaintiff. *Chandler*, 2 F.3d at 1390.

If the employee establishes a *prima facie* case, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the action. *Id.* If the employer satisfies this

---

[2]    See 29 C.F.R. § 1614.203(b)(importing ADA standard into the Rehabilitation Act); 42 U.S.C. § 12102(2)(defining disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.").

burden, the burden then shifts back to the employee, who must prove that the legitimate reasons offered

by the employer for the action were not its true reasons, but were a pretext for unlawful discrimination.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2104-2105 (2000). Plaintiff

cannot establish elements two and three of a *prima facie* case. For the purposes of this summary

judgment motion only, Defendant will concede that Plaintiff is disabled within the meaning of the

Rehabilitation Act because the agency, albeit mistakenly, considered Plaintiff to be disabled[3].

**1.    Plaintiff cannot show that he is a qualified person with a disability under the Rehabilitation Act.**

Assuming arguendo that Plaintiff is an individual with a disability within the meaning of the

Rehabilitation Act, Plaintiff still cannot establish a *prima facie* disability discrimination case because

he was not "otherwise qualified for his position." "The law in this area is crystal clear: an otherwise

qualified person is 'one who is able to meet all of the program's requirements in spite of his handicap.'"

*Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999). Determining whether Plaintiff is

otherwise qualified for his job requires a two-part inquiry. First, the Court must determine whether

Plaintiff can perform the essential functions of his position. If Plaintiff cannot perform the essential

functions of his job, the Court must determine whether any reasonable accommodation would enable

Plaintiff to perform those functions. *Burch*, 174 F.3d at 619; *Chandler*, 2 F.3d at 1393-94.

**a.    Essential functions of the job.**

---

[3]  To qualify for protection as a disabled person, a plaintiff must show that his impairment substantially limits a major life activity. *Toyota v. Williams*, 534 U.S. 185, 195 (2002). Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Id.*; 45 C.F.R. § 84.3(j)(2)(ii). "Substantially limited" means "unable to perform a major life activity that the average person in the general population can perform" or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j).

According to regulations implementing the Americans with Disabilities Act (ADA), which are instructive in Rehabilitation Act cases,[4] "essential functions" means the "fundamental job duties" but does not include the marginal functions of the job. 29 C.F.R. § 1630.2(n)(1) and (2). One of the essential functions of a Contact Representative is to perform toll-free telephone duty. (Append., ¶¶ 16, 38). The summary judgment evidence establishes that Plaintiff was unable to perform the essential duty of telephone contact with taxpayers which, despite the agency's accommodations of eliminating telephone duty for several months or reducing it to four hours per day. (Append., ¶¶ 23, 24, 35, 38, 39, 41-46). In August 2004, Plaintiff submitted paperwork for his disability retirement and in support provided several physician statements supporting his request for disability retirement, indicating his condition had not changed and that his bipolar condition prevented him from fulfilling the critical job element of telephone work. (Id., ¶¶ 47-53).

### b.    Reasonable accommodations.

Plaintiff has the burden of proving that the IRS could have made a reasonable accommodation to enable him to perform his job. *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 n.4 (5th Cir. 1997). *See also Burciaga*, 996 F. Supp. at 640 (discussing the many cases in which courts have placed the burden of proving reasonable accommodation on the plaintiff). As discussed above, despite the agency's reasonable accommodations, Plaintiff's medical condition continued to deteriorate to a level where his physicians recommended and supported his medical disability retirement request. (*Id.*)

Moreover, the IRS offered Plaintiff the only job available at the time that required no telephone contact with taxpayers, but he declined the offer. (Id., ¶ 38; DEX 28, Gates' Decl.) "[F]or the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997). If an open position

---

[4] *Burciaga*, 996 F. Supp. at 628, 634 n.10 (W.D. Tx. 1998).

exists, Plaintiff must "prove that he is qualified for that position." *Burch*, 174 F.3d at 622. Plaintiff cannot show any vacant GS-8 positions for which he qualified and management was not required to create one. *Chiari v. City of League City*, 920 F.2d 311, 318 (5th Cir. 1991). To the contrary, Plaintiff rejected the GS-4 clerical position, the only available position that would accommodate his medical restrictions[5]. (Append., ¶ 39).

        **b.**    **Plaintiff cannot show that he was adversely treated solely by his disability.**

     The Rehabilitation Act provides in relevant part "No otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . ." *Soledad*, 304 F.3d at 504. In the case at bar, Plaintiff cannot show that he was adversely treated solely because of his disability. As discussed above, all of Plaintiff's physicians' requests that Plaintiff be excused from telephone duty (or limited) were granted. Plaintiff's request that his Contact Representative job be restructured to eliminate telephone duty was not possible because telephone contact with taxpayers is an essential function of the job. (Append., ¶¶ 23, 24, 35, 37, 38).

     Even after Plaintiff declined the reasonable accommodation of reassignment to a job that required no telephone contact with taxpayers, his supervisors continued to accommodate him until his medical disability retirement in March 2005. (Append., ¶¶ 39-42). There is no evidence that the IRS forced Plaintiff to submit his request for disability retirement. Plaintiff's retirement is presumed to be voluntary, unless he comes forward and introduces evidence to rebut the presumption. *Cf., Gonzalez v. Dep't of Transp.*, 701 F.2d 36, 38 (5th Cir. 1983) (citing *Christie v. United States*, 207 Ct. Cl. 333, 518 F.2d 584, 587 (Ct.Cl.1975)). Plaintiff cannot rebut this presumption. To the contrary, Plaintiffs'

---

[5] It is noteworthy that when Plaintiff declined the GS-4 Clerk position, he voluntarily wrote in the comments section: "I will contact my doctor and request an appointment to see if I can get a medical release for phone duties." (DEX 27, Tawney July 6, 2003 EEO Decl. ¶ 14, (p. 138)).

physicians fully supported his retirement application. Moreover, Plaintiff submitted a request for reconsideration after his application was initially denied. (Append., ¶¶ 51-53).

**Plaintiff's Third EEO Complaint.**

**A.    Plaintiff Fails to Establish a *Prima Facie* Case of Hostile Work Environment or Retaliation.**

The gravamen of Plaintiff's hostile work environment and retaliation claims center around him being counseled for unprofessional conduct with customers on the telephone and the unfounded threat from a co-worker who maintained scissors at her work desk that she used when she knitted during her breaks. (Append. at ¶¶ 56-60). To establish a hostile work environment claim under the Rehabilitation Act, a plaintiff must prove that: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) that the harassment complained of was based on his disability; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Soledad*, 304 F.3d at 506. *See also Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002). If the alleged harasser is a supervisor with immediate (or successively higher authority), the plaintiff need only satisfy the first four elements. *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 299 (5th Cir. 2001). For harassment to affect a "term, condition, or privilege of employment" it must be sufficiently pervasive or severe so as to alter the conditions of employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Factors to consider in determining whether a work environment is hostile or abusive include such things as the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 23. These standards for judging hostility are "demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998).

"Properly applied, they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id*.

In the case at bar, Plaintiff cannot establish elements 2-5 necessary to state a *prima facie* case of a hostile work environment. Defendant submits that as a matter of law none of Plaintiff's allegations, even if they are true, are sufficiently pervasive or severe so as to alter the conditions of employment and do not create an abusive working environment. Personal animosity between employees that is not predicated on a protected characteristic does not establish actionable hostile work environment. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998)(cautioning that Title VII does not prohibit all verbal or physical harassment in the workplace, only those directed at discrimination because of a protected trait); *Vore v. Indiana Bell Tel. Co. Inc.*, 32 F.3d 1161, 1162 (7th Cir. 1994)(explaining that "federal law does not guarantee a utopian workplace, or even a pleasant one," and that "personality conflicts between employees are not the business of federal courts."). Based on the foregoing, Plaintiff has failed to establish a *prima facie* case of hostile work environment. To establish a *prima facie* retaliation claim, Plaintiff must show that (1) he engaged in activity protected by Title VII; (2) his employer took an adverse action against him; and (3) there was a causal link between the two. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). Plaintiff cannot establish any of the elements of a *prima facie* case. Plaintiff's request to transfer to another department was not based upon his disability. Rather it was related to his inability to get along with his supervisors and coworkers. (Append., ¶ 60). Alternatively, the legitimate, nondiscriminatory reasons discussed above apply with equal strength to Plaintiff's retaliation claim.

## Plaintiff fails to state a claim under the FMLA.

The FMLA grants private and federal employees periods of leave for certain family or health related events. Title I of the FMLA governs private sector and federal employees with less than 12

months of service. 29 U.S.C. ¶¶ 2601 *et seq.* Title II of the FMLA governs actions relating to federal employees with more than 12 months of federal service. 5 U.S.C. ¶¶ 6381 *et seq.* While both titles guarantee the same substantive rights, Title I expressly creates a private right of action to redress violations, whereas Title II does not. *Sullivan-OBST v. Powell*, 300 F.Supp.2d 85, 99 (D.D.C. 2004). It is undisputed that the IRS employed Plaintiff for more than 12 months. Accordingly, Title I of the FMLA does not afford the Plaintiff an avenue to assert his claim.

## Plaintiff fails to state a claim under the Privacy Act.

The Privacy Act is intended to protect the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records. *Sullivan-OBST*, 300 F.Supp.2d at 98. The act provides for a cause of action if the Plaintiff can prove that (1) the agency disclosed information, (2) the information disclosed is a record contained within a system of records; (3) an adverse impact resulted from the disclosure; and (4) the agency's disclosure was willful or intentional. *Id.* In this case, Plaintiff alleges that the agency obtained his medical information without his consent. (Append., ¶ 9). As part of the request for reasonable accommodation, Ms Schanhals requested Plaintiff's medical information to assist her in determining the most appropriate accommodation. On January 24, 2003, Plaintiff signed an Authorization for Release of Medical Information. (Append., ¶ 24). As matter of law, Plaintiff fails to state a claim for which relief can be granted because the alleged unauthorized release of medical information, even if true, was done by a private medical care provider, not a federal governmental entity. Moreover, the agency received medical information regarding Plaintiff either directly from Plaintiff or pursuant to Plaintiff's authorization.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendant's motion for summary judgment.

Respectfully Submitted,

JOHNNY SUTTON
UNITED STATES ATTORNEY

BY:    /s/ R. Barry Robinson
R. BARRY ROBINSON
Assistant United States Attorney
816 Congress Avenue, Suite 1000
Austin, Texas 78216
(512) 916-5858 / 916-5854 (facsimile)
Arkansas State Bar No. 85206

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I, R. BARRY ROBINSON, do hereby certify that a true and correct copy of the above and

foregoing **Defendant's Motion For Summary Judgment** and proposed Order has been served in

accordance with the FEDERAL RULES OF CIVIL PROCEDURE on this the 10th day of October 2006, as

follows:

Michael L. Buesgens            _____ Via Fax
3112 Windsor Rd. # A322        _____ Hand Delivery
Austin, TX 78703               ___✓__ CM / RRR
*[Pro se Plaintiff]*           _____ First Class U.S. Mail


   /s/ R. Barry Robinson
R. BARRY ROBINSON
Assistant United States Attorney

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, and ZIP code | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| CHARLES SCHWAB & CO., INC. 101 MONTGOMERY ST. SAN FRANCISCO CA 94104 1-800-435-4000 | $ 68,325.52 | 2007 | |
| | 2a Taxable amount $ 68,325.52 | Form 1099-R | Copy B |
| | 2b Taxable amount not determined ☒ | Total distribution ☐ | Report this income on your federal tax return. If this form shows federal income tax withheld in box 4, attach this copy to your return. |
| PAYER'S Federal identification number  RECIPIENT'S identification number 94-1737782 | 3 Capital gain (included in box 2a) $ | 4 Federal income tax withheld $ 0.00 | |
| RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code R00216534-0000-01 MICHAEL LEIF BUESGENS CHARLES SCHWAB & CO INC CUST IRA CONTRIBUTORY 3112 WINDSOR RD # A322 AUSTIN, TX 78703 | 5 Employee contrib./Desig. Roth contrib. or insurance premiums $ | 6 Net unrealized appreciation in employer's securities $ | This information is being furnished to the Internal Revenue Service. |
| | 7 Distribution code(s) 1  IRA/SEP/ SIMPLE ☒ | 8 Other $ % | |
| | 9a Your percentage of total distribution % | 9b Total employee contributions $ | |
| 1st year of desig. Roth contrib. LEGAL EXPENSES | 10 State tax withheld $ | 11 State/Payer's state no. | 12 State distribution $ |
| Account number (see instructions) | 13 Local tax withheld $ | 14 Name of locality | 15 Local distribution $ |

Form 1099-R                                Department of the Treasury - Internal Revenue Service

EMPLOYMENT DISCRIMINATION  $68,352.52

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, and ZIP code | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| CHARLES SCHWAB & CO., INC. 101 MONTGOMERY ST. SAN FRANCISCO CA 94104 1-800-435-4000 | $ 68,325.52 | 2007 | |
| | 2a Taxable amount $ 68,325.52 | Form 1099-R | Copy C |
| | 2b Taxable amount not determined ☒ | Total distribution ☐ | For Recipient's Records |
| PAYER'S Federal identification number  RECIPIENT'S identification number 94-1737782 | 3 Capital gain (included in box 2a) $ | 4 Federal income tax withheld $ 0.00 | |
| RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code R00216534-0000-01 MICHAEL LEIF BUESGENS CHARLES SCHWAB & CO INC CUST IRA CONTRIBUTORY 3112 WINDSOR RD # A322 AUSTIN, TX 78703 | 5 Employee contrib./Desig. Roth contrib. or insurance premiums $ | 6 Net unrealized appreciation in employer's securities $ | This information is being furnished to the Internal Revenue Service. |
| | 7 Distribution code(s) 1  IRA/SEP/ SIMPLE ☒ | 8 Other $ % | |
| | 9a Your percentage of total distribution % | 9b Total employee contributions $ | |
| 1st year of desig. Roth contrib. HOTEL EXPENSES | 10 State tax withheld $ | 11 State/Payer's state no. | 12 State distribution $ |
| Account number (see instructions) HUD # 06-06-293-9 | 13 Local tax withheld $ | 14 Name of locality | 15 Local distribution $ |

HOUSING DISCRIMINATION

Form 1099-R      (keep for your records)      Department of the Treasury - Internal Revenue Service

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, and ZIP code | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| CHARLES SCHWAB & CO., INC. 101 MONTGOMERY ST. SAN FRANCISCO CA 94104 1-800-435-4000 | $ 68,325.52 | 2007 | |
| | 2a Taxable amount $ 68,325.52 | Form 1099-R | Copy 2 |
| | 2b Taxable amount not determined ☒ | Total distribution ☐ | File this copy with your state, city, or local income tax return, when required. |
| PAYER'S Federal identification number  RECIPIENT'S identification number 94-1737782 | 3 Capital gain (included in box 2a) $ | 4 Federal income tax withheld $ 0.00 | |
| RECIPIENT'S name, street address (including apt. no.), city, state, and ZIP code R00216534-0000-01 MICHAEL LEIF BUESGENS CHARLES SCHWAB & CO INC CUST IRA CONTRIBUTORY 3112 WINDSOR RD # A322 AUSTIN, TX 78703 | 5 Employee contrib./Desig. Roth contrib. or insurance premiums $ | 6 Net unrealized appreciation in employer's securities $ | |
| | 7 Distribution code(s) 1  IRA/SEP/ SIMPLE ☒ | 8 Other $ % | |
| | 9a Your percentage of total distribution % | 9b Total employee contributions $ | |